UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC ) | |
| ) | |
| Plaintiff ) | SUPPLEMENTAL BRIEF |
| ) | IN SUPPORT |
| v. ) | OF PLAINTIFF'S MOTION FOR |
| ) | REMAND TO THE WORCESTER |
| UNITED STATES FIDELITY AND ) | SUPERIOR COURT PURSUANT |
| GUARANTY COMPANY ) | TO THE COURT'S ORDER OF |
| ) | OCTOBER 21, 2005 |
| Defendant ) | |

Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff"), and provides a supplemental brief as requested by this Court on October 21, 2005, as well as an affidavit requested by the Court.

The Court was particularly concerned about the meaning of 28 U.S.C.A. § 1332(c). This brief addresses the Plaintiff's position as to the applicability of this statute to the request for remand.

The Plaintiff further states as follows:

A.  UNDER THE STATUTE CITED, THIS LAWSUIT IS A DIRECT ACTION, AND THE DEFENDANT IS THUS BARRED, AS STANDING IN THE SHOES OF ITS MASSACHUSETTS INSURED, FROM SEEKING TO BAR REMAND ON THE BASIS OF DIVERSITY JURISDICTION.

The controlling statute, 28 U.S.C.A. § 1332(c), states that "for the purpose of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated....Provided further, that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the

1

insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen...."

Legal authority as to the meaning of this statute is remarkably thin, nearly non-existent in the First Circuit. However, relevant holdings are found in other circuits.

In considering the word "direct," the Court has noted that "unless the suit against the insurance company is of such a nature that liability sought to be imposed could be imposed against the insured, this action is not a 'direct action.' Lank v. Federal Insurance Company 309 F.Supp. 349,351 (D.Del. 1970).

In the context of surety cases, a credible statement of the law may be found in A.J. Kellos Construction Co., Inc. v. Balboa Insurance Company, 495 F.Supp 408 (S.D. Georgia, 1980). The Kellos case involved a performance bond, in which a general contractor sought to impose liability for performance on its subcontractor's surety. The Kellos Court noted that in order to invoke 28 U.S.C.A. § 1332(c), there were "the three elements necessary to invoke the proviso: 1) a policy or contract of liability insurance; 2.) a direct action against an insurer; and 3.the insured is not a party-defendant...." A.J. Kellos Construction Co., Inc. 495 F. Supp. at 413. The Court then noted that "a contract of liability insurance is defined as a contract that indemnifies against the condition of becoming liable." A.J. Kellos Construction Co., Inc. 495 F. Supp. at 413, citing Vines v. United States Fidelity & Guaranty Co., 267 F. Supp. 436,437 (E.D. Tenn. 1967)[1].

The Kellos court ultimately held that a *performance* bond is not a contract of liability insurance because "Balboa's obligation under the bond executed in favor of Kellos was *contingent on the default of the principal...*" A.J. Kellos Construction Co., Inc. 495 F. Supp at 413. emphasis added.

---

[1] Without embarking on a lengthy law review article in this brief, it should be noted that the Vines case is breathtaking in its circuity. The holding that a contract of liability is conditioned upon contracting liability seems to beg the question, rather than answer the question, as to why a surety bond does not fit in this category.

2

It is this final statement, the holding that references the issue of *the contingency* of the default invoking the obligation of the surety, that makes it clear that the Defendant, in the case at bar, cannot claim that this lawsuit is not a direct action matter. In order to understand why this must follow, this Court must consider the factual differences between A.J. Kellos and the case at bar.

In the Kellos case, A.J. Kellos retained a subcontractor called Roofing Specialties, Inc. to perform roof work. Roofing Specialties, Inc., apparently performed the work, but the work failed. A.K. Kellos then sought performance from Roofing Specialties, Inc.'s surety, Balboa, to correctly perform the contract. At the time that the demand was made to the surety, Roofing Specialties had already defaulted on its contractual obligation to Kellos, and Balboa was being asked, based upon the contingent failure of Roofing Specialties, to complete the work. Hence, the Court's reasoning as to the inapplicability of 1332(c) is logical in this context.

