UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC ) | |
| ) | |
| Plaintiff ) | |
| ) | PLAINTIFF'S OPPOSITION |
| v. ) | TO DEFENDANT, USF & G'S |
| ) | MOTION FOR LEAVE TO |
| UNITED STATES FIDELITY AND ) | FILE AN AMENDED ANSWER |
| GUARANTY COMPANY ) | AND COUNTERCLAIM |
| ) | |
| Defendant ) | |

Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff"), and opposes the Defendant, USF & G 's ("the Surety)  Motion to File an Amended Answer and Counterclaim. As grounds for this opposition, the Plaintiff states that while leave is generally freely given to amend under F.R.C.P. 15, such leave is not automatic, and should be denied when the amendment is futile or made in bad faith.

At its basic level, this lawsuit is a case brought against the Surety by a subcontractor to a defunct contractor (Standen) for sums due and owing under the contract. However, the case has become more about grossly unfair and deceptive settlement practices engaged in by the Surety. The Plaintiff will be able to prove at trial that the Surety has engaged in a pattern and practice of activity with the ultimate purpose of delaying or denying payment to this Plaintiff.

This conduct includes the act of removing this case, which would have already been resolved in the Worcester Superior Court, to the federal court in order to delay and hinder adjudication. So far, it has succeeded in this goal.

As discussed further below, the Surety's proposed Counterclaim is based upon pure fantasy. It is, at best, unsupportable. It is, at worst, a fraud on the tribunal. Legally, it cannot and will not

1

survive a motion to dismiss, or in the alternative, a well-pled motion for summary judgment. Consequently, it should be evident to the Court that this amendment is interposed for the continuing bad faith purpose of denying or delaying payment of undisputed claims. Because the amendment would be futile, this Court should reject the amendment until such time as some form of admissible evidence is produced in discovery to justify an unwarranted amendment.

As further grounds for this opposition, the Plaintiff states as follows:

I.   NATURE AND STATUS OF PROCEEDINGS

The Plaintiff filed this lawsuit in the Worcester Superior Court on or about April 11, 2005 seeking relief against the surety of a defunct general contractor under M.G. L. c. 149 § 29 and M.G. L. c. 176D.  Service was duly made on the Defendant, United States Fidelity and Guaranty Co ("the Surety") On or about May 12, 2005, the Surety filed its Notice of Removal to this court, stating diversity of the parties as the basis of removal. The Plaintiff moved for remand, a motion which was subsequently denied by this Court.

The Surety has now moved to amend its answer and file a counterclaim. Because such an amendment would be entirely futile, and is clearly filed as part and parcel of the Surety's ongoing bad faith, the Plaintiff requests that the Motion to Amend be DENIED.

II.   RELEVANT FACTS

The Plaintiff is a New Hampshire-based landscape contractor which entered into a contract with Standen Contracting Company, Inc. The work to be performed by the Plaintiff was located at the Shrewsbury Middle School ("the Project") in Shrewsbury, in Worcester

County Standen, as principal, was bonded by the Surety. The Project at all times proceeded under M.G.L. c. 149, one of the Commonwealth's two public contracting statutes.

Standen ceased operations. The Surety assumed responsibility. The Surety ultimately retained, as its managing agent of the Project, Jackson Construction. Jackson is not a party to this lawsuit, as it was nothing more than the agent of the Surety at the Project and was not acting in contractual privity with the Plaintiff at any time at the Project. Jackson ultimately failed and abandoned the Project, leaving the Surety, for the second time on the Project, to pick up the pieces.

The Surety makes the knowingly false statement in its proposed Counterclaim, §11, that "Landworks abandoned its work at the Project in the fall of 2004."

In its Motion to Dismiss or, in the Alternative for Summary Judgment, which would follow if this Motion to Amend were allowed, the Plaintiff would prove that:

1. In November and December of 2004, the Plaintiff was still negotiating with Jackson for change orders in the work, and its involvement in the Project was ongoing.

