**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**LANDWORKS CREATIONS, LLC**

**Plaintiff,**

**v.**

**UNITED STATES FIDELITY & GUARANTY COMPANY**

**Defendant,**

**C.A. No. 4:05-CV-40072-FDS**

**AFFIDAVIT OF ERIC C. HIPP IN SUPPORT OF UNITED STATES FIDELITY AND GUARANTY COMPANY'S OPPOSITION TO PLAINTIFF'S PETITION FOR LEAVE TO CONDUCT IN EXCESS OF 10 DEPOSITIONS AND USF&G'S MOTION TO SEVER ANS STAY**

1. I am an attorney admitted to the bar of the Commonwealth of Massachusetts and bar of the United States District Court of Massachusetts. I represent the United States Fidelity & Guaranty Company (USF&G) in this case. I have personal knowledge of the facts set forth herein.

2. A copy of the September 21, 2005 e-mail sent by and between employees of Lovett Silverman Construction Consultants, Inc., which was produced by USF&G during the course of this litigation is attached hereto as Exhibit 1. The e-mail was not sent by or to any employee of USF&G. Further, the comments in the e-mail were not communicated at the time to any employee of USF&G. The e-mail was produced as part of Lovett Silverman's files regarding this matter, and was not contained in USF&G's files.

3. A copy of Plaintiff's counsel's letter dated May 24, 2006 to Defendant's counsel is attached hereto as Exhibit 2.

4. A copy of Emanouil Brothers, Inc.'s Reply Brief dated May 20, 2006 and filed in R.W. Granger & Sons, Inc. vs. Emanouil Brothers, Inc. vs. USF&G, No. WOCV2003-01021 (Worcester Superior Court) ("the Granger Case") is attached hereto as Exhibit 3.

5. A copy of Defendant's counsel's letter dated June 1, 2006 to Plaintiff's counsel is attached hereto as Exhibit 4.

6. A copy of Plaintiff's counsel's letter dated June 4, 2006 to Defendant's counsel is attached hereto as Exhibit 5.

7. A copy of Kai v. Kim-Son, Appeals Court No. 98-J-65 (February 11, 1998)(Spina, J.) is attached hereto as Exhibit 6.

8. A copy of Belcher v. Pawtucket Mut. Ins. Co., Appeals Court No. 89-J-672 (September 27, 1989)(Kass, J.) is attached hereto as Exhibit 7.

9. A copy of Gross v. Liberty Mutual Ins. Co., Appeals Court No. 84-0138 (April 24, 1984)(Kass, J.) is attached hereto as Exhibit 8.

10. A copy of Bixby v. Allstate Ins. Co., 1986 Mass. App. Div. 118, 119 (August 19, 1986) is attached hereto as Exhibit 9.

11. On or about May 17, 2006, Plaintiff's counsel and Defendant's counsel discussed the scheduling of depositions in this matter. At that time, Plaintiff's counsel stated the intention to take the depositions of: James Peters, Robert Bullock, Richard McGuinness, Robert Barton, another person from Jackson Construction, Kathryn Crockett, Robert Cox, and Michael Pagano. Plaintiff's counsel also stated an interest in deposing Tiffany Schaak, Jeremy Medieros, Robert Morel and a representative of Waterman Design Associates, Inc.

12. On or about June 6, 2006, Robert Meltzer, as counsel for Emanouil Brothers, Inc. served a deposition notices in the Granger Case regarding Al Falango, Tony Lardaro, Bill

Meritz, and Robert Bullock, requesting that they bring any and all documents "that shed light on what it would mean to the deponent 'to bang the subs.'"

13. In the Granger Case, Mr. Meltzer represents Emanouil Brothers, Inc., which was the landscape contractor at the Shrewsbury High School construction project. Lovett Silverman Construction Consultants, Inc. was not involved in any way with that project. Neither Standen Contracting Company nor Jackson Construction Company, the general contractors regarding the Shrewsbury Middle School construction project at issue in the present matter, were involved in any way with the Shrewsbury High School construction project.

**I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of June, 2006.**

/s/ Eric C. Hipp
Eric C. Hipp

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (none) on June 16, 2006.

/s/ Eric C. Hipp
Eric C. Hipp

G:\DOCS\ECH\Clients\St. Paul Travelers\Landworks\Pleadings\Affidavit of ECH re petition to take in excess of 10 depositions.doc

# EXHIBIT 1

**Robert Bullock**

**From:** Al Falango [afalango@lovett-silverman.com]
**Sent:** Wednesday, September 21, 2005 9:08 AM
**To:** 'Tony Lardaro'; 'Robert Bullock'
**Cc:** 'Bill Meritz'; awerth@lovett-silverman.com
**Subject:** Shrewsbury CTC

On the Shrewsbury CTC

The C/O logs lists all c/o's as pco's are they approved change orders or still pco's

Bill Meritz had mentioned a slew of potential c/o's for work done by JCC for the town under protest, (Tony wants AJ to pick this up) should we make mention of these potential receivables even if we cant put a number on them.

