UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC ) | |
| ) | |
| Plaintiff ) | |
| ) | PLAINTIFF'S OPPOSITION |
| v. ) | TO DEFENDANT, USF & G'S |
| ) | MOTION FOR LEAVE TO |
| UNITED STATES FIDELITY AND ) | SEVER AND STAY |
| GUARANTY COMPANY ) | |
| ) | |
| Defendant ) | |

Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff"), and opposes the Defendant, USF & G's ("the Surety") Motion to Sever and Stay. As grounds for this Opposition, the Plaintiff notes that:

1. USF & G mischaracterizes the law of c. 176D in terms of the requirement to sever and stay.

2. USF & G is clearly involved in an attempt to obstruct discovery of evidence which demonstrates that USF & G is systemically involved in fraud, both against this Plaintiff, and against this Court. The Plaintiff has already received substantive proof of the Defendant's duplicitous conduct, and equity demands that discovery go forward on all aspects of this claim.

As further grounds for this Motion, the Plaintiff states as follows:

1

I.   RELEVANT FACTS

1. Landworks was the site contractor at the Shrewsbury Middles School Project. "the Project"

2. Landworks worked under direct contract to the General Contractor, Standen, which was bonded by Defendant, USF & G.

3. Standen Construction failed, and the Project was taken over by USF & G.

4. USF & G retained Jackson Construction as its project manager to complete the Standen contract. Jackson Construction also failed.

5. In January of 2005, Landworks left the Project due to the onset of winter conditions that precluded ongoing work until springtime. At the time, Landworks was owed $135,000.

6. The Plaintiff demand payment for it to return to the worksite in the spring. (Under <u>Framingham Heavy Equipment Company, Inc. v. John T. Callahan & Sons, Inc.</u>, 61 Mass.App.Ct. 171 (2004), a Plaintiff has a right to require payment prior to returning to work, and the enforcement of that right does not constitute abandonment)

7. At some point in the spring of 2005, USF & G brought Lovett-Silverman to the Project as a construction manager.

8. Under G.L. c. 176D, a surety has an affirmative duty to investigate claims and to make reasonable settlement offers once the obligation to pay has become reasonably clear.

9. Pursuant to a ratification agreement between USF & G and Landworks after Standen left the Project, Landworks was in direct privity with USF & G, and was also owed money directly by USF & G pursuant to Standen's payment bond.

10. Throughout the late winter and early spring of 2005, the Plaintiff demanded payment of its invoices, and also inquired as to when it would be returning to the Project to complete the work. It was always ready, willing and able to return to the site.

11. The Plaintiff received no response to the demand for payment or to the request for information about the return date to the Project.

12. In April of 2005, in order to protect the bond provisions of G.L.c. 149, the Plaintiff filed suit in the Worcester Superior Court.

13. Since the inception of this lawsuit, the claims under G.L. c. 176D, G.L. c. 93A and the breach of contract have been synonymous-that USF & G breached its contract by failing to make payment that was due and owing and by failing to adjust a claim in good faith.

14. The Plaintiff is unaware of any allegations of poor workmanship at the Project by the Plaintiff.

15. The Plaintiff has never understood allegations of poor workmanship, or the allegations that were included in a patently frivolous counterclaim filed in this Court in violation of F.R.C.P. 11.

16. The Plaintiff served interrogatories and document requests in April of 2005 seeking the basis for refusal to make payment.

17. USF & G failed to produce documents or information for more than a year.

18. The Plaintiff has always taken the position that USF & G had no basis for refusing payment, and that the conduct of USF & G was clearly designed to litigate the Plaintiff either into bankruptcy or submission for pennies on the dollar of its claim.

19. Either action by the Surety would constitute unfair and deceptive trade practices and unfair insurance settlement practices.

20. In May of 2006, the Plaintiff finally reviewed the files of USF & G. Significantly, the files indicated that USF & G made no inquiry into the validity of the Plaintiff's claim.

