Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS-CENTRAL DIVISION

CIVIL ACTION NO: 05-CV-40072 FDS

LANDWORKS CREATIONS, LLC )
)
Plaintiff )
)
v. )          PLAINTIFF, LANDWORKS
)          CREATIONS, LLC'S
)          OPPOSITION TO THE MOTION
UNITED STATES FIDELITY AND )          OF DEFENDANT, LOVETT-
GUARANTY COMPANY and )          SILVERMAN FOR SUMMARY
LOVETT-SILVERMAN CONSTRUCTION )          JUDGMENT PURSUANT TO
CONSULTANTS, INC. )          F.R..C.P. 56(c)
)
Defendants )

        Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff") and opposes the

Motion of Defendant, Lovett-Silverman Construction Consultants, Inc. ("the Defendant" or "L-

S") for summary judgment pursuant to F.R.C.P. 56(c). As grounds for this Opposition, the

Plaintiff states as follows:

        The record for summary judgment consists of the Plaintiff's Verified Complaint, the

Memorandum of Law attached hereto, the Affidavit of Neal Matthews, the Affidavit of William

Gallagher, the Affidavit of Robert N. Meltzer and all exhibits and attachments appended thereto.

The record, which forms a substantial body of admissible evidence, tends to prove that:

    1.    L-S was responsible for oversight of project completion, contract ratification,

          change order review and payment review of subcontractors at the Shrewsbury

          Middle School project ("the Project") where the Plaintiff was under contract as

          a site contractor, or at least lied about its role at the Project to the Plaintiff.

    2.    L-S substantially deviated from most, of not all, good construction industry

          practices and customs in terms of oversight of project completion, contract

1

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

ratification, change order review and payment review of subcontractors at the Project where the Plaintiff was under contract as a site contractor.

3.    the deviation from most, if not all, construction industry customs and practices at the Project was intentional, and that the intent was to "bang" the subcontractors.

4.    "banging" subcontractors in the construction trade means to attempt to use economic violence and to otherwise deprive subcontractors of their contractual and common law rights with the intent of denying the subcontractors monies to which they are entitled.

5.    L-S's conduct of willful deviation demonstrates that L-S engaged in the practice of banging the subcontractors, and other methods of strong arming.

6.    the Plaintiff has been substantially harmed by this conduct.

7.    L-S lied to the Plaintiff, and otherwise misrepresented its actions, and committed fraud against the Plaintiff, and that L-S tortously interfered in the Plaintiff's contract.

8.    L-S engaged in unfair and deceptive trade practices against the Plaintiff, which has harmed the Plaintiff in its business.

As further grounds for this Opposition, the Plaintiff states as follows:

## RELEVANT FACTS

1.    Plaintiff, Landworks Creations, LLC ("the Plaintiff") is a limited liability corporation with a principal place of business at 1500A Lafayette Road in Portsmouth in the State of New Hampshire. (Verified Complaint, ¶1)


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

2

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

2. The Plaintiff entered into a contract with Standen Contracting Company, Inc. of North Dartmouth, Massachusetts. (Verified Complaint, ¶3)

3. The Plaintiff agreed to perform certain work for Standen Contracting Company, Inc. at the Shrewsbury Middle School (Verified Complaint, ¶4)

4. Standen Contracting Company, Inc. was bonded by the Defendant, United States Fidelity & Guaranty Co. ("the Surety")(Verified Complaint, ¶5)

5. Standen Contracting Company, Inc. was unable to complete its work at the Project, and the Defendant, pursuant to its obligations under a performance bond SW5041 assumed responsibility for completion of the Project in the stead of Standen Contracting Company, Inc. (Verified Complaint, ¶6)

6. Following the failure of Standen, the Surety brought Lovett-Silverman, a construction consultant to the Project.(Deposition of Peters, pages 60-61)

7. The Plaintiff was "ratified," meaning that the Plaintiff signed an agreement with the Surety whereby the Plaintiff agreed to perform its work under the Standen contract and the Surety agreed to complete the payment obligations under the bond. (Deposition of Matthews, page 124, referring to the ratification agreement of March 23, 2004, Exhibit 78)

