Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS-CENTRAL DIVISION

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | PLAINTIFF, LANDWORKS |
| ) | CREATIONS, LLC'S |
| UNITED STATES FIDELITY AND ) | STATEMENT OF MATERIAL |
| GUARANTY COMPANY and ) | FACTS PURSUANT TO |
| LOVETT-SILVERMAN CONSTRUCTION ) | L.R. 56.1 AND RESPONSE TO |
| CONSULTANTS, INC. ) | THE DEFENDANT'S |
| ) | STATEMENT |
| Defendants ) | |

Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff") and provides this statement of material facts as required by L.R. 56.1

1. Plaintiff, Landworks Creations, LLC ("the Plaintiff") is a limited liability corporation with a principal place of business at 1500A Lafayette Road in Portsmouth in the State of New Hampshire. (Verified Complaint, ¶1)

2. The Plaintiff entered into a contract with Standen Contracting Company, Inc. of North Dartmouth, Massachusetts. (Verified Complaint, ¶3)

3. The Plaintiff agreed to perform certain work for Standen Contracting Company, Inc. at the Shrewsbury Middle School (Verified Complaint, ¶4)

4. Standen Contracting Company, Inc. was bonded by the Defendant, United States Fidelity & Guaranty Co. ("the Surety")(Verified Complaint, ¶5)

5. Standen Contracting Company, Inc. was unable to complete its work at the Project, and the Defendant, pursuant to its obligations under a performance bond SW5041 assumed

1

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

responsibility for completion of the Project in the stead of Standen Contracting Company, Inc. (Verified Complaint, ¶6)

6. Following the failure of Standen, the Surety brought Lovett-Silverman, a construction consultant to the Project.(Deposition of Peters, pages 60-61)

7. The Plaintiff was "ratified," meaning that the Plaintiff signed an agreement with the Surety whereby the Plaintiff agreed to perform its work under the Standen contract and the Surety agreed to complete the payment obligations under the bond. (Deposition of Matthews, page 124, referring to the ratification agreement of March 23, 2004, Exhibit 78)

8. The Surety also brought to the Project Jackson Construction. Jackson Construction was to serve as the replacement contractor working under the Surety in performance of the Surety's performance bond obligation. (Deposition of James Peters, pages 55-57)

9. The Plaintiff continued to work at the site under Jackson's supervision until Jackson began to fail in late 2004. (Affidavit of Matthews, ¶ 3)

10. In January, 2005, the Plaintiff shut down its work as part of a seasonal shut down.

11. Site contractors often leave a project when adverse weather sets in. James Peters of USF & G, in his deposition testimony, noted, on page 140, that "winter shutdown" "would typically refer to activities that were not to be performed due to the reasons that would have to do with the climate." He also testified that this would be "typically exterior work."

12. The Plaintiff was scheduled to complete its work in the spring of 2005. (See, Exhibit 23 to the Deposition of Crockett)

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

13. Lovett-Silverman came to the Project a second time. (Deposition of James Peters, pages 73-74)

14. The scope and authority of Lovett-Silverman's work on the project has been defined by Lovett-Silverman itself. Deposition Exhibit 32 consists of an e-mail from Pedro Rosario at Lovett-Silverman to David Schultz at KMD, the HVAC subcontractor. In that e-mail, attached hereto, Rosario discusses that he has conducted a ratification analysis, and he has discussed "moving forward and getting KMD back to the project." He also notes that he has reviewed the claims for payment and indicates a review of documents with regard to those claims. Deposition Exhibit 33, also attached, consists of an e-mail between Robert Bullock of Lovett-Silverman and Carlotta Patten, attorney for Steelco Chain Link Fence Co. In that e-mail, Bullock specifically asks the attorney for "an executed agreement describing the full scope of Steelco's work and the original, mutually agreeable price." The point of doing this is so that Lovett-Silverman can "…calculate the value of the remaining work…"[1] In Exhibit 34, Robert Bullock of Lovett-Silverman tells the Plaintiff that "LSCC is a consultant to the St. Paul in connection with the completion of work on the above referenced project….Please provide the following information to start developing your ratification agreement…" Thus, it is not disputed that Lovett-Silverman's role consisted of direct communication with subcontractors and their attorneys for the express purpose of claims assessment, ratification and project completion.

