UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| LANDWORKS CREATIONS, LLC.            )<br>                                                              )<br>        Plaintiff                              )<br>                                                              )<br>v.                                                           )<br>                                                              )<br>UNITED STATES FIDELITY AND GUARANTY )<br>COMPANY and                                )<br>LOVETT-SILVERMAN CONSTRUCTION )<br>CONSULTANTS, INC.                      )<br>                                                              )<br>        Defendants                         )<br>_____)  | C.A. NO.05-CV-40072 FDS |

**REPLY OF LOVETT-SILVERMAN CONSTRUCTION CONSULTANTS, INC. TO THE PLAINTIFF'S OPPOSITION TO LOVETT-SILVERMAN CONSTRUCTION CONSULTANTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

I.   INTRODUCTION

Lovett-Silverman Construction Consultants, Inc's ("Lovett-Silverman") Reply to Landworks Creations, LLC's ("Landworks") Opposition ("Opposition") to Lovett-Silverman's ("Lovett-Silverman") Motion for Summary Judgment will not restate the arguments set out in detail in its Motion for Summary Judgment and supporting papers, which are incorporated herein by reference.  Instead, Lovett-Silverman will offer pinpointed citations to the record to correct each of Landworks' misstatements of the record, which permeate its Opposition.  We also file this Reply to voice our objection to Landworks' inappropriate reliance upon unsubstantiated expert opinion as "facts" to create material issues.  The record itself clearly establishes Lovett-Silverman's entitlement to summary judgment.

1

## II. ARGUMENT: LANDWORKS HAS NOT MET ITS BURDEN OF SHOWING THAT THERE IS A GENUINE, TRIABLE ISSUE

In motioning the Court for summary judgment, the burden is on the moving party to show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Tyler v. United States, 397 F. Supp. 2d. 176, 178 (D. Mass. 2005). If no genuine issue of material fact emerges, then the motion for summary judgment may be granted." McCarthy v. Northwest Airlines, Inc., 56 F. 3d 313, 315 (1st Cir. 1995) (internal citations omitted).

### A. Landworks' Citation of Opinion as Fact is Both Irrelevant and Inappropriate and Should Be Disregarded by the Court

In seeking to avoid summary judgment, Landworks relies heavily on the opinion of its expert, William Gallagher ("Gallagher").[1] Gallagher is a Project Manager/Owner's Representative at a construction management firm. To begin, the subject matter of Gallagher's opinion is wholly irrelevant to Landworks' claims. Moreover, Gallagher's opinion is nothing more than "conclusory allegations, improbable inferences, and unsupported speculation," and provides no grounds to defeat Lovett-Silverman's Motion for Summary Judgment. Orient Overseas Container Line v. Clark & Sons of Boston, Inc., 229 F. Supp. 2d 4, 8 (D. Mass. 2002) (granting summary judgment and disqualifying expert affidavit where non-movant used conclusory expert affidavit in support of its opposition).

---

[1] Mr. Gallagher was just identified by the Plaintiff and has not yet been deposed. From his resume, he does not appear to have substantial experience as a construction consultant.

The focus of Gallagher's opinion – whether Lovett-Silverman met an alleged objective standard of care for a construction consultant – is irrelevant to Landworks' claims of fraud, tortious interference, and violations of M.G.L. c. 93A. Moreover, it does not create a genuine issue for trial. Landworks' Statement of Facts, ¶¶ 16-21, 26, and 28 (as well as the arguments in which they are incorporated) consists entirely of Gallagher's opinion-based statements. Simply put, Gallagher's opinion has no bearing on the claims against Lovett-Silverman.

For example, paragraph 16 of the Statement of Facts (Gallagher ¶ 5) sets forth "certain tasks that [in Gallagher's opinion] are customarily performed [by a construction consultant] in order to get the work back on track and finished." The identification of these alleged customary tasks is irrelevant to the instant action because Landworks' Amended Complaint does not allege that Lovett-Silverman was in any way negligent or failed to conform its behavior to that of a reasonable construction consultant. Moreover, even if such allegations were stated in the Amended Complaint, they are irrelevant to establishing the elements of Landworks' claims of fraud, tortious interference, and violations of c. 93A.

