# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC, | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| UNITED STATES FIDELITY AND | ) C.A. No. 4:05-CV-40072-FDS |
| GUARANTY COMPANY, and | ) |
| LOVETT SILVERMAN CONSTRUCTION | ) |
| CONSULTANTS, INC. | ) |
|     Defendants. | ) |

## MOTION IN LIMINE OF THE DEFENDANT,
## UNITED STATES FIDELITY AND GUARANTY COMPANY,
## TO PRECLUDE EVIDENCE THAT ANY MORE THAN $42,030 IS DUE TO THE
## PLAINTIFF, LANDWORKS CREATIONS, LLC.

Defendant, United States Fidelity and Guaranty Company ("USF&G"), moves *in limine* to preclude any evidence that the plaintiff, Landworks Creations, LLC ("Landworks"), is owed more than $42,030 on Count I of the Amended Complaint.

### I.    FACTS

In August 2003, Landworks signed a subcontract with Standen Contracting Company, Inc. ("Standen"), for site work at the Shrewsbury Middle School Project ("Standen Subcontract"). In February 2004, Standen defaulted. In March 2004, the Town of Shrewsbury and USF&G signed a Takeover Agreement. Also in March 2004, Landworks and USF&G signed a Subcontractor Hold Agreement Conditional Partial Release ("Hold Agreement"), under which USF&G agreed to pay Landworks the net amount owed to it under the Standen Subcontract if Landworks agreed to release USF&G from any claims Landworks may have arising out of Landworks' work under the Standen Subcontract, and complete the subcontract

work subject to acceptance by the completing contractor. (Exhibit 1 – Hold Agreement). Neal Matthews admitted that he signed the Hold Agreement on behalf of Landworks. (Exhibit 2 – Deposition of Neal Matthews, February 13, 2007, p. 124, line 16-19) ("Matthews Deposition"). Thereafter, Landworks negotiated a subcontract, dated April 29, 2004, with Jackson Construction Company ("Jackson"), the new general contractor. (Exhibit 3 –Jackson Subcontract.)

In its Amended Complaint, Landworks alleges that it is owed $135,101 from USF&G for the work Landworks performed under the Standen Subcontract. (Exhibit 4 – Amended Complaint, Paragraph 9 and 10.) Count I alleges that USF&G breached its contract by failing to perform its obligations to make payment of this amount under the bond between Standen and USF&G for the benefit of Landworks. (Exhibit 4 – Amended Complaint, paragraph 17.)

## II.    DISCUSSION

The Hold Agreement states, in part, the following:

In consideration of my (our) being paid within ten days from the date of this Agreement by United States Fidelity & Guarantee or their successor or assigns (collectively Surety), the net amount of $177,614.60 due (No. 6 above) and its agreement to pay me (us) our retainage of $32,166.27 (No. 7 above) within 30 days of acceptance of the project by the Owner, the expiration of the applicable lien or claim period and Surety's actual receipt of the retainage for the Owner, I (we) hereby agree to perform the balance of the work amounting to $254,718.53 (No. 8 above) as a subcontractor in accordance with the terms and conditions of the Undersigned's subcontract with Standen Contracting Co., Inc**. In further consideration of the payment of the sum stated in No. 6 above paid by Surety and when the check has cleared the bank and has been paid, this agreement shall release and forever discharge Surety from all actions, causes of action, claims, and demands that the Undersigned … may now have or arising out of any work performed on the above-referenced project,** but only to the extent of the payment set forth in No. 6 above and through the date set forth in No. 4 above.

(Exhibit 1 – Hold Agreement) (emphasis added).

Mr. Matthews admitted that USF&G paid $177,614 to Landworks. (Matthews Deposition, p. 125, line 5-11.) Because Landworks agreed to release USF&G from all claims,

etc. arising out of its work on the Standen Subcontract once the condition (payment of $177,614) was performed, Landworks should be precluded from introducing into evidence any amount due it, except for the retainage of $32,166.[1]  Any alleged non-payment of the retainage to Landworks does not invalidate Landworks' agreement to release USF&G, because payment of the retainage was subject to any claim that USF&G or the Owner had against Landworks.  The Hold Agreement and Release also states:

> The agreement of Surety or its designee or assignee to pay retainage or any future payments is subject to any defenses or claims of the principal, the Surety or its designee or assignee has or may have arising out of the subcontract that exits now or that may arise in the future that entitle the Owner, the principal or Surety and/or its designee or its assignee to back charge, set off, or deduct from the retainage or any future payments any amounts for which the Undersigned may be or is responsible for.  The execution of this Agreement shall not waive or estop the Surety from raising any such defense or claims.

(Exhibit 1 – Hold Agreement.)

Landworks may argue that it earned additional money under the Standard Subcontract for work performed after the Hold Agreement was signed.  This is not the case because the Hold Agreement states that the continued use of Landworks as a subcontractor was at the sole discretion of the Surety with the approval of the completion contractor and/or Owner.  (Exhibit 1 – Hold Agreement.) Therefore, work that Landworks performed after the Hold Agreement was executed and after the date of the Jackson Subcontract, was performed under the Jackson Subcontract.

Landworks agreed to release USF&G from any claims it had under the Standen Subcontract if it was paid the net amount due it under the subcontract.  Any alleged non-payment of the retainage by USF&G does not void the release.  Therefore, because it received the net payment that was due, Landworks is precluded from introducing any evidence that it is owed any

---

[1] The Hold Agreement called for an additional $9,864 to be paid to Landworks for unresolved change order work, **ONLY** after the work was reviewed and negotiated if found valid.  (Exhibit 1 – Hold Agreement.)

monies under its subcontract with Standen, except for the retainage of $32,166 plus $9,864 if

proven to be owed.

### III.     CONCLUSION

Defendant, United States Fidelity and Guaranty Company, requests that this Court

preclude Landworks from introducing any evidence that it is owed more than the retainage of

$32,166, plus $9,864 if proven to be owed, under Count I and the Standen Subcontract.

<div style="margin-left:50%">

Respectfully submitted,

**UNITED STATES FIDELITY &
GUARANTY COMPANY,**
By its attorneys,

/s/ Peter G. Hermes
Peter G. Hermes, BBO No. 231840
Kevin J. O'Connor, BBO No. 555249
Cynthia J. Stephens, BBO No. 560670
HERMES, NETBURN, O'CONNOR
      & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
(617) 728-0050
(617) 728-0052 (F)

</div>

Dated:  May 2, 2008

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants (none) on May 2,
2008.

<div style="margin-left:50%">

/s/ Peter G. Hermes
Peter G. Hermes

</div>

G:\DOCS\CJS\Travelers\Landworks\TRIAL Pleadings\Motions in Limine\MIL Amt Owed LW from Standen K.doc

# EXHIBIT 1



03/23/2004  18:27   17813441848          HARTFORD ROOFING              PAGE  02

## SUBCONTRACTOR HOLD AGREEMENT
### CONDITIONAL PARTIAL RELEASE

Principal:      Standen Contracting Company, Inc.                    __Landworks__
                                                                       Subcontractor

Project:        Shrewsbury Middle School

Project Owner:  Town of Shrewsbury, MA

Claim No.:      0400SWS04129S001        Bond No.:  SW5041

I (we) am (are) a subcontractor to Standen Contracting Co., Inc. on the above-named contract for the work on the above described project. A copy of the subcontract and approved change orders are attached hereto as Exhibit A and by this reference fully incorporated herein.

| | | |
|---|---|---|
| 1. | Amount of my (our) original subcontract/purchase order: | $824,823.00 |
| 2. | Changes in subcontract amount approved by Standen Contracting Co., Inc.: | $ 73,221.00 * |
| 3. | Total or adjusted subcontract amount: | $898,044.00 |
| 4. | Value of work performed and/or approved material stored at job site through 3/1/04: | $643,325.47 |
| 5. | Total payments received from Standen Contracting Co., Inc.: | $433,544.60 |
| 6. | Net amount due through 3/1/04: | $177,614.60 |
| 7. | Retainage on No. 6 above: | $ 32,166.27 |
| 8. | Value to be performed after 3/1/04: | $254,718.53 |

In consideration of my (our) being paid within ten days from the date of this Agreement by United States Fidelity & Guarantee or their successors or assigns (collectively Surety), the net amount of $177,614.60 due (No. 6 above) and its agreement to pay me (us) our retainage of $32,166.27 (No. 7 above) within 30 days of acceptance of the project by the Owner, the expiration of the applicable lien or claim period and Surety's actual receipt of the retainage from the Owner, I (we) hereby agree to perform the balance of the work amounting to $254,718.53 (No. 8 above) as a subcontractor in accordance with the terms and conditions of the Undersigned's subcontract with Standen Contracting Co., Inc. In further consideration of the payment of the sum stated in No. 6 above paid by Surety and when the check has cleared the bank and has been paid, this agreement shall release and forever discharge Surety from all actions, causes of action, claims and demands that the Undersigned, any heirs, legal representatives, or assigns of the Undersigned may now have or arising out of any of the work performed on the above-referenced project, but only to the extent of the payment set forth in No. 6 above and through the date set forth in No. 4 above. If there are any exceptions, they are noted on the attached sheet. The Undersigned hereby agrees to perform the balance of the work as a subcontractor for the Surety or Surety's designee or assignee in accordance with the terms and conditions of the Undersigned's subcontract.

IT IS FURTHER UNDERSTOOD AND AGREED that the Undersigned, to the extent of the payment made hereunder, hereby assigns its claims for labor, material, or equipment rental, lien rights, stop notice rights and causes of action against Standen Contracting Co., Inc and the Owner to Surety with the Undersigned appointing Surety its irrevocable attorney to demand payment for and enforce payment of said liens, stop notices, and causes of action, including, but not limited to, bringing suit hereon, providing releases therefore, and taking all steps to perfect the same, and all at the Surety's sole discretion, election and expense.

IT IS FURTHER UNDERSTOOD AND AGREED that the agreement of Surety or its designee or assignee to pay retainage or any future payments is subject to any defenses or claims of the principal, the Surety or its designee or assignee has or may have arising out of the subcontract that exist now or that may arise in the future that entitle the Owner, the principal or Surety and/or its designee or its assignee to back charge, set off, or deduct from the retainage or any future payments any amounts for which the Undersigned may be or is responsible for. The execution of this Agreement shall not waive or estop the Surety from raising any such defenses or claims.

Page 1 of 2

78



IT IS FURTHER UNDERSTOOD AND AGREED that Surety is in the process of negotiations with the Owner on the referenced contract. If proper arrangements can be made with the Owner for takeover and relet of this project your subcontract, purchase order, change orders or agreement may be assigned to a new general contractor or construction manager. The continued use of you as a subcontractor on this project is at the sole discretion of Surety and is further conditioned upon approval by the completion contractor and/or Owner. If it is determined by Surety to either not use you as a subcontractor or assign your subcontract agreement, then any retainage held will be directed to you within 30 days after project acceptance and retentions are released by the Owner and received by Surety assuming there are no backcharges, setoffs or claims against you.

IT IS FURTHER UNDERSTOOD AND AGREED that the Undersigned certifies that any labor, material, and/or subcontractor furnished by the Undersigned, was actually furnished, delivered, or used in construction of the aforementioned project.

THE UNDERSIGNED FURTHER WARRANTS AND REPRESENTS AND HEREBY certifies that all just and lawful billings, accounts and/or amounts due from the undersigned and/or its subcontractors or material suppliers for labor, material, equipment employed in the performance of this contract have been fully paid in accordance with the terms and conditions of said contract(s) and that there are no amounts for which the undersigned would be responsible under the above agreement, all amounts having been fully paid and other terms of the relevant subcontract, material supply contract or purchase order having been fully complied with by the undersigned.

IT IS FURTHER UNDERSTOOD AND AGREED that the Undersigned covenants with Surety and the Owner that the money received hereby will be treated as trust moneys, and used to pay all persons or companies who have furnished labor and/or materials at the subcontractor's request on the aforementioned project, and that a good and sufficient release of all claims and waiver of lien will be obtained from all such persons or companies. In addition, all costs incurred by Surety because of failure to obtain such waiver and release of all claims, or arising from any breach of these covenants or promises made in this Agreement, including any attorney's fees reasonably incurred thereby, will be paid by the Undersigned.

IT IF FURTHER UNDERSTOOD AND AGREED that the Undersigned has carefully read this Hold Agreement and the same is signed with the proper authority as the free act and deed of said Undersigned.

DATED this 23 day of march, 2004.

(Subcontractor)

By  Neal N Maalth

Title:  Owner

DATED this 24 day of March, 2004

(Surety) VSE 9

By  _____ Senior Claim Attorney

Authorized Representative

* Additional $9,864.00 in potential change order for unresolved C/O work to be reviewed and negotiated if found valid by LSCC and Jackson CC.

## Transmittal Cover Sheet

Detailed, Grouped by Each Transmittal Number

| **Shrewsbury Middle School** | **Project #  573-000** | **Standen Contracting Inc.** |
|---|---|---|
| 45 Oak Street | Tel:  508-845-0707    Fax:  508-845-5023 | |
| Shrewsbury, MA | | |

| **Date:**    9/6/2003 | **Reference Number:  0557** |
|---|---|

| **Transmitted To** | **Transmitted By** |
|---|---|
| Neal Matthews | William Gambill |
| Landworks | Standen Contracting Company, Inc. |
| PMB 291 1500A Layayette Road | 445 Faunce Corner Road |
| Portsmouth, NH   03801 | N. Dartmouth, MA   02747 |
| Tel: 603-498-1295 | Tel: 508-998-1144 |
| Fax: 207-351-1532 | Fax: 508-998-7173 |

| **Package Transmitted For** | **Delivered Via** | **Tracking Number** |
|---|---|---|
| Returned | | |

| Item # | Qty | Item | Reference | Description | Notes | Status |
|---|---|---|---|---|---|---|
| 001 | 1.0 | Subcontracr Change Order | | | | Closed |

| Cc: | Company Name | Contact Name | Copies | Notes |
|---|---|---|---|---|
| | Standen Contracting Company, Inc. | Donna Gassett | 1 | |
| | Standen Contracting Company, Inc. | Frank Leonardo | 1 | |

### Remarks

Please find one (1) copy of the executed subcontracr for your files.

FILE C~

_William Gambill_
**Signature**

9 - 6 -03
**Signed Date**

| **_Prolog Manager_** | Printed on:  9/6/2003 | standen master | Page 1 |
|---|---|---|---|

# Standen Contracting Company Inc.

**Date:**     **August 28, 2003**                    Contract Number:    573-059

**THIS AGREEMENT,** made as of the day and year written above by and between **STANDEN CONTRACTING COMPANY, INC.** of 445 Faunce Corner Road, N. Dartmouth, MA. 02747 (hereinafter referred to as "the Contractor")

And the subcontractor:        **Landworks**
                              **PMB 291**
                              **1500A Lafayette Road**
                              **Portsmouth, NH 03801**

The Contractor has made a general contract for construction dated     **October 1, 2002**     with
The Owner:    **Town of Shrewsbury**
              **100 Maple Avenue**
              **Shrewsbury, MA 01545**

For the construction of the following project:        **Shrewsbury Middle School - West**
                                                      **45 Oak Street**
                                                      **Shrewsbury, MA 01545**

The Architect for the project is:        **Lamoureux Pagano Associates**
                                         **14 East Worcester Street**
                                         **Worcester, MA 01604**

## The Contractor and Subcontractor agree as follows:

**ARTICLE 1. THE WORK.** The Subcontractor agrees to furnish all labor, materials, equipment and all else required to perform and complete the following Work required by the general contract:  **Earthwork, Seeding & Site Demolition.**

*CODE:*     *2-100-010-S*                    *Amount: $824,823.00*

This Subcontract includes Addenda No. 1, 2, 3, 4, 5 and Alternates 1,2,3,4 & 5

This Subcontract includes Exhibit "A"  Scope of work      Dated    August 28, 2003
                         Exhibit "B"  Unit Pricing       Dated    N/A
                         Exhibit "C"  Safety Program     Dated    August 28, 2003
                         Exhibit "D"  Drawing Schedule   Dated    November 7, 2002
                         Exhibit "E"  Tax Exempt Cert.   Dated    November 4, 2002
                         Exhibit "F"  Project Schedule   Dated    Pending Issuance

All of the work is to be done in accordance with the contract documents, defined as the general contract and other contract documents enumerated therein, including general, supplementary and other conditions, drawings, specifications, addenda and modifications (all of said documents being a part of this Subcontract) and in accordance with the provisions of this Subcontract. The Subcontractor agrees to be bound to the contractor by the terms of the General contract and to assume to the Contractor, with respect to that portion of the work described above, all obligations and responsibilities that the Contractor has assumed to the Owner.

**ARTICLE 2. PAYMENT:**
2.1 The contractor agrees to pay the Subcontractor, as full payment for all Work, including labor, materials, services, equipment and transportation, the sum of:        **Eight Hundred Twenty Four Thousand Eight Hundred Twenty Three Dollars and No Cents**

95% ·

**Dollars ($824,823.00)** payable in monthly
**Payments as follows: Ninety percent (90%)** of all work performed during the previous month and for which payment has been received by the Contractor.

Final payment shall be made to the Subcontractor promptly upon receipt of final payment by the Contractor. Provided that an application for payment is actually received by the contractor from the subcontractor not later than the twentieth day of a month, the Contractor shall include the Subcontractor's Work covered by that application in the next application for payment which the contractor is entitled to submit to the Owner. The Contractor shall pay the Subcontractor each progress payment within ten working days after the Contractor receives payment from the Owner, subject to the provisions of Section 2.1 hereof

2.2 It shall be a condition precedent to the Contractor's obligation to make any payment to the Subcontractor that the Contractor shall have first received payment for the Subcontractor's Work from the Owner. The Subcontractor agrees to look only to those amounts actually received by the contractor from the Owner as the source of payment to the Subcontractor. The Subcontractor understands and agrees that the Contractor shall have no obligation to pay any sum to the Subcontractor if the Contractor shall not have received a corresponding payment from the Owner, and the Subcontractor (not the Contractor) assumes the risk of nonpayment by the Owner. Any payments that may be made by the Contractor to the Subcontractor prior to the Contractor's receipt of payment from the Owner shall be accepted by the Subcontractor solely as payment on account and shall not constitute a waiver of the provisions of this Section 2.2.