The case at bar presents an entirely different scenario. In the case at bar, the Plaintiff contracted with Standen, a Massachusetts construction company. Standen was covered by a surety bond issued by Defendant, USF & G. After the failure of Standen, USF & G, as surety, assumed control of the project, and, in fact, made payments to the Plaintiff of amounts past due.

In its subsequent role as the stand in for Standen, USF & G, by its construction manager agent, instructed the Plaintiff to perform work. This work was performed, apparently without complaint, by the Plaintiff, *after USF & G assumed control of the project.*

In short, whereas a performance bond claim would not be a "direct" claim for purposes of 1332(c), it is equally clear that a surety, acting under a payment bond to a subcontractor, is subject to 1332(c) for funds due and owing to the subcontractor for work specifically directed by the surety as a result of the happening of the prior contingency. In other words, the operative

3

difference would be the status of the surety at the time the liability occurs. In <u>Kellos</u>, Balboa's liability arose because the subcontractor defaulted invoking the surety contract. In the case at bar, the liability arose because the surety, acting as Standen, failed to pay for work it, itself, had ordered. Balboa was acting in the capacity as Balboa. USF & G was acting in the capacity as Standen. USF & G cannot claim that its liability occurred due to a contingent failure of Standen, because USF & G was already acting in its authority as Standen when it demanded work from the Plaintiff.

As noted, the Court had held that "Balboa's obligation under the bond executed in favor of Kellos was contingent on the default of the principal…" (<u>A.J. Kellos Construction Co., Inc.</u> 495 F. Supp at 413.). Here, USF & G's obligation under the bond executed in favor of Standen was contingent not on the default of the principal, but on behalf of USF & G.

Logic and the law dictate that USF & G cannot wear two hats at once. It cannot be on the site operating a project as Standen's surety, and also claim to not be liable for the costs incurred by subcontractors on reliance of USF & G's status as the performing surety. The claim against USF & G is a direct claim for monies owed for work requested by USF & G as Standen, not Standen as the insured. No contingency was required for USF & G's liability to be invoked. This lawsuit is a direct action against the guarantor of payment, and the motion for remand must be ALLOWED

B.   THE COURT SHOULD RECONSIDER ITS REACTION TO THE PLAINTIFF'S POSITION THAT USF & G IS OBLIGATED TO PROCEED WITH THIS MATTER IN STATE COURT AS A MATTER OF MASSACHUSETTS STATE LAW.

In its original motion for remand, the Plaintiff stated the position that this case must proceed in state court, as the Commonwealth's public construction statute specifically reserved jurisdiction to the Superior Court for these matters.

The Defendant contested this argument in its opposition without providing a shred of legal authority. This Court, on October 21, 2005, also summarily rejected the argument.

The Plaintiff respectfully requests that this Court reconsider its rejection of this argument.

As basis for this request, the Plaintiff directs the Court to a statement in the Kellos case which explains the background of 1332(c). The Court noted that "the proviso was originally enacted to relieve congestion in the federal courts caused by direct action statutes in Louisiana and Wisconsin and to prevent duplication of the problem." A.J. Kellos Construction Co., Inc. 495 F. Supp at 411.

The statute, then, recognized that the federal courts should not be clogged with matters that fall within state interest simply because of the existence of state statutes. It was the intent of Congress to reserve to the state courts entire classes of cases which would otherwise be subject to diversity jurisdiction because of the act of the state legislature. In Wisconsin and Louisiana, the act of the legislature permitting direct actions against sureties opened a flood gate to the federal court in the absence of 1332(c).

Clearly, Congress specifically recognized the right of the states to legislate for public policy purposes without those cases overwhelming the federal court with cases which are nominally diverse.