2. The Plaintiff was on the job site and working at the project through January of 2005.

3. The winter of 2004-05 was extremely frigid, such that the site work went into winter shut-down in January of 2005.

4. The failure of Jackson Construction in the spring of 2005 and Jackson's abandonment of the Project resulted in a total shut-down of the Project. [1]

---

[1] The Court should note that the Surety glosses over the fact that Jackson abandoned the Project, but notes in paragraph 13 that the Surety new construction management, but conspicuously omits the date or explains why Jackson was no longer part of the Project.

3

5. Plaintiff's equipment was removed from the site in January of 2005 for winter shut-down and maintenance. In addition to its contract work, the Plaintiff was also performing some snow plowing work for the town at the Project.

6. Throughout the spring and summer of 2005, the Plaintiff repeatedly requested permission to remobilize to finish any remaining work at the Project.

7. USF & G has been attempting to extort concessions from the Plaintiff during that same time period. On August 19, 2005, in e-mail correspondence in which Landworks was demanding the right to return to the site, one Robert Bullock wrote "we checked with the Surety and we were told that we cannot deal with Landworks while the legal case is pending." In short, the Plaintiff would not be allowed to return if the Plaintiff was exercising its legal rights under c. 149 §29, an absolute violation of c. 176D.

8. Even if the contract alleged by the Surety between the Plaintiff and Jackson was valid and binding, and even if the Surety had acquired the rights of Jackson, the Plaintiff would still be entitled to relief under F.R.C.P. 12(b)(6), as Jackson did not terminate the Plaintiff under the requirements of Article 9 (requirement of written notice), which would be a condition precedent to the filing of a Counterclaim.[2]

9. On February 7, 2005, the Plaintiff served its Second Request for Production of Documents on the Surety, which requested "any documents in the possession of USF & G which purports to be a termination letter of Landworks' services…" (Request 1) and "any documents in the possession of USF & G which purports to

---

[2] In fact, the Surety itself has a problem here. Jackson breached its contract with the Surety and abandoned the Project, thus violating its obligations under its contract. As with the situation when Standen failed, the Plaintiff was left in place. If the Surety inherited the rights of Jackson, then the Surety received nothing, as Jackson was entitled to nothing as the breaching party. On this ground alone, the Surety cannot make the claim it is raising against the Plaintiff.

4

    demand that Landworks return to the…Project…" (Request 2). The Plaintiff also sought "any documents in the possession of USF & G in which Landworks states an unwillingness to return to the…Project…during the calendar year of 2005"

10. The Surety will have to respond to these document requests by acknowledging that it has no such documents.

11. These documents, which do not exist, would form the conditions precedent to the filing of the Counterclaim. Without these documents, the Surety cannot bring this Counterclaim.

### III. ARGUMENT

#### A. A MOTION TO AMEND IS NOT AUTOMATICALLY GRANTED, BUT RATHER RESTS WITHIN THE SOUND DISCRETION OF THE COURT TO ALLOW AMENDMENT UNLESS CERTAIN CONDITIONS, SUCH AS FUTILITY, EXIST

As the United States Supreme Court has noted, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires….In the absence of any apparent or declared reason---such as undue delay, bad faith or dilatory motive on the part of the movant,…undue prejudice to the to the opposing party…futility of amendment, etc—the leave sought should, as the rules require, be 'freely given'." <u>Foman v. Davis</u> 371 US 178,182 (1962). It has been further noted that "…the Court will not freely allow an amendment under Rule 15(a) if the amended pleading could be defeated by a motion for summary judgment or a motion to dismiss." <u>Collyard v. Washington Capitals</u> 477 F.Supp 1247,1249 (D.Minn. 1979)

    In granting a motion to amend, this Court is permitted to look at the claim alleged in determining whether there is futility in allowing the amendment. Even though a party traditionally is granted the rights to try to make a showing on the merits, such a motion for

5

amendment may be denied within the Court's discretion when it is clear that the amendment would be futile. Motions to Amend should not be allowed when the amended pleading is so clearly defective or so lacking factual basis that it will simply result in a motion for summary judgment which will be impossible to contest. Such a situation exists in the case at bar.