I dont think the 825k is enough for the contingency we already know we have busts in the track work, site work , electric (major), roofs and doors (major) even though the town is holding money I still think we could possibly break the 800k mark with these, we've already spent 400k on G and R for one month and we still dont have checks for the subs. We can try to bang the subs but I think that we can never recover from them what we are spending.

# EXHIBIT 2

ROBERT N. MELTZER
ATTORNEY AT LAW
P.O. Box 1459
FRAMINGHAM, MASSACHUSETTS 01701

(508) 872-7116
fax (508) 872-8284

robmeltzer@aol.com

May 24, 2006

Hermes, Netburn, O'Connor & Spearing
265 Franklin Street, Seventh Floor
Boston, MA 02110
Attn: Eric C. Hipp Esq.
BY FAX 617-728-0052

Re: Landworks Creations, LLC v. USF & G
Civil Action No: 05-40072 -FDS

Dear Eric

This letter shall serve as a request to meet and confer in good faith pursuant to LR 37.1 before filing a motion to take in excess of ten depositions.

The documents that you provided to us seem to confirm our case theory that the motivating force behind failure to pay Landworks was a bad faith attempt by USF & G to save money on the project cost by squeezing the subcontractors and refusing to retain subcontractors who required payment to return to work. As only one example of the documents we found interesting, I refer to the September 21, 2005 e-mail from Al Falango to Tony Lardaro and Robert Bullock, with a copy to Bill Meritz. This document specifically speaks of a plan "to bang the subs" and to then attempt to "recover from them what we are spending." No matter how many ways I read that language, I cannot find an innocent or law abiding explanation for this language.

This lawsuit involves two distinct issues—my client's claim that its work met all contract requirements, and the obvious bad faith by agents and employees of USF & G in engaging in intentional conduct that violates G.L. c. 176D. Indeed, it appears that this conduct would serve as the requisite predicate acts of RICO.

The construction portion of this claim alone will involve no fewer than seven deposition witnesses, including architects, engineers, clerks and townspeople. However, it is clear that the 176D claim has expansive witnesses as well, ranging from consultants,

to the Surety, to its attorneys who furthered the cause. The September 21, 2005 e-mail, alone, identifies four witnesses.

Consequently, I believe, based upon the clear evidence of bad faith, and the implication that this language implicates the federal racketeering statute, the Court will allow my client to depose no fewer than 21 witnesses in this matter. Based upon these depositions, I anticipate adding additional parties to this lawsuit who apparently conspired to harm my client.

Please advise if you will assent to my motion.

Thank you.

Very truly yours,

Robert N. Meltzer

Cc: client
Massachusetts Insurance Comm.

# EXHIBIT 3

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO:03-1021

R.W. GRANGER & SONS, INC.

Plaintiff

v.

EMANOUIL BROTHERS, INC
et al

Defendants

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY

Third-party Defendant

REPLY BRIEF

Now comes the Defendant, Emanouil Brothers, and replies to the Plaintiff's Opposition as follows:

**THE PORTION OF THE OPPOSITION PERTAINING TO UNTIMELINESS WAS RENDERED MOOT BY THE COURT'S ORDER OF MAY 17, 2006**

The Plaintiff alleges that the discovery sought by the Defendant is untimely. However, this Court has already addressed this issue, and the Plaintiff's objection on the grounds of timeliness has now been resolved in favor of the Defendant.

On May 17, 2006, the Court entered an order compelling the town of Shrewsbury to produce its fields for inspection and testifying under Rule 34. Plaintiff's sole objection to that request was timeliness. In entering the attached Order, this Court has acknowledged that

discovery is still open until July 21, 2006 by agreement of the parties. Thus, the same argument of timeliness in this motion has now been resolved in the Defendant's favor, and has been mooted as an objection to complying with the outstanding discovery requests.

The objection on the basis of timeliness has now been rendered moot by this Court, and the Motion to Compel must be ALLOWED.

**DOCUMENTS RECEIVED FROM THE FILES OF USF & G SINCE THE FILING OF THE MOTION COMPEL UNDERSCORE THE RELEVANCE OF THE SOUGHT DOCUMENTS AND DEMONSTRATE THE COMPELLING NEED FOR THE DOCUMENTS REQUESTED TO BE PRODUCED**

Since the serving of the Motion to Compel on the Plaintiff under the Rule 9A procedure, two documents have come to light that dramatically support the conjectures raised by the Defendant in the Motion to Compel and in prior motions before the Court.

Some background is necessary to explain the import of these two e-mail documents, which are attached hereto.

This lawsuit involves construction of the new Shrewsbury High School ("the Project"). The Plaintiff, Granger, was the general contractor at the Project. The Defendant, Emanouil, was the landscape contractor at the Project. USF & G, the Surety, provided the surety bond.