21. More importantly, the Plaintiff discovered that USF & G was involved in a scheme to defraud its subcontractors. The file showed that USF & G, sustaining a direct and immediate hit from both the failure of Standen and Jackson, were attempting to complete the Project without expending any type of serious money.

22. Because the Plaintiff required repayment in order to return to the site, the Plaintiff was not being invited to return. The records showed that USF & G and its consultant were looking for a site contractor too stupid not to take the work on the Surety's terms. It took awhile, but the Surety finally found such a candidate. The Plaintiff was never even considered, according to USF & G's records.

23. The Plaintiff found evidence that its refusal to pay the Plaintiff, and its frivolous counterclaim, were part of an organized and intentional practice to harm subcontractors at the Project. The Plaintiff has attached an astonishingly frank e-mail between employees of Lovett-Silverman, in which the employees talk of trying "to bang the subcontractors." The e-mail goes on to identify a scheme to file fraudulent lawsuits to get back any money it puts out, lamenting the concern that "we can never recover from them what we are spending."

24. These e-mails confirm the Plaintiff's theory of the case. Not only is USF & G banging the Plaintiff, but it is trying to balance the books on the Project through this lawsuit.

25. This conduct is not only illegal and unethical, but it likely constitutes fraud on the court, as well racketeering under RICO. This matter has been brought to the attention of the Massachusetts Insurance Commissioner.

26. The Plaintiff has given notice to counsel for USF & G that, based upon the records found, the Plaintiff's primary focus in discovery will be the depositions of the individuals at Lovett-Silverman who were apparently involved in "banging the subcontractor" and the adjustors and attorneys who authorized expansive litigation toward what appears an effort to make false recovery as identified in the prior e-mail.

27. USF & G has responded by asking this Court to stay discovery on these issues.

28. The Plaintiff has served opposing counsel with a letter informing the Defendant that it intends to file a Motion to Amend to add Lovett-Silverman as a direct party defendant in this case.

II. ARGUMENT

WHILE THE PLAINITFF GENERALLY AGREES THAT CLAIMS UNDER GL 93A AND GL 176D SHOULD BE SEVERED AND STAYED, SUCH ACTION IS NOT REQUIRED, AND SHOULD BE DISCOURGAGED WHEN SUCH CONDUCT THREATENS TO CAUSE HARM OR TO OBSTRUCT JUSTICE, SUCH THAT THE MOTION TO SEVER AND STAY SHOULD BE DENIED

The Plaintiff agrees that, in most circumstances, a motion to sever and stay is appropriate. However, the Plaintiff notes that such action is most appropriate in contexts where the underlying tort feasor and the insurance company are not synonymous. For example, there is no doubt that in personal injury cases or other tort cases involving an insured and an insurer that the underlying claim must be adjudicated first. Clearly, the Plaintiff in such a case must demonstrate entitlement to its remedy before showing that the insurer has acted unfairly. In such cases, there is a dramatic difference between the case file in the underlying case and the claims file of the insurer which requires some protection for the insurer.

That is not the circumstance here, and it is disingenuous of the Defendant to suggest otherwise. This is a case in which the claims file is the paramount piece of evidence in the breach of contract claim.

This Court should also note that the Defendant has been unable to identify a single case of respected precedent-holding value in its motion, instead relying on unpublished opinions, low-level appeals courts and opinions that are otherwise highly-fact specific. There is not a single published opinion by the Appeals Court or the Massachusetts Supreme Judicial Court that takes the extreme position that an insurer is entitled, as a matter of law, to conceal evidence of bad faith when bad faith is *the* key element of the claim.

This is a lawsuit in which the breach of contract and the claim under G.L. 93A and G.L. 176D are identical and indivisible. The very nature of the claim is that the refusal of USF & G to pay the claim, which is unfair and deceptive, constitutes the breach of the contract. (the payment bond). In addition, the very gravaman of the Complaint is that the Surety conducted no investigation whatsoever, in clear violation of both the contractual obligation to pay and the statutory obligation to adjust a claim in good faith.

The Defendant has added to its list of offenses by filing a clearly frivolous counterclaim which is not supported by any documents in the Defendant's own files.