8. The Surety also brought to the Project Jackson Construction. Jackson was to serve as the replacement contractor working under the Surety in performance of the Surety's performance bond obligation. (Deposition of James Peters, pages 55-57)

9. The Plaintiff continued to work at the site under Jackson's supervision until Jackson began to fail in late 2004. (Affidavit of Matthews, ¶ 3)

10. In January, 2005, the Plaintiff shut down its work as part of a seasonal shut down.



Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

11. Site contractors often leave a project when adverse weather sets in. James Peters of USF & G, in his deposition testimony, noted, on page 140, that "winter shutdown" "would typically refer to activities that were not to be performed due to the reasons that would have to do with the climate." He also testified that this would be "typically exterior work."

12. The Plaintiff was scheduled to complete its work in the spring of 2005. (See, Exhibit 23 to the Deposition of Crockett)

13. Lovett-Silverman came to the Project a second time. (Deposition of James Peters, pages 73-74)

14. The scope and authority of Lovett-Silverman's work on the project has been defined by Lovett-Silverman itself. Deposition Exhibit 32 consists of an e-mail from Pedro Rosario at Lovett-Silverman to David Schultz at KMD, the HVAC subcontractor. In that e-mail, attached hereto, Rosario discusses that he has conducted a ratification analysis, and he has discussed "moving forward and getting KMD back to the project." He also notes that he has reviewed the claims for payment and indicates a review of documents with regard to those claims. Deposition Exhibit 33, also attached, consists of an e-mail between Robert Bullock of Lovett-Silverman and Carlotta Patten, attorney for Steelco Chain Link Fence Co. In that e-mail, Bullock specifically asks the attorney for "an executed agreement describing the full scope of Steelco's work and the original, mutually agreeable price." The point of doing this is so that Lovett-Silverman can "…calculate the value of the remaining work…"[1] In Exhibit 34, Robert Bullock of Lovett-Silverman tells

---

[1] This e-mail is significant for another reason. It demonstrates that Lovett-Silverman had actual knowledge that Standen, and Jackson, had divided Division 2 work into separate subcontracts, and that Landworks did not contract with all of the sub sub contractors under Division 2, and that Landworks was not responsible for all of Division 2 work, notwithstanding contract language.

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

the Plaintiff that "LSCC is a consultant to the St. Paul in connection with the completion of work on the above referenced project....Please provide the following information to start developing your ratification agreement…" Thus, it is not disputed that Lovett-Silverman's role consisted of direct communication with subcontractors and their attorneys for the express purpose of claims assessment, ratification and project completion.

15. The Plaintiff was not terminated from its contract. (Affidavit of Matthews, ¶3)

16. As noted in the attached Affidavit of William Gallagher, ¶5, "[w]hen a construction consultant or construction manager takes over a project that is already underway, and in which a general contractor has left a job or has undergone business failure, there are certain tasks that are customarily performed in order to get the work back on track and finished. These tasks include:

a. Assessing the status of the work and the work performed by each subcontractor. Defining the scope of each sub contractor's contractual obligations and the work remaining is crucial.

b. Ascertaining the status of payment to subcontractors, who generally and customarily suspend work or demobilize pending review of payment issues. Reviewing open proposed change orders, agreed upon change orders not processed, extra payment claims of the sub contractor and claimed back charges from the General Contractor, Owner or Owner's agents is customary.

c. Ratifying subcontractors, that is, bringing the subcontractors back to work under the control of the Surety on public projects.



The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

d. Completing the work in the fastest way possible especially when the project is a public school and the learning process is hindered. This minimizes the incurred costs towards the Owner, Owner's agents, Surety and Sub contractor.

17. As noted in the attached Affidavit of William Gallagher, ¶6 "[i]t is always preferred by construction consultants and managers to ratify prior subcontractors; these subcontractors generally know the Project better than the new consultants, and are generally the best source of information about the Project and what needs to be done to get the project finished. They also do not require time to get up to speed on the work, they can mobilize quickly, and they are generally locked-in to a lower price than replacement subcontractors by the nature of the contract date. They can be held accountable for their own punch list, deficient and back charged items rather than having another sub contractor come finish the open items and argue of the value at a latter date."