15. The Plaintiff was not terminated from its contract. (Affidavit of Matthews, ¶3)

---

[1] This e-mail is significant for another reason. It demonstrates that Lovett-Silverman had actual knowledge that Standen, and Jackson, had divided Division 2 work into separate subcontracts, and that Landworks did not contract with all of the sub sub contractors under Division 2, and that Landworks was not responsible for all of Division 2 work, notwithstanding contract language.

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

16. As noted in the attached Affidavit of William Gallagher, ¶5, "[w]hen a construction consultant or construction manager takes over a project that is already underway, and in which a general contractor has left a job or has undergone business failure, there are certain tasks that are customarily performed in order to get the work back on track and finished. These tasks include:

a. Assessing the status of the work and the work performed by each subcontractor. Defining the scope of each sub contractor's contractual obligations and the work remaining is crucial.

b. Ascertaining the status of payment to subcontractors, who generally and customarily suspend work or demobilize pending review of payment issues. Reviewing open proposed change orders, agreed upon change orders not processed, extra payment claims of the sub contractor and claimed back charges from the General Contractor, Owner or Owner's agents is customary.

c. Ratifying subcontractors, that is, bringing the subcontractors back to work under the control of the Surety on public projects.

d. Completing the work in the fastest way possible especially when the project is a public school and the learning process is hindered. This minimizes the incurred costs towards the Owner, Owner's agents, Surety and Sub contractor.

17. As noted in the attached Affidavit of William Gallagher, ¶6 "[i]t is always preferred by construction consultants and managers to ratify prior subcontractors; these subcontractors generally know the Project better than the new consultants, and are generally the best source of information about the Project and what needs to be done to get the project finished. They also do not require time to get up to speed on the work, they can mobilize

The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

4

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

quickly, and they are generally locked-in to a lower price than replacement subcontractors by the nature of the contract date. They can be held accountable for their own punch list, deficient and back charged items rather than having another sub contractor come finish the open items and argue of the value at a latter date."

18. As noted in the attached Affidavit of William Gallagher, ¶ 7, "…it is often difficult to find a subcontractor willing to pick up where another subcontractor has left off and where a project is already troubled. As a general rule in the construction industry, a

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

19. subcontractor is brought back to work unless there is a compelling reason not to bring a subcontractor back to work."[2]

20. As noted in the attached Affidavit of William Gallagher, ¶ 8, "[t]he fact that a subcontractor may be owed money, or may be claiming to be owed money, is not, customarily, a compelling reason not to engage a subcontractor to complete the work. Almost without exception the cost of the replacement sub-contractor to finish is more than the monies left to complete the scope." Indeed, even the replacement subcontractor, G & R, noted in an e-mail dated September 15, 2005 (Deposition Exhibit 47) that subcontractors were declining to return to work due to payment issues, but that "it is my understanding that Lovett-Silverman has all the paper work…in place for these ratifications….G & R is at a stand still in a lot of areas." G & R isn't remotely suggesting that subcontractors who were not working due to non-payment issues had "abandoned" the project.

21. As stated in the attached Affidavit of William Gallagher, the Defendant in this case deviated from industry custom and practice in substantial and material ways. (Affidavit of William Gallagher, ¶7)

22. Sworn testimony by Lovett-Silverman employees demonstrates that Lovett-Silverman was simply failing to engage in any form of reasonable or proper investigation as to the role of subcontractors, and was making decisions and statements based upon a failure of

---

[2] The Plaintiff has attached Exhibit 61, in which it is demonstrated that Lovett-Silverman was having just this problem at the Project. This further emphasizes the fact that Lovett-Silverman, despite having no evidence of poor performance by Landworks at the Project, was going out of its way *not* to ratify Landworks, suggesting further bad faith. Ironically, Lovett-Silverman in Exhibit 61 praises the work of a company called Emanouil Brothers. In the summer of 2005, when Exhibit 61 was written, Emanouil brothers was involved in contentious litigation concerning the failed Shrewsbury High School Project in which USF & G, again, alleged abandonment of the job. Emanouil Brothers was represented in that matter by Landworks' present counsel.