In paragraph 9, Gallagher opines that because Lovett-Silverman did not consult with agents of various other entities including Landworks, other subcontractors, and (unnamed) Shrewsbury officials, it failed to act as a construction consultant should.[2] At all relevant times, however, Lovett-Silverman acted pursuant to its contract with USF&G and acted at UF&G's discretion. Gallagher may disagree with the directions given to Lovett-Silverman by USF&G, but this is irrelevant to Landworks' claims, and does not defeat Lovett-Silverman's motion.

Paragraph 17 (Gallagher ¶ 6) notes that, in Gallagher's opinion, it is "preferred by construction consultants and managers to ratify prior subcontractors." This opinion is irrelevant.

---

[2] Though Gallagher asserts that he reviewed Robert Bullock's deposition transcript, he fails to note that in July 2005, Mr. Bullock participated in site visit with Bob Cox, "a person that works for the Town of Shrewsbury", where they discussed Landworks' scope of work. Supplemental Statement of Facts ("SSOF") ¶ 1.

3

In fact, this opinion confirms that Landworks was not legally entitled to ratification by USF&G on the Shrewsbury Project, and that ratification was, at best, just a "preferred" practice. In any event, the decision whether to ratify or not was USF&G's alone.

Paragraph 18 (Gallagher ¶ 7) states that "[a]s a general rule in the construction industry, a subcontractor is brought back to work unless there is a compelling reason not to bring a subcontractor back to work." Paragraph 20 (Gallagher ¶ 8) further states, "[t]he fact that a subcontractor may be owed money or may be claiming to be owed money, is not, customarily, a compelling reason not to bring a subcontractor back to work." Again, Gallagher's opinion as to custom in the industry is irrelevant here. Moreover, what Gallagher and Landworks fail to note is that it is undisputed that it was not Lovett-Silverman's responsibility to determine which subcontractors are ratified and what qualifies as a compelling reason for ratification. See Lovett-Silverman Statement of Facts to its Motion for Summary Judgment ("SOF") at ¶¶ 9-10 and quotations contained therein.

Paragraph 21 (Gallagher ¶ 9) gives several examples of how "Lovett-Silverman did not engage in specific tasks customarily employed by ... consultants when taking over or assessing a project in mid-stream." Again, customs of other construction consultants and whether Lovett-Silverman engaged in these alleged customs are irrelevant to Landworks' claims of fraud, tortious interference, and violations of c. 93A.

Likewise, paragraph 22 of the Statement of Facts, which asserts that Lovett-Silverman failed "to engage in any form of reasonable or proper investigation as to the role of subcontractors" is irrelevant. Here, too, Landworks fails to recognize that Lovett-Silverman's contractual duty was to USF&G and not it.[3] Whether Lovett-Silverman performed a proper

---

[3] On the record, Landworks acknowledged that it had no contract with Lovett-Silverman. See Lovett-Silverman SOF at ¶ 14 and citation contained therein.

4

investigation into the role of subcontractors is immaterial to Landworks' allegations against it of fraud, tortious interference, and violations of M.G.L. c. 93A. Similarly, whether Lovett-Silverman employees admitted to a failure to perform to industry standards (as asserted in paragraph 23 of Landworks' Statement of Facts), which is denied, is also irrelevant.

The determination of industry standards of care through expert opinion is simply not relevant to establishing Landworks' claims in this action. Moreover, Gallagher's opinion establishes no new facts to expose a material issue to defeat Lovett-Silverman's Motion for Summary Judgment. Therefore, it should be disregarded.

**B.     Landworks Bases its Opposition Motion on Incorrect Citations to the Record**

In addition to Landworks' misguided and inappropriate use of opinion, Landworks also misstates the record in attempting to identify evidence of alleged wrongdoing of Lovett-Silverman. Correct citations to the record reveal that, contrary to Landworks' rhetoric, there are no genuine, triable issues of fact to preclude summary judgment here.