## ARTICLE 3. SUBCONTRACTOR'S OBLIGATION

3.1 The Subcontractor agrees that it shall do, perform, obtain, furnish and provide, at its own expense, all work, labor, materials, permits, tools, equipment, scaffolding and staging in a workmanlike manner and to the full satisfaction of the Architect, Contractor and Owner, and in proper cooperation with the Contractor and other Subcontractors so as not delay or otherwise interfere with or obstruct their work; that it shall provide sufficient, safe and proper facilities at all times for the Inspection of its Work; that it shall, within twenty-four hours or such reasonable time as the Contractor allows, after receiving written notice from the Contractor, at its own cost and expense, remove from the grounds or building all materials condemned by the Architect, Owner or Contractor, and to take down and/or rebuild all portions of the Work which the Architect, Owner or Contractor shall, by like written notice, condemn as unsound oz- improper, or as in any way failing to conform to the Contract Documents. Work performed and materials furnished by the Subcontractor and not approved by the Architect, Owner and Contractor shall not be accepted.

3.2 The Subcontractor shall, at its own cost and expense, apply for and obtain all necessary permits and the Subcontractor further agrees that all Work performed and materials furnished by it under this Subcontract shall comply strictly with the laws, ordinances, regulations, rules and orders of the municipal, state and federal government and of any and all of their departments, bureaus and boards in force in the locality in which the Work is done (hereinafter "the governing laws"), and that it will comply promptly with the governing laws and that it will perform the Work and furnish the materials in accordance with the governing laws whether the Work and materials to accomplish the same are or are not included and provided for in the Contract Documents; and all such Work and materials made necessary by the governing laws in order to complete the Work shall be performed and furnished without additional charge or expense to the Contractor. The Subcontractor will be responsible for all violations of the governing laws will indemnify the Contractor for any loss or damage resulting to the Contractor as a result of any such violation.

3.3 The Subcontractor shall promptly prepare and furnish all shop drawings, samples, submittals, certificates and similar information, as required, for the approval of the Architect, Engineer, Contractor and Owner and as required for the efficient, expeditious and prompt performance of the Work. The Subcontractor shall, upon the request of the Contractor, provide such reports, certificates and information to the Owner and the Architect as may be reasonably requested by them at no cost or expense to the Contractor.

3.4 The Subcontractor agrees to perform the work diligently in accordance with the directions of the Contractor and in compliance with the job schedules of the Contractor. The Subcontractor shall at all times provide a sufficient number of workers and sufficient materials and equipment to accomplish the foregoing. It is specifically understood that time is of the essence of this agreement. The Subcontractor may be held liable for all damages, costs, losses and expenses resulting directly or consequentially from its failure to meet time limits contained or referred to in the Contract Documents. A labor dispute, other than an industry-wide dispute, shall not provide an excuse for failure to meet such time limits. The Subcontractor shall promptly notify the Contractor of any anticipated delay in its Work and the cause therefor and shall also notify the Contractor of any delay anticipated in the Work of others and of any deficiency in the Work of others which may cause delay in the progress of the Subcontractor's Work. No provision in the Contract Documents shall in any way prevent or interfere with the Contractor's right to modify or change the time for the performance of the Work and the completion thereof to meet the requirements of the Contractor for the efficient completion of the Project as may be determined by the Contractor in its absolute discretion.

3.5 If any matters contained in the specifications have been omitted from the plans or vice versa, the same shall be construed as if contained in both. Any matters contained in any portion of the Contract Documents shall be construed as being part of the Work covered by this Subcontract. The Subcontractor shall promptly inform the Contractor in writing of any inconsistency in the Contract Documents or the Subcontractor shall be barred from making any claims based on such inconsistency. The decision of the Architect or the Contractor resolving any such inconsistency shall be binding on the Subcontractor and shall be deemed to be included in the Work of the Subcontract.

3.6 The Subcontractor shall, at its own expense, remove from the site all debris caused by the Work of this Subcontract as and when required by the Contractor and, if the Subcontractor fails to do so, the Contractor, without further notice, may cause such removal of debris and all amounts incurred by the Contractor in so doing shall be chargeable against any amounts due or to become due to the Subcontractor.

3.7 The Subcontractor agrees that it will remove from the Project site any worker or supervisor whose employment thereon shall be objected to by the Contractor, the Owner or the Architect.

**3.8** The Subcontractor shall promptly notify the Contractor of any actual or threatened labor dispute or difficulty. In the event that any labor dispute or difficulty arises which is related in any manner to or involves the Subcontractor's employees, agents suppliers or sub –subcontractors, thereby causing any delay, interference, or stoppage of any portion of the Work, and such delay, interference or stoppage continues for twenty-four (24) hours), the Contractor may, at its option, then, or at any time thereafter, terminate this Subcontract in accordance with the provisions of Section 4.1, and the Contractor shall thereupon have no further liability hereunder to the Subcontractor except as provided in Section 4,.1. In lieu of or prior to such termination, the Contractor may suspend the Subcontractor's right to be on the Project site or to perform any of the Work.

**3.9** At the request of the Contractor, the Subcontractor shall cooperate to the fullest extent in the resolution of labor disputes including, without limitation, and at the Subcontractor's expense, the filing of complaints with the National Labor Relations Board, State Labor Agency or other courts of competent jurisdiction, as may be appropriate, to prosecute such complaints and appear and testify and execute such affidavits and documents as may be necessary and desirable in connection therewith as well as to appear, testify and execute affidavits and documents in any proceeding brought by the Contractor.

**3.10** The Subcontractor shall be responsible for the prevention of accidents and agrees to comply with and abide by any safety program established by the Contractor or the Architect and with all laws, regulations and codes concerning safety as they shall be applicable to the Work. If the Subcontractor fails or neglects to comply with the safety program or any of the applicable laws, regulations or codes concerning safety, the Contractor may take whatever measures are necessary to bring the Subcontractor's performance into compliance and the Contractor may deduct the cost of such measures from any payments due or to become due to the Subcontractor.

**3.11 CHANGES IN THE WORK.** Without invalidating this Subcontract, the Subcontractor may be ordered in writing by the Contractor to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions including those required by modifications to the general contract. The Subcontractor shall make no claim for extension of the time for performance or for additional compensation unless done in pursuance of a written Change Order from the Contractor and such claim must be presented to the Contractor prior to the commencement of the Work affected by the Change Order. No claim for extra work or for a change in the work will be recognized or paid for unless agreed to in writing by the Contractor before the extra work is done or the change is made, such agreement to specify in detail the extra work or change to be performed and the adjustment to the Subcontract price and/or time for performance to result therefrom. Payments on account of extra work or changes shall be made as provided in the Contract Documents. At the written direction of the Contractor, the Subcontractor shall promptly perform any such extra work or change in the Work notwithstanding that a Change Order shall not have been issued, or the price has not been agreed upon. Arty dispute arising therefrom shall be subsequently resolved between the parties.

**3.12 CLAIMS.** The Subcontractor shall make no claim for additional compensation for any work done by it or by reason of any act of the Contractor during the performance of this Subcontract unless done pursuant to a **written** order from the Contractor, and notice of all such claims shall be given to the Contractor in writing before the next ensuing payment under this Subcontract after commencement of such additional Work or it shall be considered as abandoned by the Subcontractor. The Subcontractor understands that no officer, employee or other representative of the Contractor has the authority to waive compliance with this provision except as authorized by a vote of the Directors of the Contractor.

**3.13** The subcontractor agrees that it shall have no claim for money damages or additional compensation for delay no matter how caused, but for any delay or increase in the time required for the performance of this Subcontract not due to the fault of the Subcontractor, it shall be entitled only to such extension of time for performance of its Work as shall be actually allowed to the Contractor or by the Contractor.

**3.14** If, and to the extent that, reimbursement is authorized for the performance of overtime work, the amounts to be reimbursed to the Subcontractor are limited to the premium portion of the hourly rate plus taxes imposed by law. No allowance shall be permitted for any portion of fringe benefits, insurance, overhead or profit.

**3.15** The Subcontractor agrees to cause the prompt discharge and release of any claims and liens (provided that same are asserted by a sub-subcontractor or supplier of the Subcontractor or any other party claiming through the Subcontractor) against the Contractor, the Contractor's surety, the Owner and the property involved in the Work, which claims or liens are based upon or relate to the Work performed or to be performed by the Subcontractor. If the Subcontractor fails to cause the discharge of any such claim or lien after three (3) days written notice, the Contractor may cause the discharge of such claim or lien and deduct all costs, expenses and attorney's fees thereby incurred from any amounts due or to become due to the Subcontractor. If required, the Subcontractor shall provide evidence satisfactory to the Contractor that, within five (5) days after receipt of payment from the Contractor, the Subcontractor has paid or discharged all of its obligations relating in any manner to the Work and covered by such payment (including, but not limited to, any obligations for withholding taxes and fringe benefits). If the Subcontractor fails to satisfy such requirement, then, and without prejudice to any other of its rights or remedies, the Contractor may pay the same directly and deduct the amount of such payment from any sums due or to become due to the Subcontractor. The Contractor may withhold any payments thereafter coming due to the Subcontractor until such requirement has been satisfied as to all payments theretofore made.

3.16 If, and to the extent that, the Subcontractor shall do any Work based upon the direct order, direction or request of the Owner or the Architect, the Contractor shall have no liability whatsoever with respect thereto,

**3.17 WARRANTIES.** The Subcontractor warrants that all materials and equipment furnished by it will be new unless otherwise specified in the Contract Documents and that all Work will be of first-class quality, free from faults and defects and in conformance with the Contract Documents. The Subcontractor does hereby guaranty its Work and, without limiting the foregoing, agrees to make good, at no cost to the Contractor or the Owner, any and all defects due to nonconformity or imperfect workmanship or materials; and the Subcontractor shall pay for any damages resulting therefrom, including any for which the Contractor may be liable under the Contract Documents or by law. All warranties, guarantees and agreements contained in this Subcontract shall apply to any nonconformity, defect or damage, which may appear within one year from the date of the Final Completion of the Project or such longer time as may be provided in the Contract Documents. Upon written notice from the Architect, Owner or Contractor of the nature and existence of such nonconformity, defect or damage, the Subcontractor shall proceed immediately to cure such nonconformity or defect and any damage resulting therefrom. The foregoing guaranty shall be in addition to, and does not supersede, the terms of any special guaranty or warranty given by the Subcontractor or provided in the Contract Documents. It is further agreed that no payment under this Subcontract shall be proof of the proper performance of the Subcontract, either in whole or in part, nor shall any payment be construed as an acceptance of defective Work.

**3.18 INSURANCE.** The Subcontractor shall maintain Workers' Compensation Insurance as required by law and shall also purchase and maintain in force such insurance as the Contractor may require, with insurance companies approved by the Contractor. If the Contract Documents require additional insurance to be provided, the Subcontractor shall provide the same. Coverage's shall be maintained without interruption from the date of commencement of the Subcontractor's Work until the date of final payment and termination of any coverage required to be maintained after final payment. Certificates of insurance acceptable to the Contractor and naming the Contractor as an insured shall be filed with the Contractor prior to the commencement of the Subcontractor's Work. These certificates and the insurance policies required by this Section or the Contract Documents shall contain a provision that coverage's afforded thereunder will not be canceled or allowed to expire until at least thirty days' prior written notice has been given to the Contractor. If any of the insurance coverage's are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment.

## SECTION 4, CONTRACTOR'S RIGHTS AND REMEDIES

**4.1** Should the Subcontractor at any time refuse or neglect to supply a sufficient number of properly skilled workers or materials of the proper quality and quantity, or fail in any respect to prosecute the Work promptly and diligently, or fail to complete punch list work in a timely fashion, or fail to produce any documentation required by the Contract Documents (including warranties, special warranties, manuals and other submittals) in a timely fashion, or fail to perform any of the agreements on its part contained in this Subcontract or the Contract Documents, the Contractor shall be at liberty, after twenty-four (24) hours' written notice, which notice may be delivered by telecopier, to provide any such labor or materials and deduct the cost thereof from any amounts due or to become due to the Subcontractor; and the Contractor shall also be at liberty, without further notice and without prejudice to any other remedy the Contractor may have, to terminate the Subcontract and finish the Subcontractor's Work by whatever method the Contractor deems expedient. If the unpaid balance of the Subcontract sum exceeds the expense of finishing the Subcontractor's Work (including reasonable compensation for the additional architectural, managerial, professional and administrative services of both the Contractor and third parties, and reasonable attorney's fees incurred lay the Contractor, and sums charged to the Contractor for delay, damages and attorney's fees as provided in the Contract Documents), such excess shall be paid to the Subcontractor subject to other provisions of this Subcontract, including Article 2; but if such expense exceeds such unpaid balance, the Subcontractor shall pay the difference to the Contractor on demand.

**4.2** If the Subcontractor shall be adjudged a bankrupt or shall file a petition in bankruptcy or for reorganization under any provisions of the bankruptcy laws, or if such a petition is filed against the Subcontractor and is not dismissed within ten (10) days thereafter, or if the Subcontractor shall make an assignment or trust mortgage for the benefit of creditors, or if a receiver is appointed for all or a substantial portion of the Subcontractor's property or business, or if the Subcontractor seeks relief from its obligations under any applicable law or by voluntary agreement with its creditors, then, in any of such events, the Contractor may, without prejudice to any other right or remedy provided in this Subcontract or by law, terminate this Subcontract and finish the Subcontractor's obligations as provided in Section 4.1 hereof.

**4.3** Any amounts chargeable to the Subcontractor under any provision of this Subcontract may, at the election of the Contractor, be deducted from any payment or payments otherwise due or to become due to the Subcontractor under this Subcontract or any other subcontract with the Subcontractor, or the Contractor may sue the Subcontractor therefor. The Subcontractor further agrees that no portion of the Work hereunder shall be assigned or sublet without the written consent of the Contractor and any attempt to do so shall constitute an abandonment by the Subcontractor and sufficient grounds for termination of the Subcontractor as provided in Section 4.1. It is also agreed that any damage, loss, cost or expense, including attorney's fees suffered or incurred by the Contractor as a result of the failure of the Subcontractor to perform any of its obligations under this Subcontract, shall be chargeable to and paid by the Subcontractor.

**ARTICLE 5. INDEMNITY**

**5.1** To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Contractor, the Owner, the Owner's lender and the Architect, and all agents and employees of any of them, from and against any and all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from, in whole or in part, the performance of the Subcontractor's work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to injury to or destruction of tangible property, including the loss of use resulting therefrom, but only to the extent caused in whole or in part by the negligent acts or omissions of the Subcontractor, the Subcontractor's sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose, acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 5.1.

**5.2** Without limiting the provisions of section 5.1, the Subcontractor shall also indemnify and hold harmless the Contractor from and against any and all liability, loss, cost, damage and expense, including reasonable attorney's fees, based upon or arising out of: (a) any legal or equitable attachments (including, but not limited to, attachments by means of trustee process) made or attempted; (b) liens, including tax liens, asserted against the Subcontractor and served or levied upon the Contractor or Owner; or (c) any violation of law.

**ARTICLE 6. MISCELLANEOUS**

**6.1** Notwithstanding any provision anywhere in the Contract Documents to the contrary, the Contractor shall not be required to engage in any arbitration proceeding relating to the Subcontract or the Subcontractor unless the Contractor elects, in writing, to participate in such arbitration proceeding.

**6.2** Nothing contained in this Subcontract shall create any contractual relationship between the Subcontractor and the Owner nor shall it create any obligation on the part of the Owner to pay or see to the payment of any sums to the Subcontractor.

**6.3** Should any provision of this Subcontract be invalid as a matter of law or public policy, such invalidity shall affect only such provision and shall not invalidate or affect the remaining provisions of this Subcontract.

**6.4** This Subcontract shall be governed by the laws of the Commonwealth of Massachusetts applicable to contracts made and to be performed entirely within the commonwealth.

**6.5** This Subcontract constitutes the entire agreement of the parties hereto relative to the subject matter hereof and all prior negotiations with respect to and drafts of this Subcontract are merged herein. This Subcontract may not be modified or amended except by a writing signed by an officer of the Contractor.