Congress, by enacting 1332(c) intentionally was not preempting the right of state courts to determine suitable venues, nor was it raising the bar on diversity jurisdiction. The Plaintiff has been unable to find a single instance of federal case law interpreting 1332(c) in which it has been stated that a state legislature lacks the authority, as a matter of law, to require certain classes of state law cases to be heard in state courts as a matter of pre-emption by federal law. The Plaintiff has been unable to find a single case that would support the contention that Massachusetts cannot require an insurance case to proceed in the Superior Court, notwithstanding state residence. In fact, Congress was acting, specifically, to preclude future state laws from causing a massive influx into the federal court system.

The matter before the Court is brought under G.L. c. 149, the Commonwealth's public construction law. The legislature clearly stated its intent that these matters be addressed in the Superior Court. The surety bond issued by the Defendant is not a broad bond covering an endless array of projects in a wide array of states. The surety bond issued by the Defendant specifically was issued to Standen for a Massachusetts construction project proceeding in the Commonwealth under c. 149. Chapter 149 was in existence when the bond was issued. The surety had a business office in Franklin, in Massachusetts. The Defendant elected to issue this bond, with the full knowledge of its rights and obligations under the bond, and the specific requirement under c. 149 that disputes under that bond be bought in the Superior Court.

The Surety agreed to issue the bond with full knowledge of the law.

The Surety agreed to issue the bond with full knowledge that disputes would be addressed in the Superior Court. This surety has routinely litigated these matters in the state courts in the Commonwealth, both as a plaintiff and as a defendant. This conduct constitutes knowing waiver of the right to question the venue of the court hearing the dispute.

Cases such as <u>Kellos</u> specifically note that Congress respected the right of states to legislate in a manner that affects the court of resort, and that 1332(c) was a tool provided by Congress to both meet that objective and to keep state cases from clogging the federal courts.

It is not in the interest of the federal judiciary to deny remand in this case. By doing so, and by stating that the surety can block remand, this Court would be initiating a process in which all state construction suits under c. 149 would flood and deluge the federal court. There are literally hundreds and thousands of state construction cases which fit the same profile as this case. Allowing the surety to move all of these matters to this Court would clearly clog the federal docket, a clear contravention of the intent of Congress.

The Plaintiff notes that this lawsuit was filed in March of 2005, with no apparent defenses to explain non-payment. Seven months later, this Court is still considering the matter of remand. The Plaintiff respectfully notes that this Court would be simply incapable of managing the flood of state construction matters under c. 149, and it is not in the best interest of the Court or the litigants for this Court to deny remand.

Wherefore, the Plaintiff respectfully requests that this Court reconsider that the Plaintiff's argument, that the legislature of the Commonwealth of Massachusetts has the authority and power to direct that this matter be heard in the Superior Court, and that this matter be remanded forthwith and that the motion be ALLOWED.

Respectfully Submitted,
**Landworks Creations, LLC**
By its attorney,

/s/ Robert N. Meltzer
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: November 1, 2005

## CERTIFICATE OF SERVICE

    I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing on all counsel of record by mailing the same, postage prepaid, to:

Hermes, Netburn, O'Connor & Spearing
111 Devonshire Street, Eighth Floor
Boston, MA 02109
Attn: Kevin J. O'Connor, Esq.

                                                                                     Robert N. Meltzer

November 1, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-CV-40072 FDS

LANDWORKS CREATIONS, LLC )
)
Plaintiff )
)
v. )      AFFIDAVIT OF NEAL
)      MATTHEWS
UNITED STATES FIDELITY AND )
GUARNTY COMPANY )
)
Defendant )

I, Neal Matthews, do depose and swear as follows:

1. I am the sole member of Landworks Creations, LLC, a New Hampshire LLC.

2. I am a resident of the state of Maine.

Sworn under the pains and penalties of perjury this 1st day of November, 2005.

_____

1