The notion that the Plaintiff abandoned the project in the autumn of 2004 is simply not subject to proof by the Surety.[3] Documents to be included with the Motion for Summary Judgment that would follow the allowance of the motion to amend would demonstrate that work continued into January of 2005 up to and until Jackson Construction abandoned the Project.

Correspondence demonstrating that the Plaintiff was always anxious and eager (and ready, willing and able) to return to work is also undisputed. Testimony of USF & G's counsel (who was identified in the mandatory disclosures) will support this position. The August 19, 2005 e-mail to the Plaintiff cited above also demonstrates that the Surety barred a return to the site, not that the Plaintiff abandoned the work.

The Surety will also be unable to prove that it can seek damages following termination, as the Surety cannot, as a matter of fact or law, prove that termination occurred. If the Surety stands in the shoes of Jackson, it cannot, as a matter of fact or law, prove that it complied with the conditions precedent under Article 9.

In effect, the Surety has no evidence to support the wild allegations in the proposed amendment. This will become obvious when the Surety responds to the document request, or when the summary judgment motion is filed. Until such time as the Surety can demonstrate through its pleadings, or any facts to support these pleadings, the Court should consider the futility in denying the Motion to Amend at this time.

---

[3] It is also a falsehood of mind-boggling audacity. There is no way that anyone with an ounce of base intelligence could interpret begging and pleading to return to work as "abandonment" of that work.

B. A MOTION TO AMEND IS NOT AUTOMATICALLY GRANTED, BUT RATHER RESTS WITHIN THE SOUND DISCRETION OF THE COURT TO DENY A MOTION THAT IS CLEARLY BROUGHT IN BAD FAITH

The proposed Counterclaim has absolutely no basis in fact, and should raise eyebrows for its blatant violations of F.R.C.P. 11. The Surety can make no showing as to the truth of these facts alleged. Indeed, as the August 19, 2005 e-mail demonstrates, the Surety knows these statements are false. Huge and relevant gaps in the Counterclaim are evident, in what appears to be a deliberate attempt to mislead this Court.

It should be noted that the Surety ignores the fact that Jackson Construction abandoned the Project, requiring the Surety to assume responsibility for the Project, and that the Project was stalled for the convenience of the Surety. It has also been previously identified to this Court that the Surety filed suit against Jackson arising out of the fraudulent conduct of Jackson toward the Surety. There is no doubt who at the Project was the villain in this soap opera, and it wasn't the Plaintiff in this case.

The Surety has not only acted unfairly and deceptively, but it has also defamed this Plaintiff and engaged in knowingly unfair conduct in order to attempt to avoid payment of bills due and owing.

The Surety should not be able to hide behind a liberal construction of Rule 15, and should not be able to make this Court complicit in the harm that is transpiring.

It has now been nearly a year since this suit was filed in the Worcester Superior Court. Even with mandatory disclosures, the Surety has not identified a single document or fact that justifies its non-payment of this claim It has not provided any basis for a claim of abandonment. It has not provided any basis for a claim of termination, or any basis for a claim of damages from Landworks.

7

There is no doubt that the Surety has been harmed by the failure of both Standen and Jackson. Neither however, justifies a Counterclaim submitted in a bad faith against the Plaintiff, who has been equally or more so prejudiced and victimized by a Project gone bad.

The bad faith evident in this filing can and should warrant rejection of the Motion to Amend, and it should be DENIED

IV.     CONCLUSION

For the foregoing reasons, that the Surety is attempting to impose futile, unsupportable and bad faith claim that will not withstand a motion to dismiss or, in the alternative, for summary judgment, the motion should be DENIED.

Respectfully Submitted,

**Landworks Creations, LLC**
By its attorney,

s/Robert N. Meltzer_____
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: February 21, 2006

CERTIFICATE OF SERVICE

    I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing on all counsel of record by mailing the same, postage prepaid, to:

Hermes, Netburn, O'Connor & Spearing
265 Franklin Street, Seventh Floor
Boston, MA 02109
Attn: Eric C. Hipp, Esq.

                                          s/Robert N. Meltzer

February 20, 2006