The Defendant has contended since the inception of this lawsuit in August of 2003 that the Plaintiff filed suit against its subcontractors to simply minimize payments to these subcontractors and to avoid payment by the Surety and subsequent foreclosure on the Plaintiff's assets by the Surety to recover the amounts paid. The Defendant has long contended that the Plaintiff and the Surety have colluded in this practice, as minimizing payments to the

subcontractors works to the benefit of both the general contractor and the Surety. The Defendant contends that this practice by the Surety constitutes a violation of G.L. c. 176.

Subsequent to the construction of the Shrewsbury High School, which is the subject of this matter, the town of Shrewsbury began converting its prior high school into the Shrewsbury Middle School. On that job, two general contractors, Standen and Jackson, both failed. Both companies were bonded by USF & G, and the Surety has assumed responsibility for that project as well.[1] Defendant's counsel in this lawsuit represents the site contractor in the Shrewsbury Middle School matter in a case now pending in the United States District Court. In that case, as in this case, counsel contends that the Surety has colluded to harm the subcontractors in order to reduce payments by litigating the subcontractors into submission.

The two documents attached hereto were produced in discovery in the Shrewsbury Middle School case and came from the files of USF & G. Both documents have extreme relevance to this lawsuit, and they were received on May 17, 2006.

The first document, dated September 21, 2005, consists of an e-mail drafted by a consultant to USF & G and it discusses the shortage of funds on the Shrewsbury Middle School project. The consultant suggests that the way to pay for the project is, in the colorful term of USF & G's consultant, to "bang the subcontractors."[2]

Several inferences can be drawn from the e-mail. First, the consultant did not have to define what it meant to "bang the subcontractors," thereby suggesting that both parties knew what it meant and that the term had established meaning to these people and to USF & G. The word "bang" implies a violence and force, as opposed to the words "careful audit," which would imply justified examination. The second significant point is that the e-mail was located within

[1] One must assume that the Surety is sorry to have ever heard of Shrewsbury, a sentiment likely shared by a great many subcontractors.

[2] Truth is often found in e-mail, and usually in a colorful and refreshingly honest language.

the files of USF & G, but there were no response e-mails in which in was declared that the moral and legal depravity suggested therein was not consistent with USF & G policy. In short, the e-mail confirms the contention that it was USF & G policy to do violence to the subcontractors in order to save money.

At the very least, since this e-mail was drafted in 2005, it suggests that the conduct has occurred in the past, likely at the Project which is the subject of this lawsuit.

The relevance to *this* case is that these documents confirm that some form of wrongdoing by this Surety toward subcontractors on public work does exist in violation of c. 176D, and that the existence of an ulterior motive would work to the harm of the Defendant if there was a shortage of funds by the general contractor to satisfy a judgment to be gained by the Defendant.

The second document is equally interesting. In an e-mail drafted by a USF & G consultant on July 18, 2005, while this lawsuit was in progress, the Surety's consultant drafted what is truly a glowing recommendation of this Defendant as part of the Surety's search for a replacement contractor at the Shrewsbury Middle School.[3] During this time, the Defendant was also under direct contract to the town of Shrewsbury providing landscape services at the new high school.

At the same time that the Surety's consultant was recommending the Defendant as a quality subcontractor for the Shrewsbury Middle School, Granger was defaming the Defendant with baseless claims of deficiencies arising out of its work at the Shrewsbury High School.

The Defendant notes the obvious relevance and admissibility of this damaging e-mail in *this* case. During the summer of 2005, this e-mail should have put the Surety on notice of a serious discrepancy between the baseless allegations against Emanouil at the high school by

[3] The Surety was refusing to deal with the prior site contractor, who had not been paid for its work. The Surety needed a new site contractor because it was in the process of banging that subcontractor.

Granger (whose interests are ultimately adverse to its surety) and the glowing report of the same landscaper by its own agent. At the very least, this e-mail should have triggered an investigation as mandated by c. 176D in an unbiased and forthright manner. USF & G failed to do so. Again, the clear implication of its failure to act was that USF & G was not interested in resolving the Defendant's claim to payment under the bond; the Surety was colluding with Granger to bang its subcontractor.

These documents found in USF & G's file now confirm the suppositions of the original Motion to Compel, and they make much more compelling the following questions: At the time that Granger made promises to Emanouil to make payment under the oral contract in the summer and fall of 2002, and at the time that Granger first made allegations of defective performance against Emanouil in this suit, was Granger incapable of paying its subcontractors as the bills became due? Did it therefore file suit because of deficiencies, or because it needed to avoid or reduce payment in order to protect its pledged collateral?

If the answer to the first question is negative, then the answer to the second is that Granger would have felt the need to reduce its expenditures to its subcontractors to balance the project by banging its subcontractors. The common counsel of Granger and the USF & G, in conjunction with conduct suggesting an established practice of banging its subcontractors, provides the context for treble damages under c. 93A and c. 176D in an amount likely to exceed $3,000,000 at trial.