The Plaintiff has seen the USF & G file. There are simply no documents that support the defenses to the claim or that support the allegations of the counterclaim.

In addition, the Plaintiff has now discovered the attached e-mail which confirms that the Surety was engaged in intentional bad faith both in failing to pay the claim and in filing a knowingly false lawsuit.

The Court should also take note, in light of the e-mail that is attached, that the Defendant is asking this Court to interfere in the Plaintiff's ability to discern the meaning of the e-mail. The Court could not even do so, since the Plaintiff would have the right to carry on discovery to attack the defenses to its claim (lack of good faith) and in defense of the Counterclaim (malicious prosecution). The very interwoven nature of the claims in this case would preclude the Court from granting the remedy sought by the Defendant, as the Court could not stay the 176D claim without stripping the Plaintiff of its lawful right to tender a defense of malicious prosecution and lack of credibility to the underlying claim.

The Court should also be concerned that the most immediate beneficiary of the requested relief would be the Surety, which is clearly desperate not to answer questions about its e-mail at this time. Simply put, it appears that the Defendant is attempting to interfere in discovery and obstruct discovery for the bad faith motive of concealing its misconduct. This motion was filed immediately after the Plaintiff informed the Defendant that it would seek to depose the people who would have most knowledge of USF & G's failure to comply with its statutory requirements and USF & G's intentional efforts to hinder and delay adjudication of this dispute.

The Motion to Sever and Stay would also be ineffective. The Plaintiff is bringing Lovett-Silverman into this case on the grounds of fraud and interference of contract. Clearly, the discovery against that party will involve the same material that the Defendant is now seeking to conceal.

As noted, the Plaintiff agrees that on certain occasions a motion to sever and stay is appropriate. This situation does not exist here. The Plaintiff also notes that this Court has granted great benefit of doubt to the Defendant on many motions in this case (the motion to

remand, the motion to amend the answer, the motion to compel production of documents), notwithstanding the Plaintiff's repeated position that the Defendant is not entitled to such grace. The e-mail discovered by the Plaintiff vindicates the Plaintiff in all regards, and the email, in USF & G's own file, shows clearly what USF & G has tried to conceal. The Plaintiff believes in the ancient notion that the Courts should protect those who are being harmed by the ill-will of others. Thus, equity now requires that the Plaintiff have full ability to demonstrate that it, *and this Court*, have been the subject of a substantial fraud by this Defendant. The Motion to Sever and Stay must be DENIED

III.     CONCLUSION

For the foregoing reasons, the Motion to Sever and Stay should be DENIED.

Respectfully Submitted,

**Landworks Creations, LLC**
By its attorney,

s/Robert N. Meltzer_____
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: June 20, 2006

CERTIFICATE OF SERVICE

      I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing on all counsel of record by mailing the same, postage prepaid, to:

Hermes, Netburn, O'Connor & Spearing  
265 Franklin Street, Seventh Floor  
Boston, MA 02109  
Attn: Eric C. Hipp, Esq.

      s/Robert N. Meltzer

June 20, 2006

## Robert Bullock

**From:** Al Falango [afalango@lovett-silverman.com]
**Sent:** Wednesday, September 21, 2005 9:08 AM
**To:** 'Tony Lardaro'; 'Robert Bullock'
**Cc:** 'Bill Meritz'; awerth@lovett-silverman.com
**Subject:** Shrewsbury CTC

On the Shrewsbury CTC

The C/O logs lists all c/o's as pco's are they approved change orders or still pco's

Bill Meritz had mentioned a slew of potential c/o's for work done by JCC for the town under protest, (Tony wants AJ to pick this up) should we make mention of these potential receivables even if we cant put a number on them.

I dont think the 825k is enough for the contingency we already know we have busts in the track work, site work, electric (major), roofs and doors (major) even though the town is holding money I still think we could possibly break the 800k mark with these, we've already spent 400k on G and R for one month and we still dont have checks for the subs. We can try to bang the subs but I think that we can never recover from them what we are spending.