18. As noted in the attached Affidavit of William Gallagher, ¶ 7, "…it is often difficult to find a subcontractor willing to pick up where another subcontractor has left off and where a project is already troubled. As a general rule in the construction industry, a subcontractor is brought back to work unless there is a compelling reason not to bring a subcontractor back to work."[2]

19. As noted in the attached Affidavit of William Gallagher, ¶ 8, "[t]he fact that a subcontractor may be owed money, or may be claiming to be owed money, is not, customarily, a compelling reason not to engage a subcontractor to complete the work.

---

[2] The Plaintiff has attached Exhibit 61, in which it is demonstrated that L-S was having just this problem at the Project. This further emphasizes the fact that L-S, despite having no evidence of poor performance by Landworks at the Project, was going out of its way *not* to ratify Landworks, suggesting further bad faith. Ironically, L-S in Exhibit 61 praises the work of a company called Emanouil Brothers. In the summer of 2005, when Exhibit 61 was written praising Emanouil Brothers' professionalism, Emanouil Brothers was involved in contentious litigation concerning the failed Shrewsbury High School Project in which USF & G alleged abandonment, delays and understaffing of the job. Emanouil Brothers was represented in that matter by Landworks' present counsel.

The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

Almost without exception the cost of the replacement sub-contractor to finish is more than the monies left to complete the scope." Indeed, even the replacement subcontractor, G & R, noted in an e-mail dated September 15, 2005 (Deposition Exhibit 47) that subcontractors were declining to return to work due to payment issues, but that "it is my understanding that Lovett-Silverman has all the paper work…in place for these ratifications….G & R is at a stand still in a lot of areas."  G & R isn't remotely suggesting that subcontractors who were not working due to non-payment issues had "abandoned" the project.

20. As stated in the attached Affidavit of William Gallagher, the Defendant in this case deviated from industry custom and practice in substantial and material ways. (Affidavit of William Gallagher, ¶7)

21. Sworn testimony by L-S employees demonstrates that L-S was simply failing to engage in any form of reasonable or proper investigation as to the role of subcontractors, and was making decisions and statements based upon a failure of its own stated responsibilities. Deposition Exhibit 51 consisted of an e-mail from Bill Meritz to Robert Bullock, regarding a concrete subcontractor called Frias Concrete. Meritz writes of Frias that "they were probably a sub to Landworks." Even though Meritz sent the e-mail, he claimed that he could not recall the e-mail or having any conversations with anyone about the e-mail. (Deposition of Meritz, page 45)[3]. Bullock, the recipient, when asked about the e-mail, stated that he wasn't asked to establish whether Frias was a sub to Landworks and that it

---

[3] Landworks invites this Court to take note that all of the Lovett-Silverman witnesses, as well as James Peters, had extraordinary difficulty recalling relatively recent events. Considering the nature of the claims made by USF & G in its Answer and Counterclaim, this collective amnesia raises serious doubts about the credibility of both defendants. Thus, L-S's reliance on these witnesses, in itself, raises questions of fact---credibility of witnesses who selectively remember events, and who then remember them in peculiar ways.



Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

was then, and still now, unknown as to who was working for Landworks. (Deposition of Bullock, page, page 93-94).

22. L-S admitted to its failure to perform to industry standards. Robert Bullock admitted on pages 95-97 that Robert Bullock had not spoken to anyone at Landworks, Jackson Construction, Waterman Design (the Landscape Architect) or CTM (the Owner's representative) about the Landworks portion of the Project. Bullock looked at no schedule of values. On page 113-116, Robert Bullock of Lovett-Silverman acknowledged that he could not recall hearing of any deficient work by Landworks, and admitted that he had made no investigation of Landworks or its business.(Deposition of Bullock, pages 113-115).