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

its own stated responsibilities. Deposition Exhibit 51 consisted of an e-mail from Bill Meritz to Robert Bullock, regarding a concrete subcontractor called Frias Concrete. Meritz writes of Frias that "they were probably a sub to Landworks." Even though Meritz sent the e-mail, he claimed that he could not recall the e-mail or having any conversations with anyone about the e-mail. (Deposition of Meritz, page 45)[3]. Bullock, the recipient, when asked about the e-mail, stated that he wasn't asked to establish whether Frias was a sub to Landworks and that it was then, and still now, unknown as to who was working for Landworks. (Deposition of Bullock, page, page 93-94).

23. Lovett-Silverman admitted to its failure to perform to industry standards. Robert Bullock admitted on pages 95-97 that Robert Bullock had not spoken to anyone at Landworks, Jackson Construction, Waterman Design (the Landscape Architect) or CTM (the Owner's representative) about the Landworks portion of the Project. Bullock looked at no schedule of values. On page 113-116, Robert Bullock of Lovett-Silverman acknowledged that he could not recall hearing of any deficient work by Landworks, and admitted that he had made no investigation of Landworks or its business.(Deposition of Bullock, pages 113-115).

24. Robert Bullock also could not recall ever seeing a list "from anybody identifying work that was not performed correctly by Landworks specifically." (Deposition of Bullock, page 113-114)

25. Evidence exists on the record that demonstrates that Lovett-Silverman was not merely being negligent or careless with regard to industry practice and with regard to its own

---

[3] Landworks invites this Court to take note that all of the Lovett-Silverman witnesses, as well as James Peters, had extraordinary difficulty recalling relatively recent events. Considering the nature of the claims made by USF & G in its Answer and Counterclaim, this collective amnesia raises serious doubts about the credibility of both defendants. Thus, Lovett-Silverman's reliance on these witnesses, in itself, raises questions of fact---credibility of witnesses who selectively remember events.

The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

assumed obligations, raising the deficiency from breach of duty to willful misconduct. On September 21, 2005, Al Falango of Lovett-Silverman, sent an e-mail to Tony Lardaro, Robert Bullock and Bill Mertz, all of Lovett-Silverman, in which Falango noted that there was going to be a shortfall of funds, particularly as to site work, and he noted that "we can try to bang the subs but I think that we can never recover from them what we are spending." (Exhibit 37)

26. As noted in the Affidavit of William Gallagher, ¶¶ 27-28 "...[b]anging the subcontractors has a very specific meaning in the construction industry.... Banging the subcontractors means withholding payment from them, or denying them their rights under their contracts, in the hopes of either forcing the subcontractors to compromise their claims, to be forced to file suit on the payment bond to defer payment for years, to likely compromise a claim as part of a suit settlement process, or to file for bankruptcy or walk away from the claim due to financial distress. Banging the subcontractors is a form of violence to them, and it is a means and method of denying subcontractors what may be theirs. In the construction industry, the less violent, but equally suggestive term for this inappropriate behavior would be 'strong arming.' This includes the practice of withholding payment until the sub contractor yields to accepting another agreement with more scope or at a lesser fee."