Landworks would have this Court believe, through paragraph 29 of its Statement of Facts, that Lovett-Silverman "committed fraud in its communication with Landworks ... and also that Lovett-Silverman was not acting pursuant to USF&G instructions in dealing with Landworks." Landworks makes reference to selected e-mails over a three-day period prompted by Neal Matthews of Landworks contacting Robert Bullock of Lovett-Silverman to discuss returning to the Project. Mr. Matthews admitted at his deposition that "Mr. Bullock was the only one [at Lovett-Silverman] that I had contact with. He was the only one at that time who spoke to me or communicated to me in e-mail also." SSOF ¶ 2. Mr. Matthews further admitted that the body of e-mail correspondence between himself, Lovett-Silverman employees and consultants,

5

and USF&G employees comprised the basis for Landworks' claims against Lovett-Silverman. SSOF ¶ 3.

It is undisputed that James Peters of USF&G instructed Mr. Bullock to tell Mr. Matthews that "if Landworks is interested in settling [the] legal action and resuming their work, they should communicate that desire through their counsel to Brad Carver who represents USF&G in that litigation." E-Mail of James Peters to Robert Bullock, August 18, 2005 at 10:49 a.m., attached to the Supplemental Statement of Facts at **Exhibit A**. Russell Fuller, Esquire, also of USF&G, reiterated that direction, writing to Mr. Bullock, "[p]lease let Mr. Matthews know we are willing to continue to discuss this with him, but in light of the lawsuit, discussion should go through the attorneys." SSOF ¶ 4. Landworks would have this Court believe, that *after* hearing this directive, Mr. Bullock instead simply told Mr. Matthews, "he will have to drop his law suit" in order to be ratified and return to the Project. E-Mail of Robert Bullock to Al Falango, August 17, 2005 at 2:33 p.m., recounting telephone conversation with Neal Matthews that same day, attached to the Supplemental Statement of Facts at **Exhibit A**.

In truth, Mr. Bullock's communication to Mr. Matthews regarding dropping the suit (on August 17, 2005) had occurred one day *before* Mr. Peters issued his instruction (on August 18, 2005) and two days *before* Mr. Fuller issued his instruction (on August 19, 2005). Landworks omits mention of subsequent e-mails from Mr. Bullock to Mr. Matthews (on August 19, 2005), sent *after* the instructions from Mr. Peters and Mr. Fuller, where Mr. Bullock corrected his earlier statement and wrote, "we [Lovett-Silverman] cannot deal with Landworks while the legal case is pending" and "in light of the lawsuit, discussion should go through the attorneys." E-Mail of Robert Bullock to Neal Matthews, August 19, 2005 at 8:09 a.m., attached to the

6

Supplemental Statement of Facts at **Exhibit A**;  E-Mail of Robert Bullock to Neal Matthews, August 19, 2005 at 4:36 p.m., attached to the Supplemental Statement of Facts at **Exhibit A**.

Thus, Mr. Bullock did communicate to Landworks "pursuant to USF&G instructions". See Lovett-Silverman SOF at ¶¶ 36-38 and quotations contained therein.  It is irrelevant that USF&G had no written policy in place for communicating with subcontractors, as Landworks notes.  See Lovett-Silverman SOF at ¶ 42 and quotation contained therein.  What is relevant is that James Peters and Russell Fuller, having the authority and discretion to direct USF&G's construction consultant on such communications, instructed Lovett-Silverman not to engage in any further direct correspondence or discussion with Neal Matthews.  See Lovett-Silverman SOF at ¶¶ 36-38 and citations contained therein.  Landworks itself admits (in paragraph 29 of its Statement of Facts) that it knows of no USF&G policy to the contrary; in fact, no policy requiring USF&G's consultant to discuss ongoing litigation with a subcontractor exists.

Landworks' claim, in paragraph 30 of its Statement of Facts, that Lovett-Silverman did not act in accordance with USF&G policy, is simply false.  Landworks cannot use fabricated "facts" to create a genuine issue for trial, and thus Lovett-Silverman is entitled to summary judgment.  Celotex at 477 U.S. at 324.