**6.6 THE SUBCONTRACTOR HEREBY ACKNOWLEDGES AND AGREES THAT THE CONTRACTOR'S FIELD PERSONNEL DO NOT HAVE AUTHORITY TO MODIFY IN ANY WAY THE SCOPE OF THIS AGREEMENT WHERE SUCH MODIFICATION SHALL AFFECT THE PRICE TO BE PAID TO THE SUBCONTRACTOR OR WHERE SUCH MODIFICATION MAY PRODUCE A VARIANCE WITH THE CONTRACT DOCUMENTS.**

WITNESS our hands and seals, hereunto duly authorized, on the dates written below:


Standen Contracting, Inc                          Landworks
                                                        (Subcontractor)


By: _____            By: _____

    Title: _CEO_                                        Title: _Owner_
    Date: _9/4/03_                                      Date: _9/03/03_

**SHREWSBURY MIDDLE SCHOOL - WEST**

**45 OAK STREET, SHREWSBURY, MA**

**RENOVATIONS**

A. FURNISH LABOR, EQUIPMENT, MATERIALS AND SUPERVISION NECESSARY TO PERFORM THE WORK OF THE
   FOLLOWING SECTIONS IN THEIR ENTIRETY:

| | |
|---|---|
| 02060 | SITE DEMOLITION |
| 02100 | SITE PREPERATION |
| 02200 | EARTHWORK |
| 02240 | GEOTEXTILE FABRICS |
| 02250 | EROSION CONTROL |
| 02511 | BITUMINOUS CONCRETE PAVING & MARKINGS |
| 02515 | CONCRETE PAVEMENT (PREP. ONLY) |
| 02525 | GRANITE CURBING |
| 02649 | TRACER TAPE |
| 02705 | STORM DRAINAGE SYSTEMS & SEWER SYSTEMS |
| 02710 | UNDERDRAIN SYSTEM  AND SLIT DRAINAGE SYSTEM ATHLETIC FIELDS |
| 02713 | WATER SYSTEMS |
| 02930 | LAWNS AND GRASSES |

B. IN ADDITION, THE FOLLOWING ARE INCLUDED IF NOT MENTIONED ELSEWHERE. IT IS THE INTENT THAT THE ITEMS LISTED
   BELOW ARE A GENERAL GUIDELINE. IT SHOULD NOT BE CONSTRUED THAT THIS IS THE ONLY LIMIT OF WORK.  ALL WORK
   WHETHER LISTED BELOW OR NOT WILL BE IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS.
   1  DIVISION 1 - GENERAL REQUIREMENTS.
   2  SEE ATTACHED SECOND SHEET FOR FULLER SCOPE BUT NOT LIMITED TO.
   3  UNDERDRAIN SAND TO BE FURNISHED BY STANDEN CONTRACTING COMPANY, INC.
   4  MILESTONE FOR SEEDING OF ATHLETIC FIELDS IS OCTOBER 15, 2003.

C. ACKNOWLEDGE AND INCLUDE:
   1.  ALL PLANS AND SPECIFICATIONS AND ALL ALTERNATES.
   2.  ADDENDA NUMBERED #1, #2, #3, #4, & #5
   3.  CONSTRUCTION PHASING AND SCHEDULE.
   4.  PREVAILING WAGES
   5.  EQUAL EMPLOYMENT OPPORTUNITY RATIOS
   6.  UNIT PRICES ( SEE SEPARATE ATTACHMENT IF APPLICABLE)

D. PROVIDE:
   1.  INSURANCE:
       a.  LIMITS PER SPECIFICATIONS
       b.  MUST PROVIDE INSURANCE CERTIFICATES NAMING STANDEN CONTRACTING COMPANY, INC.
           AND THE TOWN OF SHREWSBURY AS ADDITIONAL INSURED.
   2.  COST BREAKDOWNS ON A.I.A. FORMAT.
   3.  CERTIFIED PAYROLL AFFIDAVITS TO BE SUBMITTED WEEKLY.
   4.  SHOP DRAWINGS AND SUBMITTALS ON A TIMELY BASIS.
       NOTE:    IF PRODUCTS SUBMITTED FOR APPROVAL ARE SUBSTITUTIONS FROM THOSE SPECIFIED, PROVIDE
                DATA OF SPECIFIED PRODUCT ALONG WITH COMPARISON INFORMATION TO PROVE EQUAL
   5.  COMPANY SAFETY PROGRAM.

STANDEN CONTRACTING COMPANY, INC.

# SHREWSBURY MIDDLE SCHOOL

## EARTHWORK EXHIBIT A

**02060,02070,02100,02200,02240,02250,02511,02515,02525,**
**02649,02705,02710,02713,02800,02808,02810,02815,02930**
WORK INCLUDES BUT IS NOT LIMITED TO THE FOLLOWING:

**NOTE:** ALL ALTERNATES HAVE BEEN ACCEPTED AND ARE TO BE INCLUDED IN BASE BID PRICING. EACH ITEM LISTED ON THIS PAGE REFERENCES WORK THROUGHOUT THE ENTIRE SITE.

| | | | | |
|---|---|---|---|---|
| | PREVAILING WAGE | | **02200** | **EARTHWORK** |
| | TAX EXEMPT | | | DEWATERING |
| | PER PLANS & SPECS | | | SET PINS AT CORNERS OF FIELDS |
| | STAGING, HOISTING, RIGGING INCLUDED | | | EXCAV. WITHIN BLDG. FOR NEW UTILITIES & FTGS |
| | | | | IMPORT, PLACE NEW SLAB BASE WITHIN BLDG |
| | | | | ADJUST SITE STRUCTURES AS REQ'D |
| | ADDENDUM NO. : 1, 2, 3, 4, 5 | | | E & B for UTILITIES,COMPLETE INCL:PIPE,MH,CB,etc., |
| | | | | WATER |
| | ENGINEERING; GIVEN INITIAL LAY-OUT POINTS BY GC | | | SEWER |
| | PERMITS/FEES | | | SITE DRAINAGE |
| | AS-BUILTS | | | BLDG.DRAINAGE |
| | SNOW REMOVAL | | | CUTS/FILLS; BRING SITE TO PROPOSED GRADE |
| | POLICE DUTY | | | BASE & PREP FOR ASPHALT AT PLOT & SIDEWALK |
| | BARRELS/BARRICADES | | | SIDEWALK BASE / PREP FOR CONC. |
| | UNLOAD REBAR | | | SITE ENCASED CONDUIT:   TRENCH & BACKFILL ONLY |
| | ACKNOWLEDGE RECEIPT OF GEOTECH DATA 00320 | | | TRENCH/BKFILL FOR CONDUIT BET. UTILITY POLES |
| | | | | UTILITY POLE BASES:   EXCAVATE & BKFILL |
| **02060** | **SITE DEMOLITION** | | | INSTALL POLE BASES |
| | REMOVE ASPHALT ; SAWCUT AS REQ'D | | | FURNISH POLE BASES |
| | REM. EXIST./ PREP FOR NEW HC SIDEWALK RAMPS | | | REPLACE PIPING UNDER GRANDSTAND |
| | DEMO ALL CHAIN LINK FENCE | | | SAVE REUSE MAT'L AT SKINNED AREAS;REPAIR FIELDS |
| | TRENCH  FOR REMOOVAL OF EXISTING GAS LINE | | | EXCAV. FOR NEW LOADING DOCK & EXT. |
| | REMOVE EXISTING GAS LINE / BACKFILL | | | EARTHWORK/BASE/etc. TO MODIFY TRACK LENGTH |
| | DEMO. LIGHT POLE BASES | | **02240** | **GEOTEXTILE FABRICS WHERE SHOWN** |
| | REM. HYDRANT, CAP | | **02250** | **EROSION CONTROL** |
| | REM. SITE CONC. PADS | | | CLEAR / GRUB |
| | REM. IRRIGATION SYS. | | | SNOW FENCING |
| | REM. BALLFIELD DRAINAGE SYS. | | | HAY BALES |
| | REM. BOCCEE COURT | | **02511** | **BIT. CONC. PAVING & MARKINGS** |
| | REM. PLAY STRUCTURE AND BASE AT COURTYARD | | | NEW BIT. CONC. OVERLAY |
| | REM. JERSEY BARRIERS | | | NEW ASPHALT TOP COURSE WHERE INDICATED |
| **02100** | **SITE PREPERATION** | | | ASPHALT CURB |
| | PREPFOR ALT #5 FIELD EVENT WORK | | | NEW TRACK SURFACED AREAS:COLDPLANE EXIST. |
| | | | | NEW TRACK SURFACED AREAS:ASPHALT TOP COAT |
| | REM. & REINST. GRANITE SIGN ("LIONS CLUB") | | | ASPHALT  @ OFF-SITE STREET PATCH |
| | RELOCATE FIELD SIGN' | | | @ PARKING LOTS & DRIVES |
| | CLEAR / GRUB | | | @ SIDEWALKS |
| | STRIP LOAM | | | @ SWALE |
| | STOCKPILE LOAM ON-SITE | | | ASPHALT PATCH |
| | RESPREAD LOAM AS REQ'D, MODIFY/ IMPORT AS REQ'D | | | PAVEMENT MARKINGS |
| | REM. & STORE GRANITE CURBING | | **02515** | **CONCRETE PAVEMENT (PREP. ONLY)** |
| | CAP EXIST. WATER WHERE SHOWN | | **02525** | **GRANITE CURBING; PER DRWGS and SPECS** |
| | DISPOSE OF EXCESS SITE MATERIAL | | **02649** | **TRACER TAPE** |
| | PREP FOR SITE PADS | | **02705** | **STORM DRAINAGE and SEWER SYSTEMS** |
| | NEW GAS LINE TRENCHING & BEDDING | | | F & I NEW GREASE TRAP |
| | REGRADE TO EXTEND LOT PAVING AS SHOWN | | | F & I NEW STORM WATER DETENTION BED |
| | ENLARGE PLANTER, PART OF GENERAL SITE PREP | | **02710** | **UNDERDRAIN SYSTEM; COMPLETE,PLANS/SPECS** |
| | RELOCATE TICKET BOOTH, INCLUDES DEMO EX. FND. | | | 3" x 10" SAND DRAIN SLIT SYSTEM |
| | RELOCATE STORAGE BUILDING, INCLS DEMO EX. FND. | | | STRIP DRAIN SYSTEM |
| | | | | SAND BED, IMPORT AS REQUIRED, MEET SPEC |
| | **INTERIOR EXCAVATION & BACKFILL** | | | LOAM, IMPORT / BLEND AS REQUIRED , MEET SPEC. |
| | GAS TRAP, HANDICAP LIFT, FOLDING PART. PIERS | | **02713** | **WATER SYSTEMS** |
| | MEZZANINE FOOTINGS. | | | F & I NEW WATER LINE; PROVIDE STREET TAP & HYD. |
| | | | **02930** | **LAWNS AND GRASSES** |

**August 28, 2003**

## Exhibit C

### <u>Standen Contracting Safety Program Acknowledgement</u>

Attached to and constituting an integral part of the subcontract between Standen Contracting Co., Inc., as the contractor, and **LANDWORKS** as the subcontractor, with respect to the Project known as the Wrentham Public Safety Complex.

Representation from the subcontractor is in the form of a person, who is in a supervisory position with the subcontractor's firm, is required at all weekly Safety Meetings conducted by Standen's Project Superintendent. Attendance will be monitored by means of a sign-in sheet. This requirement will be waived if the subcontractor produces a Company Safety Plan, which is acceptable to Standen Contracting. If one exists, the subcontractor should submit its Company Safety Plan to Standen Contracting for review and record. Standen Contracting will inform the subcontractor in writing as to the status on acceptability.

For any breach of violation of the terms or provisions of any program or law referred t in the subcontract by any employee, agent, materialman, supplier or contractor of subcontractor. Which breach, as determined by Contractor, Contractor shall have the right, in addition to all other rights and remedies available to Contractor as a result thereof, and in addition to anything else contained in the subcontract, to assess against subcontractor a fine according to the Schedule of Fines attached hereto. If subcontractor shall fail to pay Contractor the amount of any such fine upon demand, Contractor may deduct the amount of any such fine from the next or any succeeding payment due subcontractor under the subcontract.

It is understood and agreed that nothing herein contained is intended to relieve the subcontractor of its legal and contractual obligations to comply with the subcontract. The Contractor is not assuming the responsibility of enforcement, inspection, or policing for safety compliance, all of which remain with the subcontractor. If, however, Contractor does find violations, Contractor, in addition to the other remedies afforded Contractor, has the right to assess fines as aforesaid.

Subcontractor acknowledges that the fines set forth on the Schedule of Fines are reasonable and appropriate in order to encourage compliance with all safety programs and laws.

## Safety Violation Assessment Schedule

| Violation | Warning | 2nd Offense | 3rd Offense | 4th Offense |
|---|---|---|---|---|
| Guardrails / Staging | No $ | $50.00 | $100.00 | $200.00 |
| Floor Openings Roof Perimeter & Barricades | $50.00 | $100.00 | $200.00 | $500.00 |
| Compressed Gas | $100.00 | $200.00 | $500.00 | Dismissal |
| Electrical Panel | $50.00 | $100.00 | $200.00 | Dismissal |
| Ladder | No $ | $50.00 | $100.00 | $200.00 |
| Clothing (protective) | No $ | $50.00 | $100.00 | Dismissal |
| Housekeeping | No $ | $50.00 | $100.00 | $200.00 |
| Power Tool | No $ | $50.00 | $100.00 | $200.00 |
| Fire Prevention | $50.00 | $100.00 | $200.00 | Dismissal |
| Non-Attendance of Required Safety Meetings | No $ | $50.00 Per Employee | $50.00 Per Employee | $50.00 Per Employee |



Summary Log, Grouped by Discipline

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Shrewsbury Middle School**<br>45 Oak Street<br>Shrewsbury, MA | | | **Project #  573-000**<br>Tel:    Fax | | | | | **Standen Contracting Inc.** |

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|---|---|---|---|---|---|---|---|---|---|
| **Architectural** | | | | | | | | | |
| A1.1 | 0 | Legend, Partition Types and Master Plans | 7/1/2002 | | 100 | | Construction Set | | |
| A10.1 | 0 | Millwork | 7/1/2002 | | 100 | | Construction Set | | |
| A10.2 | 0 | Millwork | 7/1/2002 | | 100 | | Construction Set | | |
| A10.3 | 0 | Millwork | 7/1/2002 | | 100 | | Construction Set | | |
| A10.4 | 0 | Millwork Sections and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A10.5 | 0 | Existing Millwork and Misc. Details | 7/1/2002 | | 100 | | Construction Set | | |
| A11.1 | 0 | Door Schedule | 7/1/2002 | | 100 | | Construction Set | | |
| A11.2 | 0 | Door Schedule, Hollow Metal Frame Types and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A12.1 | 0 | Room Finish Schedule | 7/1/2002 | | 100 | | Construction Set | | |
| A12.2 | 0 | Room Finish Schedule and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A2.1 | 0 | Roof Plan and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A3.1 | 0 | Ground Floor Plan | 7/1/2002 | | 100 | | Construction Set | | |
| A3.2 | 0 | First Floor Plan, Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| A3.3 | 0 | First Floor Plan, Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| A3.4 | 0 | First Floor Plan, Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| A3.5 | 0 | First Floor Plan, Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| A4.1 | 0 | Ground Floor Reflected Ceiling Plan | 7/1/2002 | | 100 | | Construction Set | | |
| A4.2 | 0 | First Floor Reflected Ceiling Plan, Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| A4.3 | 0 | First Floor Reflected Ceiling Plan, Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| A4.4 | 0 | First and Second Floor Reflected Ceiling Plan, Section C-C | 7/1/2002 | | 100 | | Construction Set | | |



**Current Drawing List**
Summary Log, Grouped by Discipline

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|--------|-----|-------|----------|----------|------------|--------|----------|---------------|----------|
| A4.5 | 0 | First Floor Reflected Ceiling Plan, Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| A5.1 | 0 | Exterior Elevations | 7/1/2002 | | 100 | | Construction Set | | |
| A5.2 | 0 | Exterior Elevations | 7/1/2002 | | 100 | | Construction Set | | |
| A5.3 | 0 | Exterior Elevations /Building Sections and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A6.1 | 0 | Wall Sections and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A6.2 | 0 | Canopy Sections, Elevations and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A6.3 | 0 | Aluminum Windows, Curtain Wall Door Entry Frame Types & Details | 7/1/2002 | | 100 | | Construction Set | | |
| A6.4 | 0 | Miscellaneous Details | 7/1/2002 | | 100 | | Construction Set | | |
| A7.1 | 0 | Stair Plans, Sections and Details | 7/1/2002 | | 100 | | Construction Set | | |
| A8.1 | 0 | Toilet Room Plans and Elevations /Interior Elevations | 7/1/2002 | | 100 | | Construction Set | | |
| A8.2 | 0 | Corridor Elevations | 7/1/2002 | | 100 | | Construction Set | | |
| A9.1 | 0 | Kitchen Equipment Plan | 7/1/2002 | | 100 | | Construction Set | | |
| D1.1 | 0 | Demolition Plans | 7/1/2002 | | 100 | | Construction Set | | |
| D1.2 | 0 | First Floor Demolition Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.1 | 0 | Existing Conditions Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.10 | 0 | Enlarged Plans, Planting Plan and Details (Alternates) | 7/1/2002 | | 100 | | Construction Set | | |
| L1.2 | 0 | Site Preparation /Demolition Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.3 | 0 | Site Grading & Utility Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.4 | 0 | Irrigation Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.5 | 0 | Layout and Materials Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.6 | 0 | Enlarged Site Plan & Details | 7/1/2002 | | 100 | | Construction Set | | |
| L1.7 | 0 | Planting Plan | 7/1/2002 | | 100 | | Construction Set | | |
| L1.8 | 0 | Miscellaneous Details | 7/1/2002 | | 100 | | Construction Set | | |
| L1.9 | 0 | Alternates | 7/1/2002 | | 100 | | Construction Set | | |

**Electrical**

| | | | | | | | | | |
|--------|-----|-------|----------|----------|------------|--------|----------|---------------|----------|
| CT0.1 | 0 | Comm-Tech Legend & Notes | 7/1/2002 | | 100 | | Construction Set | | |
| CT1.1 | 0 | Comm-Tech Ground Floor - | 7/1/2002 | | 100 | | Construction Set | | |