The document requests served by the Defendant, as noted in the Motion to Compel, are narrowly tailored to the specific period of the time-frame of this lawsuit. The new documents make clear, in a way that could not be made clear when this Motion to Compel was first served,

that this lawsuit is predominantly about bad faith by Granger and USF & G, and there truly is, as suspected, both smoke and fire.

The Defendant has made a showing of relevance of the requested documents, supported now by curious and damaging documents from USF & G's own files. It should also now be evident to this Court why, Granger and USF & G have resisted producing records that are not only damaging in this case, but may also give rise to administrative action and possible claims of interstate racketeering.[4]

It is now necessary and compelling that Granger be compelled to produce its documents, and the Motion to Compel must be ALLOWED.

Respectfully Submitted,
**Emanouil Brothers, Inc.**
By its attorney,

Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: May 20, 2006

[4] The Surety removed the Shrewsbury Middle School case to federal court based upon the diversity of the parties. Based upon these documents, the Surety may now become subject to class action suit under RICO in that matter, as it is now evident that the Surety has been involved in the predicate act of "banging" its subcontractors in interstate commerce. Another term for "banging" the subcontractors is "extortion."

# EXHIBIT 4

**HERMES, NETBURN, O'CONNOR & SPEARING, P.C.**

ATTORNEYS AT LAW
265 FRANKLIN STREET, SEVENTH FLOOR
BOSTON, MASSACHUSETTS 02110-3113
TELEPHONE (617) 728-0050
TELECOPIER (617) 728-0052

PETER G. HERMES
PETER C. NETBURN
KEVIN J. O'CONNOR
SCOTT S. SPEARING
ROBERT W. MONAGHAN
GINA A. FONTE
ERIC C. HIPP
MICHAEL S. BATSON
RANDY J. SPENCER

DIRECT DIAL NUMBER

**(617) 210-7750**

June 1, 2006

VIA TELECOPIER

Robert N. Meltzer, Esq.
Attorney at Law
P.O. Box 1459
Framingham, MA 01701

**Re: Landworks Creations, LLC v. United States Fidelity & Guaranty Company**
**C.A. 4:05-cv-40072-FDS**

Dear Rob:

I am in receipt of your letter dated May 24, 2006, which purports to be a request for a discovery conference. I was out of the office on May 24th and did not return until May 30th.

You allege in your letter, among other things, that "the motivating force behind (sic) failure to pay Landworks was a bad faith attempt by USF&G to save money on the project cost by squeezing the subcontractors and refusing to retain subcontractors who required payment to return to work." As I understand your letter, in order to find evidence to support your "case theory" and a claim under the Racketeer Influenced and Corrupt Organization Act, a claim that has not been plead in this case, Landworks seeks to depose "no fewer than 21 witnesses in this matter."

USF&G rejects categorically your untrue and unfounded allegations. At all times, USF&G has acted in full accordance with all applicable laws, rules and regulations. Moreover, USF&G's handling of this claim has been professional and performed with the utmost good faith and fair dealing. Accordingly, there is no basis in fact or law to support any type of claim under the Racketeer Influenced and Corrupt Organizations Act or any other similar statute.

In your letter of May 24th you request a discovery conference before filing Landworks' proposed motion to take in excess of ten depositions. Based upon your letter, Landworks seeks to take the deposition of "no fewer than 21 witnesses in this matter." However, because you have failed to identify any of these proposed 21 witnesses, USF&G can not make an informed

decision as to your proposed motion. Please provide me with your proposed list of witness. Upon receipt of your proposed witness list, I will be available to participate in a discovery conference by telephone at a mutually agreeable time.

In addition, you stated in your letter of May 24th that you "anticipate adding additional parties to this lawsuit who apparently conspired to harm my client." However, you failed to identify any such parties or the claims that would be asserted against such. If you intend to include discussion of a proposed motion to amend during the discovery conference, please provide me with your proposed list of additional parties and claims. Upon receipt of such, I will be available to participate in a discovery conference by telephone at a mutually agreeable time.

USF&G does agree with Landworks' opinion that the above-referenced litigation, in its present form, involves two distinct issues – Landworks' breach of contract claim and USF&G's breach of contract and negligence claims on one hand, and Landworks' Mass. Gen. L. ch. 93A/176D claim on the other. Instead of dramatically expanding the scope of this litigation, USF&G proposes to sever and stay Landworks' Mass. Gen. L. ch. 93A/176D claim and any other such claim. The case would proceed on the breach of contract and negligence claims only. In the event that Landworks' succeeded with its breach contract claim, which is a prerequisite to the c.93A/176D claim, then Landworks could proceed with the stayed claim(s).

I await your response to USF&G's proposed motion to sever and stay.