23. Robert Bullock also could not recall ever seeing a list "from anybody identifying work that was not performed correctly by Landworks specifically." (Deposition of Bullock, page 113-114)

24. Evidence exists on the record that demonstrates that L-S was not merely being negligent or careless with regard to industry practice and with regard to its own assumed obligations, raising the deficiency from breach of duty to willful misconduct. On September 21, 2005, Al Falango of Lovett-Silverman, sent an e-mail to Tony Lardaro, Robert Bullock and Bill Mertz, all of Lovett-Silverman, in which Falango noted that there was going to be a shortfall of funds, particularly as to site work, and he noted that "we can try to bang the subs but I think that we can never recover from them what we are spending." (Exhibit 37)

25. As noted in the Affidavit of William Gallagher, ¶¶ 27-28 "…[b]anging the subcontractors has a very specific meaning in the construction industry…. Banging the subcontractors


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

means withholding payment from them, or denying them their rights under their

contracts, in the hopes of either forcing the subcontractors to compromise their claims, to

be forced to file suit on the payment bond to defer payment for years, to likely

compromise a claim as part of a suit settlement process, or to file for bankruptcy or walk

away from the claim due to financial distress. Banging the subcontractors is a form of

violence to them, and it is a means and method of denying subcontractors what may be

theirs. In the construction industry, the less violent, but equally suggestive term for this

inappropriate behavior would be 'strong arming.' This includes the practice of

withholding payment until the sub contractor yields to accepting another agreement with

more scope or at a lesser fee."

26. USF & G conceded that more than 20 subcontractors were required to file suit to collect

on payment bonds issued by the Surety at this Project.(Deposition of James Peters, page

113)

27. According to the Affidavit of William Gallagher, this number of lawsuits "on a single

public project is highly unusual, and suggests an intentional failure to address claims by

Lovett-Silverman and the Surety, as opposed to systemic failure by all of the

subcontractors" ¶ 30

28. There is also evidence on the record that L-S lied to Landworks, and otherwise

committed fraud in its communication with Landworks in the form of the curious

correspondence on August 17-19, 2005, and also that L-S was not acting pursuant to USF

& G instructions in dealing with Landworks. The e-mail traffic indicates, in the form of

an e-mail from James Peters of USF & G to Al Falango that "if Landworks is interested

in settling that legal action and resuming their work, they should communicate that desire

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

through their counsel to Brad Carver who represents USF & G in that litigation."[4]

However, Lovett-Silverman did not convey this message to Landworks. Bullock wrote in

his August 17, 2005 e-mail to Al Falango at LSCC that "the president of Landworks just

called me and expressed an interest in being ratified. I told him he will have to drop his

law suit…" Similarly, on August 19, 2005, rather than convey the message sent by USF

& G, Bullock wrote to Landworks stating that "we checked with the Surety and we were

told that we cannot deal with Landworks while the legal case is pending." In fact, as

James Peters of USF & G testified (page 109), there was no particular written policy that

stated that Lovett-Silverman was barred from communicating with Landworks as a

matter of surety policy.[5]

29. Exhibit 54 provides further admissible evidence that Robert Bullock was not acting

within the scope of his authority, or even honestly, when he had his communications with

Landworks. On August 17, 2005, in response to the report by Robert Bullock that Robert

Bullock had misrepresented USF & G policy to Landworks, Al Falango replied, in e-

mail, "don't do that if you haven't done it already." James Peters also testified in his

deposition that Lovett-Silverman was not acting in accordance with USF & G policy.

---

[4] At trial, the Plaintiff intends to introduce evidence demonstrating that during this same time frame it was not the policy to demand settlement of lawsuits as a precondition to ratification or return to work. In the summer of 2005, USF & G was addressing claims at the Hull High School, another failed Jackson project. USF & G retained the same counsel. Plaintiff's counsel in this case represented the HVAC contractor in that project. The Plaintiff has identified in its mandatory disclosures the construction consultant on the Hull High School as a witness to the fact that on a Jackson/USF & G matter with the same attorney, the HVAC contractor was ratified and paid, and returned to work, while litigation was pending, and that the matter was finally settled by mediation.
[5] Indeed, on the Hull High School project, the construction consultant was in constant contact with parties to litigation even during the course of litigation.