27. USF & G conceded that more than 20 subcontractors were required to file suit to collect on payment bonds issued by the Surety at this Project.(Deposition of James Peters, page 113)

28. According to the Affidavit of William Gallagher, this number of lawsuits "on a single public project is highly unusual, and suggests an intentional failure to address claims by


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

Lovett-Silverman and the Surety, as opposed to systemic failure by all of the subcontractors" ¶ 30

29. There is also evidence on the record that Lovett-Silverman lied to Landworks, and otherwise committed fraud in its communication with Landworks in the form of the curious correspondence on August 17-19, 2005, and also that Lovett-Silverman was not acting pursuant to USF & G instructions in dealing with Landworks. The e-mail traffic indicates, in the form of an e-mail from James Peters of USF & G to Al Falango that "if Landworks is interested in settling that legal action and resuming their work, they should communicate that desire through their counsel to Brad Carver who represents USF & G in that litigation."[4] However, Lovett-Silverman did not convey this message to Landworks. Bullock wrote in his August 17, 2005 e-mail to Al Falango at LSCC that "the president of Landworks just called me and expressed an interest in being ratified. I told him he will have to drop his law suit…" Similarly, on August 19, 2005, rather than convey the message sent by USF & G, Bullock wrote to Landworks stating that "we checked with the Surety and we were told that we cannot deal with Landworks while the legal case is pending." In fact, as James Peters of USF & G testified (page 109), there was no particular written policy that stated that Lovett-Silverman was barred from communicating with Landworks as a matter of surety policy.[5]

---

[4] At trial, the Plaintiff intends to introduce evidence demonstrating that during this same time frame it was not the policy to demand settlement of lawsuits as a precondition to ratification or return to work. In the summer of 2005, USF & G was addressing claims at the Hull High School, another failed Jackson project. USF & G retained the same counsel. Plaintiff's counsel in this case represented the HVAC contractor in that project. The Plaintiff has identified in its mandatory disclosures the construction consultant on the Hull High School as a witness to the fact that on a Jackson/USF & G matter with the same attorney, the HVAC contractor was ratified and paid, and returned to work, while litigation was pending, and that the matter was finally settled by mediation.

[5] Indeed, on the Hull High School project, the construction consultant was in constant contact with parties to litigation even during the course of litigation.

The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

9

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

30. Exhibit 54 provides further admissible evidence that Robert Bullock was not acting within the scope of his authority, or even honestly, when he had his communications with Landworks. On August 17, 2005, in response to the report by Robert Bullock that Robert Bullock had misrepresented USF & G policy to Landworks, Al Falango replied, in e-mail, "don't do that if you haven't done it already." James Peters also testified in his deposition that Lovett-Silverman was not acting in accordance with USF & G policy.

31. When asked "is it a policy of USF & G to, quote, try to bang subs?", Peters answered, page 170, "whatever that means, it's not our policy."[6]

32. There is also evidence on the record, in the form of Exhibit 55, that the fraud was ongoing in the form of fraudulent concealment of relevant evidence as recently as October 11, 2006. Page 2 of that document consists of an e-mail produced by counsel for LSCC on October 11, 2006, in which language at the bottom was "redacted." However, counsel also produced page 1 in toto, in which the "redacted" portion was identified to read "Russ, the president of Landworks called LSCC and expressed an interest in being ratified. Should we pursue this guy, I know you have issues with him."

33. This e-mail demonstrates, once again, that the claim of abandonment by Landworks is without basis. More importantly, it demonstrates that the basis for denial of ratification or cooperation is intertwined with some form of personal feeling, as opposed to a construction issue. Finally, the mere act of "redacting" the statement, which is clearly not

---

[6] While "banging subs" may not be USF & G's policy, the Plaintiff contends that USF & G's blind reliance on LSCC, without appropriate oversight, constitutes a violation of claims handling practices under G.L. c. 176D and G.L. c. 93A.