      C.    **Landworks Opposition Motion Attempts to Distract the Court By Including Gratuitous, Unsupported Statements as Facts**

Landworks assumes, in paragraph 34 of its Statement of Facts, that because twenty subcontractors on the Project allegedly filed suit against USF&G – without naming Lovett-Silverman - they, too, must have been "banged" by Lovett-Silverman.  First, this is irrelevant speculation.  Second, the phrase "bang", as used by Lovett-Silverman's outside consultant, Al Falango, is slang for "back charge," meaning to charge the cost of incomplete or defective work to the account of the responsible Project subcontractor.  See Lovett-Silverman SOF at ¶¶ 53-54

7

and citations to the testimony of Lovett-Silverman and USF&G deponents in this regard set forth therein. Though Landworks contends that "bang" means preventing payment of monies owed to subcontractors, this cannot be the meaning as used by Al Falango as it is undisputed that Lovett-Silverman did not have the authority under its contract with USF&G to pay or withhold payment from the subcontractors. See Lovett-Silverman SOF at ¶¶ 48-19 (discussing USF&G having responsibility for making payment to subcontractors), 56-58 (discussing Mr. Matthews' belief as to the definition of "bang.") and quotations contained therein. Therefore, it could not have engaged in "banging" Landworks even accepting Landworks' definition.

Similarly, discussion of the removal of this case from state to federal court and changes in USF&G's legal counsel add nothing to the claims against Lovett-Silverman. Lovett-Silverman was not yet a party to this action when it was removed to this Court, or when USF&G made changes to its legal representation. Discussion of removal and legal counsel only serves to distract this Court from the fact that Landworks cannot substantiate the claims of fraud, tortious interference and violations of c. 93A made against Lovett-Silverman.

Landworks also attempts to divert this Court's attention from its inability to substantiate the claims by asserting, in paragraph 36 of its Statement of Facts, that "the defendant has failed to pay the Plaintiff for work performed at the Project, to the extent of $135,101.00." Lovett-Silverman bore no responsibility for making payment for subcontractors; USF&G bore that responsibility. See Lovett-Silverman SOF at ¶¶ 48-49 and quotations contained therein. It is undisputed that it was USF&G's responsibility to pay the general contractor, who would in turn pay the subcontractors. See Lovett-Silverman SOF at ¶¶ 48-49 and quotations contained therein. Even if USF&G improperly failed to pay Landworks, this does not create a material issue to defeat Lovett-Silverman's Motion for Summary Judgment.

Landworks uses an irrelevant affidavit of its counsel, Robert Meltzer, to attempt to show that because ratification of a subcontractor occurred after the filing of a suit on a <u>different</u> project involving a <u>different</u> construction consultant, Robert Bullock of Lovett-Silverman allegedly lied to Neal Matthews. <u>See</u> Affidavit of Robert Meltzer at ¶ 6. Landworks does not say what this lie was, but it is undisputed on the record in this action that Robert Bullock communicated truthfully to Landworks and pursuant to USF&G's instruction. <u>See</u> Lovett-Silverman SOF at ¶¶ 36-40 and quotations contained therein. At no time did Mr. Bullock say that no subcontractor may be ratified while a lawsuit was pending; he simply told Mr. Matthews that he could no longer communicate with him directly and that future exchanges should go though counsel. <u>See</u> **Exhibit A**; <u>see also</u> Lovett-Silverman SOF at ¶ 40 and quotation to Robert Bullock deposition testimony contained therein. Landworks' use of an irrelevant set of unsubstantiated and unrelated facts to reveal alleged dishonesty in the instant matter shows that Landworks cannot make out any claim against Lovett-Silverman using the facts before this Court. These unfounded allegations do not create a genuine issue for trial, again making summary judgment in favor of Lovett-Silverman appropriate.

### D.    Landworks Has Not Created a Triable Issue on Its Claim of Fraud

In its Opposition Motion, Landworks has not identified any facts that would support a claim of fraud. In fact, it cannot, because the record does not contain any evidence which would support such a claim.

Landworks relies upon case law that provides, "conduct calculated to mislead and which in fact do mislead one who is acting reasonably [is] enough to constitute fraud." <u>Boston Five Cents Sav. Bank v. Brooks</u>, 309 Mass. 52, 55 (1941). Even assuming that the facts of <u>Brooks</u> are

9

in any way analogous to the facts here, which they are not, Landworks has still not provided any evidence to show that Lovett-Silverman engaged in any conduct calculated to mislead.[4]