**Current Drawing List**
Summary Log, Grouped by Discipline

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|---|---|---|---|---|---|---|---|---|---|
| | | Section A-A & B-B | | | | | | | |
| CT1.2 | 0 | Comm-Tech First Floor - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| CT1.3 | 0 | Comm-Tech First Floor - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| CT1.4 | 0 | Comm-Tech First Floor - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| CT1.5 | 0 | Comm-Tech First Floor - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| CT2.1 | 0 | Comm-Tech Detail Sheet | 7/1/2002 | | 100 | | Construction Set | | |
| CT2.2 | 0 | Comm-Tech Part Plans & Elevations | 7/1/2002 | | 100 | | Construction Set | | |
| CT2.3 | 0 | Comm-Tech Part Plans & Elevations & Risers | 7/1/2002 | | 100 | | Construction Set | | |
| E0.1 | 0 | Electrical Legend, Notes & Drawing List | 7/1/2002 | | 100 | | Construction Set | | |
| E0.2 | 0 | Electrical Site Plan | 7/1/2002 | | 100 | | Construction Set | | |
| E0.3 | 0 | Electrical Lighting Details & Schedules | 7/1/2002 | | 100 | | Construction Set | | |
| E1.1 | 0 | Electrical Demolition Part Plan | 7/1/2002 | | 100 | | Construction Set | | |
| E1.2 | 0 | Electrical First Floor Demolition | 7/1/2002 | | 100 | | Construction Set | | |
| E2.1 | 0 | Electrical Lighting Plan Ground Floor - Section A-A, B-B | 7/1/2002 | | 100 | | Construction Set | | |
| E2.2 | 0 | Electrical Lighting Plan First Floor - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| E2.3 | 0 | Electrical Lighting Plan First Floor - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| E2.4 | 0 | Electrical Lighting Plan First Floor - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| E2.5 | 0 | Electrical Lighting Plan First Floor - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| E3.1 | 0 | Electrical Power Plan Ground Floor - Section A-A & B-B | 7/1/2002 | | 100 | | Construction Set | | |
| E3.2 | 0 | Electrical Power Plan First Floor - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| E3.3 | 0 | Electrical Power Plan First Floor - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| E3.4 | 0 | Electrical Power Plan First Floor - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |

**Current Drawing List**
Summary Log, Grouped by Discipline

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|-------|-----|-------|----------|----------|------------|--------|----------|---------------|----------|
| E3.5 | 0 | Electrical Power Plan First Floor - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| E3.6 | 0 | Electrical Roof Plan | 7/1/2002 | | 100 | | Construction Set | | |
| E4.1 | 0 | Electrical Power Riser and Schedules | 7/1/2002 | | 100 | | Construction Set | | |
| E4.2 | 0 | Electrical Miscellaneous Schedules | 7/1/2002 | | 100 | | Construction Set | | |
| E4.3 | 0 | Electrical Mechanical Scedules | 7/1/2002 | | 100 | | Construction Set | | |
| E4.4 | 0 | Electrical Kitchen Equipment Schedule & Details | 7/1/2002 | | 100 | | Construction Set | | |
| E4.5 | 0 | Electrical Miscellaneous Riser Diagrams & Details | 7/1/2002 | | 100 | | Construction Set | | |
| E4.6 | 0 | Electrical Telecommunications Riser & Miscellaneous Details | 7/1/2002 | | 100 | | Construction Set | | |

**Fire Protection**

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|-------|-----|-------|----------|----------|------------|--------|----------|---------------|----------|
| F0.1 | 0 | Fire Protection Legend Details & Hydraulic Info. | 7/1/2002 | | 100 | | Construction Set | | |
| F1.1 | 0 | Fire Protection Ground Floor - Section A-A & B-B | 7/1/2002 | | 100 | | Construction Set | | |
| F1.2 | 0 | Fire Protection First Floor - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| F1.3 | 0 | Fire Protection First Floor - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| F1.4 | 0 | Fire Protection First Floor - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| F1.5 | 0 | Fire Protection First Floor - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| F1.6 | 0 | Fire Protection Second Floor - Section C-C & D-D | 7/1/2002 | | 100 | | Construction Set | | |

**Mechanical**

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|-------|-----|-------|----------|----------|------------|--------|----------|---------------|----------|
| BC1.0 | 0 | Building Control Legend & Notes | 7/1/2002 | | 100 | | Construction Set | | |
| BC1.1 | 0 | Building Control Diagrams | 7/1/2002 | | 100 | | Construction Set | | |
| BC1.2 | 0 | Building Control Diagrams | 7/1/2002 | | 100 | | Construction Set | | |
| BC1.3 | 0 | Building Control Diagrams | 7/1/2002 | | 100 | | Construction Set | | |

**Current Drawing List**
Summary Log, Grouped by Discipline

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|---|---|---|---|---|---|---|---|---|---|
| BC1.4 | 0 | Building Control Diagrams | 7/1/2002 | | 100 | | Construction Set | | |
| BC1.5 | 0 | Building Control Diagrams | 7/1/2002 | | 100 | | Construction Set | | |
| H0.0 | 0 | HVAC Legends & Notes | 7/1/2002 | | 100 | | Construction Set | | |
| H2.0 | 0 | Ground and First Floor HVAC Demolition Plans | 7/1/2002 | | 100 | | Construction Set | | |
| H2.1 | 0 | Ground Floor Plan HVAC Ductwork - Section A-A & B-B | 7/1/2002 | | 100 | | Construction Set | | |
| H2.2 | 0 | First Floor Plan HVAC Ductwork - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| H2.3 | 0 | First Floor Plan HVAC Ductwork - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| H2.4 | 0 | First Floor Plan HVAC Ductwork - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| H2.5 | 0 | First Floor Plan HVAC Ductwork - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| H2.6 | 0 | Roof HVAC Plan | 7/1/2002 | | 100 | | Construction Set | | |
| H3.1 | 0 | Ground Floor Plan HVAC Piping - Section A-A & B-B | 7/1/2002 | | 100 | | Construction Set | | |
| H3.2 | 0 | First Floor Plan HVAC Piping - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| H3.3 | 0 | First Floor Plan HVAC Piping - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| H3.4 | 0 | First Floor Plan HVAC Piping - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| H3.5 | 0 | First Floor Plan HVAC Piping - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| H4.1 | 0 | HVAC Part Plans and Details | 7/1/2002 | | 100 | | Construction Set | | |
| H5.1 | 0 | HVAC Details Sheet 1 | 7/1/2002 | | 100 | | Construction Set | | |
| H5.2 | 0 | HVAC Details Sheet 2 | 7/1/2002 | | 100 | | Construction Set | | |
| H5.3 | 0 | HVAC Details Sheet 3 | 7/1/2002 | | 100 | | Construction Set | | |
| H6.1 | 0 | HVAC Schedules Sheet 1 | 7/1/2002 | | 100 | | Construction Set | | |
| H6.2 | 0 | HVAC Schedules Sheet 2 | 7/1/2002 | | 100 | | Construction Set | | |
| H6.3 | 0 | HVAC Schedules Sheet 3 | 7/1/2002 | | 100 | | Construction Set | | |

**Plumbing**

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|---|---|---|---|---|---|---|---|---|---|
| P0.1 | 0 | Plumbing Legend | 7/1/2002 | | 100 | | Construction Set | | |

**Current Drawing List**
Summary Log, Grouped by Discipline

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|---|---|---|---|---|---|---|---|---|---|
| P0.2 | 0 | Plumbing Diagrams | 7/1/2002 | | 100 | | Construction Set | | |
| P1.1 | 0 | Plumbing Underground - Demolition | 7/1/2002 | | 100 | | Construction Set | | |
| P1.2 | 0 | Plumbing Ground Floor - Demolition | 7/1/2002 | | 100 | | Construction Set | | |
| P1.3 | 0 | Plumbing First Floor - Demolition | 7/1/2002 | | 100 | | Construction Set | | |
| P2.1 | 0 | Plumbing Ground Floor - Section A-A /B-B | 7/1/2002 | | 100 | | Construction Set | | |
| P2.2 | 0 | Plumbing First Floor - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| P2.3 | 0 | Plumbing First Floor - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| P2.4 | 0 | Plumbing First Floor - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| P2.5 | 0 | Plumbing First Floor - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| P3.1 | 0 | Plumbing Enlarged Kitchen Plan & Diagrams | 7/1/2002 | | 100 | | Construction Set | | |

**Structural**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| S1.1 | 0 | Lower Foundation Plan - Section A-A and B-B | 7/1/2002 | | 100 | | Construction Set | | |
| S2.1 | 0 | Main Level Foundation Plan Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| S2.2 | 0 | Main Level Foundation Plan Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| S2.3 | 0 | Main Level Foundation Plan Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| S2.4 | 0 | Main Level Foundation Plan Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| S2.5 | 0 | Main Level Foundation Plan Sections | 7/1/2002 | | 100 | | Construction Set | | |
| S3.1 | 0 | Roof Framing Plan - Section A-A | 7/1/2002 | | 100 | | Construction Set | | |
| S3.2 | 0 | Roof Framing Plan - Section B-B | 7/1/2002 | | 100 | | Construction Set | | |
| S3.3 | 0 | Roof Framing Plan - Section C-C | 7/1/2002 | | 100 | | Construction Set | | |
| S3.4 | 0 | Roof Framing Plan - Section D-D | 7/1/2002 | | 100 | | Construction Set | | |
| S3.5 | 0 | Roof Framing Sections | 7/1/2002 | | 100 | | Construction Set | | |

**Current Drawing List**
Summary Log, Grouped by Discipline

| Numbe | Rev | Title | Rev Date | Bulletin | % Complete | Status | Category | General Notes | Ref RFIs |
|-------|-----|-------|----------|----------|------------|--------|----------|---------------|----------|
| S3.6 | 0 | Roof Framing Sections | 7/1/2002 | | 100 | | Construction Set | | |
| S4.1 | 0 | Auditorium, Gymnasium and Boys Locker Room Framing | 7/1/2002 | | 100 | | Construction Set | | |
| S5.1 | 0 | Wall Anchor Details | 7/1/2002 | | 100 | | Construction Set | | |
| S6.1 | 0 | Typical Details and General Notes | 7/1/2002 | | 100 | | Construction Set | | |

1 508 842 0587
10/08/02  12:36 FAX 1 508 842 0587    SHREWS TOWN HALL _                      ☑ 001

# EXHIBIT E

ST-2

### MASSACHUSETTS DEPARTMENT OF REVENUE

### CERTIFICATE OF EXEMPTION



Certification is hereby made that the organization herein named is an exempt purchaser under General Laws, Chapter 64H, Sections 6(d) and (e). All purchases of tangible personal property by this organization are exempt from taxation under said chapter to the extent that such property is used in the conduct of the business of the purchaser. Any abuse or misuse of this certificate by any tax-exempt organization or any unauthorized use of this certificate by any individual constitutes a serious violation and will lead to revocation. Willful misuse of this Certificate of Exemption is subject to criminal sanctions of up to 1 year in prison and $10,000 ($50,000 for corporations) in fines. (See reverse side).

TOWN OF SHREWSBURY
100 MAPLE AVENUE
SHREWSBURY, MA. 01545

EXEMPTION NUMBER E
046-001-300
ISSUE DATE
01/04/89
CERTIFICATE EXPIRES ON
NONE

NOT ASSIGNABLE OR TRANSFERABLE

COMMISSIONER OF REVENUE
STEPHEN W. KIDDER

# NOVEMBER 4, 2002

# STANDEN CONTRACTING CO., INC.

**445 Faunce Corner Road**

**North Dartmouth, MA 02747**

**Tel (508) 998-1144     Fax (508) 998-7173**

# LETTER OF TRANSMITTAL

| DATE: | 10/30/2003 |
|---|---|
| PROJECT NO: | **573-000** |
| ATTENTION: | Neal Matthews |
| PROJECT: | Shrewsbury Middle Schl. |
| | 45 Oak Street |
| | Shrewsbury, MA  01545 |

**TO:**     LANDWORKS

PMB 291  1500A Lafayette Road

Portsmouth, NH 03801

Tel:  603 498-1295

Fax:  207 351-1532

**WE ARE SENDING YOU THE FOLLOWING ITEMS:**     **Via:**     US Mail

☐ PLANS          ☐ PCO               ☐ SHOPDRAWINGS     ☐ SPECIFICATIONS
☐ CONTRACT    ☐ COPY OF LETTER    ☐ SAMPLES          ☒ OTHER     CO-01

| COPIES | DATED | NO. | DESCRIPTION |
|---|---|---|---|
| | | | |
| 1 | | | Signed CO-01 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**THESE ARE TRANSMITTED AS INDICATED BELOW:**

☒ FOR YOUR USE            ☐ APPROVED              ☐ RETURN       ☐ CORRECTED PRINTS
☐ FOR APPROVAL           ☐ APPROVED AS NOTED     ☐ SUBMIT - - -  ☐ COPIES FOR RECORD
☐ AS REQUESTED           ☐ REJECTED              ☐ RESUBMIT -    ☐ COPIES FOR APPROVAL
☐ FOR REVIEW AND COMMENT ☐ FOR BIDS DUE

**REMARKS:**

COPY TO: File                              SIGNED:

**THANK YOU**

Patrick Mburu/Assistant PM

## Subcontract Change Order

Detailed, Grouped by Each Number

**Shrewsbury Middle School**                **Project # 573-000**                **Standen Contracting Inc.**
45 Oak Street                                          Tel: 508-845-0707    Fax: 508-845-5023
Shrewsbury, MA

**Date: 10/17/2003**
**To Subcontractor/Vendor:**                    **Architect's Project No:**
Landworks                                               **Contract Date:**        8/28/2003
PMB 291 1500A Layayette Road                **Contract Number:  059**
Portsmouth, NH  03801                          **Change Order Number:  001**

**The Contract is hereby revised by the following items:**

Interior Excavation

| PCO | Item # | Description | Amount |
|-----|--------|-------------|--------|

This will be a backcharge to 3-100-11B.

| | |
|---|---|
| The original Contract Value was............................................................................. | 824,823 |
| Sum of changes by prior Subcontract Change Orders................................................... | 0 |
| The Contract Value prior to this Subcontract Change Order was.......................................... | 824,823 |
| The Contract Value will be changed by this Subcontract Change Order in the amount of................ | 6,221 |
| The new Contract Value including this Subcontract Change Order will be............................... | 831,044 |
| The Contract duration will be changed by.......................................................... | 0 Days |
| The revised Substantial Completion date as of this Subcontract Change Order is....................... | |

Standen Contracting Company, Inc.                              Landworks

CONTRACTOR                                                   SUBCONTRACTOR/VENDOR
445 Faunce Corner Road                                        PMB 291 1500A Layayette Road
N. Dartmouth, MA  02747                                       Portsmouth, NH  03801
Address                                                       Address
By    _WILLIAM GAMBILL_                            By   _Neal H. Matthews / Landworks_
SIGNATURE   _Will. Gambill_                          SIGNATURE  _Neal H Matth_
DATE    _10-30-03_                                      DATE    _10/23/03_

# *L*ANDWORKS

**PMB 291**
**1500A LAFAYETTE RD.**
**PORTSMOUTH, NH 03801**
**(603) 498-1295**

October 14, 2003

William Gambill
Standen Contracting Company, Inc.
445 Faunce Corner Road
North Dartmouth, MA 02747

## Change order for Shrewsbury Middle School

Change order SMS0103
Fill existing catch basin at home plate of baseball field.                    $  250.00

Change order SMS0203
Add new flat concrete slab top and frame and cover to
manhole at outfield of baseball field.                                          $  600.00

Change order SMS0303
Corresponding slip work attached to invoice # 108.                             $6,220.74

*STANDEN*
*C.O. No. 001*

Please issue change order from your office corresponding to above referenced work for payment on
October application for payment.