Very truly yours,

Eric C. Hipp

G:\DOCS\ECH\Clients\St. Paul Travelers\Landworks\Copy of KJO's Landworks folder as of 04.18.2006\Letters\Meltzer 2006.06.01 (3).doc

# EXHIBIT 5

**ROBERT N. MELTZER**
ATTORNEY AT LAW
P.O. Box 1459
FRAMINGHAM, MASSACHUSETTS 01701

(508) 872-7116
fax (508) 872-8284

robmeltzer@aol.com

June 4, 2006

Hermes, Netburn, O'Connor & Spearing
265 Franklin Street, Seventh Floor
Boston, MA 02110
Attn: Eric C. Hipp Esq.
BY FAX 617-728-0052

Re: Landworks Creations, LLC v. USF & G
Civil Action No: 05-40072 -FDS

Dear Eric:

Having reviewed the documents provided by USF & G, I am going to rearrange my deposition sequence. I want to start by deposing Jim Peter and Jeremy Medeiros, and the six individuals at Lovett-Silverman-- Al Falango, Tony Lardaro, Robert Bullock, Rick Noblet, Michael Melnick and Bill Meritz. I expect that I will move on from there to depose the attorneys identified on the Mandatory Disclosures.

I need to know whether you will produce the six Lovett-Silverman individuals in Boston, or whether I need to arrange for these depositions in Pennsylvania. I'd also like to know if all six of these individuals still work for L-S.

Additionally, I have been unable to track down Medeiros. Is USF & G willing to produce any information about him, or am I going to have to hire a private investigator to find him? From what you said, I understand that he is in Texas. I assume we are going there for his deposition.

Kindly let me know the answers to these questions as soon as possible

Very truly yours,

Robert N. Meltzer

Cc: client
Massachusetts Insurance Comm.

# EXHIBIT 6

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

98-J-65

ANDREW KAI KAI

vs.

JANIQUE KIM-SON, ET ALS

ORDER

This is a petition for interlocutory relief pursuant to G. L. c. 231, section 118. The defendants moved to sever and stay plaintiff's Chapter 93A and Chapter 176D claims against the defendant insurer from plaintiff's negligence claims against the individual defendants (the insureds).

Such a motion is routinely allowed, if only to prevent discovery of the insurer's impressions of the case based upon legal theory and privileged communications, and thereby prevent interference with the insureds' right to be adequately defended. The plaintiff presented no reason to the trial court to deviate from what has become established practice. The trial court's order denying defendants Martin S. Son's and USAA casualty Insurance Company's motion to sever and stay is vacated. An

endorsement is to enter on said motion that it is allowed.

So ordered.

By the Court (Spina, J.)

Ashley Ahearn
Clerk

Entered: February 11, 1998

# EXHIBIT 7

COMMONWEALTH OF MASSACHUSETTS
APPEALS COURT
OCT 6 1989

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

89-J-672

JENNIFER BELCHER

vs.

PAWTUCKET MUTUAL INSURANCE COMPANY

MOTION FOR RECONSIDERATION

Plaintiff Jennifer Belcher respectfully requests this Honorable Court to reconsider its decision of September 27, 1989 for the following reasons:

1) The issue below was not whether discovery can be authorized in an unfair settlement claim before the underlying claim has been established;

2) The issue below was whether or not the defendant met its burden of proof in claiming work product and attorney-client privileges;

3) The defendant failed to meet its burden of proof as it produced no evidence in support, and accordingly, the trial court ruled against the defendant on that issue;

4) The attached case of Sham v. Hyannis Heritage House Hotel, 118 F.R.D. 24, 26 (D.Mass. 1987) is on point with this issue;

5) The attached case of D'Angelo v. General Accident

LAW OFFICES
SAMUEL WAXLER,
... & COLLINS, P.C.
... NORTH SIXTH ST.
NEW BEDFORD,
MASS. 02740
(508) 993-8000

Ins. Co., single justice docket no. 88-J-24, holds for the plaintiff and is closer to the facts in this action than Gross v. Liberty Mut. Ins. Co., single justice docket no. 84-0138.

Plaintiff respectfully requests this Honorable Court to reconsider its decision of September 27, 1989 in view of the foregoing and affirm the order of the trial court.

APPEALS COURT
Upon consideration of the motion for reconsideration filed by the plaintiff (paper #3), the order of September 27, 1989 is to stand except that the words "the concern" are struck from the last paragraph. The protective order is narrow. Kass, J.
...ber 6, 1989
ATTEST: [signature] Asst. Clerk

Respectfully submitted,
By her attorneys,
HAMEL, WAXLER, ALLEN & COLLINS

[signature]
MICHAEL J. UNDERHILL
7 North Sixth Street
New Bedford, MA 02740
(508) 993-8000
BBO# 545232

Date: October 5, 1989

Certificate of Service

I certify that a copy of the Motion For Reconsideration was forwarded to the attorney of record, Joseph F. Strumski, Jr., Esq., Morrison, Mahoney & Miller, 700 Pleasant Street, New Bedford, MA 02740, by first class mail, postage prepaid, on this 5th day of October, 1989.