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

30. When asked "is it a policy of USF & G to, quote, try to bang subs?", Peters answered, page 170, "whatever that means, it's not our policy."[6]

31. There is also evidence on the record, in the form of Exhibit 55, that the fraud was ongoing in the form of fraudulent concealment of relevant evidence as recently as October 11, 2006. Page 2 of that document consists of an e-mail produced by counsel for LSCC on October 11, 2006, in which language at the bottom was "redacted." However, counsel also produced page 1 in toto, in which the "redacted" portion was identified to read "Russ, the president of Landworks called LSCC and expressed an interest in being ratified. Should we pursue this guy, I know you have issues with him."

32. This e-mail demonstrates, once again, that the claim of abandonment by Landworks is without basis. More importantly, it demonstrates that the basis for denial of ratification or cooperation is intertwined with some form of personal feeling, as opposed to a construction issue. Finally, the mere act of "redacting" the statement, which is clearly not privileged, had more to do with concealing vital evidence from view than protecting a recognized privilege. [7]

33. There is other evidence that Landworks, and other subcontractors, were "banged" by Lovett-Silverman. James Peters admitted that more than 20 subcontractors were required to file suit. Of those 20, only this lawsuit was removed to this court on the grounds of

---

[6] While "banging subs" may not be USF & G's policy, the Plaintiff contends that USF & G's blind reliance on LSCC, without appropriate oversight, constitutes a violation of claims handling practices under G.L. c. 176D and G.L. c. 93A.

[7] LSCC's counsel produced entire conversations between LSCC and USF & G's counsel, confirming that LSCC is not an agent of USF & G, and was acting as an independent consultant to USF & G, without the cloak of privilege.

The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

"diversity" (page 120) and only this case "was handled by four different law firms within an eight-month period." (page 120).[8]

34. Based upon a complete deviation from industry practices and custom, in conjunction with the statement about banging the subcontractors, the curious and deceptive conversations between Lovett-Silverman and Landworks in August of 2005 pertaining to policy, and the evidence in the form of more than 20 lawsuits, there is admissible evidence on the record in form of expert testimony by William Gallagher that Landworks was the victim of strong arming by Lovett-Silverman.

35. The Defendant has failed to pay the Plaintiff for work performed at the Project, to the extent of $135,101.00. (Verified Complaint, ¶8)

## ARGUMENT

A. SUBSTANTIAL QUESTIONS OF FACT EXIST AS TO THE CLAIMS OF FRAUD AND MISREPRESENTATION AGAINST DEFENDANT, LOVETT-SILVERMAN, SUCH THAT SUMMARY JUDGMENT AT THIS JUNCTURE IS NOT APPROPRIATE AS A MATTER OF LAW

The Court has noted that "[i]n order to show fraud, the plaintiff would have to show that…[the defendant]…'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage'." Macoviak v. Chase Home Mortgage Corporation, 40 Mass.App.Ct. 755,760 (1996), citing Danca v. Taunton Sav. Bank, 385 Mass. 1,8 (1982). It has long been the law in the Commonwealth that "[d]eclarations and conduct

---

[8] Since Mr. Peters declined to explain this dual phenomena, one can only speculate that USF & G removed the case for the purpose of delay, and that USF & G fired law firms that refused to cooperate in the bogus defenses and counterclaim against Landworks. Mr. Peters will be invited to clarify this speculation at trial.


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

calculated to mislead and which in fact do mislead one who is acting reasonably are enough to constitute fraud." <u>Boston Five Cents Sav. Bank v. Brooks</u>, 309 Mass. 52,55 (1941).

In the case at bar, there is substantial evidence of declarations and conduct calculated to mislead.

The starting point for the analysis is the e-mail of Wednesday, August 17, 2005 from Robert Bullock to Lovett-Silverman to Neal Matthews of Landworks Creations, LLC, identified as Exhibit 34. In this document, Defendant, Lovett-Silverman specifically informs Landworks that Lovett-Silverman is a "consultant to the St. Paul in connection with the completion of work on the above referenced project." Lovett-Silverman also specifically informs Landworks that Lovett-Silverman is the contact individual for contract ratification, noting that "here is the text from the letter we send out for the Data (sic) required to get started on the ratification." Lovett-Silverman next makes clear to Landworks Creations, LLC, as late as August of 2005 that Lovett-Silverman intends to ratify Landworks Creations at the project, noting that Landworks Creations, LLC should "provide the following information to start developing your ratification agreement."