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com


The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

privileged, had more to do with concealing vital evidence from view than protecting a recognized privilege.[7]

34. There is other evidence that Landworks, and other subcontractors, were "banged" by Lovett-Silverman. James Peters admitted that more than 20 subcontractors were required to file suit. Of those 20, only this lawsuit was removed to this court on the grounds of "diversity" (page 120) and only this case "was handled by four different law firms within an eight-month period." (page 120).[8]

35. Based upon a complete deviation from industry practices and custom, in conjunction with the statement about banging the subcontractors, the curious and deceptive conversations between Lovett-Silverman and Landworks in August of 2005 pertaining to policy, and the evidence in the form of more than 20 lawsuits, there is admissible evidence on the record in form of expert testimony by William Gallagher that Landworks was the victim of strong arming by Lovett-Silverman.

36. The Defendant has failed to pay the Plaintiff for work performed at the Project, to the extent of $135,101.00. (Verified Complaint, ¶8)

As to the Defendant's Statement of Material Facts, the Plaintiff states as follows:

1. No dispute
2. No dispute
3. No dispute
4. No dispute
5. No dispute

---

[7] LSCC's counsel produced entire conversations between LSCC and USF & G's counsel, confirming that LSCC is not an agent of USF & G, and was acting as an independent consultant to USF & G, without the cloak of privilege.
[8] Since Mr. Peters declined to explain this dual phenomena, one can only speculate that USF & G removed the case for the purpose of delay, and that USF & G fired law firms that refused to cooperate in the bogus defenses and counterclaim against Landworks. Mr. Peters will be invited to clarify this speculation at trial.



The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

11

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

6. No dispute

7. No dispute

8. No dispute

9. The document speaks for itself

10. No dispute as to what was stated at the deposition

11. Agreed that the document constitutes the contract

12. No dispute

13. Denied. As has been noted by Matthews, and confirmed by the Affidavit of William Gallagher, this language identifies the location of the scope of the work within the contract specifications, but does not necessarily, as in this case, assign all of this work to the particular contractor. By way of example, Deposition Exhibit 33 consists of an e-mail between Lovett-Silverman and Steelco, admissible as a statement against interest. Steelco was performing work on the Project under the sections (Division 2) apparently assigned to Landworks. This shows that Landworks did not assume all of the obligations of Division 2, but rather specific portions of that work. The statement in paragraph 13, while reciting the contract, does not state the actual scope. The Plaintiff also notes that Lovett-Silverman lacks personal knowledge as to the meaning of that document, as Lovett-Silverman was not a signatory to that document.

14. No dispute. It should also be noted that the Plaintiff has not brought a breach of contract claim, or any other direct claim that requires contractual privity

15. No dispute

16. No dispute



12

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

17. Disputed. On page 63 of the Deposition of Peters, it was noted that Jackson Construction worked as a construction manager for USF & G, not as the general contractor on the job as defined by G.L. c. 149; Jackson did not receive payment from the Awarding Authority. The subcontractors on the project were not subject to the form contract of c. 149, but rather worked as ratified contractors to the Surety. By legal definition, Jackson was not ever the general contractor at the Project.

18. Disputed. Landworks operated under a ratification agreement identified as Exhibit 77. As Neal Matthews testified, Jackson refused to provide checks unless Landworks signed the contract. However, as noted in paragraph 17 above, Jackson was not the general contractor, but rather the agent of USF & G, without authority to sign contracts. Thus, the "contract" between Jackson and Landworks is void.

19. See, 18. See, also 13.

20. No dispute

21. No dispute

22. No dispute, except for the fact that payment was expected from USF & G, not Jackson

23. Disputed. As noted by Matthews, work was not being performed, but paragraph 3 of the Affidavit of Neal Matthews notes that the contract had not been terminated. The job was suspended, but not terminated.

24. No dispute

25. No dispute that Peters testified such

26. No dispute that Peters testified such

27. No dispute that Peters testified such

28. No dispute


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com

13

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

29. No dispute

30. No dispute that Bullock testified such

31. No dispute

32. No dispute

33. Dispute that Al Falango was "a part time, outside consultant." The Court should note that Exhibit 34 identifies Falango's e-mail address as "afalango@lovett-silverman.com", raising serious doubts as to this representation that Falango was an outside consultant, and this attempt to distance Al Falango from the company. The e-mail speaks for itself, and confirms that Landworks maintained that the ratification agreement remained in full force and effect, and that Landworks had not abandoned the Project.