It is undisputed in the record, and clearly established through deposition testimony and through exhibits containing e-mail communications, that Lovett-Silverman employees had no intent to mislead and did not mislead Landworks in any regard. See Supplemental Statement of Facts, **Exhibit A**; see also Lovett-Silverman SOF at ¶¶ 36-40, 42 and quotations contained therein. That USF&G instructed Lovett-Silverman to cease direct communication with Landworks because of the lawsuit, despite beginning the ratification process, does not support any claim of fraud. Lovett-Silverman informed Landworks of the change, the need to communicate through attorneys, and the reason for the change. See Lovett-Silverman SOF at ¶¶ 39-40 and quotations contained therein. Even if such conduct were to evidence fraud, which is denied, such conduct would have been cured by USF&G and Lovett-Silverman's invitation that further communication to go through counsel. See Supplemental Statement of Facts, **Exhibit A**; see also Lovett-Silverman SOF at ¶ 40 and quotations contained therein. Thus, Landworks has failed to meet its burden of creating a genuine issue for trial on its claim of fraud against Lovett-Silverman.

### E. Landworks Has Not Created a Triable Issue on Its Claim of Tortious Interference

Landworks has failed to create a triable issue with respect to its claim of tortious interference because it cannot set forth any specific facts to show that Lovett-Silverman intentionally interfered with the business relationship between Landworks and USF&G for any improper purpose or by improper means.

---

[4] Brooks involves an allegation of fraud against the maker of a promissory note in securing a payee's execution of the note.

10

Landworks alleges that it has satisfied its burden of production on this claim by simply providing its expert's opinion on the meaning of the phrase "bang." Even if "bang" meant to prevent payment of monies owed to subcontractors, as Landworks' expert asserts, it is undisputed that Lovett-Silverman was not responsible for effectuating payment to subcontractors. See Lovett-Silverman SOF at ¶¶ 48-49 and quotations contained therein. Furthermore, Landworks has not cited any facts in the record to show that Lovett-Silverman influenced or coerced USF&G into keeping payment from subcontractors. Without this essential element shown, Landworks cannot make out a claim for tortious interference. Thus, Landworks had failed to meet its burden of opposing Lovett-Silverman's Motion for Summary Judgment with respect to its tortious interference claim.

### F.    Landworks Has Not Created a Triable Issue on Its Claim of Violations of M.G.L. c. 93A

As with its claims for fraud and tortious interference, Landworks has failed to create a genuine issue of material fact with respect to its M.G.L. c. 93A claim against Lovett-Silverman. Landworks offers no facts in the record to support this claim, but only the unsubstantiated opinion of its expert. See Gallagher Affidavit at ¶¶ 27-28, 34. Citing the "construction industry" as his only source, Gallagher opines that Lovett-Silverman forced unnamed subcontractors to compromise unnamed claims or file unnamed suits to recover payment on the Project. We have already stated, in Section C of this brief, that "bang" was slang, meaning to back charge subcontractors for incomplete or defective work. Moreover, it is undisputed that Lovett-Silverman had no responsibility under its contract with USF&G to effectuate payment to subcontractors; it was solely USF&G's responsibility. See Lovett-Silverman SOF at ¶¶ 48-49 and quotations contained therein. Thus, Lovett-Silverman cannot bear responsibility for the alleged withholding of payment to subcontractors.

11

In the absence of any actual evidence, Gallagher, in his paragraph 30, suggests that the alleged high number of lawsuits from subcontractors against the Surety (and not Lovett-Silverman) is indicative of Lovett-Silverman's failure to address claims. This speculation is unsupported in the record and should be disregarded. Thus, Landworks cannot find any facts in the record to support Landworks' 93A claim or to defeat Lovett-Silverman's Motion for Summary Judgment.

### III. CONCLUSION

For all the foregoing reasons, Lovett-Silverman respectfully requests that the Court enter summary judgment in its favor.

Respectfully submitted,

LOVETT-SILVERMAN
CONSTRUCTION CONSULTANTS, INC.
By its attorneys,

/s/ Julie A. Ciollo
David J. Hatem, PC (BBO #225700)
Marianne E. Brown (BBO #668237)
Julie A. Ciollo (BBO #666080)
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
Dated: April 27, 2007                (617) 406-4500
jciollo@donovanhatem.com

01085071

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 27, 2007.

/s/ Julie A. Ciollo
Julie A. Ciollo