Thank you,
Neal H. Matthews

# Invoice

**Landworks**

PMB 291
1500 A Lafayette Rd.
Portsmouth, NH 03801

| DATE | INVOICE NO. |
|------|-------------|
| 10/14/2003 | 108 |

| BILL TO |
|---------|
| Standen Contracting Company, Inc.<br>445 Faunce Corner Road<br>North Dartmouth, MA. 02747 |

| | TERMS | PROJECT |
|---|-------|---------|
| | Net 15 | Shrewsbury Mi... |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| Job work order 1004 | 6 | 52.58 | 315.48 |
| | 3 | 95.00 | 285.00 |
| Job work order 1006 | 14 | 52.58 | 736.12 |
| | 1 | 95.00 | 95.00 |
| Job work order 1008 | 7 | 52.58 | 368.06 |
| | 6 | 52.58 | 315.48 |
| | 1 | 95.00 | 95.00 |
| Job work order 1009 | 9 | 52.58 | 473.22 |
| Job work order 1011 | 16 | 52.58 | 841.28 |
| Job work order 1012 | 13 | 52.58 | 683.54 |
| Job work order 1013 | 4 | 52.58 | 210.32 |
| Job work order 1014 | 1 | 95.00 | 95.00 |
| | 1 | 135.00 | 135.00 |
| Job work order 1016 | 18 | 52.58 | 946.44 |
| Job work order 1018 | 10 | 52.58 | 525.80 |
| | 1 | 100.00 | 100.00 |

| | Total | $6,220.74 |
|---|-------|-----------|

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1016

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|

DATE OF ORDER: 9/16/03

STARTING DATE: 9/16/03

BILL TO: *STANDEN CONTRACTING*

ORDER TAKEN BY:

ADDRESS:

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

CITY:

JOB NAME AND LOCATION: *SHREWSBURY MIDDLE SCHOOL*

JOB PHONE:

DESCRIPTION OF WORK:

*EXCAVATE 23.5' X 12' AREA FOR FREEZER*
*UNIT IN CAFETERIA.*

*4 LABORERS 4½ HRS    7:00 - 1:30 RY*

*FB2 Rock Charge To Hole Story*

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

| DATE COMPLETED | WORK ORDERED BY |
|---|---|

Signature _____

☐ No one home   ☐ Total amount due for above work: or   ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

---

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1018

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|

DATE OF ORDER:

STARTING DATE: 10/13/03

BILL TO: *STANDEN CONTRACTING*

ORDER TAKEN BY:

ADDRESS:

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

CITY:

JOB NAME AND LOCATION: *SHREWSBURY MIDDLE SCHOOL*

JOB PHONE:

DESCRIPTION OF WORK:

*BACKFILL PLUMBING IN OLD WEIGHT R...*

*2ⁿᵈ 5 LABORERS*
*1 COMPACTOR*

*Bac K Charge To Hole Story*
*3 - 7:00 - ... FB2*

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

| DATE COMPLETED | WORK ORDERED BY |
|---|---|

Signature _____

☐ No one home   ☐ Total amount due for above work: or   ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1013

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|
| | | | | 8/26/03 |

DATE OF ORDER

BILL TO

ORDER TAKEN BY

ADDRESS  *STANDON CONTRACTING*

CITY

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

JOB NAME AND LOCATION  *SHREWSBURY MIDDLE SCHOOL*

JOB PHONE

DESCRIPTION OF WORK:

*GRADE FLOOR in Rm #312*

*2 LABORERS   2 HRS*

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED      WORK ORDERED BY

Signature _____

☐ No one home  ☐ Total amount due for above work; or  ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

---

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1014

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|
| | | | | 9/5/03 |

DATE OF ORDER

BILL TO  *STANDON CONTRACTING*

ORDER TAKEN BY

ADDRESS

CITY

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

JOB NAME AND LOCATION  *SHREWSBURY MIDDLE SCHOOL*

JOB PHONE

DESCRIPTION OF WORK:

*REMOVE VENTS FROM ROOF AND PUT IN DUMPSTER, CLEAN VENTS OFF GROUND.*

*1 LOADER   1 HR*
*1 BOBCAT   1 HR*

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED      WORK ORDERED BY

Signature _____

☐ No one home  ☐ Total amount due for above work; or  ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1011

| DATE OF ORDER | | | |
|---|---|---|---|

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|
| | | | | 8/22/03 |

BILL TO  *STANDON Contracting*

ADDRESS

CITY  *SHREWSBURY MIDDLE SCHOOL*

JOB NAME AND LOCATION

ORDER TAKEN BY

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

JOB PHONE

DESCRIPTION OF WORK:

*Fill Cafateria Floor at Grease Trap + Plumbing,*

*2 Laborers 8 hrs*

*FB2*

*Back Change To Hole Story*

| TOTAL MATERIALS | |
|---|---|
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED          WORK ORDERED BY

Signature _____

☐ No one home   ☐ Total amount due for above work: or   ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

---

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1012

| DATE OF ORDER | | | |
|---|---|---|---|

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|
| | | | | 8/25/0 |

BILL TO  *STANDON*

ADDRESS

CITY  *SHREWSBURY MIDDLE Sch.*

JOB NAME AND LOCATION

ORDER TAKEN BY

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

JOB PHONE

DESCRIPTION OF WORK:

*GRADE CAFATERIA FLOOR,*

*2 LABORERS 6½ HRS*

*FB2*

*Back Charge To Hole Story*

| TOTAL MATERIALS | |
|---|---|
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED          WORK ORDERED BY

Signature _____

☐ No one home   ☐ Total amount due for above work: or   ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1008

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|
| | | | | 8/20/03 |

DATE OF ORDER

BILL TO STANDEN CONTRACTING

ORDER TAKEN BY

ADDRESS

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

CITY SHREWSBURY MIDDLE SCHOOL

JOB NAME AND LOCATION

JOB PHONE

DESCRIPTION OF WORK:

GRADE CAFATERIA FLOOR

1 LABORER 17 HRS
2 LABORER 3 HRS
1 BOBCAT 1 HR

Back Charge
To Hole Story
FBL

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED   /   /   WORK ORDERED BY

Signature _____

☐ No one home   ☐ Total amount due for above work: or   ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

---

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

JOB WORK ORDER
1009

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|
| | | | | 8/21/03 |

DATE OF ORDER

BILL TO STANDEN CONTRACTING

ORDER TAKEN BY

ADDRESS

☑ DAY WORK
☐ CONTRACT
☐ EXTRA

CITY SHREWSBURY MIDDLE SCH.

JOB NAME AND LOCATION

JOB PHONE

DESCRIPTION OF WORK:

GRADE CAFATERIA FLOOR,

3 LADORERS 3HRS.

Back to Hole Story
FBL.

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED   /   /   WORK ORDERED BY

Signature _____

☐ No one home   ☐ Total amount due for above work: or   ☐ Total billing to be mailed after completion of work

I hereby acknowledge the satisfactory completion of the above described work.

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

**JOB WORK ORDER**

**1004**

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|

DATE OF ORDER: 8/13/03

ORDER TAKEN BY

BILL TO: Standen Contracting

ADDRESS:

CITY: Shrewsbury Middle School

JOB NAME AND LOCATION

- ☑ DAY WORK
- ☐ CONTRACT
- ☐ EXTRA

JOB PHONE

DESCRIPTION OF WORK:

Back Change To ~~~~~~

GCA Clean up Back of

mechanical area 2-100-05 R

3 HRS 2 LABORERS
3 HRS 1 BOBCAT

FBL

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED

WORK ORDERED BY

☐ No one home  ☐ Total amount due for above work; or  ☐ Total billing to be mailed after completion of work

Signature _____

I hereby acknowledge the satisfactory completion of the above described work.

---

**LANDWORKS**
PMB 291
1500A Lafayette Rd.
Portsmouth, NH 03801
**603-498-1295**

**JOB WORK ORDER**

**1006**

DATE OF ORDER

| CUSTOMER'S ORDER NO. | PHONE | MECHANIC | HELPER | STARTING DATE |
|---|---|---|---|---|

STARTING DATE: 8/13/03

ORDER TAKEN BY

BILL TO: STANDEN CONTRACTING

ADDRESS:

CITY: SHREWSBURY MIDDLE SCHOOL

JOB NAME AND LOCATION

- ☐ DAY WORK
- ☐ CONTRACT
- ☐ EXTRA

JOB PHONE

DESCRIPTION OF WORK:

GRADE FLOOR IN CAFATORIAT ~~~~
OUTSIDE BLDG.

2 LABORERS 7 HR
1 BOBCAT 1 HR

Back Change GCA
2/00-05 B
FBL

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED

WORK ORDERED BY

☐ No one home  ☐ Total amount due for above work; or  ☐ Total billing to be mailed at completion of work

Signature _____

I hereby acknowledge the satisfactory completion of the above described work.



# Standen Contracting Company Inc.

### WAIVER OF LIEN-MATERIAL, LABOR AND EQUIPMENT
### OF SUBCONTRACTOR/SUPPLIER

The undersigned subcontractor/supplier, for good and valuable consideration the receipt of **Check# 70538** **in the Amount of $ 30,922.75** **with total payments to date of $85,922.75** is hereby acknowledged, does hereby irrevocably waive and release any lien or claim or right to lien less retainage, including but not limited to any mechanics' lien, and any claim for payment, for any and all material, labor and equipment furnished by or on its behalf through **August 31, 2003** **("Release Date")** to the project known as Renovations to **Shrewsbury Middle School – West, 45 Oak Street, Shrewsbury, MA** (the "Project"), against the Project premises and against any funds remaining in the hands of the owner, contractor-Standen Contracting Company, Inc. or lender(if any) for the purpose of paying for the construction on said Project premises, whether under and by virtue of the statutes of the Commonwealth of Massachusetts relating to mechanics' liens, or otherwise.

The undersigned states on oath that all persons and firms that supplied any labor, materials or equipment to this Project have been fully paid by the undersigned, for all such labor, materials and equipment supplied through the Release Date. For good consideration the undersigned does release and hold harmless Standen Contracting Co., Inc., its surety and the Owner from any claims, lien, or right to claim lien, in connection with any labor, materials, or equipment supplied to this Project through the Release Date.

Sworn to this 14 day of October, 2003.

Landworks
(Corporate Name)

By: ~~~~~~~~~~
(Authorized Signature) NEAL H. MATTHEWS

Notary Public: ~~~~~~~~~~
My Commission Expires: _____

SARA J. LOHNES, Notary Public
My Commission Expires September 24, 2004



# Fax Memo

**Standen Contracting.
Build on our experience.**

| | | | |
|---|---|---|---|
| **To:** | Mr. Neal Matthews | **Fax:** | 207-351-1532 |
| | LANDWORKS | **Phone**: | 603-498-1295 |
| **From:** | Bill Gambill | **Fax:** | 508-998-7173 |
| | Project Manager | **Phone:** | 508-998-1144x15 |
| **Date:** | 12/2/03 | **Total Pages**: | 2 |
| **Re:** | Shrewsbury Middle School – West, Shrewsbury, MA | | |

**Message:**

Attached please find the release of lien for October. Please sign and have notarized.

If you have any questions or comments please call me.

cc:  File



**445 Faunce Corner Road, North Dartmouth, MA 02747**

G:\Shrewsbury Middle School\Subcontractors\landworks\Memos\BG fx memo lien release for October .doc



# Standen Contracting Company Inc.

### WAIVER OF LIEN-MATERIAL, LABOR AND EQUIPMENT
### OF SUBCONTRACTOR/SUPPLIER

The undersigned subcontractor/supplier, for good and valuable consideration the receipt of Check# 71024 in the Amount of $ 129,257.70 with total payments to date of $ 433,544.60 is hereby acknowledged, does hereby irrevocably waive and release any lien or claim or right to lien less retainage, including but not limited to any mechanics' lien, and any claim for payment, for any and all material, labor and equipment furnished by or on its behalf through December 2, 2003 ("Release Date") to the project known as Renovations to Shrewsbury Middle School – West, 45 Oak Street, Shrewsbury, MA (the "Project"), against the Project premises and against any funds remaining in the hands of the owner, contractor-Standen Contracting Company, Inc. or lender(if any) for the purpose of paying for the construction on said Project premises, whether under and by virtue of the statutes of the Commonwealth of Massachusetts relating to mechanics' liens, or otherwise.

The undersigned states on oath that all persons and firms that supplied any labor, materials or equipment to this Project have been fully paid by the undersigned, for all such labor, materials and equipment supplied through the Release Date. For good consideration the undersigned does release and hold harmless Standen Contracting Co., Inc., its surety and the Owner from any claims, lien, or right to claim lien, in connection with any labor, materials, or equipment supplied to this Project through the Release Date.

Sworn to this 3 day of December, 2003.

Landworks
(Corporate Name)

By: _Neal Matthews_
(Authorized Signature) NEAL MATTHEWS

Notary Public: _Sara J. Lohnes_
My Commission Expires: _____

SARA J. LOHNES, Notary Public
My Commission Expires September 24, 2004

K:\KELLY\Lien Waivers\Shrewsbury Partial.doc

 **Standen Contracting Company Inc.**

## WAIVER OF LIEN-MATERIAL, LABOR AND EQUIPMENT
## OF SUBCONTRACTOR/SUPPLIER

The undersigned subcontractor/supplier, for good and valuable consideration the receipt of **Check# 71024 in the Amount of $ 129,257.70 with total payments to date of $ 433,544.60** is hereby acknowledged, does hereby irrevocably waive and release any lien or claim or right to lien less retainage, including but not limited to any mechanics' lien, and any claim for payment, for any and all material, labor and equipment furnished by or on its behalf through **December 2, 2003 ("Release Date")** to the project known as Renovations to **Shrewsbury Middle School – West, 45 Oak Street, Shrewsbury, MA** (the "Project"), against the Project premises and against any funds remaining in the hands of the owner, contractor-Standen Contracting Company, Inc. or lender(if any) for the purpose of paying for the construction on said Project premises, whether under and by virtue of the statutes of the Commonwealth of Massachusetts relating to mechanics' liens, or otherwise.

The undersigned states on oath that all persons and firms that supplied any labor, materials or equipment to this Project have been fully paid by the undersigned, for all such labor, materials and equipment supplied through the Release Date. For good consideration the undersigned does release and hold harmless Standen Contracting Co., Inc., its surety and the Owner from any claims, lien, or right to claim lien, in connection with any labor, materials, or equipment supplied to this Project through the Release Date.

Sworn to this ____ day of _____, 2003.

Landworks
(Corporate Name)

By:_____
    (Authorized Signature)

Notary Public:_____
My Commission Expires:_____

K:\KELLY\Lien Waivers\Shrewsbury Partial.doc

```
MESSAGE CONFIRMATION

                                    12/02/2003  14:18
                                    ID=STANDEN CONTRACTING 5089987173


DATE          S.R-TIME    DISTANT STATION ID        MODE        PAGES    RESULT

12/02         00'38"      15088455023               TX          002      OK        0000
```

12/02/2003    14:17      STANDEN CONTRACTING 5089987173 → 15088455023                 NO.934   ℙ001



**Standen Contracting.**
**Build on our experience.**

# Fax Memo

| | | | |
|---|---|---|---|
| **To:** | Mr. Neal Matthews | **Fax:** | 207-351-1532 |
| | LANDWORKS | **Phone:** | 603-498-1295 |
| **From:** | Bill Gambill | **Fax:** | 508-998-7173 |
| | Project Manager | **Phone:** | 508-998-1144x15 |
| **Date:** | 12/2/03 | **Total Pages:** | 2 |
| **Re:** | Shrewsbury Middle School – West, Shrewsbury, MA | | |

**Message:**

Attached please find the release of lien for October. Please sign and have notarized.

## Transmittal Cover Sheet

Detailed, Grouped by Each Transmittal Number

| **Shrewsbury Middle School**<br>45 Oak Street<br>Shrewsbury, MA | **Project # 573-000**<br>Tel: 508-845-0707   Fax: 508-845-5023 | **Standen Contracting Inc.** |
|---|---|---|

| **Date:   1/30/2004** | **Reference Number:  0660** |
|---|---|
| **Transmitted To** | **Transmitted By** |
| Neal Matthews<br>Landworks<br>PMB 291 1500A Layayette Road<br>Portsmouth, NH  03801<br>Telephone: 603-498-1295<br>Fax: 207-351-1532 | William Gambill<br>Standen Contracting Company, Inc.<br>445 Faunce Corner Road<br>N. Dartmouth, MA  02747<br>Tel: 508-998-1144<br>Fax: 508-998-7173 |

| **Package Transmitted For** | **Delivered Via** | **Tracking Number** |
|---|---|---|
| Information | US Mail | 573-059 |

| Item # | Qty | Item | Reference | Description | Notes | Status |
|---|---|---|---|---|---|---|
| 001 | 1.0 | Subcontract Change Orders | 059 - 002 - Landworks | Furnish & Install Sod | Subcontract Change Orders 059 - Closed 002 - Landworks | |

| Cc: | Company Name | Contact Name | Copies | Notes |
|---|---|---|---|---|
| | Standen Contracting Company, Inc. | Donna Gassett | 1 | FOR SYSTEM ENTRY |
| | Standen Contracting Company, Inc. | Frank Leonardo | 1 | |

| **Remarks** |
|---|
| Please find Change Order No. 002 for your files. |

_Signature_ (signed)

1-30-04
**Signed Date**

FILE COPY

## Subcontract Change Order

Detailed, Grouped by Each Number

---

**Shrewsbury Middle School**
45 Oak Street
Shrewsbury, MA

**Project # 573-000**
Tel: 508-845-0707   Fax: 508-845-5023

**Standen Contracting Inc.**

---

**Date: 12/19/2003**
**To Subcontractor/Vendor:**
Landworks
PMB 291 1500A Layayette Road
Portsmouth, NH  03801

**Architect's Project No:**
**Contract Date:**        8/28/2003
**Contract Number: 059**
**Change Order Number: 002**

**The Contract is hereby revised by the following items:**

Furnish & Install Sod

| PCO | Item # | Description | Amount |
|-----|--------|-------------|--------|

Furnish and install sod on the baseball, soccer, and football fields. Sod will be within the limits of the underdrain system and baseball infield as shown on Drawing L/1.3 dated 8/8/02.

---

| | |
|---|---|
| The original Contract Value was............................................................................ | 824,823 |
| Sum of changes by prior Subcontract Change Orders.................................................. | 6,221 |
| The Contract Value prior to this Subcontract Change Order was......................................... | 831,044 |
| The Contract Value will be changed by this Subcontract Change Order in the amount of................ | 67,000 |
| The new Contract Value including this Subcontract Change Order will be............................... | 898,044 |
| The Contract duration will be changed by................................................................. | 0 Days |
| The revised Substantial Completion date as of this Subcontract Change Order is........................ | |

---

Standen Contracting Company, Inc.

**CONTRACTOR**
445 Faunce Corner Road
N. Dartmouth, MA  02747

Address

By

SIGNATURE

DATE    1/7/04

Landworks

**SUBCONTRACTOR/VENDOR**
PMB 291 1500A Layayette Road
Portsmouth, NH  03801

Address

By    Neal H. Mcthews

SIGNATURE  *signature*

DATE   12/24/03

---

*Prolog Manager*        Printed on:  12/19/2003      standen master                                    Page 1

# EXHIBIT 2

1

Volume I
Pages 1 to 180
Exhibits 66 - 89

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

- - - - - - - - - - - - - - - - - -x
                                    :
LANDWORKS CREATIONS, LLC,           :
          Plaintiff,                :
                                    :
      vs.                           :   Civil Action No.
                                    :   05-CV-40072 FDS
UNITED STATES FIDELITY AND          :
GUARANTY COMPANY and                :
LOVETT SILVERMAN CONSTRUCTION       :
CONSULTANTS, INC.,                  :
          Defendants.               :
                                    :
- - - - - - - - - - - - - - - - - -x

          DEPOSITION OF NEAL H. MATTHEWS,
individually and as designee of LANDWORKS CREATIONS,
LLC, a witness called on behalf of the Defendant
Lovett Silverman Construction Consultants, Inc.,
taken pursuant to the Federal Rules of Civil
Procedure, before Carol H. Kusinitz, Registered
Professional Reporter and Notary Public in and for
the Commonwealth of Massachusetts, at the Offices of
Hermes, Netburn, O'Connor & Spearing, P.C., 265
Franklin Street, Seventh Floor, Boston,
Massachusetts, on Tuesday, February 13, 2007,
commencing at 10:20 a.m.