[signature]
Michael J. Underhill

jbal

LAW OFFICES
...L, WAXLER,
... & COLLINS, P.C.
7 NORTH SIXTH ST.
NEW BEDFORD,
MASS. 02740
(508) 993-8000

# EXHIBIT 8

Addendum

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

No. 84-0138

JACQUELYN R. GROSS, ET AL.

vs.

LIBERTY MUTUAL INSURANCE COMPANY
and
CNA INSURANCE COMPANIES.

MEMORANDUM & ORDER

The petitioner here is CNA Insurance Companies (CNA). It seeks relief under G. L. c. 231, § 118, from an order of a Superior Court judge denying a protective order and, in effect, requiring it to make discovery from files involving pending litigation.

The action against CNA, brought under G. L. c. 93A, is for failure to make a reasonable offer of settlement in a tort case. CNA has made an offer of $40,000. The plaintiffs have rejected this offer and say that an offer of anything less than the policy limits ($100,000) is not reasonable.

The case raises interesting issues concerning the degree to which the lawyer-client privilege may be penetrated by a party alleging unfair practice by an insurance company.

In the instant case, however, those questions have been brought forward prematurely. The significant fact is that the liability of CNA's insured, and the damages flowing from that liability, have yet to be

in favor of CNA's insured, should there be a verdict within range of the $40,000 offered, or should there be a settlement within the range of the $40,000 offered, a claim of unfair settlement could scarcely be made out. Without intimating that the plaintiff here may properly have access to CNA's files should the verdict in the underlying suit be far in excess of CNA's best offer, I conclude that, in any event, there ought to be no access to those files until the underlying civil action (Essex Superior Court Civil No. 81-2314) has been determined.

Accordingly, I vacate so much of the order of the Superior Court judge as required CNA to identify and make available to the plaintiffs every document in CNA's control which concerns the settlement value and likelihood of recovery at trial by the plaintiffs against CNA's insureds and the settlement value and likelihood of recovery at trial of the Straubs against the insureds. Nor shall CNA be required to identify the persons involved with the valuation of the Gross and Straub claims. Nor shall CNA be required to divulge what persons CNA consulted to determine the settlement value or probability of recovery at trial on the Gross and Straub claims. Nor shall CNA be required to state what it considers the likelihood of recovery by the plaintiffs against the insureds. Nor shall CNA at this time be required to respond to

interrogatories 8, 9, 10, 11, 12, 14, and 15. As to interrogatory number 13, CNA shall answer what its record retention policy is. It goes without saying that CNA is not to destroy any material now in its files and shall retain such material for six years following final determination of the tort suit or as a court otherwise orders. A copy of this order shall be placed in those files of CNA affected by this order.

By the Court, (Kass, J.),

Assistant Clerk

Entered: April 24, 1984.

# EXHIBIT 9

Considering all of the defendant's claims, we find no prejudicial error by the trial judge and this report is dismissed.

## Fred G. Bixby *vs.* Allstate Insurance Company

Western District—August 19, 1986.

Present: Lenhoff, McGuane & Dohoney, J.J.

*Insurance*, Unfair settlement practices.
*Consumer Protection Act*, G.L.c. 93A.
*Practice, Civil*. Motion to stay proceedings; Judicial discretion.

Report of court's dismissal of plaintiff's report. Action heard in the Northampton Division by Apkin, J.

William A. Norris for the plaintiff.
George F. Kelly and Marcia Brayton Julian for the defendant.

Dohoney, J. This case involves a report from the action of a trial justice in allowing a Motion to Stay Proceedings. Certain background is essential to our understanding of the present case. The plaintiff Bixby was the passenger in an automobile involved in an accident on December 29, 1984. The defendant Allstate is the liability insurer for the other vehicle involved in the collision. This suit was instituted alleging violation of General Laws, Chapter 93A in that Allstate engaged in unfair settlement practices. Thereafter, the plaintiff brought suit against the defendant's insured in what we will call the underlying action. Subsequently, Allstate filed a Motion to Stay Proceedings in this case which was allowed by the Trial Justice. It is this action which is before us.

I. The first matter to address is whether the appeal is properly before us. Action on a Motion to Stay Proceedings is an interlocutory matter. *Cappadona* v. *Riverside 400 Function Room, Inc.*, 372 Mass. 167 (1977); *Cronin* v. *Strayer*, 392 Mass. 525 (1984); *Mancuso* v. *Mancuso*, 10 Mass. App. Ct. 395 (1980). An interlocutory matter may only be reported if the trial justice deems it appropriate. Mass. Rules Civil Procedure, Rule 64 (d) provides:

> (d) Reports of Interlocutory Rulings. Interlocutory rulings may be reported in accordance with the procedure prescribed above in paragraph (c), provided that if the court in its discretion deems it appropriate, such rulings shall be reported without delay to the appellate division. When the court so decides to report such an interlocutory ruling without a delay, it may order that the party requesting the report prepare and file a draft report thereof within a period specified by the court. Failure of a party to comply with such an order shall constitute a waiver of his right to request a report on the ruling at issue.