Without doubt or ambiguity, Lovett-Silverman reiterates that it is the contact entity with authority to act on behalf of St. Paul, that Lovett-Silverman has not deemed Landworks to have abandoned the work, and that Lovett-Silverman anticipated Landworks' return to the site. This e-mail certainly does not constitute a termination letter, or any indication that Lovett-Silverman considered the contract to be terminated.

This particular e-mail then sought specific information necessary for contract ratification, including specific information necessary for a proper investigation of the Landworks claim.

The Affidavit of William Gallagher states specific acts that a consultant would ordinarily perform, and certain documents that the consultant would review. The Lovett-Silverman e-mail



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

of August 17, 2005 indicates that Lovett-Silverman is acting consistent with industry practice as of August 17, 2005. The interrogatory answers of Landworks indicates that Lovett-Silverman is also acting consistent with Landworks' reasonable expectations for the ratification process and claim review process.

Subsequent e-mail traffic indicates that, on the contrary, Lovett-Silverman was not operating within industry standards, and Lovett-Silverman was not performing the tasks which it assured Landworks it was performing in the August 17, 2005 e-mail. In fact, subsequent deposition testimony of Lovett-Silverman indicates that, in reality, it conducted no investigation, and conducted none of the promised review.

This Court should note that at no time did Lovett-Silverman or St. Paul ever provide any correspondence to Landworks countering the representation of Lovett-Silverman on August 17, 2005 that a ratification process and claim review was underway. Neither Lovett-Silverman nor the Surety ever countered the statement made in the August 17, 2005 e-mail that Lovett-Silverman and the Surety intended to bring Landworks back to the project. In fact, the only correspondence after the August 17, 2005 e-mail was the e-mail in which Lovett-Silverman indicated that it, the consultant, could not speak to Landworks due to the ongoing litigation.

However, as the Rule 56(f) Affidavit of Robert N. Meltzer notes, this statement by Lovett-Silverman will be proven to be untrue. Indeed, this Court can compare two e-mail streams side by side. One series of e-mails contains the conversations between L-S and Landworks in which L-S and Landworks discuss ratification, return to work, and payment, and a meeting to discuss these issues. The other series of e-mails contain communications within Lovett-Silverman and between Lovett-Silverman and the Surety, in which it is observable that Lovett-Silverman was not relaying the Surety's policy to Landworks, and in which it is painfully



Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

obvious that Lovett-Silverman is not being honest with Landworks. In fact, at one point the Lovett-Silverman representative was rebuked for misleading Landworks, in which Al Falango wrote, " if you haven't already done that, don't" Indeed, Lovett-Silverman boasts at one juncture that it tried its hand at extortion, telling Landworks that dropping its lawsuit was a condition precedent to claim resolution.

Subsequent conduct demonstrates that these comments, and the conduct, was utterly fraudulent. The subsequent e-mail of September 21, 2005 notes that the project was over budget, particularly with regard to site work. This e-mail then goes on to discuss "banging the subcontractors" and trying to recover money from them. This e-mail is substantive evidence that Lovett-Silverman was aware that it could not pay both for prior work and subsequent work. As noted in the Affidavit of William Gallagher, "banging subcontractors" has a specific meaning in the construction industry; it means to take whatever action necessary to preclude payment, preferably though economic duress.

Thus, within one month of Lovett-Silverman suggesting to Landworks Creations, LLC that a ratification process was underway, that Lovett-Silverman viewed Landworks Creations, LLC as the candidate for ratification, that Lovett-Silverman did not view Landworks Creations, LLC as a party that had abandoned the work, and that Lovett-Silverman stated, explicitly, that it was reviewing the claim, Lovett-Silverman commenced a conscious and unlawful plan to harm Landworks Creations, LLC. As James Peters of USF & G noted, Lovett-Silverman could not have been acting as an agent of USF & G, as it is not USF & G's policy to bang the subcontractors.