34. No dispute as to what the e-mail states

35. No dispute that the Plaintiff testified to such

36. No dispute that Peters testified as such. As noted in the Affidavit of Robert N. Meltzer, this has not been demonstrated to be USF & G policy. Exhibit 33 also suggests that this was not USF & G policy.

37. No dispute that Peters testified as such. As noted in the Affidavit of Robert N. Meltzer, this has not been demonstrated to be USF & G policy. Exhibit 33 also suggests that this was not USF & G policy.

38. No dispute that Peters testified as such. As noted in the Affidavit of Robert N. Meltzer, this has not been demonstrated to be USF & G policy. Exhibit 33 also suggests that this was not USF & G policy.

39. No dispute that this was what Bullock said. This is also undisputedly not what Peters stated in his e-mail correspondence to Bullock.

The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

40. No dispute that this channel of communication was stated

41. No dispute

42. No dispute that Peters testified as such. The Plaintiff notes that this statement, now admitted, confirms that USF & G was negligent in failing to effectuate clear and consistent claims handling practices. That there was no policy is apparently not in dispute, and will be subject to subsequent discovery as to the G.L. c. 176D claim.

43. No dispute

44. No dispute as to the testimony

45. The contract speaks for itself. However, as the Affidavit of Neal Matthew states, he interpreted the August 17, 2005 e-mail to state to the contrary. The Plaintiff will accept this statement as confirmation that Robert Bullock made a material misrepresentation as to Lovett-Silverman's role in the August 17, 2005 e-mail

46. No dispute. This was based upon the representation of Lovett-Silverman on August 15, 2005, which was apparently untrue.

47. No dispute.

48. The testimony speaks for itself. It is also irrelevant, since it assumes that Landworks was privy to the communications between Jackson and USF & G. There are no facts in evidence to support such a contention. However, Matthews did confirm that Exhibit 77, the Ratification Agreement, required USF & G to make the payments. The Lovett-Silverman statement of August 17, 2005 states that Lovett-Silverman was acting as a consultant making the review. Thus, the use of the phrase "in fact" makes no sense grammatically.



Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

49. No dispute that the funds ran from the town, to the Surety, to USF & G, further confirming that Jackson was not the General Contractor under c. 149, that the Ratification Agreement remained in full force and effect, and that the Surety remained liable for performing subject to G.L. c. 176D

50. No dispute as to what the Amended Complaint states

51. No dispute as to the testimony

52. Disputed. Rather, the Plaintiff bases his entire case upon the fact that Lovett-Silverman, by its own admission in the August 17, 2005 e-mail was charged with directing the ratification process and reviewing payment claims and that USF & G and Lovett-Silverman had and breached legal duties to act in a certain manner toward the Plaintiff and its claim. The claim is based upon expert testimony of William Gallagher, who has provided a substantial affidavit, noting the usual customs and practices in the industry for performing these tasks, and noting that Lovett-Silverman utterly failed to perform these tasks. It is also evident that USF & G had abandoned a reasonable supervisory role over its rogue consultant, as noted by Jim Peters that banging subs was not USF & G policy, and, as noted by Jim Peters, that USF & G had no established oversight policy. The Plaintiff bases his fraud and tort claims upon evidence that Lovett-Silverman was not merely negligent, but acting within a specified plan to "bang" the subcontractors, as identified in September 21, 2005 e-mail. The Plaintiff bases his case upon expert testimony that banging subcontractors consists of economic coercion and duress. The Plaintiff further bases his case upon the circumstantial evidence that the Defendants have done everything to prolong this case, from removal to this court, to hiring and firing four

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

major lawfirms, to the filing of a false counterclaim, to the false allegations of abandonment to filing of frivolous motions, to misstating the basis of the claim.