PRESENT:

     The Mountain States Law Group
          (by Robert N. Meltzer, Esq.)
          160 Speen Street, Suite 307, Framingham,
          MA 01701, for the Plaintiff.

     (Continued on Page 2)

124

1      A.    The date of the contract, Standen contract?

2      Q.    Yes.  I believe it's indicated right on the

3   first page (indicating).

4      A.    There it is, yes, it's dated August 28,

5   2003.  Prior to that, we worked under a letter of

6   intent.

7      Q.    And on Page 6 of the Standen subcontract,

8   it appears that both of the signatures on behalf of

9   Standen and Landworks were in September of 2003; is

10  that correct?

11     A.    That's correct.

12     Q.    So that after Standen defaulted at this

13  project, Landworks entered into the ratification

14  agreement with USF&G; is that correct?

15     A.    Yes.

16     Q.    And in particular, as shown in the

17  ratification agreement, you signed on behalf of

18  Landworks on March 23rd, 2004?

19     A.    Yes.

20     Q.    And it was signed by the surety the next

21  day?

22            MR. MELTZER:  Objection.

23     A.    It was signed the next day.  I'm not

24  certain who signed it.

125

1     Q.    Okay.

2     A.    Is that Tiffany Schaak?

3     Q.    I believe it is.                              °

4     A.    She writes worse than my wife.

5     Q.    So as a result of the surety and Landworks

6  executing the ratification agreement, did Landworks

7  receive immediate payment -- or I should say payment

8  within a short period after signing?

9     A.    Yes.

10    Q.    Do you recall how much that was?

11    A.    It was the $177,614.60.

12    Q.    And what is the -- as of March of 2004, how

13 much was left for Landworks to complete the

14 Shrewsbury High School project?  I should say

15 Shrewsbury Middle School project.

16    A.    There was $254,718 left on the contract,

17 and then there was an additional -- I'm going to

18 have to read it from here -- at that time, $9,864 in

19 unresolved change order work.

20    Q.    Had that work already been completed?

21    A.    That work had already been completed.

22    Q.    But in terms of work left to be completed,

23 was the value of that $254,718.53?

24    A.    Let me back up one second.  I'm not certain

# EXHIBIT 3

381-123



Jackson Construction Company
20 Dan Road    Suite 3
Canton, MA  02021

PH (781) 737-1500
FX (781) 737-1550

RECEIVED
JUN 17 2004
JACKSON CONSTRUCTION
COMPANY

LANDWORK CREATIONS, LLC
PMB 291 1500A Lafayette Road
Portsmouth, NH 03801

PH 603-498-1295

SUBCONTRACT NO.
381-02-200

AGREEMENT made this 29ᵀᴴ day of APRIL, in the year TWO THOUSAND FOUR

between JACKSON CONSTRUCTION COMPANY, 20 Dan Road, Canton, MA  02021, a Massachusetts Business Trust, the

Contractor,

and LANDWORK CREATIONS, LLC, the Subcontractor, concerning the project

SHREWSBURY MIDDLE SCHOOL - WEST
45 Oak Street, Shrewsbury, MA  01545

For TOWN OF SHREWSBURY, the Owner.

The Contractor and Subcontractor agree as follows:

### ARTICLE 1.    THE CONTRACT DOCUMENTS

This Subcontract consists of the following Contract Documents: this Agreement and any Exhibits attached hereto, the Contract between the Owner and Contractor dated MARCH 1, 2004, the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions), Drawings, Specifications, all Addenda issued prior to execution of the Contract between the Owner and Contractor, all Change Orders issued subsequent thereto.

ATTACHED TO AND MADE PART OF THIS CONTRACT
ATTACHMENT "A" STANDARD ATTACHMENTS
  Affirmative Action Program for Equal Employment Opportunity
  Safety Policy
    Exhibit #1 – OSHA Hazard Communications Standard Requirements
    Exhibit #2 – Problem Solving Procedures
    Exhibit #3 – Safety Policy Fines/Backcharges
    Exhibit #4 – Accident/Incident Report
    Exhibit #5 – Weekly Safety Meeting Report
    Exhibit #6 – Safety & Health Program Requirements
  Drug Free Workplace Policy
  Wage Breakdown
  Weekly Payroll Report
  Subcontractor Requisition for Payment
  Continuation Sheet (Application and Certificate for Payment)
  Trade Contractor Certification Indemnification of Wavier & Lien
  Tax Exempt Certificates
ATTACHMENT "B" SPECIFICATIONS
ATTACHMENT "C" DRAWING INDEX
ATTACHMENT "D" LIST OF ADDENDUM
ATTACHMENT "E" SCHEDULE
ATTACHMENT "F" PREVAILING WAGE RATES

All of the above documents are a part of this Subcontract and shall be available for inspection by the Subcontractor upon request.

### ARTICLE 2.    THE WORK

The Subcontractor shall furnish all labor, materials, plant equipment, permits and other facilities and things necessary or proper for or incidental to, and shall do all things to perform and complete, the following (hereinafter collectively referred to as the Work:)

THIS SUBCONTRACT SHALL COMPLETE ALL Site Work PER SECTION(s) 02060   SITE DEMOLITION, 02100   SITE PREPARATION, 02200   EARTHWORK, 02240   GEOTEXTILE FABRICS, 02250   EROSION CONTROL, 02511   BITUMINOUS CONCRETE PAVING & MARKINGS, 02515   CONCRETE PAVEMENT, 02525   GRANITE CURBING, 02649   TRACER TAPE, 02705   STORM DRAINAGE SYSTEMS & SEWER SYSTEMS, 02710   UNDERDRAIN SYSTEM - ATHLETIC FIELD, 02713   WATER SYSTEMS, AND 02930   LAWNS AND GRASSES IN ACCORDANCE WITH PLANS AND SPECIFICATIONS DATED 7/01/2002 INCLUDING ADDENDA 1-5 AND ALTERNATES 1-5, IF APPLICABLE, AS PREPARED BY LAMOUREUX PAGANO ASSOCIATES, 14 EAST WORCESTER STREET, WORCESTER, MA  01604 FOR SHREWSBURY MIDDLE SCHOOL.

The work shall include but not necessarily limited to the following:

1. Submission of Certificate of Insurance with limits in accordance with Contract Documents. JCC Job #381, Shrewsbury Middle School – West to be included in the description box. The Town of Shrewsbury and Jackson Construction Company are to be listed as additionally insured.

2. Provide eleven (11) complete sets of submittal and shop drawings as specified for all items for Architect/Engineer's approval prior to work on site.

3. Coordination Drawings.

4. Warranty / Guarantees and Maintenance instructions at job close out per contract documents.



Ex 67 (2/13/07)

5. Subcontractor agrees to maintain a reasonable and consistent effort to complete all work in accordance with the project schedule.

6. Project Completion Date:  August 24, 2004

7. Union labor, unless otherwise noted.

8. Tax Exempt Project  [046-001-300].

9. Worker Conduct, Appearance, and Rules.

   A. **Worker Conduct, Appearance, and Rules:** Because this project is in close proximity to the existing occupied school, the conduct of each worker at the job site is of paramount importance. The Owner reserves the right to require any worker to be banished from the Owner's property.

    (1) <u>Privacy-Conduct</u>:  All work of the Contract with the maximum effort to maintain the privacy of the Owner's operations, staff, and students.  Do not permit workers to peer into areas of the existing building visible from the work area.  Invasion of privacy is a major infraction of the work rules.

    (2) <u>General Conduct and Demeanor</u>:  All construction workers shall treat the Owner's staff, students, and the public professionally with respect and courtesy.  Appropriate work attire is required.  Foul language and loud conduct are prohibited.

    (3) <u>Radios and Television</u>:  The use of entertainment devices including personal devices with headphones or earphones is strictly prohibited at all times.  Control the volume of communication radios and loudspeakers to avoid creating a nuisance.

    (4) <u>Smoking</u>:  Smoking is strictly prohibited on school property.

    (5) <u>Sexual Harassment</u>:  All forms of physical and verbal sexual harassment including, with limitation: touching, whistling, sexually explicit stories, jokes, drawings, photos, and representations, exhibitionism, and all other sexually oriented offensive behavior is strictly prohibited and is a major infraction of the work rules.

    (6) <u>Student Contact</u>:  Except for necessary warnings and safety related instructions, construction personnel are strictly prohibited from having any direct or indirect contact with students including, with limitation, verbal or written communication, touching, staring, whistling, howling, and any other action or behavior which makes a student uncomfortable or which could be interpreted by the student as harassment.  A violation of this type may be considered, on a case-by-case basis, as a major infraction of the work rules.

    (7) <u>Warnings and Dismissal</u>:  For minor infractions of the rules, the Owner may issue a warning.  Only one warning will be allowed per worker from the Owner's property.  For major infractions of the work rules, the worker shall be dismissed immediately without prior warning and possibly subject to criminal prosecution.

10. Provide all labor and equipment rates [Wage Breakdown] with signed contract.

11. Submit weekly-certified payroll reports and Equal Employment Opportunity Ratios (two copies).  [Once

you have begun work at the job site they must be sent weekly even if there was no work performed.]

12. Requisitions are due by the 25th of each month. Submit three copies with Schedule of Values.

13. Clean up of debris to Jackson's dumpster unless otherwise noted.

14. If applicable, Jackson Construction Company shall issue deductive change orders to Landwork Creations, LLC for benefits in conjunction with the Laborers' Unified Trust Agreement.  If Landwork Creations, LLC falls delinquent in the payment of their benefits to the Laborers' Union, Jackson Construction shall continue to issue deductive change orders for these benefits.

15. Subcontractor shall furnish, erect, and maintain all scaffolding as required for the performance of their work unless otherwise noted.

16. The Subcontractor agrees to Project Restrictions i.e. off-hours, start time, noise levels, etc. required by the Owner, as instituted and enforced by the project superintendent or his representatives.

17. Subcontractor shall perform the WORK in the safest and most responsible manner.  This includes all obligations pursuant to Accident prevention, but not limited to:

   A. Safety indoctrination of all employees before start work.

   B. Providing all employees with personal protective equipment including hard hats, safety glasses, gloves, back belts, etc. and require their use at all times.

   C. Plan and organize weekly toolbox meetings solely for the purpose of discussing project safety.

18. Subcontractor agrees to establish and implement a Hazard Communication Program.  This includes, but is not limited to, furnishing Material Safety Data Sheets to the Contractor upon receipt and implementing a training program on the jobsite.

19. It is agreed and understood that this scope is general in nature and is not intended to include each, and every, item of work required by the Subcontractor to comply with the Contract Documents.

20. Subcontractor acknowledges that he has visited the jobsite and is fully aware of the existing conditions and constraints involved with performing THE WORK.

21. Smoking is prohibited within all areas of the project. The Contractor will designate an area for the purpose of smoking in the general vicinity of the project. Subcontractor shall inform his employees of this policy and be solely responsible for policing their actions.

22. Allowances for changes in THE WORK shall be as follows:

   A. Change proposals shall be submitted in a timely manner and include a detailed breakdown of all costs including but not limited to labor (breakdown by classification), material, equipment, and subcontractors.

23. Related Documents:

   A. All of the contract documents, including General Conditions and Supplementary Conditions and Division 1 General Requirements, apply to the work in this section.

24. ALTERNATE(S), if applicable.

---

25. Furnish labor, equipment, materials and supervision necessary to perform the work of the following sections in their entirety:

A.  02080  Site Demolition.
B.  02100  Site Preparation.
C.  02200  Earthwork.
D.  02240  Geotextile Fabrics.
E.  02250  Erosion Control.
F.  02511  Bituminous Concrete Paving & Markings.
G.  02515  Concrete Pavement.
H.  02525  Granite Curbing.
I.  02649  Tracer Tape.
J.  02705  Storm Drainage Systems & Sewer Systems.
K.  02710  Underdrain System - Athletic Field.
L.  02713  Water Systems.
M.  02930  Lawns and Grasses.

The Subcontractor shall complete the work in a first-class manner equal in all respects to the best standards of practice and to the full satisfaction of contractor, the architect and/or owner, all in accordance with, or as reasonably implied by, the Contract Documents; and the Subcontractor does hereby agree to be bond to and assume toward the Contractor all of the obligations and responsibilities pertaining to the Work that the Contractor, by the Contract Documents, has assumed to the Owner, except as specifically modified by this Subcontract.

### ARTICLE 3.     COMMENCEMENT OF WORK

. The Contractor shall, as soon as practicable following execution of the Subcontract, notify the Subcontractor to attend a scheduling conference for the purpose of reviewing and analyzing the time, labor and material requirements of the Subcontractor. To such conference the Subcontractor shall bring what he believes to be a practicable schedule showing the dates on which he proposes to order material necessary for the Work and the order and time within which he plans to complete various portions of the work and the personnel to be utilized. Following such scheduling conference and analysis by Contractor of Subcontractor's requirements, the Subcontractor shall submit to Contractor a schedule revised as a result of such conference and analysis; such revised or further revised) schedule, when accepted in writing by the contractor, shall be the job Schedule of Record, which shall at all times govern the Subcontractor's prosecution of the Work, as may from time to time be modified by the directions of the Architect or by Change Order. The Subcontractor acknowledges the right of the Contractor to fix finally the schedule of Subcontractor based on data submitted by Subcontractor, other subcontractors, and requirements of the contract between Owner and Contractor. As part of the Job Schedule of Record the Subcontractor shall warrant that he has satisfied himself (a) that sufficient labor is available to him to perform the Work according to the Job Schedule of Record and (b) that he has placed firm orders for all materials required by the Work. The Subcontractor shall commence the Work on notice from the contractor and shall complete such work faithfully and diligently under the direction of the Contractor in accordance with the Job Schedule of Record. ALL TIME LIMITS STATED IN THE CONTRACT DOCUMENTS AND THE JOB SCHEDULE OF RECORD ARE OF THE ESSENCE OF THIS SUBCONTRACT, NO EXTENSION OF

TIME WILL BE VALID WITHOUT THE CONTRACTORS WRITTEN CONSENT.     THE SUBCONTRACT, AT THE OPTION OF THE CONTRACTOR, MAY BE HELD RESPONSIBLE FOR ALL DAMAGES, COSTS, LOSSES, AND EXPENSES RESULTING DIRECTLY OR CONSEQUENTIALLY FROM HIS FAILURE TO MEET TIME LIMITS.

### ARTICLE 4.     PROGRESS OF WORK

The Subcontractor shall, at all times, provide sufficient working forces and shall do and perform and finish at his own expense all things necessary or proper for or incidental to the prosecution of the Work in accordance with the Job Schedule of Record, as it may be implied from time to time by the directions of the Architect or by Change Order or in accordance with the reasonable needs of the Contractor. The Subcontractor shall at all times cooperate with the schedule consultant of Contractor, if one is appointed, or the Contractor's scheduling agent. If the Subcontractor falls behind the Job Schedule of Record, the Contractor may order the Subcontractor, by written notice, to increase the number of shifts, overtime operation, days of work and the amount of construction, plant, materials, equipment and other facilities as the Contract may deem appropriate to regain time lost, all without additional cost to the Contractor. If the Subcontractor fails to comply with such written directions and notice within 48 hours after the giving of such notice, or within such further time as the Contract may allow, the Contractor shall have the right to furnish such plant, materials, equipment and other facilities, employ such additional men, do such other things as it had specified in its notice to the Subcontractor, all at the Subcontractor's expense, and/or at its option, hold the Subcontractor in default under the provisions of this Subcontract and terminate the Subcontract in accordance with the provisions of Article 9 hereof.