See *Dufresne-Henry* v. *John R. Murphy Engineering Corporation*, 1980 Mass. App. Dec. 126. Here the Trial Justice exercised his discretion to report the case. In view of the nature of the motion, this was entirely appropriate. A motion of this type would clearly be moot if it were to wait for final judgment.

II. The second matter to address is the standard to be applied in a Motion to

udicial error by the

Company

J.J.

retion.

tion heard in the

lant.

n of a trial justice in
nd is essential to our
the passenger in an
984. The defendant
lved in the collision.
Chapter 93A in that
rafter, the plaintiff
it we will call the
Stay Proceedings in
ction which is before

properly before us.
matter. *Cappadona*
); *Cronin* v. *Strayer*,
. Ct. 395 (1980). An
al justice deems it
vides:
rulings may be
ribed above in
retion deems it
t delay to the
eport such an
that the party
hereof within a
nply with such
est a report on

*rration*, 1980 Mass.
to report the case.
priate. A motion of
judgment.
plied in a Motion to

Stay Proceedings. A Motion to Stay is addressed to the discretion of the Trial Justice. *Travenol Laboratories, Inc.* v. *Zotal, Ltd.*, 394 Mass. 95 (1985); *Taunton Gardens Company* v. *Hills*, 557 F.2d 877 (1st Cir. 1977).

III. In determining whether the judge properly exercised his discretion, we are brought to the substantive issue as to whether a claim for unfair settlement practices may be resolved before the underlying suit against the insured.

This is an area of frequent recent litigation. As more states have enacted legislation regulating unfair settlement practices, litigation has ensued over the right of private individuals to avail themselves of these statutes. The more frequently contested issue is whether there is a private cause of action. See *Patterson* v. *Globe American Casualty Co.*, 101 N.M. 541, 685 P.2d 396 (1984) for a collection of cases setting forth those jurisdictions which have allowed a private cause of action and those jurisdictions which have not permitted such claims. This issue is easily determined in Massachusetts since General Laws, Chapter 93A, Section 9 (1) specifically makes a violation of General Laws, Chapter 176D, Section 3, Clause 9 (regarding unfair settlement practices) an unfair and deceptive practice and thus it is actionable by a private party.

The issue which is much less litigated but which confronts us is whether this action may be resolved independently of or prior to the underlying suit.

The apparent first court to resolve this issue was *Royal Globe Ins. Co.* v. *Superior Court of Butt County*, 23 Cal 3d 880, 592 P. 2d 329, 153 Cal. Reporter 842 (1979). There the plaintiff fell at a supermarket. She sued the supermarket and the company which had issued a liability insurance policy (Royal Globe). The court concluded that a private cause of action existed but then stated that the claim may not be joined in the same lawsuit. The reasoning of the court is helpful to us:

> Moreoever, unless the trial against the insurer is postponed until the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer. In addition, damages suffered by the injured party as a result of the insurer's violation of subdivisions (h) (5) and (h) (14) may best be determined after the conclusion of the action by the third party claimant against the insured. Thus, plaintiff's claim against defendant was brought prematurely and the trial court should have sustained defendant's demurrer and granted the motion for judgment on the pleadings on that ground.

Subsequently, the issue was presented to the Supreme Court of Appeals of West Virginia in *Jenkins* v. *J.C. Penney Casualty Ins. Co.*, 280 S.E. 2d 252 (W. Va. 1981). Here the plaintiff suffered minor damage to her motor vehicle and alleged it was caused by the insured of J.C. Penney. She alleged J.C. Penney had not attempted in good faith to settle the case. The Court first determined that a private cause of action existed but held that a direct action against the insurance company cannot be maintained before the underlying claim is settled. Their comments were:

> It can hardly be doubted that in a given factual situation there may be some bonafide dispute over what is a fair settlement offer or whether liability is reasonably clear. Given the adversarial nature of the settlement of tort claims, it can be expected that the parties will often disagree as to whether there has been a reasonable attempt made to promptly and fairly settle a claim where the liablity is reasonably clear.

[4,5] To permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim. Once the underlying claim has been resolved, the issues of liability and damages have become settled and it is possible to view the statutory claim in light of the final result of the underlying action. A further policy reason to delay the bringing of the statutory claim is that once the underlying claim is resolved, the claimant may be sufficiently satisfied with the result so that there will be no desire to pursue the statutory claim. Moreover, it is not until the underlying suit is concluded that the extent of reasonable damages in the statutory action will be known. The California court for reasons less explicit than those has reached the same conclusion. *Royal Globe Insurance Co. v. Superior Court, supra.* We, therefore, conclude that a private cause of action cannot be maintained for a violation of W. Va. Code, 33-11-4(9), until the underlying suit is resolved.