As noted in the Affidavit of William Gallagher, it is significant what Lovett-Silverman did not do after August 17, 2005. Lovett-Silverman did no investigation of any kind or nature as



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

to the scope of Landworks Creations, LLC's contractual scope. It conducted no investigation of any form as to the change orders and amounts due. It did none of the customary or usual construction practices to ratify Landworks Creations, LLC. Lovett-Silverman did not terminate the contract, or send any kind of notification to Landworks Creations, LLC to let Landworks Creations, LLC know that the ratification process was not underway, that no effort was being made to review the contract scope or change orders, or that Lovett-Silverman was doing anything other than letting Landworks twist in the wind.[9]

Indeed, it is relevant that more than twenty subcontractors had to file suit, demonstrating that Lovett-Silverman was acting deceitfully and fraudulently with *all* of the subcontractors at this project. Without L-S's own e-mail statements, this could not be inferred.

This is evidence before this Court, therefore, of deception and misrepresentation and fraud on behalf of Lovett-Silverman, sufficient to defeat the motion for summary judgment.

There is also evidence in the form of the Affidavit of Neal Matthews and the Interrogatory Answers that Landworks Creations, LLC reasonably relied upon the words and conduct, or lack of conduct, by Lovett-Silverman, to its detriment. As Neal Matthews noted, the representations by Lovett-Silverman that the ratification process was under way and that Lovett-Silverman intended to bring Landworks Creations, LLC back to the project gave great encouragement to Landworks Creations, LLC. It did not plan conflicting work. It took out loans to pay subcontractors in reliance on the promise of review. Had it received any sense that Lovett-Silverman was not acting in good faith, or honestly, it could have engaged in certain conduct to inform responsible parties that Lovett-Silverman was acting contrary to the policies of the

---

[9] The mere fact that Landworks had filed suit against the Surety did not excuse the Surety from its obligation to conduct an investigation of the claim under G.L. c. 176D. Since Lovett-Silverman represented to Landworks Creations, LLC that an investigation was under way, and that Lovett-Silverman was the consultant for this work to the Surety, Landworks was acting reasonably in assuming that the Surety was continuing, through Lovett-Silverman to investigate funds owing to Landworks.



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

16

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

Surety, and the project owner. Landworks Creations, LLC was denied the opportunity to find alternative avenues for returning the project.

Instead, Landworks Creations, LLC waited while Lovett-Silverman ignored its claims, made false statements about the scope of the Landworks Creations, LLC contract, defamed Landworks to the project architect and helped forge a knowingly false counterclaim filled with blatant untruths.

Landworks Creations, LLC lost its profit on this job, has been denied amounts due and owing for two years, has been compelled to take out and repay loans to cover the cost of the work, has been compelled to file suit along with twenty other subcontractors with its attendant legal fees and has otherwise engaged in costs and damages that would not have been incurred had Lovett-Silverman acted truthfully and honestly in the summer of 2005.

Lovett-Silverman may contest these facts, and may contest the meaning of the e-mails and the intent of its employees in making these statements, or the impact of these statements. However, Lovett-Silverman cannot, in good faith, deny that representations were made, that the representations and the meaning of those representations, and whether they were honestly made, and whether Landworks relied upon them to its detriment, are questions of fact for the trier of fact. There is a dispute at these facts which must be addressed at trial. The Plaintiff has demonstrated, through the existence of admissible evidence, that questions of fact remain on each element of a claim for fraud.

Since questions of fact remain, the Motion for Summary Judgment must be DENIED.



Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

## B. SUBSTANTIAL QUESTIONS OF FACT EXIST AS TO THE CLAIMS OF TORTOUS INTERFERENCE AGAINST DEFENDANT, LOVETT-SILVERMAN, SUCH THAT SUMMARY JUDGMENT AT THIS JUNCTURE IS NOT APPROPRIATE AS A MATTER OF LAW

The Court has noted that "to survive summary judgment on his claim of intentional interference with contractual or advantageous relations, the plaintiff must proffer admissible evidence sufficient to warrant findings that establish (1) the existence of a contract or a business relationship which contemplated economic benefit (2) the defendant's knowledge of the contract or business relationship (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means and (4) damages." Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. 271,277-78 (2004), citing Swanset Dev.Corp. v. Taunton 423 Mass. 390,397 (1996). As the Court has further noted, [i]n its classic form, the tort of interference with contractual relations involves the undoing of a business arrangement bound by contract." Chemawa County Golf, Inc. v. Wnuk, 9 Mass.App.Ct. 506,509 (1980).