53. Disputed. The Affidavit of William Gallagher notes that in the industry "banging" subcontractors refers to economic violence to destroy a subcontractor so that payment need not be made.

54. No dispute that he so testified. It is also clear that Mr. Peters lacks the qualifications to testify as to industry practices.

55. No dispute

56. No dispute that he so testified

57. No dispute as to the testimony. It should be noted that Lovett-Silverman did not inquire as to who would be explaining the meaning of "banging" to the trier of fact. This is an open question of fact left to expert testimony which, in itself, demonstrates the inappropriate nature of a summary judgment motion.

58. No dispute

59. No dispute, except that the Lovett-Silverman documents admitting the fraud against Landworks were produce as part of formal discovery by USF & G, not informal.

60. Landworks testified that the false counterclaim was part of the banging process

61. No dispute that he so testified. However, the Court should note that counsel for Lovett-Silverman asked this question without foundation, thereby apparently applying a legal standard to a layman's understanding of the term.

62. No dispute

63. No dispute as to the testimony. However, as noted, Lovett-Silverman stated in August 17, 2005 that it was going to engage in certain conduct to identify the obligations of the



The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO
info@mountainstateslawgroup.com

17

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

parties, and then testified in deposition that none of these things were done. It is not disputed that Lovett-Silverman only looked at the contract. As the Affidavit of William Gallagher notes, this process deviated from industry custom and practice.

64. No dispute

65. No dispute

66. Disputed. Lovett-Silverman, in this paragraph, must necessarily admit, and does admit, that it lied to Neal Matthews on August 17, 2005 in representing a scope of obligation and an extent of authority which did not exist. The scope of the Lovett-Silverman/USF & G contract is very much in dispute due to the discrepancy between the written contract and the apparently false statements made to Matthew in the August 17, 2005 e-mail.

67. No dispute as to what is in the interrogatory answers.

68. No dispute

69. Disputed. This is not consistent with what Lovett-Silverman represented. It is not disputed what Peters testified to. It is his credibility that is in doubt.

70. No dispute. For the record, and since L-S raises the issue, the Plaintiff spells "tortous" correctly; the Defendant incorrectly uses the spelling "tortuous," an incorrect form which Plaintiff's counsel was frequently instructed by his Jesuit research and writing professors is the "adjectival derived" from "torture," not "tort." The Plaintiff does not claim that it was tortured by L-S.

71. No dispute

72. No dispute. No demand letter is required under G.L. c. 93A §11. Lovett-Silverman is simply wrong on the law, mistaking §11(business to business) with §9 (consumer to business)



18

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

73. No dispute as to his testimony.

74. No dispute

75. No dispute

76. No dispute. The Plaintiff notes, consistent with F.R.C.P. 56(f) that this Court stayed discovery pertaining to settlement practices. The Plaintiff was barred from engaging in the discovery that would identify the twenty other subcontractors, the delta of their claims to their settlements and so forth. The Court should note that the e-mails contain vulgar and inappropriate language. When people using foul language ("my f-in vacation") and talk of "banging" subcontractors, it is entirely appropriate to refer to them as "foul-mouthed thugs" and to have serious doubts that these individuals are capable of acting in a professional and competent and responsible manner.

77. No dispute

Respectfully Submitted,
**Landworks Creations, LLC**
By its attorney,

_____
The Mountain States Law Group
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: April 17, 2007

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

## CERTIFICATE OF SERVICE

    I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing on all counsel of record by mailing the same, postage prepaid, to:

Hermes, Netburn, O'Connor & Spearing
265 Franklin Street, Seventh Floor
Boston, MA 02109
Attn: Eric C. Hipp, Esq.

Donovan Hatem
World Trade Center East
Two Seaport Lane
Boston, MA 02210
Attn: Jay Gregory, Esq.



April 17, 2007

The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO
info@mountainstateslawgroup.com