### ARTICLE 5.     THE SUBCONTRACT PRICE

The Contractor shall pay the Subcontractor in current funds for the performance of his obligations under this Subcontract, subject to additions and deductions as herein provided, the total sum of

($303,535.00)   (the Subcontract Price).
Three Hundred Three Thousand Five Hundred Thirty-five-00/100 Dollars

### ARTICLE 6.     PAYMENTS IN GENERAL AND PROGRESS PAYMENTS

The Contractor agrees to pay the Subcontractor as follows; 90% of the value of the labor performed, plant and equipment furnished, and materials incorporated into the Work, and, if approved by the Architect, materials stored on the site in any one month as to which the Subcontractor has presented proper bills, vouchers and receipts for such stored materials at the main office of the Contractor on or before the twenty-seventh day of the month, to be paid ;not later than the fifteenth day following receipt of each payment from the Owner by the Contractor.     The Subcontractor shall, before the first application for payment, submit to the Contractor a schedule of values of the various parts of the Work aggregating the total sum of this Subcontract, in such detail as the Contractor may reasonably require (or as may be required by the Owner), and supported by such evidence as to its

---

correctness as the Contractor may request. This schedule, when approved by the Contractor, shall be used by the Subcontractor as a basis for application for payment, unless it is found to be in error, in which event it shall be revised to the reasonable satisfaction of the Contractor. The Subcontractor shall furnish to the Contractor with the second application for payment, and with each application for payment thereafter, a completed and signed Subcontractor's Partial Payment Waiver And Release in the form provided by the Contractor. In no event shall the Contractor be required or obligated to pay to the Subcontractor any amounts in excess of the amount previously received by the Contractor from the Owner and attributable to the Work of the Subcontractor. Receipt of progress and/or final payments by the Contractor from the Owner shall be, in each instance, a condition precedent to the Subcontractor's right to receive his share of any such payment from Contractor. The Subcontractor shall indemnify and save the Contractor harmless from all claimed and actual obligations of Subcontractor to tax authorities, subcontractors, workmen, material men and furnishers and/or; lessors of machinery and parts thereof, equipment, and all supplies, including, without limitation, gasoline, oil and commissary, incurred in the furtherance of the performance of this Subcontract. The Subcontractor shall upon request provide to the Contractor reasonably satisfactory evidence that all obligations of the foregoing nature have been paid, discharged or waived, and if the Subcontractor fails to do so the Contractor may, after two days' written notice to the Subcontractor either pay any such unpaid bills, withhold or retain in addition to retainage provided for under the first sentence of this Article from payments otherwise due or to become due to Subcontractor such sums of money the Contractor deems sufficient to pay any and all such claims until such time as satisfactory evidence is furnished that all such claims have been satisfied or discharged. In no event, however, shall the provisions of this Article be construed to impose any obligation upon the Contractor to either the subcontractor or his Surety and in paying unpaid bills of the subcontractor the Contractor shall be deemed the agent of the subcontractor; any such payment shall be considered as a payment made under the Subcontract by the Contractor to the subcontractor and the Contractor shall not be liable to the Subcontractor as to any such payment made in good faith. Any sum or sums chargeable to the Subcontractor under any of the Articles of this Subcontract may, at the option of the Contractor, be deducted from any payment or payments which otherwise are due or may become due to the Subcontractor hereunder. No part nor the whole of the Work to be performed hereunder shall be sublet or assigned, nor monies due or to become due, nor rights with respect thereto, shall be assigned without the prior written consent of the Contractor and in the event that the Subcontractor shall purport or attempt to assign or sublet any part of or the whole of the Work or monies or rights with respect thereto without such consent, such purported assignment, subletting or attempt may, at the option of the Contractor, be deemed a repudiation of this Subcontract and a refusal by the Subcontractor to perform the same constituting a default hereunder and in any such case the Contractor shall have, cumulatively, the remedies provided for in Article 9 hereof and under law.

### ARTICLE 7.    FINAL PAYMENT

Final payment shall be due when the Work is fully completed and performed in accordance with the Contract

Documents and is reasonably satisfactory to the Contractor, Architect and Owner. The right to final payment shall be subject to the terms and conditions of Article 6. Before issuance of final payment, the Subcontractor shall submit additional evidence reasonably satisfactory to the Contractor showing that all known liabilities and indebtedness, including, without limitation, those referred to in Article 6 arising out of or resulting from or incurred in connection with the Subcontractor's performance of this Subcontract, have been satisfied.

### ARTICLE 8.
### INSPECTION AND CORRECTION OF WORK

The Subcontractor shall provide proper facilities for the inspection of the Work at all times by the Contractor, Architect, Owner, and other parties interested therein. The Subcontractor shall promptly take down and remove from the premises all materials, whether worked or unworked, and all portions of the Work condemned by the Architect or Contractor as failing to conform to the Subcontract notwithstanding that such material or work may have been previously overlooked by the Architect or the Contractor and accepted or estimated for payment, the provisions of the Conditions regarding the replacement of such Work to govern the Subcontractor's obligations hereunder with respect thereto. If the Subcontractor shall fail to remove condemned Work or materials, the Contractor may remove at the Subcontractor's expense and store same for the account of the Subcontractor and may replace all condemned Work and materials at the expense of the Subcontractor. In the event, the Contractor deems it inexpedient to correct such Work or materials a deduction in the Subcontract Price shall be made if acceptable to the Architect and the Owner. Neither the issuance of a final certificate for payment nor any provision of the Contract Documents shall relieve the Subcontractor of responsibility for negligence or for faulty materials or workmanship within the period provided by law or his guaranty, whichever period is longer, and upon written notice shall remove the same or correct such defects and pay for any damages to other work resulting there from.

### ARTICLE 9.    CONTRACTOR'S RIGHT TO TERMINATE AND DAMAGES

If the Subcontractor shall be involved in financial difficulties as evidenced by:

(a) his admitting in writing his inability to pay his debts generally as they become due;

(b) his filing a petition in bankruptcy or for reorganization or for the adoption of an arrangement under the Bankruptcy Act (as now or in the future amended) or an answer or other pleading admitting or failing to deny the material allegations of such a petition or seeking, consenting to or acquiescing in the relief therein provided;

(c) his making an assignment for the benefit of his creditors;

(d) his consenting to the appointment of a receiver for all or a substantial part of his property;

(e) his being adjudicated a bankrupt;

(f) the entry of a court order which shall not be vacated, set aside or stayed within 10 days from the date of entry,    (i)

appointment of a receiver or trustee for all or a substantial part of his property, or (ii) approving a petition filed against him for, or effecting an arrangement in, bankruptcy or for a reorganization pursuant to said Bankruptcy Act or for any other judicial modification or alternation of the rights of creditors; or

(g) the assumption of custody or sequestration by a court of competent jurisdiction of all or substantially all of his property, which custody or sequestration shall not be suspended or terminated with 10 days from its inception;

or if the Subcontractor should refuse or fail, except in cases in which extension of time is approved in writing by the Contractor, to meet the time requirements of the Job Schedule of Record, or to furnish enough skilled workmen, proper materials, equipment, facilities, plant or to make timely orders of materials, or if he should fail to make prompt payment to his subcontractors or suppliers or if he shall fail to make payments when due to any governmental unit as required by applicable tax laws and regulations, or if he shall disregard laws or ordinances or the instructions of the Contractor and/or Architect or otherwise be guilty of a violation of any provision of this Subcontract, then the Contractor may, without prejudice to any other right or remedy and after giving the Subcontractor and his Surety, if any, three days' written notice, terminate the employment of the Subcontractor, take possession of the premises and all materials, tools and equipment thereon and finish the Work in whatever manner it may deem expedient. In such event, the Subcontractor shall not be entitled to any further payment until the Work is finished; if the unpaid balance of the Subcontract Price shall exceed the expense of finishing the Work, including reasonable compensation for additional architectural, managerial, professional (including reasonable attorneys' fees) and administrative services and sums chargeable to Contractor for delay or otherwise, such excess shall be paid to the Subcontractor. If such expenses and sums chargeable shall exceed such unpaid balance, the Contractor shall retain the unpaid balance and the Subcontractor shall pay the differences to the contractor. The Contractor shall have, in addition, all of its rights in law and equity against the Subcontractor to enforce claims for damages and other relief.

Notwithstanding the above paragraph, the Contractor reserves the right to terminate this Subcontract for its convenience upon written notice to the Subcontractor stating the extent and effective date of such termination. Immediately upon receipt of such notice, the Subcontractor shall then provide similar written notice to its Sub-Subcontractors and suppliers and shall thereupon stop all work and place not further orders or Sub-Subcontracts for materials, services, equipment or supplies, except as may be necessary to complete portions of the Work not terminated, to protect property in the Subcontractor's possession in which the Owner or Contractor has or may acquire an interest, or to otherwise take any other action toward termination of the Work which the Contractor may direct. In such instance of termination for convenience, the Subcontractor will be paid an equitable amount for its work completed under the Subcontract and other reasonable cancellation costs incurred as a result of said termination. Prior to making any payments under this clause, the Contractor shall have the right to audit the records of the Subcontractor.

## ARTICLE 10.    CHANGES IN THE WORK

The Contractor, without invalidating the Subcontract, may order extra work or make changes by altering, adding to or deducting from the Work, the Subcontract Price to be adjusted if, and as provided for, in the Conditions. All such work shall be executed under the original conditions, except that any claim for extension of time caused thereby shall be adjusted in accordance with the determination of the Architect at the time of ordering such change. The Subcontractor shall make no claim for extension of time or extra compensation for extra work or any change unless done in pursuance of a written Change Order from the Contractor, and such claim is presented to the Contractor prior to commencement of the extra work, and no claim for any addition or extra shall be valid unless so ordered. The Subcontractor shall immediately furnish a detailed estimate of the costs of any extra work so ordered. The value of any such extra work or change shall be determined by one or more or a combination of the following methods:

(1)  By unit bid prices names in the Subcontract or subsequently agreed upon;

(2)  By an agreed lump sum;

(3)  By cost and percentage or by cost and a fixed fee,

all as provided for in the portions of the Conditions relating to changes in the Work.

The Subcontractor shall furnish satisfactory evidence of all costs and shall give the Contractor access to accounts relating thereto. Payments on account of extra work or changes shall be made only in accordance with the Architect's determination as provided for in the Conditions. The Subcontractor shall obtain and deliver to the Contractor, if requested, the written assent of any Surety on any bond furnished by the subcontractor to such changes before the same are made.

## ARTICLE 11.    GENERAL GUARANTY OF WORK

The Subcontractor warrants that all materials and equipment furnished an incorporated by him in the Work shall be new unless otherwise specified and that all Work under this Subcontract shall be of first-class quality, free from all faults and defects and in accordance with the Contract Documents. All Work not conforming to these requirements, including substitutions not properly approved may be considered defective. The Subcontractor shall execute a written guaranty and warranty applicable to all phases of the Work in accordance with this Subcontract and all other applicable provisions of the Contract Documents pertaining to warranties and guarantees. The Subcontractor shall remedy any defects due to faulty materials or workmanship and pay for the damage to other work resulting there from, which shall appear within the period of one year from the date of final payment, unless a longer period is specified. Neither occupancy of the premises by the Owner, nor any provision in the Contract Documents, nor final payment, shall constitute an acceptance of work not done in accordance with the Contract Documents, nor relieve the Subcontractor of liability in respect to any express warranties or responsibility for faulty materials or workmanship, nor shall nay of the foregoing, or any provision of the Contract Documents, nor shall any of the foregoing, or

---

any provision of the Contract Documents, nor any special guaranty be held to limit the Subcontractor's liability for defects or faulty materials less than the legal limit of liability in accordance with the law of the place of building. The Contractor shall give notice of observed defects with reasonable promptness.

### ARTICLE 12.   INDEMNITY

The Subcontractor shall indemnify and hold harmless the Contractor and all of its agents and employees from and against all claims, damages, losses and expenses (including attorneys' fees) arising out of or resulting from the performance of the Subcontractor's Work (or failure in such performance), provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly contracted with by him (subcontractors or suppliers) or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder. In any and all claims against the Contractor or any of its agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable or anyone having contracted with the Subcontractor, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's Compensation acts, disability benefit acts or other employee benefit acts. The obligations of the Subcontractor under this Article 12 shall not extend to the liability of the Architect, his agents or employees arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the Architect, his agents or employees, provided such giving or failure to give is the primary cause of the injury or damage.

The Subcontractor shall provide in the policy of comprehensive General Public Liability insurance required by this Subcontract Agreement a contractual indemnity endorsement, which insures Subcontractor's liability under the provisions of this Article 12.

Any sum or sums chargeable to the Subcontractor under this provision, or any other provision, of this Subcontract may at the election of the Contractor, be deducted from any payments otherwise due or to become due to the Subcontractor under this or any other Subcontract between the Contractor and the Subcontractor.

### ARTICLE 13.   INSURANCE

The Subcontractor shall maintain Liability Insurance for the risks and in the limits specified below **UNLESS OTHERWISE STATED IN THE SPECIFICATIONS DATED 7/01/2002, AS PREPARED BY LAMOUREUX PAGANO ASSOCIATES, 14 EAST WORCESTER STREET, WORCESTER, MA 01604 FOR SHREWSBURY MIDDLE SCHOOL.**

1.  Workers Compensation

    a.  State:                                      Statutory

    b.  Applicable Federal (e.g. long-
        shoremen, harbor work, Work at or
        outside U.S. Boundaries);                   Statutory

    c.  Maritime:                                   N/A

    d.  Employer's Liability:                       $1 Million

    e.  Benefits Required by Union
        labor contacts:                             As applicable

2.  Comprehensive General Liability must be occurrence policy (including Premises-Operations; Independent Contractors' Protective; Products and Completed Operations; Broad Form Property Damage);

    a.  Bodily Injury:

        $ 1 Million                  Each Occurrence

        $ 1 Million                  Aggregate, Products and
                                     Completed Operations

    b.  Property Damage:

        $ 1 Million                  Each Occurrence

        $ 2 Million                  Aggregate

    c.  Products and Completed Operations Insurance shall be maintained for a minimum of ☒ 1  ☐ 2 year(s) after final payment and Contractor shall continue to provide evidence of such coverage to Owner on an annual basis during the aforementioned period.

    d.  Property Damage Liability Insurance shall include coverage for the following hazards:

        ☒ X (Explosion)

        ☒ C (Collapse)

        ☒ U (Underground)

    e.  Contractual Liability (Hold Harmless Coverage);

        1.  Bodily Injury:

            $ 1 Million              Each Occurrence

        2.  Property Damage:

            $ 1 Million              Each Occurrence

            $ 2 Million              Aggregate

    f.  Personal Injury, with Employment Exclusion deleted:

        $ 1 Million                  Aggregate

3.  Comprehensive Automobile Liability (owned, non-owned, hired);

(a) Bodily Injury:

$ 1 Million          Each Person
$ 2 Million          Each Accident

(b) Property Damage:
$ 5 Million          Each occurrence

4.  Aircraft Liability (owned and non-owned) when
    applicable, as follows:

    ☐ With limits proposed by Contractor for Owner's
      approval

    ☒ Not applicable

Evidence of the above coverage, represented by certificates
issued by the insurance carrier, which must be satisfactory to
Contractor, shall be furnished to the Contractor prior to the
signing of this Subcontract. Certificates of Insurance shall state
that the Contractor will be notified in writing at least ten (10)
days prior to cancellation or renewal of any insurance. All
insurance held by the Subcontractor shall also name the
Contractor and Owner as Insured.

### ARTICLE 14.    LIENS

No part of the retained percentage (or any other sums
withheld) shall become due until this Subcontractor, if so
required, shall deliver to the Contractor a complete release of
all liens arising out of this Subcontract, or receipts in full in lieu
thereof and, if required in either case, an affidavit that so far as
he has knowledge or information, the releases and receipts
include all the labor and material for which a lien could be
filed; but the Subcontractor may, if any of his subcontractors
refuse to furnish a release or receipt in full, furnish a bond
satisfactory to the Contractor to indemnify the Contractor
against any lien. The Subcontractor shall use his best efforts to
prevent any laborers, materialman's, mechanic's or other similar
liens from being filed or otherwise imposed on any part of the
Work or the site. If any laborer's, material men's, mechanic's
or other similar lien or claim of lien is filed or otherwise
imposed by the Subcontractor or any sub-subcontractor,
material men or supplier in connection with the Work, and the
Subcontractor does not cause such lien to be released and
discharged forthwith or file a bond in lieu thereof, Contractor
shall have the right to pay all sums necessary to obtain its
release and discharge. The Contractor shall have the right to
deduct all amounts so paid from the Subcontract Price or to
deduct the same from the next succeeding Requisition until the
total amount expended shall be recouped. If any liens remain
unsatisfied after all payments to the Subcontractor are made,
the Subcontractor shall reimburse the Contractor for all monies
that the latter may be compelled to pay in discharging such a
lien, including all cost and expenses (including reasonable
attorneys' fees). The Subcontractor shall indemnify, defend
and hold harmless the Contractor and Owner from all costs and
expense, including attorneys' fees, claims, losses, demands,
causes of action or suits of whatever nature arising out of any
such lien.

### ARTICLE 15
#### OMISSIONS AND SUBSURFACE CONDITIONS

In the event that any matters contained in the
Specifications have been omitted from the Plans or vice versa,

the same shall be construed as if contained in both. The
Subcontractor shall promptly inform the Contractor in writing
of any inconsistency in the specifications and Plans. Any
changes made therein by the Architect or the Contractor shall
thereupon be binding upon the Subcontractor, and similarly any
portion of the general specifications to which this Subcontract
pertains which are omitted from the specifications shall be
construed a binding in this agreement.

Should conditions encountered below the surface of the
ground be determined by the Architect to materially differ from
the conditions indicated by the plans and specifications, any
adjustment in the Subcontract Price, claimed by either party,
shall be determined in accordance with Article 10 hereof.

### ARTICLE 16.
#### COMPETENCE OF WORKMEN-LABOR CONDITIONS

The Subcontractor shall promptly discharge from the
Work such employees as the Contractor or the Architect finds
not competent or compatible with other personnel on the job.
The Subcontractor shall promptly notify the Contractor of any
labor dispute or difficulty. The Subcontractor agrees to procure
materials and supplies from such sources and to perform all
Work on the Project with labor and Subcontractors that will
work harmoniously with other elements of labor involved in the
construction of the Project. In the event that any labor dispute
and/or difficulty arises, in any way related to the
Subcontractor's employees or independent contractors, thereby
causing any delay in any portion of the entire job, and such
delay, interference or stoppage continues for three (3) days, the
Contractor may, at its option, terminate this contract under
Article 9 for default, and the Contractor shall have no further
liability hereunder to the Subcontractor, except as provided in
Article 9. The Subcontractor expressly agrees not to participate
in or accede to any stoppage in the Work, which may result
from any labor dispute.

### ARTICLE 17.
#### NO CLAIMS FOR DAMAGES FOR DELAY

In the event of delay in the Work the Subcontractor agrees
that he shall have no claim for money damages or additional
compensation for delay regardless of how such delay is caused,
but in the case of any delay in the Work not due to his fault he
shall be entitled only to such extension of time for the
performance of the work as shall be allowed to the Contractor
by the Owner and/or Architect. All claims for such extension
of time shall be made in the manner and within the time
provided for in the Contract Documents between the Owner
and Contractor for like claims by the Contractor upon the
Owner.