* The apparent last court to address the matter was the Supreme Court of Montana in *Klaudt* v. *Flink*, 658 P.2d 1065 (Mont. 1983). There the decedent was a passenger in an auto operated by Flink. Flink was apparently intoxicated and admitted criminal violation. The issue before the court was whether the statute gave cause of action against the insurer which could be presented jointly with the underlying civil action. The court held that it could and said:

[4] However, at this point, we must differ with the position adopted by the other jurisdictions which allow an action such as this to be prosecuted only after the insured's liability has been adjudicated. We believe that the action may be filed and tried before, concurrent with, or after liability has been determined. We see no problems with the possibility of contrary findings in the two actions, the doctrine of res judicata, collateral estoppel or the like because different issues are involved in the two cases. The issue in the action against the insurer for violation of the insurance code is simply an action to determine whether or not the insurer violated its duty of fair dealing in settlement negotiations with the claimant, while the action to determine the ultimate liability of the driver rests on considerations of negligence and comparative negligence.

The obligation to negotiate in good faith and to promptly settle claims does not mean that liability has been determined. Section 33-18-201(6) states that the insurer's obligation arises when liability has become 'reasonably clear.' In evaluating the insurance case, the jury must determine whether the insurer negotiated in good faith given the facts it then had. This consideration is separate and apart from the jury's ultimate consideration of the merits of any given action.

We have considered whether the result here reached contravenes the purpose of Rule 411, M.R. Evid., on the admissibility of insurance. The rule only prohibits the introduction of insurance where it is offered for the purpose of showing negligence or liability. Here, the issues to be tried are separate and the rule is not violated.

We realize that many will view this result as harsh. However, the legislature has reacted to what it perceives to be an important

company before
ult in duplicitous
hey relate to the
underlying claim.
issues of liability
ible to view the
erlying action. A
tatutory claim is
laimant may be
ll be no desire to
il the underlying
damages in the
: for reasons less
ion. *Royal Globe*
re, conclude that
a violation of W.
olved.
he Supreme Court of
. There the decedent
ink was apparently
before the court was
surer which could be
urt held that it could

position adopted
ich as this to be
een adjudicated.
fore, concurrent
o problems with
, the doctrine of
different issues
ion against the
ily an action to
ty of fair dealing
e the action to
i considerations

ptly settle claims
Section 33-18-
een liability has
e case, the jury
good faith given
and apart from
given action.
contravenes the
insurance. The
ere it is offered
, the issues to be

. However, the
an important

problem. Insurance companies have, and are able to exert, leverage against individual claimants because of the disparity in resource base. Justice delayed is often justice denied. Public policy calls for a meaningful solution. The legislature has spoken and we, by this decision, breathe life into the legislative product.

In considering all of these factors, substantial deference should be paid to the Trial Justice. He was in a far better position to assess the possible prejudice to the Defendant as to the status of discovery. He was also better able to determine the prejudice to the plaintiff by having to wait for a possible recovery under his claim for unfair settlement practices.

Therefore, while there appears to be no general rule in Massachusetts as to whether a claim for unfair settlement practices must await the result of the underlying action, plaintiff has failed to show an abuse of discretion in doing so in this case.

Thus, the Report be and hereby is dismissed.

---

## Richard P. Boyer, Jr., PPA and others[1] *vs.* Edward Russell and others[2]

Western District—August 28, 1986.

Present: Turcotte, P.J., Lenhoff & Dohoney, JJ.

*Tort*, Dog bite.
*Practice, Civil*, Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (2); Draft report.

Report of the court's dismissal of plaintiffs' report. Action heard in the Northampton Division by Morse, J.

Leon W. Malinowsky for the plaintiffs.
David G. Carlson and John C. Sikorski for the defendants.

Lenhoff, J. The Trial Court's dismissal of the submitted Draft Report[3] (same appears below with the findings of the Trial Court excluded therefrom) was proper; and, such disposition was legally correct.

The plaintiffs clearly failed to comply with Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (2) entitled "Contents of the Draft Report." The substantial lack of compliance therewith justified the Trial Court in invoking the action taken. See *Partlow v. Hertz Corp.*, 370 Mass. 787, 790 (1976).

Therefore, the report here presented pursuant to Dist./Mun. Cts. R. Civ. P., Rule 64 (c) (6), be and is hereby dismissed.

---

[1]Margaret A. Boyer and Margaret A. Boyer.

[2]Robert LaPointe, and Richard P. Boyle as trustee of Dick Boyle Realty Trust.

[3]On October 28, 1985, the Court, Morse, J., heard the facts of this dog-bite case, and entered the appended findings dated Dec. 18, 1985.

The Court ruled that the lease, appended between the defendants Boyle and LaPointe, did not constitute LaPointe's neighbors in the complex (plaintiffs) as third-party beneficiaries of the lease contract entitled to recover under Massachusetts Law.

Plaintiffs respectfully assert that they should have been found entitled to recover by virtue of their status as third-party beneficiaries of the no-pets clause in the lease, regardless of the fact the said clause allowed pets if the landlord (Boyle) gave the tenant (LaPointe) written permission for pets, since no such written permission had been given.