The Plaintiff has easily demonstrated these elements. The e-mail of August 17, 2005 recognizes the existence of the Plaintiff's contract. The e-mail also recognizes that there is an outstanding balance to be reconciled, and possible payments to be paid to the Plaintiff under the contract. Thus, the first two elements are not in doubt.

As to element three, this is supported substantially by an e-mail from Lovett-Silverman regarding "banging the subcontractors." As noted in the Affidavit of William Gallagher, "banging" the subs is an unlawful practice used to prevent payment of subcontractors by economic coercion. The fact that nearly all the subcontractors had to file suit to be paid demonstrates that Lovett-Silverman carried the plan, with its improper means, to fruition.

There is also no doubt that Lovett-Silverman has achieved its purpose—Landworks



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

Creations, LLC was not paid by USF & G, notwithstanding a total failure of evidence denying the right to the funds. Landworks Creations, LLC has been harmed to the extent of $135,000, plus the legal costs, carrying costs and damages incurred as a result of the improper means.

The Plaintiff has easily demonstrated the existence of this tort by admissible evidence derived, in large part, by writings prepared by Lovett-Silverman itself.

While the Defendant may contest the meaning of those e-mails, substantial questions of fact remain for the trier of fact, and the Motion for Summary Judgment must be DENIED.

### C. SUBSTANTIAL QUESTIONS OF FACT EXIST AS TO THE CLAIMS OF UNFAIR AND DECEPTIVE TRADE PRACTICES AGAINST DEFENDANT, LOVETT-SILVERMAN, SUCH THAT SUMMARY JUDGMENT AT THIS JUNCTURE IS NOT APPROPRIATE AS A MATTER OF LAW

As to this Count, the Plaintiff merely notes that it has provided substantial evidence of fraud and tortous interference against Defendant, Lovett-Silverman. The Affidavit of William Gallagher, interpreting statements made by Lovett-Silverman, states that Lovett-Silverman engaged in an egregious practice of economic coercion. There is no doubt that engaging in a deliberate effort to deny 20 subcontractors its economic rights would rise to a level of unfair and deceptive trade practices as a matter of law. Indeed, the Plaintiff is now investigating, in conjunction with other subcontractors, whether Lovett-Silverman's conduct violated federal anti-racketeering laws.

As to the contention that Landworks Creations, LLC failed to perform conditions precedent to bring a cause of action under G.L. c. 93A, Lovett-Silverman is simply in the wrong body of law. Actions under G.L. c. 93A between businesses are dictated by §11, and have no requirement of a pre-suit demand letter. Actions under §9, which dictate claims brought by individuals against businesses, do require demand letters as a condition precedent, but, even



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

then, not on a motion to amend an existing suit. On this issue, Lovett-Silverman is simply wrong on the law.

The Plaintiff has provided substantial admissible evidence that Lovett-Silverman engaged in tortous interference, mostly from its own e-mail traffic. Clearly, these same documents support a claim for unfair and deceptive trade practices as a matter of law, and the Motion for Summary Judgment must be Denied.

CONCLUSION

For the foregoing reasons, that the Plaintiff has provided substantial admissible evidence to support its claim against Lovett-Silverman, the Motion for Summary Judgment must be DENIED.

Respectfully Submitted,

**Landworks Creations, LLC**

By its attorney,

The Mountain States Law Group
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: April 17, 2007

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

## CERTIFICATE OF SERVICE

I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing on all counsel of record by mailing the same, postage prepaid, to:

Hermes, Netburn, O'Connor & Spearing
265 Franklin Street, Seventh Floor
Boston, MA 02109
Attn: Eric C. Hipp, Esq.

Donovan Hatem
World Trade Center East
Two Seaport Lane
Boston, MA 02210
Attn: Jay Gregory, Esq.



April 17, 2007

The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com