### ARTICLE 18.
#### PAYMENT AND PERFORMANCE BONDS

The Subcontractor shall, simultaneously with execution of
this Subcontract, deliver to the Contractor and pay all
premiums for performance and payment bonds running to the
Contractor in sums equal to  0  % of the Subcontract Price in
the case of the performance bond, and  0  % of the Subcontract
Price in the case of the payment bond, each such bond to have
corporate sureties satisfactory to the Contractor, conditioned

---

upon the faithful performance by the Subcontractor of the Subcontract in each and every of its particulars, as it may from time to time be modified by Change Order, such bonds to be in such form and otherwise to contain such provisions as are satisfactory to the Contractor.

## ARTICLE 19.    WEATHER CONDITIONS

In the event of temporary suspension of Work during inclement weather or whenever the Architect shall direct, the Subcontractor will protect carefully his work and all materials on the job site connected with the furtherance of his Work against damage or injury from the weather. If, in the opinion of the Contractor and/or the Architect, any work or materials shall have been damaged or injured by reason of failure on the part of the Subcontractor or any of his subcontractors so to protect his work, such materials shall be removed and replaced or work redone at the expense of the Subcontractor.

## ARTICLE 20.
## ALL WORK SUBJECT TO CONTRACT DOCUMENTS AND ARCHITECT'S CONTROL

The Subcontractor acknowledges that he has familiarized himself with all the details of the Contract Documents, including the Conditions and all addenda thereto, and the Plans and Specifications relating to the Work undertaken by him under this Subcontract and particularly the authority over and control of the Work granted to the Architect and Contractor there under and hereunder and agrees to be bound in each respect and in every detail in accordance with the terms thereof and hereof. All disputes arising under this Subcontract shall be determined by the Architect as provided for in said Conditions. To the extent the Conditions provide that any such determination by the Architect shall be binding on the Contractor all such determinations shall be equally binding upon the Subcontractor. Notwithstanding any provision contained in any Contract Document requiring arbitration, Subcontractor agrees that any dispute under this Subcontract shall be submitted to Arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association only upon the written election of Contractor to submit to arbitration. Contractor may, in its sole discretion, withhold such election to arbitrate. Subcontractor's execution hereof constitutes and acknowledges Subcontractor's agreement to arbitrate at such election of Contractor. Each such dispute, which is submitted to arbitration, shall be heard before the American Arbitration Association in Boston, Massachusetts unless the Contractor specifies some other location.

The Subcontractor agrees, upon Contractor's written demand thereof, to become a party to and be bound by any arbitration proceeding involving the contractor, the Architect or the Owner to the extent that such proceedings involve any of the rights or obligations of the Subcontractor hereunder.

## ARTICLE 21.    ACCIDENT PREVENTION

The Subcontractor shall be responsible for the prevention of accidents, and agrees to comply with all laws, regulations and codes concerning safety as they shall be applicable to the Work and to the safety standards established during the progress of the Work by the Architect and/or Contractor. Should the Subcontractor neglect to adopt corrective safety measures ordered by the Architect and/or Contractor, the Contractor may perform them and deduct the cost from any payments due or to become due the Subcontractor. The absence of a stop order from the Contractor shall in no way relieve the Subcontractor of his responsibility. The Subcontractor agrees to comply with and be bound by the Contractor's Safety Policy, which is attached hereto and made part of this Subcontract.

## ARTICLE 22.    CLEAN UP

The Subcontractor shall, at his own expense, periodically clean up and remove from the job site all debris caused by the Work hereunder, and such clean up and removal shall include the removal of all debris and refuse left by the Subcontractor's working forces from meal periods, or from the uncrating of materials. The Subcontractor shall, upon the completion of his Work, clean up and remove from the job site all his plant, materials and equipment and all debris and refuse caused by the Work and/or his working forces. If the Subcontractor fails to clean up as provided herein, the Contractor may, upon 24 hours' written notice to the Subcontractor, cause such clean up of debris and elimination of nuisances and removal to be done at the expense and for the account of the Subcontractor. The decision of the Contractor as to the identity of the person or persons responsible for clean up and removal of debris, refuse, plant and equipment and materials, the cost thereof and the responsibility for such cost, shall be final and any charge back to Subcontractor for clean up and removal shall not be appealable to the Architect or any other forum but shall be conclusive.

## ARTICLE 23.
## SUBCONTRACTOR'S OBLIGATION TO EXPEDITE WORK

If delay is caused the Contractor or other subcontractors of the Contractor through the fault of the Subcontractor (or his subcontractors or suppliers) the Subcontractor shall be liable to the Contractor for all direct and consequential damages, including losses, costs and expenses (including attorneys' fees) resulting from such delay or non-performance. The Subcontractor shall promptly notify the Contractor in writing of any anticipated delay. The Subcontractor shall cooperate with the Contractor in scheduling and performing his Work to avoid conflict or interference with the work of others. The Subcontractor shall promptly submit shop drawings and samples as required in order to perform his Work efficiently, expeditiously and in a manner that will not cause delay in the progress of the Work of the Contractor or other subcontractors.

## ARTICLE 24.
## COMPLIANCE WITH LAWS AND REGULATIONS

The Subcontractor shall comply with Federal, State and local tax laws, social security acts, unemployment compensation acts and workmen's compensation acts and all other laws, regulations, ordinances, and by-laws applicable to the performance of his Subcontract. The Subcontractors work shall conform strictly to all applicable laws and ordinances in

force in the locality in which the Work is done. The Subcontractor acknowledges that he has carefully examined and is thoroughly familiar with and will comply with the provisions in the Conditions and in Exhibits hereto relating to Wage Rate, Apprentices' Overtime, Posting Minimum Wage Rate, Payment of Employees (by Subcontractors), Anti-Kickback Statute and Regulations, Wage Underpayments and Adjustments, Payrolls of Subcontractors, Interest of Officials and Prohibited Interests. The Subcontractor will comply with the provisions of the Occupational Safety and Health Act of 1970 (or any successor). The Subcontractor is required to implement the Community Provisions of Chapter #470 of the Acts of 1983 of the General Laws of Massachusetts, the so-called "Right to Know" law, effective September 6, 1984. The Subcontractor shall indemnify and hold the Contractor harmless for any loss, expense, cost, or damage occasioned by any violation of provisions of any or all of the foregoing.

## ARTICLE 25.
## EQUAL EMPLOYMENT OPPORTUNITIES

The Contractor is dedicated to the furtherance of equal employment opportunity. Therefore, there are incorporated herein by reference, whether or not strictly applicable by law to the Work, federal Executive Order 11246 or any successor thereto; Title VII of the Civil Rights Act of 1964; the Massachusetts Fair Employment Practice law; or regulations and rulings under each or any of the foregoing; and all amendments to each and any of the foregoing. The Subcontractor agrees to be bound by and to comply with the provisions of all of the foregoing and to maintain an affirmative action program and plan to assure equal employment opportunity throughout the performance of the Work. Without in any way limiting the right of the Contractor under Article 9 hereof, the Subcontractor shall indemnify and hold the Contractor harmless for any loss, expense, cost or damage occasioned by any failure to observe the provisions of this Article 25.

## ARTICLE 26.    NOTICES

All notices to the Subcontractor having to do with this Subcontract shall be deemed sufficient if delivered in writing to any representative of the Subcontractor or if mailed, by certified or registered mail, to his address on the signature page hereof. All notices to the Contractor shall be sent to it at

20 Dan Road
Canton, MA 02021

Either party may designate another address for notice by written notice delivered or mailed as aforesaid to the other party.

## ARTICLE 27.    SECURITY

Contractors shall have no liabilities to Subcontractor for security of materials, equipment, or tools at the job site, which shall be stored and used there solely at risk of Subcontractor. Subcontractor shall comply with all security rules of general applicability promulgated by Contractor.

## ARTICLE 28.    SEVERABILITY

In the event any provision of this Subcontract shall be found to be prohibited by law, such provision shall be ineffective only to the extent of such prohibition, and shall not in any manner invalidate or affect the enforceability of the remaining provisions of this Subcontract.

## ARTICLE 29.    EXHIBITS

See exhibits listed on page one (1) of this contract which have been initialed for identification by the parties and constitute a part hereof.

## ARTICLE 30.    FINAL AGREEMENT ·

It is understood that this Subcontract, including all instruments incorporated herein be reference, constitutes the full and complete agreement now existing between the Contractor and Subcontractor and supersedes any and all prior agreements or understanding, written or oral, express or implied, between the Contractor and Subcontractor, except as otherwise expressly provided herein.



IN WITNESS WHEREOF, the parties have hereto, by their duly authorized representatives, set their hands and seals as of the day and year first above written. Each person signing below who purports to do so in a representative capacity personally warrants and represents to the other party that he is fully authorized to execute and deliver this Subcontract and that the corporation, trust or other body he purports to represent is empowered to enter into this Subcontract and will become fully bound by his execution and delivery.

**CONTRACTOR:**

**JACKSON CONSTRUCTION COMPANY**

By: _____  6-21-6⁴
                                    **Date**

_____
**Richard McGuinness**
**Printed Name**

_____
**Project Manager**
**Title**

**SUBCONTRACTOR:**

**LANDWORK CREATIONS, LLC**

By: _____  6/12/04
                                    **Date**

Neal H. Matthews
**Printed Name**

Principal
**Title**

**ADDRESS OF SUBCONTRACTOR:**

PMB 291 1500A Lafayette Road

Portsmouth, NH 03801

---

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO: 05-CV-40072 FDS

| | | |
|---|---|---|
| LANDWORKS CREATIONS, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | AMENDED COMPLAINT |
| | ) | |
| UNITED STATES FIDELITY AND | ) | |
| GUARANTY COMPANY and | ) | |
| LOVETT-SILVERMAN CONSTRUCTION | ) | |
| CONSULTANTS, INC. | ) | |
| | ) | |
| Defendants | ) | |

1. Plaintiff, Landworks Creations, LLC ("the Plaintiff") is a limited liability corporation with a principal place of business at 1500A Lafayette Road in Portsmouth in the State of New Hampshire.

2. Defendant, United States Fidelity & Guaranty Co./St. Paul's Ins. Co ("USF & G") is an insurance company with a place of business at 124 Grove Street, Franklin, Norfolk County, in the Commonwealth of Massachusetts.

3. Defendant, Lovett-Silverman Construction Consultants, Inc. ("L-S") is a business entity with a principle place of business at 380 Townline Road, Haupauge, in the state of New York.

4. Jurisdiction may be had over L-S based upon the conducting of business by L-S in the Commonwealth of Massachusetts, and by nature of its torts within the Commonwealth of Massachusetts, and based upon the existence of offices within the Commonwealth of Massachusetts.

1

5.  The Plaintiff entered into a contract with Standen Contracting Company, Inc. of North Dartmouth, Massachusetts.

6.  The Plaintiff agreed to perform certain work for Standen Contracting Company, Inc. at the Shrewsbury Middle School ("the Project")

7.  Standen Contracting Company, Inc. was bonded by USF & G, United States Fidelity & Guaranty Co.

8.  Standen Contracting Company, Inc. was unable to complete its work at the Project, and USF & G, pursuant to its obligations under a performance bond SW5041 assumed responsibility for completion of the Project in the stead of Standen Contracting Company, Inc.

9.  The Plaintiff has performed it work under the Standen contract, and is owed funds by USF & G for the work performed.

10. USF & G has failed to pay the Plaintiff for work performed at the Project, to the extent of $135,101.00.

11. At some point in the winter of 2004-2005, or in the spring of 2005, USF & G brought L-S to the Project to oversee completion of the Project.

12. L-S engaged in a scheme to reduce costs to USF & G on the Project by refusing to authorize payments to subcontractors, including the Plaintiff, by engaging in extortion toward the subcontractors, by strong-arming the subcontractors and by attempting to deny the subcontractors their rights under their contracts.

13. L-S also engaged in conduct that compelled subcontractors to file suit to receive payment, as part and parcel of a scheme to extort payments from subcontractors to USF & G through frivolous and fraudulent lawsuits.

2

14. In the words of Al Falango at L-S, there was an organized and on-going effort by L-S "to bang the subs…"

15. Landworks was a victim of L-S's conduct.

<div align="center">

COUNT I
BREACH OF CONTRACT
LANDWORKS v. USF & G

</div>

16. The Plaintiff restates allegations 1-16 and incorporates them by reference.

17. USF & G breached its contract by failing to perform its obligations to make payment under the bond between USF & G and Standen for the benefit of the Plaintiff..

18. As a result of this breach, the Plaintiff has been denied its expectancy and has otherwise been harmed.

<div align="center">

COUNT II
FRAUD
LANDWORKS v. BOTH DEFENDANTS

</div>

19. The Plaintiff restates allegations 1-18 and incorporates them by reference.

20. The Defendants engaged in specific conduct which serve as fraud on the Plaintiff:

a.  the Defendants failed to effectuate payments of monies due and owing

b.  knowing that funds were due and owing, the Defendants engaged in conduct to deprive the Plaintiff of its funds, including exclusion of the Plaintiff from the Project without cause, failing to communicate with the Plaintiff to explain its conduct and failing to engage in good faith and fair dealing implied in each contract

c.  knowing that funds were due and owing, the Defendants devised and carried out a conspiracy to "bang" Landworks.

<div align="center">3</div>

d.  knowing that the Plaintiff was not culpable for defects at the site, USF & G alone and
with the support of L-S defamed the Plaintiff, making knowingly false statements in court
papers to defend its failure to pay, and otherwise, by its conduct, implying defects in
performance that harmed the Plaintiff in its business

e.  knowing that the Plaintiff was not culpable for defects at the site, USF & G filed false
statements with this Court, obstructed access to documents by thwarting the discovery
process, asserted false affirmative defenses, manipulated the legal system by removing
this matter to the federal court in the hope of slowing the progress of litigation, assisted in
and filed a knowingly false counterclaim.

f.  Knowing that the Plaintiff was not culpable for defects at the site, USF & G has engaged
in a pattern and practice of hindering or delaying the resolution of this litigation.

21. This conduct, which constituted fraud on the Plaintiff, caused harm to the Plaintiff.

<div align="center">

COUNT III
TORTOUS INTERFERENCE
LANDWORKS v. BOTH DEFENDANTS

</div>

22. The Plaintiff restates allegations 1-21 and incorporates them by reference.

23. L-S, by carrying out its program of "banging" the subcontractors, did tortuously interfere
in the contract between the Plaintiff and USF & G, for ulterior motives.

24. L-S was aware of the advantageous business relationship between the Plaintiff and USF
& G.

25. L-S interfered in that relationship.

As a result, the Plaintiff was harmed.

<div align="center">

COUNT IV
TORTOUS INTERFERENCE
LANDWORKS v. BOTH DEFENDANTS

</div>

26. The Plaintiff restates allegations 1-25 and incorporates them by reference.

27. L-S, by carrying out its program of "banging" the subcontractors, did tortuously interfere

in the contract between the Plaintiff and USF & G, for ulterior motives.

28. L-S was aware of the advantageous business relationship between the Plaintiff and USF

& G.

29. L-S interfered in that relationship.

As a result, the Plaintiff was harmed.

<div align="center">

COUNT V
CONVERSION
LANDWORKS v. USF & G

</div>

30. The Plaintiff restates allegations 1-29 and incorporates them by reference.

31. USF & G received the benefit of the Plaintiff's work, to a value of $135,000.

32. USF & G kept that value.

33. USF & G converted the value of that work to its own benefit.

34. As a result of this conversion, the Plaintiff has been harmed.

<div align="center">

COUNT VI
VIOLATIONS OF c. 93A AND c. 176D
LANDWORKS v. BOTH DEFENDANTS

</div>

35. The Plaintiff restates allegations 1-34

36. The Plaintiff and both defendants are involved in trade or commerce.

37. Defendant, USF & G failed to investigate a claim and make prompt payment. Notwithstanding that liability was reasonably clear, USF & G has declined to make full settlement of the claim, without cause or excuse.

38. Defendant, L-S, set out to harm Landworks by denying it access to the Project and to funds due and owing.

39. The Plaintiff has made demand for its funds, a demand which has been ignored.

40. The pattern and practice of fraud, tortous interference and such conduct constitutes violations of c. 93A by L-S.

41. The pattern and practice by USF & G of refusing to make payments and to investigate violate both c. 93A and c. 176D.

42. As a result of this conduct, the Plaintiff has been harmed in its business.

<div align="center">

COUNT VII
VICARIOUS LIABILITY
LANDWORKS v. USF & G

</div>

43. The Plaintiff restates allegations 1-42

44. To the extent that L-S was acting as an agent of USF & G,  USF & G is liable for the torts of its agents.

45. The Plaintiff was harmed by the tortous conduct of L-S.

46. Defendant, USF & G is liable for that harm.

<div align="center">

COUNT VIII
NEGLIGENT SUPERVISION
LANDWORKS v. USF & G

</div>

47. The Plaintiff restates allegations 1-46

48. To the extent that L-S was acting as an agent of USF & G,  USF & G had a duty to supervise its agent to assure that the agent did not commit harm.

49. Defendant, USF & G breached that duty.

As a result of its negligence, the Plaintiff was harmed.

WHEREFORE, the Plaintiff respectfully requests that:

1.  this Honorable Court enter judgment against USF & G as to all Counts in which it is named;

2.  this Honorable Court enter judgment against L-S as to all Counts in which it is named

3.  this Honorable Court award the Plaintiff the amount of $135,101 together with interest and costs, trebled, along with attorney's fees

4.  this Honorable Court award damages in an amount that will make the Plaintiff whole on the tort claims, trebled, along with attorney's fees; and

5.  this Honorable Court award any further relief as deemed appropriate by this Court.

THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully Submitted,
**Landworks Creations, LLC**
By its attorney,

s/Robert N. Meltzer
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116
Telecopier (508) 872-8284

Dated: June 20, 2006