UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES FIDELITY AND | ) C.A. No. 4:05-CV-40072-FDS |
| GUARANTY COMPANY, and | ) |
| LOVETT SILVERMAN CONSTRUCTION | ) |
| CONSULTANTS, INC. | ) |
| Defendant. | ) |

**OPPOSITION OF DEFENDANT, UNITED STATES FIDELITY
AND GUARANTY COMPANY ("USF&G"), TO PLAINTIFF'S MOTION
*IN LIMINE* TO DISQUALIFY GEORGE G. BYL AS AN EXPERT**

## I.    INTRODUCTION

Regardless of the contractual arrangement under which Plaintiff, Landworks Creations, LLC ("Landworks") now claims to have performed work at the Shrewsbury Middle School, it is undisputed that when Landworks last performed work at the Project in the late Summer or early Fall, 2004, Landworks had not completed all of the work required pursuant to its contract obligations. (For example, see Exhibit 1 – Neal Matthews Deposition, February 16, 2007, pages 64, 66, 83-84, and 94). Therefore, Landworks, apart from whether it is entitled to the amount it claims on certain contested Change Orders, cannot recover the full contract price for its work, but, at most, is entitled to recover for the value of the work it actually performed. Landworks, in its pleadings, admits as much because it has reduced the amount it claims by a credit of $25,000 for incomplete work. Its claim for $135,000 is net of that credit.

Unfortunately for Landworks, the true value of the credit against its contract price is substantially larger. In fact, the true credit by which Landworks' claim must be reduced is no

less than $268,000 and may be substantially more depending upon whether Landworks'

contractual obligations are as narrow as it claims them to be or whether Landworks' contractual

obligations are as broad as those identified in its April 2003 Subcontract with Jackson

Construction Company.

In order to determine the credit to be applied against Landworks' claim, the scope of the

obligations under Landworks' contract first must be identified, then the scope of the work that

either was defective or was incomplete must be identified and finally, a value must be

established for the defective and/or incomplete work.  In order to do this, the person performing

this evaluation must first look at the relevant contract documents, then look at the documents

identifying the work that was defective or remained to be completed and finally must calculate

the fair value of that work.

Mr. Byl will testify concerning the value of the incomplete and defective work as to

which USF&G either is entitled to a credit against the amount proven to be owed to Landworks

(assuming Landworks proves a basis for recovery from USF&G) or is entitled to recover on its

Counterclaim because the credit exceeds Landworks' claim.

## II.    GEORGE BYL'S QUALIFICATIONS

It is in this light that Landworks' Motion *in Limine* with respect to USF&G's expert,

George Byl, must be considered.  As disclosed to Landworks, Mr. Byl holds a degree in civil

engineering, is a registered professional engineer in the Commonwealth of Massachusetts and

two other states and is a licensed builder in the Commonwealth of Massachusetts.  (Exhibit 2 –

USF&G Expert Disclosure).  In addition, Mr. Byl has over 40 years experience in the

construction industry as detailed in the Expert Disclosure.  Finally, Mr. Byl has disclosed expert

testimony before numerous courts and tribunals also as identified in the Expert Disclosure.

(Exhibit 2 – Expert Disclosure). In its Motion, Landworks does not challenge Mr. Byl's qualifications to testify as an expert.

### III.    THE BASIS FOR GEORGE BYL'S TESTIMONY

Landworks challenges Mr. Byl's ability to testify as an expert based upon a peculiar argument, as it relates to an expert, that Mr. Byl does not have personal knowledge with respect to the underlying facts of the case. As the Court surely understands, unless an expert fortuitously happens to be present during the course of events that form the basis of the claims in a civil action, no expert comes before the Court with personal knowledge of the facts of the underlying dispute. Rather, experts almost universally rely upon third party sources with respect to the underlying facts involved in the dispute and then apply their education, training and experience to interpret the facts and events in order to assist the trier of fact in coming to a conclusion concerning the merits of the underlying claim. Fed.R.Evid.703[1], *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-149 (1999).

In performing his work with respect to this matter, Mr. Byl identified precisely what he did. The first paragraph of his February 26, 2008 Report ("Report") reveals each of the documents or sources of information considered by Mr. Byl in the preparation of the Report. (Exhibit 3 – Byl Report). These sources of information included the specifications and site plans for the Standen Contract with the Town of Shrewsbury, various applications for payment, deposition transcripts and exhibits, contemporaneous documents regarding the state of the work prepared by persons with knowledge of the conditions at the site, documents with respect to the

---

[1] Federal Rule of Evidence 703 states: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inference upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

status of the subcontract account as claimed by Landworks and USF&G and sources of data with respect to construction costs customarily relied upon by experts in valuing the type of work involved during the period in question.

In his Report, Mr. Byl set forth in detail the data he accumulated, the analysis he performed on that data and the conclusions that he reached with respect to that data**.**  It is Mr. Byl's opinion that the value of the defective and incomplete work exceeds the amount claimed by the Plaintiff, after application of the $268,000 credit, by more than $160,000.  (Exhibit 3 – Byl Report).  This opinion clearly is relevant to the issue of whether Landworks is owed anything on the claim that it asserts.  It is relevant, as well, to the counterclaim of USF&G against Landworks.

Landworks, in its Motion, makes numerous statements concerning how it expects USF&G to conduct its case at the trial.  It also suggests that Mr. Byl's testimony will be the only evidence of defective or incomplete work.  However, Mr. Byl's Report (in Tab 6) includes various documents and reports of persons who had personal involvement with the performance of the landscape work.  For instance, Tab 6 includes reports dated June 30, August 26 and December 7, 2004, by Jeff Richards, a Registered Landscape Architect who was employed by Waterman Design Associates, Inc., a consultant to the Project architect.  (Exhibit 3 – Report).  Not only is Mr. Richards listed as one of USF&G's witnesses, he is also is listed as a Landworks' witness.  USF&G expects that Mr. Richards will testify in conformance with the statements made in reports that he authored concerning his observations of the condition of the landscaping work when Landworks abandoned the Project.  In this regard, it is also relevant that Landworks identified as trial witnesses the project architect, representatives of the Town of Shrewsbury and other persons who were on the Project during the course of construction.  These

other witnesses, if they are to give testimony relevant to the contract claim, presumably also will be asked by Landworks concerning their observations with respect to the work performed by Landworks and, on cross-examination, with respect to the work improperly performed or not performed by Landworks.

Mr. Byl's Report (at Tab 9) includes various photographs that depict the state of the work at various times during the course of the Project. Because Landworks abandoned the Project in the late Summer or early Fall 2004 and the landscaping work was not completed until 2006, photographs taken in the interim period depict the state of the work as it existed when Landworks left the site. Further, Mr. Richards' December 7, 2004 report and Mr. Matthews' deposition testimony (as described at pages 8 – 10 of Mr. Byl's Report) identify various items of incomplete work that the photographs depict.

All of the documents and photographs identified by Mr. Byl are precisely the type of information and data upon which Rule 703 permits expert to rely.

## IV. GEORGE BYL'S TESTIMONY IS CONTEMPLATED BY FEDERAL RULE OF EVIDENCE 702

Fundamentally, the function of an expert is to assist the trier of fact in sorting out the contentions of the parties. Fed.R.Evid. 702.[2] Mr. Byl's testimony is intended to provide the jury with evidence concerning the credit to which USF&G is entitled against the claim by Landworks because of the failure of Landworks to perform all the work required of it. There is nothing in Landworks' Motion *in Limine* that raises any issue that would prevent the trier of fact from

---

[2] Federal Rule of Evidence 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

considering Mr. Byl's testimony.  It is for the trier of fact, not Landworks or its counsel, to evaluate and credit (or not) Mr. Byl's testimony.

Essentially, Landworks' objection to Mr. Byl's proposed testimony is based upon the fact that it is adverse to Landworks.  Its objection is not based upon any valid grounds that provide support for the granting of a Motion *in Limine* to preclude Mr. Byl's testimony.  Landworks would have the Court pre-judge Mr. Byl's testimony and usurp the function of the trier of fact in a situation in which Mr. Byl is prepared to provide expert opinion with respect to construction issues based upon the contract documents and contemporaneous evidence of the condition of the site and the state of the work that was performed and not performed.[3]

## V.     FEDERAL RULE OF EVIDENCE 704 DOES NOT PRECLUDE GEORGE BYL'S TESTIMONY

Finally, Landworks objects because it contends that Mr. Byl will offer an opinion on ultimate issues.  As stated above, Mr. Byl is expected to testify about the analysis he performed on the data he reviewed, the conclusions he reached regarding the data, and the value of the defective and incomplete work.  Even if the Court finds that this is an opinion on the ultimate issue, testimony of this sort is not prohibited.  Federal Rule of Evidence 704 states, in part, that an expert's testimony (except in certain criminal proceedings) may embrace an ultimate issue to be decided by the trier of fact.[4]  *Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 624 (1st Cir. 1988).

---

[3] Mr. Meltzer's *ad hominem* attack on Mr. Byl in Footnote 1 on page 4 of Landworks' Motion should be ignored because, if for no other reason, it is not presented to the Court by way of Affidavit.  Should Mr. Meltzer propose to give evidence to that effect at trial, presumably he will be disqualified from representation of Landworks.

[4] Federal Rule of Evidence 704 states:  "(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.  (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto.  Such ultimate issues are matters for the trier of fact alone."

## VI.    CONCLUSION

For all of the above-named reasons, Landworks Motion *in Limine* should be denied.

Respectfully submitted,

**UNITED STATES FIDELITY &
GUARANTY COMPANY,**
By its attorneys,


_____/s/ Peter G. Hermes_____
Peter G. Hermes, BBO No. 231840
Cynthia J. Stephens, BBO No. 560670
HERMES, NETBURN, O'CONNOR
        & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
(617) 728-0050
Date:  May 6, 2008                          (617) 728-0052 (F)


## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 6, 2008.


__/s/ Peter G. Hermes_____
Peter G. Hermes

G:\DOCS\PGH\clients\St. Paul Travelers\Landworks\Opp to Motion in Limine re Disqualify Byl.doc

# EXHIBIT 1

2-1

Volume II
Pages 2-1 to 2-119
Exhibits 90 - 116

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

- - - - - - - - - - - - - - -x
                                    :
LANDWORKS CREATIONS, LLC,           :
            Plaintiff,              :
                                    :
        vs.                         :    Civil Action No.
                                    :    05-CV-40072 FDS
UNITED STATES FIDELITY AND          :
GUARANTY COMPANY and                :
LOVETT SILVERMAN CONSTRUCTION       :
CONSULTANTS, INC.,                  :
            Defendants.             :
                                    :
- - - - - - - - - - - - - - -x


        CONTINUED DEPOSITION OF NEAL H. MATTHEWS,
individually and as designee of LANDWORKS CREATIONS,
LLC, a witness called on behalf of the Defendant
Lovett Silverman Construction Consultants, Inc.,
taken pursuant to the Federal Rules of Civil
Procedure, before Carol H. Kusinitz, Registered
Professional Reporter and Notary Public in and for
the Commonwealth of Massachusetts, at the Offices of
The Mountain States Law Group, 160 Speen Street,
Suite 307, Framingham, Massachusetts, on Friday,
February 16, 2007, commencing at 12:12 p.m.


PRESENT:

    The Mountain States Law Group
        (by Robert N. Meltzer, Esq.)
        160 Speen Street, Suite 307, Framingham,
        MA 01701, for the Plaintiff.

(Continued on Page 2-2)

2-64

1        Q.    If there were signs, standing metal signs

2    to be installed, would that have been within the

3    responsibility of Landworks?

4        A.    It would have depended what portion of the

5    contract that was under.  But like I said, I just

6    don't know if that was anything -- it was not, to my

7    knowledge, in my contract.

8        Q.    What about Item No. 10; was that within the

9    responsibility of Landworks?

10       A.    Yes.

11       Q.    Was that work performed?

12       A.    No, sir.

13       Q.    How about Item No. 11; was that within the

14   scope of Landworks' responsibility to perform?

15       A.    Yes, sir.

16       Q.    Was that work performed?

17       A.    No, sir.

18       Q.    Item No. 12 refers to paving items on a

19   deficiency list.  Are you familiar with the

20   referenced list?

21       A.    No, sir.  It's not to say that I haven't

22   seen it before.  I do not recall seeing a deficiency

23   list for the paving.

24       Q.    If there were deficiency items -- if there

2-66

1    A.    The field facilities, no.  Doing the prep

2  work, yes.

3    Q.    And was the prep work completed by

4  Landworks?

5    A.    All that is related to the eastmost long

6  jump runway or the runway pits.  All of these are

7  sort of tied together.  And the preparatory work for

8  that was in my scope, yes, and was not completed.

9    Q.    Item No. 15, do you understand what that

10  reference is?

11    A.    Yes.

12    Q.    And was that work within the scope of

13  Landworks' responsibility?

14    A.    No, sir.

15    Q.    Was it outside the scope of Landworks'

16  contract?

17    A.    Yes, sir.  In my opinion, it was outside of

18  the scope of Landworks' contract.

19    Q.    What's your understanding of what "complete

20  bituminous paving at track and field events"

21  referenced?

22    A.    It would have been the installation of the

23  full depth pavement at the long jump and high jump

24  areas and the addition of an overlay to the running

2-83

1      A.    I've seen this before, yes, sir.

2      Q.    There's handwriting on this.  Do you

3 recognize that handwriting?

4      A.    Yes, sir.  The document that I referenced

5 before with going over with Frank Leonardo at the

6 site was this document.

7      Q.    Is that your handwriting on the left-hand

8 side of the document?

9      A.    Yes, sir.

10      Q.    This appears to be site work deficiencies,

11 work yet to be complete, as of December 7, 2004; is

12 that correct?

13      A.    Yes, sir.

14      Q.    With respect to the first group under Item

15 A, "Major Topical Facilities," were any of those

16 items within the scope of Landworks' responsibility?

17      A.    No, sir.  Oops, I'm sorry.  Reinstalling of

18 the monument was.

19      Q.    With respect to the second grouping under

20 "lower ball field," were any of those items within

21 the scope of Landworks' responsibility?

22      A.    a, b, c, yes.  d, no.  e, I believe yes.

23      Q.    Were Items a, b, c and e completed by

24 Landworks?

2-84

1    A.   No.  That is the area that we have said

2    previously, the west end of the track area, needed

3    to be loamed and seeded.

4    Q.   The cut and fill items on the second page,

5    were any of those within the scope of Landworks'

6    responsibility?

7    A.   The first one, no.  The second one, regrade

8    the bike path, is the item that we had previously

9    talked about, about the walkway leading from the

10    elementary school to the middle school that Katie

11    Crockett and I had discussed about it complying with

12    the ADA letter.

13    Q.   Under "Storm drainage" were any of those

14    items within the scope of Landworks' responsibility

15    to correct?

16    A.   The first item is a restating of the item

17    above that, which is a restatement of item back on

18    the first page, talking about the headwalls.  They

19    are all the same headwalls.  There was just two

20    concrete headwalls on the whole job.  And as I said

21    before, no.

22    Q.   With respect to the other three items, were

23    those within the scope of Landworks' responsibility

24    to correct, the other three items under "Storm

2-94

1    Q.    Were any of those items within the scope of

2    Landworks' responsibility?

3    A.    The first item, no.  The second item, no.

4    Q.    Are any of the items listed under

5    "Irrigation" within the scope of Landworks'

6    responsibility?

7    A.    No, sir.

8    Q.    Is the item listed under "General site

9    cleanup" within the scope of Landworks'

10    responsibility?

11    A.    Part of it would have been, yes, sir.

12    Q.    What general site cleanup was within the

13    scope of Landworks' responsibility left to be done

14    as of December 7th, 2004?

15    A.    The stockpile at the west end of the

16    football field needed to be removed and that area

17    graded out and cleaned up.  There may have been

18    miscellaneous items elsewhere on the site, but that

19    was the majority of it.

20    MR. HIPP:  If you'll bear with me for just

21    a second, I'll rearrange these.

22    (Document marked as Exhibit 111

23    for identification)

24    Q.    Mr. Matthews, do you recognize the

# EXHIBIT 2

2/27/08

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LANDWORKS CREATIONS, LLC,            )
                                     )
      Plaintiff,             )
                                     )
vs.                                  )
                                     )
                                     )     C.A. No. 4:05-CV-40072-FDS
UNITED STATES FIDELITY AND           )
GUARANTY COMPANY, and                )
LOVETT SILVERMAN CONSTRUCTION        )
CONSULTANTS, INC.                    )
                                     )
      Defendant,             )
                                     )

### UNITED STATES FIDELITY AND GUARANTY COMPANY'S DISCLOSURE OF EXPERT TESTIMONY

In accordance with Fed. R. Civ. P. 26(2), United States Fidelity and Guaranty Company ("USF&G") hereby discloses its expert witnesses. USF&G will call George G. Byl, P.E. of ReStructure Company, Inc. and Michael P. Pellegri of Vertex Construction Services, Inc.

Mr. Byl is expected to testify in accordance with his written report, which is attached hereto as Exhibit A. Mr. Byl's qualifications are contained in his resume, which is attached hereto as Exhibit B. Mr. Byl is compensated for his time at the rate of $195.00 per hour. A list of cases in which Mr. Byl has testified as an expert since 2004 is attached hereto as Exhibit C.

Mr. Pellegri is expected to testify in accordance with his written report, which is attached hereto as Exhibit D. Mr. Pellegri's qualifications are contained in his curriculum vitae, which is attached hereto as Exhibit E. Mr. Pellegri is compensated for his time at the rate of $140.00 per hour. Mr. Pellegri has not previously testified as an expert witness.

Respectfully submitted,

**UNITED STATES FIDELITY &
GUARANTY COMPANY**

Peter G. Hermes, BBO No. 231840
Kevin J. O'Connor, BBO No. 555249
Eric. C. Hipp, BBO No. 642658
HERMES, NETBURN, O'CONNOR &
    SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
(617) 728-0050
(617) 728-0052 (F)

Dated: February 27, 2008

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 27th day of February, 2008, a copy of the within document was served by first class, postage prepaid mail upon the following counsel of record:

Robert N. Meltzer, Esq.
The Mountain States Law Group
P.O. Box 1459
Framingham, MA 01701

John B. Connarton, Jr., Esq.
Donovan Hatem
World Trade Center East
Two Seaport Lane
Boston, Massachusetts 02210

Eric C. Hipp

G:\DOCS\ECH\Client\St. Paul Travelers\Jackson Construction\Landwork\Pleadings\USF&G's Disclosure of Expert Testimony.doc

# Resume



**George G. Byl, P.E.**          66 Sycamore Street          Holbrook, MA 02343

Qualifications in Brief:          Graduate Civil Engineer, Professional Engineer
                                  Registered in Massachusetts, Connecticut and Rhode Island
                                  Licensed Builder,  Building Consultant and General Contractor

## WORK HISTORY

1997 to Present:   **President of ReStructure Company, Inc.**
                   **Manager of  B & B Realty**

1975 To 1997      **Self Employed**

                  Positions          Construction Consultant, Owner of the ReStructure Company, and General
                                     Manager of  B & B Realty

                  Work               Building and Construction Consultant to Sureties, Construction Companies,
                                     Insurance Companies, Attorneys and property owners
                                     ReStructure Company is a General Contracting Company established in 1978

                                     B & B Realty manages multifamily property in several communities in
                                     Massachusetts

1977 to 1978      **Kent Corp.,  Construction Management firm, Boston, MA**

                  Position           Vice President - Construction Manager

                  Work               Construction Manager for:  North Quincy High School, Boston Children's
                                     Museum,  Cambridge, MA  Office Building and others

1975 to 1988      **Gambal & Associates, Inc., West Caldwell, NJ**

                  Position:          Vice President (New England Area), Consultant

                  Work:              Construction Inspection and Evaluation, Forensic Engineering, Claims
                                     Analysis and Litigation Support on numerous Construction projects on the
                                     East Coast

1973 to 1975      **C.W. Ackerman Construction Consultants, Inc., Suffern,  NY**

                  Position:          Construction Manager, Massachusetts

                  Work:              Project Take Over and Management of both building and heavy construction
                                     projects in the Massachusetts area,
                                     Inspection and Evaluation of active construction projects and Analysis of
                                     completed projects

# Resume                                                      Re Structure
Company, Inc.

**George G. Byl, P.E.**              66 Sycamore Street              Holbrook, MA 02343

| | |
|---|---|
| 1972 to 1973 | **Gil-Bern Industries, Inc., (Universal Precast) Plympton, Massachusetts** |

Position:     General Field Superintendent

Work:         High-rise building complex, Boston, MA., 104 Unit Apartment, Marlboro, MA. and others

| | |
|---|---|
| 1971 to 1972 | **Sprague Construction Corporation, Boston, MA** |

Position:     Superintendent

Work:         Hospital Parking Garages, Boston, MA

| | |
|---|---|
| 1970 to 1971 | **Franchi Construction Company, Newton, MA** |

Position:     Assistant Superintendent

Work:         Assistant field superintendent and field engineer for college complex Haverhill, MA, High Rise office building, Cambridge, MA and others

| | |
|---|---|
| 1965 to 1970 | **United States Army** |

Rank:         Captain, Corps of Engineers

Positions:    Instructor, Teacher, Resident Engineer, Design Officer, Platoon Officer, Executive Officer, Assistant S-2/S-3 Officer and Construction Engineer

Work:         Teacher and Instructor of Engineering Courses at stateside training centers, Design and Build reinforced concrete buildings, housing, roads, and bridges in Viet Nam

| | |
|---|---|
| 1965 | **California Department of Highways  District 4, San Francisco, CA** |

Position:     Junior Civil Engineer

Work:         Construction Inspector, Surveying, soil and concrete Testing, field and plant Quality Control

| | |
|---|---|
| 1962 to 1964 | **Celanese Chemical Company** |

Position:     Laboratory Technician

Work:         Testing and Data Recording, Quality Control and Synthesizing plastics and lubricant products,

Development of testing Procedures and Test Equipment

**Resume**                                                                 **Re Structure**
                                                                              Company, Inc.

**George G. Byl, P.E.**          66 Sycamore Street          Holbrook, MA 02343


**EDUCATION**
Postgraduate:

| | | |
|---|---|---|
| | 1990 | Center for Professional Advancement Civil Engineering (PE), New Brunswick, NJ |
| | 1985, 1986 | Mass Society of Civil Engineers, Engineer Review course, MIT, Cambridge, MA |
| | 1966 | U.S. Army, Bridge Design, Timber Construction, Surveying and others |
| | 1965 | Lehigh University, Indeterminate Structural Design, Plastic Design of Steel Structures and other post bachelor courses |
| Graduate: | 1965 | Lehigh University, B.S. in Civil Engineering |
| Attended: | 1963 | Newark College of Engineering Civil Engineering courses |


**LICENSES:**                State of Massachusetts: Construction Supervisor,
                             Home Improvement Contractors License


**REGISTRATION:**            Registered Professional Engineer - Massachusetts
                             Registered Professional Engineer- Connecticut
                             Registered Professional Engineer- Rhode Island


**MEMBERSHIPS:**             Massachusetts Society of Professional Engineers
                             National Society of Professional Engineers
                             Mass Construction Industry Board (MCIB)
                             American Society for Testing and Materials (ASTM)
                             International Congress of Building Officials (ICBO)
                             American Institute of Steel Construction, Inc. (AISC)
                             American Concrete Institute (ACI)
                             American Welding Society (AWS)
                             National Trust for Historic Preservation
                             SPNEA
                             Trustees of Reservations

# Court / A.A.A. Testimony 

## George G. Byl, P.E.

| | |
|---|---|
| 2004 | Scott E. Riley & Anne M. Riley v John Gero Construction, Inc.<br>Essex County Superior Court Civil Action No. 00-1953 |
| 2004 | Richard Vargas & Lillian Vargas v. Sylvia and Company Insurance Agency, Inc.<br>Docket No. BRCV2001-00743 |
| 2004 | Kenneth Earle v. Stephen and Nancy Suklis<br>Worcester, SS; C.A. No. 011674B |
| 2004 | Peabody Construction Co., Inc. v. National Grange Mutual Insurance Company<br>Norfolk Superior Court, C.A. No. 02-01443 |
| 2004 | John T. Callahan & Sons, Inc. v. Dykeman Electric Company, Inc.,<br>Employers Insurance of Wausau A Mutual Company, and<br>Harrier Electric Company<br>United States District Court CA No. 01-11024-MBB |
| 2004 | James W. McLauren, et al. v. Atlantic Waterproofing and Restoration, Co., Inc., et al.<br>American Arbitration Association No. 11 110 02310 03 |
| 2005 | Loretta Liautaud v. Impudent Oyster Resturant<br>Barnstable Superior CA No. 04-71 |
| 2005 | Neil F. McCarron v. James Dodd and Wildfire Inc.<br>Middlesex Superior Court C.A. No. 03-1674 |
| 2005 | Thomas Crane v. Carlos Esteves<br>Settled by Binding Mediation |
| 2006 | Marram and Carpenter v. Sanford Homes, Inc.<br>AAA# 11 110 01449 04 |
| 2006 | MacNair v. Schuhwerk<br>CA No. 3-2044 |
| 2006 | Pro-Con, Inc. v. Stanley Jurczak<br>Essex Superior CA No. 03-1448A |
| 2006 | Sarah Hollis Equestrian Facility v. Farm Construction Services, Inc.<br>Settled in Mediation |
| 2006 | Julia Miller v. Bercume Buildetrs, Inc.<br>Hampshire Superior CA No. 2001-00150 |
| 2006 | Stuart A. Bornstein v. Northern Construction Services LLC<br>Barnstable Superior CA No. 02-583 |



# Court / A.A.A. Testimony

## George G. Byl, P.E.

| | |
|---|---|
| 2006 | Sherman Ball v. Thomas E. Finelli<br>Worcester Superior CA No. 98-2506C |
| 2006 | Belstone (Kalmi Corporation v. Belstone & Tile, Inc.<br>Worcester District C.A. No.: 0362CV1516 |
| 2006 | George Eysie v. Mutual Benefit Society of Walpole<br>Norfolk District (Wrentham) Docket 0457CV340 |
| 2006 | Gladys Gifford v. Dr. Henry Sears<br>Middlesex Superior Court CA No. 04-0165 |
| 2006 | MacNair v. Richard Schyhwerk & Nick's Moving Company, Inc<br>Essex Superior CA No. 3-2044 |
| 2007 | Robert  Constantin v. Robert Conrad<br>Norfolk Superior CA No. 0501950 |
| 2007 | Edward Ryan v. Pribu L. Hingorani et al.<br>Middlesex Superior CA No. 05-1699-J |
| 2007 | Christopher & Joanne Podles v. Town of Douglas, Massachusetts<br>Worcester Superior CA # 01-2054A |
| 2007 | Kenneth Levy v. Fox Run Condominium Trust<br>Norfolk Superior CA No.: 05-00039 |

# EXHIBIT 3

# ReStructure Company, Inc.

Tel: (781) 767-1600
Fax: (781) 767-0947
rsc@restruct.com

66 Sycamore Street
Holbrook, MA 02343

Construction Consultants

February 26, 2008

Eric C. Hipp, Esq.
Hermes, Netburn, O'Connor and Spearing
265 Franklin Street, F - 7
Boston, MA 02110

Re:    Matter:        Landworks v. U.S.F.& G.
       Civil Action:  05-CV-40072
       RSC No.:       299.08
       Subject:       Preliminary Report

Dear Eric,

The following RSC preliminary report is based on the Shrewsbury Middle School West (Project) Specifications and Site Plans L 1.1 through L 1.10; Standen Contracting Co., Inc. (Standen) Contract with the Town of Shrewsbury, Massachusetts (Town) dated October 1, 2002 and Applications for Payment numbers 2 - 14; Jackson Construction Company (Jackson) Applications for Payment numbers 15 - 23 and 32; G & R Construction, Inc. Invoices to St. Paul Travelers numbers 1 - 14; G & R Invoice Review Worksheet by Lovett-Silverman Construction Consultants, Inc.; Deposition Exhibits; Vertex Construction Services Inc. Report; Deposition Transcripts of Bullock, Matthews, Crockett, Lardaro, Meritz, Peters; photographs of sitework by Bob Bullock and/or Bill Meritz and photographs of ramp reconstruction; aerial photographs dated April 9, 2005 and April 1, 2007; Landworks' Project Estimate; Landworks' Proposal to Standen dated July 27, 2003; Standen Letter of Intent to Landworks dated August 1, 2003; Standen Subcontract Agreement with Landworks dated August 28, 2003; Subcontract Hold Agreement between Landworks and USF&G dated March 24, 2004; Jackson Subcontract Agreement with Landworks dated April 29, 2004; Landworks Applications for Payment to both Standen and Jackson; Landworks daily reports and Certified Payrolls; the RSC Library and the experience, training and education of George G. Byl, P.E. (RSC).    Deposition transcripts are referenced in the report as deponent, volume, page and line number but are not contained as an exhibit to the report.

**Background:**

On October 1, 2002, Standen entered into a Contract with the Town of Shrewsbury to renovate the Shrewsbury Middle School in Shrewsbury, Massachusetts. Standen subcontracted with Hole

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                    February 26, 2008

Story Inc. (Hole Story) to perform the sitework including the site demolition. At some point in time, Hole Story was terminated and Standen entered into a Subcontract Agreement on August 28, 2003 with Landworks to do the sitework. At a point in time, Standen voluntary defaulted with the Town and USF&G (Surety) was called upon to complete the Project. The Surety completed a Subcontractor Hold Agreement with Landworks on March 24, 2004 and entered into an agreement with Jackson to complete the Project. Jackson, on April 29, 2004, entered into a Subcontractor Agreement with Landworks to perform the sitework. At some point in time, Jackson was terminated and G & R completed the Project. No Subcontractor Hold Agreement was initiated to retain Landworks and G & R, through its own forces and individual subcontractors, completed the sitework to the point of a few minor punch list items.

On November 12, 2004, Shaheen & Gordon, Attorneys for Landworks, wrote to Robert Barton of Jackson, stating that Jackson failed to make payments for work performed in August and September 2004 and had breached the Subcontract Agreement. The amount claimed by Landworks was $303,000 for contract Work and a minimum of $70,000 in additional work.

On April 8, 2005, Landworks brought suit against USF&G. In August of 2006, Landworks filed an amended complaint and brought Lovett-Silverman Construction Consultants in as an additional defendant and on February 6, 2008, summary judgment was granted in Lovett-Silverman's favor. The Landworks' Amended Complaint dated June 20, 2006, states that "USF&G has failed to pay the Plaintiff for work performed at the Project, to the extent of $135,101."

On March 3, 2006, in the Plaintiff's Answers to USF&G's First Set of Interrogatories, they state that they are due $135,101 for Subcontract Work and additional monies which total $877,864 and include lost revenue due to the inability of Landworks to obtain lines of credit and insurance.

In July 2007, RSC was contacted by Hermes, Netburn & O'Connor and Spearing, P.C. to review the Matter and provide an independent analysis of the completion costs based on the documents provided. This RSC preliminary report is in response to that request.

**RSC Review of Landworks Subcontracts:**

On July 27, 2003, Landworks provided a Proposal to Standen for specific portions of the sitework on the Project (**Exhibit 1**). This Proposal excluded several items of work including: ledge, unsuitable materials, fencing, concrete work, electric lines, winter conditions and rubberized track surface. The building work was to be done on a time and materials basis. On August 1, 2003, Standen responded to Landworks with a "Letter of Intent" (**Exhibit 2**) which excluded only the concrete portion of Specification Section 02515, Concrete Pavement. Then on August 28, 2003, Standen and Landworks entered into a Contract (**Exhibit 3**) for thirteen Specification Sections of the sitework with the exclusion of the concrete work under Section

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                    February 26, 2008

02515 and the furnishing of the sand for the underdrain system.  It should be noted that the Standen Subcontract states:

> "6.5 This Subcontract constitutes the entire agreement of the parties hereto relative to the subject matter hereof and all prior negotiations with respect to and drafts of this Subcontract are merged herein.  This subcontract may not be modified or amended except by a writing signed by an officer of the Contractor."

After the default of Standen, on March 24, 2004, USF&G and Landworks signed a Subcontractor Hold Agreement (Hold) with a payment from the Surety for Contract Work performed and unpaid, including $73,221 in Change Order Work **(Exhibit 4).**  The amount of the Surety payment was $177,614.60.  The Hold Agreement kept Landworks on the Project as the site subcontractor under the same terms and conditions as the Standen Subcontract Agreement and allowed the Surety or the Surety's designee or assignee to keep Landworks as a subcontractor.

On April 29, 2004, Jackson entered into a Subcontract Agreement with Landworks for the completion of the sitework based on the thirteen Specifications Sections that were in the Standen Subcontract Agreement without any exclusions **(Exhibit 5).**  As of this point in time, the sand that was to be provided by Standen had already been delivered and installed so that exclusion was no longer germane.  However, the Jackson Subcontractor Agreement now included the concrete portion of the 02515, Concrete Pavement, and all the other conditions and provisions of the listed sitework Specification Sections.  It should be noted that the Jackson Subcontractor Agreement included the words:

> "The Subcontractor shall furnish all labor, materials, plant equipment, permits and other facilities and things necessary or proper for or incidental to, and shall do all things to perform and complete, the following (hereafter collectively referred to as the Work)
>
> THIS SUBCONTRACT SHALL COMPLETE ALL SITE WORK PER SECTION(S) 02060   SITE DEMOLITION, 02100   SITE PREPARATION, 02200   EARTHWORK, 02240   GEOTEXTILE FABRICS, 02250   EROSION CONTROL, 02511   BITUMINOUS CONCRETE PAVING & MARKINGS, 02515   CONCRETE PAVEMENT, 02525   GRANITE CURBING,   02649   TRACER TAPE, 02705   STORM DRAINAGE SYSTEMS & SEWER SYSTEMS, 02710   UNDERDRAIN SYSTEM - ATHLETIC FIELD, 02713   WATER SYSTEMS, AND 02930 LAWNS AND GRASSES IN ACCORDANCE WITH PLANS AND SPECIFICATION DATED 7/01/2002 INCLUDING ADDENDA 1-5 AND ALTERNATES 1-5, IF APPLICABLE, AS PREPARED BY LAMOUREUX PAGANO ASSOCIATES, 14 EAST WORCESTER STREET, WORCESTER MA 01604 FOR SHREWSBURY MIDDLE SCHOOL."
>
> "ARTICLE 30 Final Agreement
> It is understood that this Subcontract, including all instruments incorporated herein be referenced, constitutes the full and complete agreement now existing between the Contractor and the subcontractor and supersedes any and all prior agreements or understandings, written or oral, express or implied, between the Contractor and subcontractor, except as otherwise expressly provided herein."

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                    February 26, 2008

**Landworks' Subcontract Accounting and Change Order Summary (Exhibit 7):**

The following is an accounting of the Landworks' Subcontract claimed amount and RSC's analysis:

| Description of Work | Landworks' Position | RSC's Position |
|---|---|---|
| Original Contract Amount | 824,823.00 | 824,823.00 |
| Total Approved and Proposed Changes | 227,631.30 | 173,236.44 |
| Revised Contract | 1,052,454.30 | 998,059.44 |
| Paid by Standen | 433,544.60 | 433,544.60 |
| Paid USF&G | 177,614.60 | 177,614.60 |
| Paid by Jackson | 281,192.10 | 281,192.10 |
| Total Payments to Landworks | 892,351.30 | 892,351.30 |
| Balance of Work, Change, Orders and Work Orders not paid | 160,103.00 * | 105,708.14 |
| Unfinished Contract Work | | 268,078.20** |
| Value of Claim | 160,103.00 | (162,370.06) |

*As stated in Landworks' April 3, 2006 <u>Answers to Interrogatories</u>, however, Matthews (Landworks) has allowed $25,000 for incomplete work and a claim amount of $135,101 in his Amended Complaint dated June 20, 2006.

**Column A, RSC Estimate (**Exhibit 10**), if Column B is used the value of the claim would be negative $363,772.37.

See RSC Contract Work and Change Order Analysis spreadsheet (**Exhibit 7**).

**RSC Estimate of Remaining, Incomplete or Improper Work:**

From the testimony of the various deponents, it became clear that Landworks believed it was performing work under the thirteen Specification Sections with many exclusions.  As the Subcontracts listing the Work as per the Specification Sections are very clear as to the scope of work, there was a large discrepancy in Landworks' contractual work and what it either thought

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                                February 26, 2008

its work was or what Landworks wanted its work to be. The documents that RSC reviewed do not exclude the concrete portion of Specification Section 02515 from the Landworks' Subcontract with Jackson even though Landworks had excluded that work in its Subcontract with Standen. However, as this work is disputed and may be found to be an exclusion to the Landworks' Subcontract by the Court, RSC has estimated and separated the concrete work in its estimate under column B (**Exhibit 10**). It should be noted that Landworks did not exclude the concrete work in Specification Section 02705 and, as such, RSC did not separate the headwall concrete work.

RSC has done the same separation with the rubberized track surface (**Exhibit 10**).

RSC has used RS Means <u>Repair & Remodeling Cost Data</u>, 2004 (RS Means) as the reference for costs, labor time and equipment for the various items of work. Where RS Means does not have an item of work that exactly conforms to the actual work performed or required, RSC used its own estimate of time and the RS Means labor values. It should be noted, that RSC has done general contracting for over 30 years and completed numerous school and sitework projects for sureties. RSC chose 2004 as this was the year that Landworks last performed work on the Project. All the RSC estimated values reflect costs of materials and labor as of 2004. The repair and/or completion work actually was done in 2005 and 2006 and, should it be determined that either 2005 or 2006 is more representative of the completion costs, the RSC estimate can be adjusted to those years by 1.055 for 2005 and 1.127 for 2006. However, if either of these later years is used, it should be realized that there could be a remobilization charge due Landworks for the default of Jackson which would offset some of the increase in costs.

The RS Means values are a national average of values and the labor rates are computed from an average of 30 US cities. RSC has adjusted these RS Means values to reflect construction costs in the Worcester, Massachusetts area. RSC has used RS Means for over 30 years and considers it to be a fair and reasonable cost data reference.

**Documents RSC Relied on in its Estimate (Exhibit 6):**

The following documents describe sitework that, as of the date of the document, was incomplete or required corrective action. Note, from Landworks' Certified Payrolls, week ending September 25, 2004, John April, listed as an operator, was the last person to work on the Project (**Exhibit 6**). Landworks' Daily Field Reports for this Project ended approximately two months earlier, July 22, 2004.

     March 19, 2004
CTM's Contractor Deficiency List dated 3/19/04 lists several items of work which were attributable to Landworks which are: damage to a gate valve, damage to bituminous sidewalk and curb, damage to brickwork, damage to granite curb, damage to track, damage to underground

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                    February 26, 2008

electric at south side of track, damage to fire hydrant, record water line change on as-builts and snow plow damage to bituminous curb and sidewalk.

### July 20, 2004

Jackson's "Completion Game Plan" dated July 20, 2004 listed several items of incomplete work with completion dates in August. It appears from the G & R accounting records that the Granite curbing was completed (at least there is no charge for work under Specification Section 02525), however, the other items of work were not completed as there were considerable charges for Bituminous Concrete Paving and Markings. RSC carried the charges for the pavement markings under column A.

### July 26, 2004

On July 26, 2004, Jackson faxed a July 1, 2004 Architect letter with the Waterman June 30, 2004 inspection report of the athletic fields. It should be noted that the time frame between the Waterman inspection and the notice to Landworks is 26 days. The Waterman report recommends reconstruction of undulating grass surface areas near or within the baseball field, aeration of the athletic fields due to over compaction and completion of the silt sand trenches. The report notes that as of June 30, the site work around the periphery of the athletic field was not completed.

### August 26, 2004

Waterman Design Associates, Inc's (Waterman) letter to the Architect dated August 26, 2004 listed several items of repair work to the athletic fields. It should be noted that corrective work recommended by Waterman in their June 30, 2004 inspection report, surface undulations, had not been addressed by Landworks. RSC reviewed the Landworks daily reports and found the last entry was July 22, 2004. RSC was unable to find any document that indicated the defective work was repaired and/or re-inspected during Landworks time on the Project and has carried these items in its estimate, column A.

### September 20, 2004

CTM's letter to the Architect concerning the excessive slopes to the bituminous sidewalk surfaces. RSC carried the cost for this asphalt sidewalk removal and replacement under column A.

### September 22, 2004

CTM listed "Site work items to be completed 9/22/04" which included bituminous work, pavement striping, concrete work, clearing, loaming and seeding work which was the responsibility of Landworks as well as other items, such as, signage, fencing gates and rubberized track that may not be Landworks responsibility.

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                    February 26, 2008

On or about September 25, 2004, the Landworks' Certified Payrolls ended and, if it is an accurate record of labor provided, would indicate that the late September and the following incomplete or deficient sitework was not addressed by Landworks.

October 19, 2004
On October 19, 2004, Jackson faxed an Architect's letter dated September 24, 2004 to Mr. Matthews (Landworks) concerning "finish site work" that does not meet the Specifications. The Architect listed six concrete ramps and a portion of a sidewalk that would require replacement. RSC used the attached part plans supplied by the Architect to estimate the required work and carried the removal, regrading and compaction under column A and the entire work under column B.

December 7, 2004
Waterman letter to the Architect dated December 7, 2004 listed "Site Work Deficiencies - Work yet to complete" and there were numerous items that Mr. Matthews had written the initials "LW" which appears to indicate his company was responsible for those items (Matthews, Vol. 2. P. 82, L. 23 to P. 83 9). Mr. Matthews denies responsibility for the concrete headwalls, see "Storm drainage", page 2 where he indicates "N/A" to the left of "2 concrete headwalls . . ." RSC disagrees with Mr. Matthews as the headwalls are in the scope of work under "Storm Drainage Systems & Sanitary Sewer Systems" (02075) and Landworks did not exclude concrete work in Specification Section 02075 even in his original proposal to Standen.

February 2, 2005
The Architect's letter to CTM dated February 2, 2005 has two attachments which list punch list work to be $14,100 and unfinished items to be $269,000. When being deposed, Kathryn Crockett stated that "there was significant work remaining" (Crockett, P. 102, L. 8 - 9). Based on the Jackson Subcontract, it is the opinion of RSC that a significant portion of the sitework, if not all, was Landworks responsibility and that that work would be significant.

September 8, 2005
Email from Bill Meritz to Al Falango dated September 8, 2005 stating that the Architect indicated the site "demolition contractor caused all the damage and they expect the lighting to be restored." As Landworks is responsible for the site demolition work, Specification Section 02060, even if the damage were done by Hole Story, the trenching and installation of the electrical was carried in the RSC estimate under column A.

September 22, 2005
Email from Robert Bullock to Jason Goodwin dated September 22, 2005 stating that there were three subcontractors each responsible for the athletic equipment. As such, RSC did not include any costs of the athletic equipment in its estimate. Should additional documents be provided that indicate otherwise, RSC's estimate would be revised.

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                February 26, 2008

September 26, 2005

Lamoureux Pagano Associates (Architect) letter to Lovett-Silverman Construction Consultants (Lovett) dated September 26, 2005. This letter from the Architect indicates that a portion of the damaged track asphalt base was due to "lack of protection of the base and other construction related causes." As Landworks was responsible for protection of property by many of his Specification Sections and for all of his Work under the General Conditions, specifically 6.2.4 and 10.2.1, RSC considered the damage to the asphalt base of the track to be in part due to Landworks work around and within the track area.

September 29, 2005

Email from Al Falango to Robert Bullock stating that the Owner will be responsible for 67% of the charge to pulverize the track base and the Surety for 33%. The cost to pulverize the base should be a backcharge to the site contractors and total approximately $16,499. RSC concludes from this email that TrackLite had an existing Subcontract to do the new track and that only the cost for the base should be passed on to the site contractors. Based on the related work within and around the track, RSC considers 50% of the track base work to be the responsibility of Landworks and carried ($16,499 x 50% = $8,249.50) $8,249.50 in column A and the track work itself in column B of its estimate.

February 1, 2006

Email from Jason Goodwin to Robert Bullock dated February 1, 2006 stating that as of that date there were six concrete ramps that did not meet ADA requirements, a concrete stoop, concrete pad for the oil tank, asphalt paving at the flag pole, asphalt sidewalk, loam, seeding, grading, installation of athletic equipment, fence, seeding, fertilizing and as-built drawings for a total of $245,000.

**Deposition Testimony of Neal Matthews (Landworks) Relied On in the RSC Estimate** :

**Incomplete Work:**

Track

Landworks removed the original track overlay and stockpiled it on the site, however, Landworks never removed the base (Matthews, Vol. 1: P. 38, L.9 -16).

Grading

Landworks did not complete the entire grading and the east side of the track and miscellaneous areas between the track and the baseball field were not done (Matthews, Vol. 1: P. 40, L.13-23).

Loam & Seed

Landworks did not complete the loam and seeding in the island northwest of the teachers parking lot (Matthews, Vol. 1: P. 73, L.18-20). Landworks admits that there could have been minor amounts of seeding at the south slope (south of the track at property line) left undone. (Matthews, Vol. 2: P. 62, L.11-15).

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                              February 26, 2008

Debris
Landworks did not remove the debris at the east end of the track (Matthews Vol. 1: P. 72, L.23 to P.73, L-1).

Grass
Landworks did not prepare or plant the grass at the east end of the track (Matthews Vol. 1: P. 72, L.23 to P.73, L-1).

Shot Put Area
Landworks did not prepare or construct the shot put area. (Matthews Vol. 1: P. 73, L.1-5).

Bituminous Paving at the Flag Pole
Landworks did not prepare or construct the bituminous area around the flag pole (Matthews Vol. 1: P. 73, L.16- 18).

Bituminous Paving
Landworks did not complete the walkway to the elementary school, pavement around the storage shed, east side of the gymnasium, shop area, and the area around the flagpole (Matthews Vol. 1: P. 41, L.14 -24).

Bituminous Paving of Track and Field Events
Landworks did not complete the bituminous paving for the track and field events (Matthews, Vol. 2: P.66, L.5 to P. 67, L. 1).

**Repair Work:**

Bituminous Curb
Landworks removed damaged curb and did not replace it (Matthews, Vol. 2: P. 69, L.6- 14).

Oil Tank Fill Cover
Landworks had replaced/taken over for the initial site contractor, Hole Story, and as such was responsible for its work.  The damaged fill cover at the exterior oil tank was Landworks' responsibility and was not repaired (Matthews Vol. 1: P. 47, L.19 to P. 48, L. 3).

Track
Landworks damaged part of the asphalt track and did not repair the damage (Matthews Vol. 1: P. 49, L.12 -18).

Aeration
Landworks never aerated the athletic fields due to the dense soil compaction (Matthews Vol. 1: P. 54, L.18 to P.55, L.9).

Sidewalks
Landworks did not repair the non-compliant sidewalks or the concrete ramps (Matthews Vol. 1: P. 60, L.3 to P. 62, L.11).

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                                                          February 26, 2008

   Damaged Grass Areas
Damaged grass areas outside of the building were not repaired by Landworks (Matthews Vol. 1:
P. 65, L.9 -14).

   Long Jump Area
Landworks installed the long jump area incorrectly (Matthews Vol. 1: P. 73, L.6 -12).

   Damaged and Repaired Brick Corner
Landworks damaged the bricks at a corner of the school and had them replaced, however, the
color was not acceptable.  Landworks did not correct the color (Matthews, Vol. 2: P. 70, L.7-24).

   Electrical Lines
Landworks damaged electrical lines and states that they replaced the conduit.  This is impossible
as the conduit cannot be replaced without pulling the wires out, replacing the conduit and pulling
the wires back through (Matthews, Vol. 2: P. 72, L.21 to P. 74, L 20).  In addition the electrical
lines in the south central portion of the track was broken and not repaired (Matthews, Vol. 2: P.
77, L. 16 to P. 78, L.11).

**Conclusion:**

RSC relied on the deposition testimony of the individuals involved in this Matter, documents
provided and construction photographs to estimate the value of the completion and corrective
work.  As RSC was not present during the actual completion work, any legitimate charges for
related rework activities, regrading of adjacent areas to the repairs, correction of disturbed areas
damaged during the replacement operations or clean up after the construction activities, were not
included in the RSC estimate.  It is the opinion of RSC that work it estimated is conservative as
the actual work was greatly affected by loss of efficiency and productivity due to the numerous
locations of small repair work items.  Work crews were required to jump around the entire site
and never had the benefit of scale.  This loss of productivity is obvious when one considers the
repair and patch work required on the athletic fields.

The Architect, Michael Pagano, listed a value for the punch list sitework at $14,100 and the
unfinished items at $269,000 (**Exhibit 6**).  Kathryn Crockett stated in her deposition "I know
Landworks did do grading on the site that needed to be corrected.  I do know that." (Crockett,
P.132, L. 18 - 21).  And she continued to state, "I know Landworks was responsible for the
concrete at the accessible sidewalks that had to be redone." (Crockett, P.133, L. 8 - 12).  Ms.
Crockett was asked about the Pagano values for the punch list work and unfinished items and
stated in reference to the Landworks work remaining "There was significant work
remaining."(Crockett, P.102, L. 8 - 9).

RSC reviewed the G & R Job Cost Reports.  G & R, as they were the General Contractor
controlling, coordinating and directing the completion work, were the most familiar and
knowledgeable of the actual site completion costs.  RSC's estimate did not equal the G & R's

# ReStructure Company, Inc.

Eric C. Hipp, Esq.                                          February 26, 2008

detailed cost record of the site work completion work which should not be construed as meaning RSC believes that the actual G & R's costs were excessive or incorrect. The G & R cost record should be considered the most detailed and accurate accounting of the cost to complete the sitework with the understanding that G & R may not have controlled the completion of the site work in the most efficient manner as they were completing the building work and negotiating with the Town and the Surety at the same time. It was their job to finish the Project and they addressed the site punch list and incomplete work as it was reported to them. Pre-planning of many work items was not possible and as such they were completed in a manner similar to change order work. The labor for change order work or in this case corrective or punch list work can be 10% or more and down time loss can be even more, as items of work are small and widespread. This loss of productivity would have affected any completing site contractor including Landworks.

That being stated, RSC has estimated the corrective and unfinished work (**Exhibit 7**) that was the responsibility of Landworks to be $469,480.51 considering the signed Landworks Subcontracts (column B) and $268,078.20, if there were a contractual understanding between the general contractors and Landworks to exclude the concrete placement (02515) and rubberized track.

Respectfully submitted,

George G. Byl, P.E.

GGB/mm
Copy   Files
Exhibits

Page 11

Landworks v USF&G

Preliminary Report - Exhibit Table of Contents

Landworks' Proposal to Standen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Standen's Letter of Intent to Landworks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Standen - Landworks' Subcontract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

USF&G Subcontractor Hold Agreement Conditional Partial Release. . . . . . . . . . . . 4

Jackson - Landworks' Subcontact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Referenced Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

RSC Contract and Change Order Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Site Plan L1.7 with Photo Locations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Project Photographs with Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

RSC Estimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

:OM :                              FAX NO. :                    Aug. 13 2003

# CTM

**Construction Technologies Management, Inc.**

# CONTRACTOR DEFICIENCY LIST 3/19/04

## Shrewsbury Middle School @ 45 Oak Street   Project # 0204

01) Door frames/glazing 481, 481A to (gym lobby) Corridor 481 damaged from demo work

02) Gym Floor damage from HVAC demo (torching ) — *Old Demo Contractor GCA will Let us play floor*

03) Missing/damaged/loose millwork mistakenly demolished from demo work at *Bristol* rooms 253, 266, 267, 268, 269, 270, 271, 283, 163, 111, 241, **261A**

04) Damage to gymnasium wall pads from demo work ?

05) Damage to top of south masonry wall in Room 304 *Repair by Cornerstone*

06) Damage to two stage floor electrical boxes ?

07) Damage to exterior gate valve shut off box located behind Storage Room 492 *Neil — Landworks*

08) Water on stage floor adjacent exterior door 342C from weekend rain. (potential problem)

09) 5/28/03 Fire Damage at "C" and "B" Bldgs. / Smoke damage throughout *Need dust Certification from Service Master Disaster*

10) Damage to fill cover at exterior below ground oil tank ?

11) damaged borrowed light wire glass at existing frames 300A, 370A, 400 — *Arch Window*

12) Damage to existing bituminous sidewalk located 100 ft. south of Administration Entrance and adjacent "A" wing ground floor classroom, west side. *Damage By Demo Contractor*

13) Excessive movement at some equipment floor mounted carriers in toilet rooms. *done*
    **Corrections made at A,B upper and lower October 2003 prior to wall close up.**

14) Damage to bituminous curb adjacent to parking area opposite front entrances. *Landworks*

15) Damage to ceramic edge floor tiles at Girls Lockers corridor *Demo Contractor*

Page 1 of 5

$E_x$ 71 (2/13/07

71

ROM :                              FAX NO. :                        Aug. 13 2003 11:24AM  P3

# CTM

## Construction Technologies Management, Inc.

*Bristol* 16) Fire damage to existing to remain millwork in Art Classrooms A401, A403  *Bristol*

*obie* 17) Broken overhead glass at Science Greenhouse 261C (rain infiltrating room) *Robie Window*

*?* 18) Damage to recessed aluminum mat frame at vestibule 480 (from demo work) *? ~ Demo work*

*cme* 19) Door frame 481C damaged (from demo work) *Acme*

*century* 20) Damage to ceramic wall tile in corridors #100, #150, #230, #260 (from metal stud cutting)  *Century Dywall*

*?* 21) Chipped ceramic wall tile (from demo work) at corridor 260 **along west wall** south of door
frames 260, 268, 266 / north of door frame 270 and **along east wall** north and south of door
frame 269.  *Demo*

*eco*
*?* 22) Existing millwork to remain not protected / subcontractors using millwork for storage of
materials / demo materials in cabinets / possibly pieces already missing  *ESCO using for storage & KND*

*Allstate* 23) Loose / damaged basketball backstop support frames in Gymnasium 8/14/03. *Work to be done By AllState*

24) Birds nesting in building, bird droppings on windows, bleachers, and floor 8/14/03.
**Resolved / corrected during fire damage cleaning week ending 9/15/03.**

*urban* 25) Removed or missing exterior wall insulation above frames 490, 490A, 490B, 9/17/03. *There was some insulation in Bays. Not in others*

*landworks* 26) Damage to exterior outside masonry corner by site subcontractor, located at Garage 498 *Landworks*

*landworks* 27) Granite curb to remain damaged from demolition traffic, located adjacent to fuel oil tank
behind "D" building.  10/15/03  *Demo*

*Allstate* 28) Burn marks on girls locker room bench seats from seismic clips welding slag.  10/8/03 *AllState*

*?* 29) Concrete splatter on existing concrete apron to remain outside door 480.  10/17/03 *?*

*landworks* 30) Running track edge damage from equipment at south side.  10/17/03 *Land works*

*?* 31) Top horizontal wire mesh support pipe fallen at backstop to remain.  10/17/03 *?*

*landworks* 32) Damage to underground electric between track lighting poles at south side.  10/17/03 *Landworks*

Page 2 of 5

267 River Road, Andover, MA 01810
(978) 683-2900   Fax (978) 683-2525

# CTM
**Construction Technologies Management, Inc.**

*Service hasten Disaster*

**?** 33) Damage to gym bleacher seating (north) from fallen fin-tube radiation.  11/12/03

*rmanso* 34) Broken masonry corner block located left of door frame 491 to lunch/meeting 491.  11/12/03

*tone xcept Caulking* 35) Damaged exterior masonry brick adjacent new toilet room window, room 156
Poor craftsmanship at exterior window aluminum sill flashing toilet rooms 102, 104
(irregular trim cut at bottom of exterior vertical sill flashing plus saw cuts on vertical face)
Aluminum sill flashing                                          11/26/03
**Sill flashing corrected 12/2/03, masonry still damaged.**

**?** 36) Damage to exterior aluminum sill flashing at center window in Health room 126.  11/28/03

*tatty* 37) Damage to 331 L.F. roof edge flashing (hammer dents) at "A" wing and "B" adjacent *Dama*
Library/Media during abatement subcontractor removal of transite panels.       12/2/03

**?** 38) Damage to 277 L.F. aluminum window sill flashing (drywall screw penetrations) at East
Elevation of "A" wing during temporary protection installation by abatement subcontractor *Dama*
after transite panel abatement.                                          12/2/03

**?** 39) Damage to two electric floor box covers at stage due to weight of manlift.
(same as item # 06)                                          12/10/03

*Landworks* 40) Damage to existing fire hydrant located south of Administration due to being hit by *Landworks*
Landworks loader.                                          12/10/03

*Done* 41) Damage to vertical corner mouldings adjacent windows at "A" and "B" buildings during *Done*
installation of protective poly (after glazing abatement) by Standen's workforce.  12/19/03

*nothing* 42) Drywall soffit cracks in "A" and "B" classrooms due to temperture variations.  12/10/03 *Sealing*

*oud work* 43) New water line installation in Sherwood Avenue varies from contract documents.
LPA to review and comment.  As-built dwgs must acknowledge change!       12/10/03

*done* 44) Damage to existing underground direct burial electrical feeds (pulled / cut during new water
line excavation) to site lighting at two locations.                      12/10/03
**Partial repair completed by ESCOA located north of "D" bldg.**

Page 3 of 5

267 River Road, Andover, MA 01810
(978) 683-2900   Fax (978) 683-2525

ROM :                          FAX NO. :                         Aug. 13 2003 11:24AM P5

# CTM
**Construction Technologies Management, Inc.**

omeus(45) Damage to exterior brick face above foundation wall 10ft. north of door 338A during *Cornerstone*
     removal of concrete pier foundation to demolished shop vacuum system. *Demo*  12/29/03

onuons 46) Damaged to existing door to remain (overhead door 340D) due to masonry mortar splatter *Cornerstone*
     from adjacent portable mortar mixer set up area.                                     1/7/04

unniq 47) Damaged (bent up) exterior aluminum window sill located at ground level "B" between
     Science Rooms 107 and 109.   *?*                                                    1/7/04

century 48) Dirt beneath wall primer paint at numerous locations in "A" and "B" first floor rooms due to
     painting prior to cleaning of floor debris and dirt   *Century*
     (paint surface feels like sand paper).                                               1/7/04

smo  49) Painting overspray covering heat and plumbing pipe identification located at "A" and "B"  *Kno Yankee*
Yankee      upper wing Corridors 230 and 260.                        *Century*            1/14/04

     50) Existing masonry cracks not addressed prior to prime coat or between prime and first coat
     of paint. Finish coat paint applied over unprepared surface masonry surfaces at "A" and "B"
     buildings.                                                       *Century*            1/14/04

K By 51) Excessive use of safing insulation surrounding utility penetrations in lieu of masonry patching
ch      at "A" and "B" buildings.                         *Ok By Arch*                     1/14/04

- ? 52) Damaged / missing ceramic floor tiles located at southeast corner Toilet Rm 450 adjacent
     column enclosure. Damaged glazed wall tiles at same column enclosure due to careless
     demolition work. (photo)   *Demo*                                                   1/19/04

ch windo 53) Damage to borrowed light glass above existing door frame 371 to cafeteria. *Demo* 1/19/04

by (55 54) Sprinkler and plumbing pipe below ceiling grid at Corridor 250.   *Royal Plumb*   2/13/04
yankee                                                                   *Yankee*
subroba 55) Water damaged to wall insulation during fire damage demolition (Rooms 402, 404) 2/13/04 *Subantan*

smo 56) Heating controls and valves mistakenly spray painted adjacent UV. (Room 285).  2/25/04 *Century*

redrawal 57) Elevator machine room door left open, domestic water pipes above plaster ceiling
Contractor      may have damage due to freezing.   *Never had temp heat*                  2/25/04

                                    Page 4 of 5

ROM :                          FAX NO. :                    Aug. 13 2003 11:25AM  P6

# CTM

**Construction Technologies Management, Inc.**

*Century*  58)  Window sill sanding dust from painter's work accumulating behind and on top of   *Century*
              UV's, metal shelving, and control valves.  Thorough cleaning must be performed.   2/25/04

*subworks*  59)  Snow plow damage to bituminous curb and sidewalk located in parking lot off
              Oak St. north most construction entrance at the south side.   *Landworks*   2/25/04

*ref Window*  (60)  Damage to borrowed light glass at existing door frames 250.   *Demo  Architect* 2/25/04

*Barb*  61)  School sign adjacent Oak Street should be perpendicular, not parallel to street.   3/10/04 *Barb*

        62)  Ceiling tiles installed at Stair #2 without completion of demolition,
              patching of wall penetrations, fire safing / fire caulking, piping identification,
              sprinkler drops, light fixture installation, above ceiling inspections.   3/10/04

page 5 of 5

*SCHEDULE  7·20·04*

# Jackson Construction Company
### Shrewsbury Middle School Project
JCC Project #381



**JACKSON** construction company

EXHIBIT *06*
*CROVETT*
DATE: *1-10-07*
N. FLYNN BORELLI

## OAK MIDDLE SCHOOL COMPLETION GAME PLAN

a. *Cleaning*
   i. Floor cleaning in A/B wings should be complete by July 21st
   ii. Floor cleaning in C and D wings should start at the end of Aug unless the contingency plan is implemented

b. *Asbestos Removal - Patriot*
   i. Patriot will continue with asbestos siding removal
   ii. Patriot will also continue with any interior asbestos at windows etc.

c. *Plywood/Insulation Removal - SMI*
   i. SMI has been hired to start July 20th to work with ATC/Bristol Builders and Sunrise Erectors to complete plywood and insulation removal

d. *Sitework – Landworks*
   i. Base course at the front entrance will be completed no later than Aug 13th
   ii. Setting of Granite curb should be completed by Aug 6th
   iii. Top course and striping can take place immediately after depending on Town's determination of whether or not to delay the top course
   iv. All seeding and final grading at ball fields will be complete by Aug 13th
   v. Asphalt at running track will be completed Aug 20th

e. *Concrete – Frias*
   i. Sidewalks at the front entrance will be poured on Monday July 19th
   ii. Roof deck should be ready for pour on July 21st

f. *Masonry – Cornerstone*
   i. Walls at the burned area will start July 21st and completed July 28th

g. *Metals*
   i. Structural – All State
      1. Remaining structural work at burned area should be completed July 20th

*(Page 1 of 5)*



# Jackson Construction Company
## Shrewsbury Middle School Project
### JCC Project #381

    2. Remaining structural work at the front entrance canopy should be completed by July 20th
    3. Primer removal at the front canopy to start on July 21st
        a. Test of 502 product to take place July 19th
        b. If 502 doesn't work sandblasting will start on July 21st

  ii. Misc Metals – Ralph's Blacksmith
    1. Railing manufacturing in process – railings to be delivered no later than Aug 13th
    2. Ralph's working on access cover fix

**h. Woods and Plastics – Bristol**
  i. All casework with the exception of reception and library desk for all of A and B wing to be delivered no later than July 23rd
  ii. Reception desk due to be delivered July 30th and circulation desk delivered Aug 6th
  iii. Bristol is providing manpower to work with plywood/insulation removal and replacement at exterior siding
  iv. Bristol is completing door installation upon door arrival on or about Aug 20th they commit to 60 doors per day per two man crew – Jackson has provided a back-up plan with J&S door installation services

**i. Thermal and Moisture**
  i. Roofing – Stanley
    1. Stanley will complete all roofing operations as soon as the deck is poured at the burned area – start expectation is July 26th completing July 30th
  ii. Metal Panel Siding –Sunrise erectors
    1. Sunrise has committed to start July 21st and continue with a 3-man to 4-man crew to complete all siding operations – weather dependent they can finish before Aug 30th

**j. Doors/Windows**
  i. Doors
    1. Thompson has committed to door delivery Aug 20th - Jackson Construction is working with TCI to accelerate door delivery – one week is not unrealistic possibly an Aug 6th is optimistic but not beyond the realm of possibility
  ii. Storefront - Robie
    1. Robie window should complete all storefront in A and B wing no later than July 23rd

*(Page 2 of 5)*



# Jackson Construction Company
Shrewsbury Middle School Project
JCC Project #381

    2. All C&D storefront will be fabricated no later than Aug 13th and can be installed if entrances are prepared by Aug 30th

  iii. Windows – Architectural Windows
    1. Architectural Windows is prepared to complete all window installation as Patriot completes asbestos adjustments

  iv. Glazing
    1. See above

k. *Finishes*
  i. Resilient Flooring – Bloom South
    1. Bloom South has completed all resilient in the A and B wing
    2. They will start any remaining cove base by July 30th in these wings
    3. Resilient in C&D wing continues with a 4 man crew which should be completed by Aug 13th with the exception of the cafeteria
    4. We are currently resolving the pattern layout at the cafeteria flooring. We expect a solution no later than July 23rd and start work immediately.

  ii. Ceramic Tile – McLaughlin
    1. McLaughlin has completed all ceramic tile in A&B wings and has committed the manpower (approx 4 men daily) to completing all remaining C&D ceramic tile before Aug 13th

  iii. Carpet - Brodney
    1. Carpet is complete in Admin wing
    2. Pending approval of delivered carpet – carpet can start in the auditorium – approximately three days to complete

  iv. Ceilings – K&K
    1. K&K will complete all ceiling tile in A&B wing no later than July 23rd
    2. K&K has committed to providing crews and premium time to complete all ceilings by Aug 23rd in all wings (including C&D)

  v. Painting – Century
    1. Century will be doing a test patch of the 502 on the entrance canopy on Monday July 19th – regardless of these results they will start remediation (either sandblasting or the 502 process on Wed July 21")

*(Page 3 of 5)*

20 Dan Road  •  Canton, MA 02021  •  Tel 781 737-1500  •  Fax 781 737-1550
(A Massachusetts Business Trust)  •  www.jacksoncc.com

# Jackson Construction Company

Shrewsbury Middle School Project

JCC Project #381



**JACKSON**
construction
company

    2.  Century has committed to meeting the Aug 30th completion as long as areas are available they have committed the manpower and resources (including premium time) to meet the Aug 30th completion

l.  *Misc*
    i.  Lockers – Penco
        1.  Lockers to be shipped Aug 6th. Jackson Construction has committed additional funds for Penco to complete all locker installation no later than Sept 1st – Penco has committed to this in writing.

m. *Elevators*
    i.  Locker Room Lift – AFCO

n.  *Sprinkler – Yankee*
    i.  Yankee sprinkler has committed to completing all areas – including C&D wing well ahead of the Aug 20th completion date – including all drops/standpipes/ the gym adjustment/under stage and all tamper and flow switches. Their completion is dependent on the completion of work by K&K who has committed to the same.

o.  *Plumbing – Royal Steam*
    i.  Royal Steam will complete the remaining lab sinks in A&B wing the week of July 26th with the installation of all remaining cabinets
    ii.  Royal Steam has committed the manpower and premium time to complete all work remaining in C&D for the Aug 23rd completion date

p.  *HVAC –*
    i.  Piping/UV's – KMD
        1.  All UV's and piping is complete in A&B wing with the exception of two corridor end units which will be completed July 23rd
        2.  C&D work can be completed by Aug 30th with an intensive effort and premium time investment by Jackson Construction

    ii.  Rooftops/Ductwork – Bonner
        1.  All rooftop units are completed in A&B wing

*(Page 4 of 5)*



# Jackson Construction Company
### Shrewsbury Middle School Project
JCC Project #381

        2. C&D work can be completed by Aug 30th with an intensive effort and premium time investment by Jackson Construction

        3. Balancing is likely to take place after school occupancy

  iii. Controls – Johnson

        1. Johnson Controls has started unit checkout in A&B wings – all control work is completed in these wings

        2. Jackson Construction has committed to premium time and up charges for Johnson to complete controls work in C&D wing

q. *Electrical*

  i. **Power**

        1. All power wiring is complete in A&B wing

        2. Generator back-up power has been directed in a CCD and the back-up generator should be ready for testing on or About Aug 13th

        3. Power wiring is on going in C&D Wing - Jackson Construction has committed to paying 6 10 hour days for an 11 electrician crew to complete C&D wing before Aug 23rd

  ii. **Lighting**

        1. Lighting is complete in all classrooms in A&B wing

        2. Lighting in corridors of A&B wing will be completed by Aug 23rd

        3. Lighting will be completed in C&D wings as ceilings become available – see above

  iii. **Fire Alarm**

        1. Fire alarm is complete in A&B wings

        2. Fire alarm work will continue in C&D wings as indicated above

        3. A contingency plan will be implemented on Aug 13th for tie in of all completed fire alarm for occupancy on Aug 23rd if it is apparent the complete system will not be available for Aug 23rd

*(Page 5 of 5)*

**LANDWORKS**
PMB 291
1600A Lafayette Rd.
Portsmouth, NH 03801

*Daily Field Report*

Date: *Thurs 7/22/04*
Job Name: *Shrewsbury middle school*
Location: *Shrewsbury MA*
Weather: *Sunny 90's*

| Employee | Hours | Equipment | Work description | General Comments |
|---|---|---|---|---|
| 1 *Raf V.* | | | | |
| 2 *John A.* | | | | |
| 3 *Maurice m.* | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| Subcontractors | | | | |
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| Materials Stored | | | | |
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |





Fax Transmittal

for Outgoing Correspondence

| Shrewsbury Middle School | Project # 381 | Jackson Construction Company |
| --- | --- | --- |
| 45 Oak Street | Tel: 508-845-0707   Fax: 508-845-5023 | |
| Shrewsbury, MA | | |

| Date:  7/26/2004 | Reference Number:  0094 |
| --- | --- |

| Transmitted To: | Transmitted By: |
| --- | --- |
| Neal Matthews | Jennifer Mitchell |
| Landworks Creations, LLC | Jackson Construction Company |
| PMB 291 | 20 Dan Road |
| 1500A Lafayette Rd. | Canton, MA  02021-2809 |
| Portsmouth, NH  03801 | Tel: 781-737-1500 |
| Tel: (603) 498-1295 | Fax: 781-737-1550 |
| Fax: (207) 351-1532 | |

| Package Transmitted For: | Delivered Via: | Tracking Number: |
| --- | --- | --- |
| | Fax | |

| Item # | Qty. | Item | Reference | Description | Notes | Status |
| --- | --- | --- | --- | --- | --- | --- |
| 001 | 1.0 | Report | | Athletic field inspection | | |

| CC: Company Name | Contact Name | Copies | Notes |
| --- | --- | --- | --- |
| Jackson Construction Company | Frank Leonardo | 1 | FILE |

**Remarks**

Neal:
Please find attached the athletic field site report by Waterman Design.
Thank you.

| _J Mitchell_ | | _7/26/04_ |
| --- | --- | --- |
| | Signature | Signed Date |

cc:  JCC File

*Prolog Manager*        Printed on: 7/26/2004     jcc projects                                 Page 1

00624

Ex. 72 (2/13/07)

72



MEMBER OF THE AMERICAN INSTITUTE OF ARCHITECTS

ECEIVED

JUL -6 2004

...ON CONSTRUCTION
.COMPANY

LAMOUREUX · PAGANO
ASSOCIATES. ARCHITECTS

Richard J. Lamoureux, Sr.

Michael A. Pagano

..................

Richard J. Lamoureux, Jr.

Kathryn Crockett

Eric D. Moore

Robert Para, Jr.

01 July 2004

Mr. Richard McGuinness
Project Manager
Jackson Construction Company
20 Dan Road
P.O. Box 9191
Canton, MA  02021

Re:     Shrewsbury Middle School – West

Dear Rich:

Please find enclosed an athletic field site report drafted by Waterman Design Associates
dated June 30, 2004.

Note that the Owner reserves the right to start using the baseball field on July 15 and the
football field on August 15.  Prior to Owner use of the fields, Jackson must coordinate the
slit drain installation schedule and punch list review.

Sincerely,

Kathryn Crockett, A.I.A.
Project Architect

KC/aw

Encl:     Athletic Fields Inspection

cc:     Dan Morgardo
         Jack Ferguson
         Jeff Richards (letter only)

9710MS/Corres/Contractor/9710MSCC-GC-JACKSON.doc

00625

06/25/2004  17:10   5083665586                    WATERMAN DESIGN ASSC                    PAGE  02



WATERMAN DESIGN ASSOCIATES, INC.

31 East Main Street. Westborough. MA 01581
508.366.6552  Fax 508.366.6504
watermandesign.com    wda@wmadassoc.com

June 30, 2004

Mr. Todd Manning and Ms. Katie Crockett
Lamoureux Pagano Associates, Architects
14 East Worcester Street
Worcester, Massachusetts  01604

Reference:   Shrewsbury Middle School - West
             Inspection of Athletic Fields on 6-29-04
             Shrewsbury, Massachusetts
             WDA JN-135.01

Dear Todd and Katie:

In response to a number of questions you have had in recent weeks regarding the condition of the renovated athletic fields, we offer the following comments.

1.  Irregularities in the playing surface —

On May 7, 2004 WDA visited the athletic fields to observe the installation of the sod turf. Several areas low areas, broad "divots" were noted and discussed with LPA. This concern was discussed with Frank Leonardo on May 13, 2004, who indicated the sod is scheduled to be rolled shortly and many of these low spots or gaps between adjacent rolls of sod will likely disappear.

On June 29, 2004 WDA visited the athletic fields to inspect the condition of the playing fields. The field was noticeably more uniform and flatter than observed on May 7, 2004 and the turf grass was well rooted and generally growing with good vigor. Two (2) areas of un-acceptable final surface irregularity were identified; these include:

a.   low area and adjacent high spot located along right field foul line, about 135' beyond first base. The (approx. 20' x 30') area of undulating low + high represents a subtle hazard to ball players in pursuit of a fly ball.

b.   four (4) narrow (2' wide x 8' long) field undulations located in the infield between first base and the pitchers mound, oriented parallel with the first base line.  It is recommended that these two areas of final surface undulation be reconstructed to achieve a more uniformly flat playing surface. These locations were pointed out to Ray Verdelotti of Landworks at the conclusion of this site visit.

2.  Final compaction of athletic fields —

The Soil Field Report prepared on May 27, 2004 by Yankee Engineering & Testing, Inc. (attached) presented their sampling/evaluation of the density/compaction of the athletic

00626

01/25/2004  17:10  5083660006          WATERMAN DESIGN ASSC                     PAGE 05

Mr. Todd Manning and Ms. Katie Crockett
Lamoureux Pagano Associates, Architects
June 30, 2004
Page 2

fields. The result reported indicates an average field compaction of 91.1%. In the project Manual Specifications, under Division 2 – Site Construction, Section 02930 Lawns and Grasses, 3.03, A., 2. it is specified that "Final compaction level shall not exceed 85% maximum standard proctor density...".  For the record, please note that based on the Soil Field Report, the renovated athletic fields have been compacted to a greater density than specified (91% vs. 85%).

Our office contacted Norman W. Hummel Jr., (of Hummel & Co., Inc. in Trumansburg, NY) on June 18, 2004, to discuss this over-compaction issue. (Norm had been involved in advising WDA in 2002 in the preparation of the athletic field construction specifications.) Recognizing that what has been done is done; we discussed what steps could reasonably be taken at this point, to partially rectify the over-compaction of the playing field soil. He suggested that a thorough aeration of the playing field topsoil could be undertaken. He recommended some improvement could be realized by use of an aeration device with hollow tines, ¾" (or 1") in diameter operated at 4" minimum depth to 8" maximum depth, by an experienced operator.

3.  Slit Sand Drain installation -

We also reviewed with Norm the yet-to-be performed installation of the 3" slit sand drains, and our question of how long it will take, following the slit sand drain operation, for the sod turf playing surface to become stable enough to support use of the fields by the Town. Norm suggested at least a month would be necessary for rooting to occur, sufficient to support athletic use of the new fields.

On June 30, 2004 we confirmed with Norm that the sand in the slit sand drains is to be brought to be flush with the field surface and is not seeded or topped with 3" wide sod strips. Over the summer the roots from the adjacent turf will heal across, to support athletic use, and in a year the slits will become completely grown over and invisible.

We understand from our June 29, 2004 conversation with Ray Verdelotti of Landworks that the subcontractor anticipated to perform the installation of the slit sand drains is soon to be engaged. We recommend this operation be performed as soon as reasonably possible, to allow adequate time for re-rooting prior to the anticipated September, 2004 opening of the fields for athletic use.

4.  Release of playing fields –

In your transmittal of 6-14-04 and recent telephone conversation, we have discussed the advisability of performing a final inspection of the two renovated athletic fields and issuing a punch list for these specific site improvements. WDA understands the Shrewsbury Town Manager has recently informed all parties of interest that the playing fields are "off limits" until September, 2004.

During our site visit on June 29, 2004, we observed that while the athletic fields themselves are coming along nicely, the final surface adjacent to the sod-covered athletic fields are clearly not yet ready to sustain the dramatic increase in foot traffic associated with opening the fields up to the Towns people. Some of these adjacent areas have been recently seeded; other areas (eg. in the football field end zones) are yet to receive the field and track finish

WATERMAN DESIGN ASSOCIATES, INC.

civil engineers  •  surveyors  •  landscape architects  •  planners

00627

06/25/2004  17:10    5083662205

Mr. Todd Manning and Ms. Katie Crockett
Lamoureux Pagano Associates, Architects
June 30, 2004
Page 3

surfaces (eg. high jump), while other adjacent areas, (eg. side walks) are yet to be prepped and have finish walk surfaces installed. In total, it would be very difficult to let the public or selected sports teams use the athletic fields yet keep them from damaging site elements surrounding the fields that are still being constructed/completed.

Our recommendation is to not pursue the partial fields release at this time. We suggest the corrections to final surface undulations noted above, and the slit sand drains be completed first. As more site work around the periphery of the athletic fields is completed, we would be willing to revisit the question of a partial release for the fields.

Should you have any questions, please give us a call.

Very truly yours,

WATERMAN DESIGN ASSOCIATES, INC.

Jeff Richards, RLA
Associate

Attach (1)

JOR/vmh/jn135.03lt004



WATERMAN DESIGN ASSOCIATES, INC.

August 26, 2004

31 East Main Street, Westborough, MA 01581
508.366.6552  Fax 508.366.6506
watermandesign.com    wda@wdassoc.com

Mr. Todd Manning and Ms. Katie Crockett
Lamoureux Pagano Associates, Architects
14 East Worcester Street
Worcester, Massachusetts 01604



RECEIVED
AUG 2 7 2004
LAMOUREUX, PAGANO
& ASSOC., INC.

Reference:     Shrewsbury Middle School - West
Inspection of Renovated Athletic Fields -  Punch List
Shrewsbury, Massachusetts
WDA JN-135.01

Dear Todd and Katie:

Our office performed an inspection of the athletic fields on 8-25-04, specifically with the aim of generating a punch list for finalizing the completion of these fields. We understand the Town would like to begin playing on them in the near future.

Our inspection was limited to portions of the baseball field/general purpose field and the Football/Soccer field, namely those portions where the grass turf had been installed as sod. The seeded lawn areas surrounding these sod fields and the site improvements scheduled to take place in these surrounding lawn areas (eg. back stop, team benches and cages, practice pitching mounds, foul line posts, field and track elements, field lighting, etc.) were not the subject of our 8-25-04 inspection, nor are these surrounding (incomplete) improvements the subject of the punch list below.

Over-all, the two completed athletic fields look good. The sod turf is filling out nicely, the slit sand drains are in, and the grass is healthy; from this we surmise the irrigation system is functioning. To complete the two athletic fields (sod areas), we recommend the following punch list items be completed:

Athletic Fields (Sod areas) Punch List:

A.  Achieve acceptable playing surface uniformity –
Unacceptable irregularities in the playing field finish surface can be summarized in three categories:  1.) surface undulations; 2.) lumpy areas; and. 3.) slit sand drain settlements. Our office evaluated these irregularities based on an assessment of human safety; i.e. if a depression in the playing field is big enough or pronounced enough so that a ball player chasing after a pop fly might be expected to trip and fall, this is a problem; or if a hole is big enough so a human foot could fit into it, there-by tripping the athlete, this too is an unacceptable defect in the playing surface. Locations/descriptions of these defects are identified as follows:
1.)  surface undulations – 2 areas in the baseball field, 1 in the infield near first base and the second in right field about 135 feet beyond first base. These undulations were identified in WDA's letter dated June 30, 2004, comments 1.a. and 1.b. (attached).
2.)  lumpy areas – 6 areas in the baseball field (3 in left field, 2 in centerfield, and 1 in rightfield) and 1 in the football/soccer field (at center field, on side toward baseball field). These defects are generally about 2' x 2' in size, with vertical surface variation of about 2" to 3" above or below the surrounding surface, (perhaps where repairs to the irrigation system were made following installation of the slit sand drains).

Ex 12 (1/10/07)



Mr. Todd Manning
Lamoureux Pagano Associates, Architects
August 26, 2004
Page 2

3.) Slit sand drain settlements – 20 locations in the baseball field (13 in right field, 4 in
centerfield, and 3 in right field) and 1 in the football/soccer field (near the corner closest
to the school building). These are generally about 7" to 14" long x 3" wide x 2" to 6" deep,
where coarse sand needs to be added to the slit sand drains to bring the finish sand
surface flush with the surrounding sod turf.

B. <u>Make Irrigation system repair</u> -
One (1) sprinkler head, in the baseball field located about 30 feet behind the shortstop
position, was noted on 8-25-04 to be leaking. An area of turf around this sprinkler head about
30 feet in diameter was soggy. This was at a time when the rest of the field was dry. This
sprinkler head should be fixed (or replaced if defective).

C. <u>Complete skinned infield of Baseball field/ bases and rubber at pitchers mound</u> –
1.) The skinned infield is full of weeds (which need to be removed). We question if
the redressed soil infield is topped off with an adequate thickness of sand/clay
admixture. Refer to Specification under Site Improvements, Secttion 02800
section 3.02 Skinned Infield Areas.
2.) The pitchers rubber and bases for the 4 bases need to be installed.

D. <u>Provide sod turf playing field fertilizer recommendations</u> –
Due to the substitution of sod for hydroseeded playing field turf, the specific grass seed
mixture was modified from previously specified seed mixtures (which had a greater % of
fescue grasses and relatively less bluegrass mixture). We request the contractor/sod
manufacturer provide a recommendation of the fertilizer(s) appropriate to the sod turf which
would favor the long term growth of the fescues within the installed sod.

Should you have any questions, please feel free to call.

Very truly yours,

WATERMAN DESIGN ASSOCIATES, INC.

*Jeff Richards.*

Jeff Richards, RLA
Associate

Attach (1)

JOR/vmb/jn135.03lt007



# CTM

**Construction Technologies Management, Inc.**

September 20, 2004

Katie Crockett
Lamoureux Pagano Associates
14 East Worcester Street
Worcester, MA. 01604

**Re: Project # 0204**

Dear Katie;

The attached three sketches dated 9/20/04 document % pitch reading recorded at recently installed bituminous sidewalk surfaces. These locations have been documented indicating possibly excessive pitch for wheelchair accessibility (greater than 2% cross slope perpendicular to accessible path or greater than 5% along accessible path other than ramp locations). As-built cross slope pitch recorded at the snack bar location area ranges between 7% to 8%. The 578.00 grade on the grading drawing appears to have dictated this pitch. As-built pitch at the upper parking lot sidewalk to the Sherwood School would probably meet the 5% requirement at the inside radius if the bituminous paving cross slope pitched towards the field instead of towards the driveway / parking lot. This sidewalk location was relocated by ASI #24 SKA-10.6.03.1. Careful attention to grading preparation prior to paving most likely would have eliminated excessive pitch at this location. This same careful attention would have eliminated excessive pitch at the sidewalk location adjacent the emergency generator. Please review the attached information to determine if the as-built conditions are acceptable or corrective work is required. Call me if you have any questions or require additional pitch readings.

Respectfully;

*Jim Kokernak*

Jim Kokernak

cc  Dan. Morgado
    Duffy Lanciani
file: 0204/KC040920

267 River Road, Andover, MA 01810
(978) 683-2900   Fax (978) 683-2525

Ex 107 (2/16/07)

(107)



FKS #1  9/20/04

Existing hydrant remains

Pavement flush with floor

Water fountains by Plumbing Subcontractor

Pavement flush @ door

Existing FFE 579.00', varies slightly, verify

FSK #2  9/20/04

Pitch readings taken on sidewalk surface and top of curb



MAR-30-2005  10:14    LAMOUREUX & PAGANO ASSOC.    1 508 757 7769    P.07/08

# FKS #3 9/17/04

2.3% CROSS

CROSS SLOPE 1.7%

11.2% CROSS

+2" crown

PLAN

ALT. No. 4:
New lightpole,
electrical 2wire, refer to
sheet L1-9 for location

ALT. No. 4:
New bit. conc. curb
and landscaped islands,
remove pavement
"inside island"

ALT. No. 2:
R&R F&G
typical

578

ALT.
New
elec.

Accessible
walk, see
sheet L1-6

Existing granite curb

New granite
curb abuts
existing

NOTE:
G.C. shall provide the architect
with a 20' grid of spot grades
which shall be used for final





RESTRIPE PARKING
SPACES AT NEW
PAVING & BIT.
CONC. OVERLAY

FKS #3  9/20/04

EXISTING
GRANITE CURB

14 spaces @ 9.00' each
126.00'

EXISTING
ACCESSIBLE
RAMPS, SEE
DETAIL

4
L1.8  sim.

Existing drive

INSTALL 8" THICK
CONC. SLAB FOR
EMERGENCY
GENERATOR, SEE
12/L1.6



# CTM

**Construction Technologies Management, Inc.**

## Site work Items to be completed 9/22/04

01) Complete cleaning and repair of 1,370 ft. long bituminous concrete swale adjacent the South property line.

02) Complete installation of all concrete apron pads at exterior doors 490, 490A, 490B, 498, 498A, 498C, 499,

03  Install concrete dumpster pad, flag pole base.

04) Install hand rails at exterior stairs adjacent snack bar.

05) Clear trees / loam and seed south slope, Alternate #5 / Dwg. L/1.9

06  Complete demolition of existing fence at Sherwood School field entrance.

07  Complete installation of fencing, gates, and backstops at fields.

08  Reinstall existing field sign, 2/L1.10 / 14/L1.8

09  Install traffic control and parking signage.

10  Reinstall granite monument on concrete foundation, Alt #5 Dwg. L/1.10

11) Complete sidewalk bituminous paving to Sherwood School field and front entrance flag pole.

12) Complete paving items on deficiency list.

13) Complete line stripping on bituminous paving.

14) Complete prepwork, installation of field facilities (high jump, long jump, long and triple jump, shot put)  Relocate east most  long jump runway to meet Addendum #2 requirement per LPA 9/24/01 direction.

15) Complete bituminous paving at track and field events.

16) Install rubberized surfaces and line stripping at track and field events.

page 1 of 2

267 River Road, Andover, MA 01810
(978) 683-2900   Fax (978) 683-2525





# CTM
## Construction Technologies Management, Inc.

## Work Items to be completed Sections "A & B"     9/22/04

01) Install fire rated access panels at 1hr. shaft wall located in Corridor 280A and Special Ed. 283.

02) Demolish existing / install new access panels to tunnels indicated on Dwg A/3.1 at Corridor 130 and Stair No.2.

03) Complete foundation wall crack repair, painting, flooring / base, and millwork shelving installation in Storage 131.

04) Complete demolition / patching, painting, flooring / base at Mechanical 127.

05) Complete demolition / patching, painting, flooring / base at Mechanical 127A

06) Complete lockers and trim installation.

07) Replace all temporary light fixtures with permanent fixtures.

08) Install elevator phone / complete control wiring / testing of HVAC louver at elevator shaft.

09) Complete wood door and sill millwork installation / finishing at Library/Media 251, Special Ed. 283 and World Language 285.

10) Replace temporary HVAC unit ventilator control covers, approx. 6 room locations.

11) Install missing marker and tack boards.

12) Replace temporary plywood at all window and hollow metal frame locations with permanent glazing.

13) Complete elect. demolition, millwork refinishing and hardware, elect panel covers, painting, flooring, ceiling, door hardware, cleaning at Office 252.

14) Complete gypboard infill, painting, flooring, door / hardware installation, cleaning at Production 253.

15) Complete acoustic panels, glazing, millwork / finishing at all displays

page 1 of 3

267 River Road, Andover, MA 01810
(978) 683-2900   Fax (978) 683-2525



# CTM
### Construction Technologies Management, Inc.

33) Install new perimeter backer rod/sealant at all existing exterior hollow metal frame units, see note 5 on exterior scope of work schedule, elevations on A/5.1, A/5.2, A/5.3

34) Install new backer rod/sealant at all new exterior window locations, elevations 3/A5.2, 4/A5.2, 8/A5.2, 2/A5.3,

34) Remove existing exterior signage / patch masonry holes

35) Complete painting of all existing to remain exterior hollow metal frames and doors.

36) Clean outside face of all glazing.

37) Install labeled key cabinet.

page 3 of 3

267 River Road, Andover, MA 01810
(978) 683-2900   Fax (978) 683-2525

# WEEKLY PAYROLL REPORT FORM

**Company Name:** Landwork Creations, LLC

**Project Name:** Shrewsbury Middle School
JCC JOB #381

**Awarding Auth.:** Town of Shrewsbury

**Work Week Ending:** 9/25/04

☐ **Final Report**

Prime Contractor: ☐

Subcontractor ☐
List Prime Contractor:

Employer Signature: _Paul H. Matthews_

Print Name & Title: _Neil H. Matthews Principal_

Company Name (handwritten top right): _Jackson Construction Co._

| Employee Name & Address | Work Classification | Hours Worked S | M | T | W | T | F | S | (A) Tot. Hrs. | (B) Hourly Base Rate | Employer Contributions (C) Health & Welfare | (D) Pension | (E) Supp. Unemp. | (F) (B+C+D+E) Total Wage Hourly (prev wage) | (G) (A*F) Weekly Total Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Roger April Brookfield MA 02835 | Operator | | 8.0 | 8.0 | 8.0 | 8.0 | 8.0 | | 40. | 42.91 | | | | 42.91 | 1916.40 |
| Michael McGee 102 Appleton Rd. Coventry RI 02816 | Labor | | | | | | | | | | | | | | |
| Stanley Kelley 12 Wayne Ave Apt O North Smithfield RI 02863 | Labor | | | | | | | | | | | | | | |
| Rolland Vardi loft 69 Briggs Rd Coventry RI 02816 | Operator | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

**NOTE:** Every contractor and subcontractor is required to submit a copy of their weekly payroll records to the Awarding Authority



JACKSON
construction
company

20 Dan Road
Canton, MA 02021
Tel: (781) 737-1500
Fax: (781) 737-1550
www.jacksoncc.com

## Fax Transmittal

for Outgoing Correspondence

| Shrewsbury Middle School | Project # 381 | Jackson Construction Company |
|---|---|---|
| 45 Oak Street | Tel: 508-845-0707    Fax: 508-845-5023 | |
| Shrewsbury, MA | | |

**Date: 10/19/2004**          **Reference Number: 0212**

| Transmitted To | Transmitted By |
|---|---|
| Neal Matthews | Jennifer Fletcher |
| Landworks Creations, LLC | Jackson Construction Company |
| PMB 291 | 20 Dan Road |
| 1500A Lafayette Rd. | Canton, MA  02621-2809 |
| Portsmouth, NH  03801 | Tel: 781-737-1500 |
| Tel: (603) 498-1295 | Fax: 781-737-1550 |
| Fax: (207) 351-1532 | |

| Package Transmitted For: | Delivered Via | Tracking Number |
|---|---|---|
| Information, ACTION | | 17 098 035 03 1035 100 0 |

| Item # | Qty | Item | Reference | Description | Notes | Status |
|---|---|---|---|---|---|---|
| 001 | 1.0 | Letter | | Site walks and ramps | | |

| Cc: Company Name | Contact Name | Copies | Notes |
|---|---|---|---|
| Jackson Construction Company | JCC File | 1 | |

### Remarks

Neal:
Please see attached site work report from CTM.  Corrective action or a written response must be received by our office no later than Friday, October 22, 2004.

FAXED
10/19/04

_____
Signature

10/19/04
_____
Signed Date

cc:  JCC File

*Prolog Manager*    Printed on:  10/19/2004    jcc projects

Page 1

Ex 74 (2/13/07)

00538

74

MEMBER OF THE AMERICAN INSTITUTE OF ARCHITECT

SEP 28 2004

ON CONST
COMPAN



LAMOUREUX · PAGANO
ASSOCIATES, ARCHITECT

Richard J. Lamoureux, Sr.

Michael A. Pagano

· · · · · · · · · · · · · · · · · · · · ·

Richard J. Lamoureux, Jr.

Kathryn Crockett

Eric D. Moore

Robert Para, Jr.

24 September 2004

Mr. Richard McGuinness
Project Manager
Jackson Construction Company
20 Dan Road
P.O. Box 9191
Canton, MA  02021

Re:    Shrewsbury Middle School – West
       Site walks and ramps

Dear Mr. McGuinness:

Several areas in the finish site work do not meet the specifications of the contract documents.  We have enclosed reports and sketches drafted by CTM for your assistance.

|   |   |   |
|---|---|---|
| FSK #2<br>9/20/04 | <u>Sidewalk at north end of baseball field.</u><br>Re-grade to maintain a 5% max. slope. |
| FSK #1<br>9/17/04 | <u>Concrete ramp at tennis court parking.</u><br>Delete bituminous curb adjacent to parking.  Provide 8% grade concrete ramp from parking to meet bituminous sidewalk. |
| FSK #1<br>9/17/04 | <u>Concrete ramp at Oak Street.</u><br>Re-build to meet 8% pitch at ramp and 2% cross slope. |
| FSK #2<br>9/17/04 | <u>Oak St. Parking Lot Concrete Ramps.</u><br>Rebuild to maximum 8% ramp pitch. |
| FSK #3<br>9/17/04 | <u>North Parking Lot Concrete Ramp.</u><br>Rebuild to maximum 8% ramp pitch. Also note that the existing bituminous walk currently has a center crown leaving a 2"± rise at the ramp connection. The ramp must meet the sidewalk on a level plane. |
| FSK #4<br>9/17/04 | <u>Concrete Ramp Near Gymnasium Entry.</u><br>Rebuild ramp to meet max. 2% cross slope requirement. |

**00539**

-2-

Note also that the concrete ramp entry must be at least 36" wide.  Verify that all ramps meet this requirement.

Since site accessibility is a code requirement, the corrective measures are not discretionary.

Sincerely,

Kathryn Crockett, A.I.A.
Project Architect

KC/pf

Enclosures

cc:     Jack Ferguson
        Duffy Lanciani
        Jeff Richards

9710MS/Corres/Contractor/9710MSCC-GC-JACKSON.doc

00540



00541



TOWN OF
SHREWSBURY
N / F

PLAN

2.0%
CROSS SLOPE

6.0%
CROSS

9.5%
CROSS

Bit

BCC

FKS #1 9/17/04

CORKUM
KEITH AND NANCY
N/F

13.7%
CROSS

0.6%
CROSS SLOPE

4.6%
CROSS

PLAN

00542



00543



# FKS #3 9/17/04

2.3% → CROSS

CROSS SLOPE 1.7% ↓

11.2% ← CROSS

+2" crown

## PLAN

ALT. No. 4:
New lightpole, see electrical dwg., refer to sheet L1.9 for location

ALT. No. 4:
New bit. conc. curb and landscaped islands, remove pavement "inside island"

ALT. No. 2:
R&R F&G typical

ALT. No. 4:
New lightpole, see electrical dwg.

578

R=3.00 (typical)

Accessible walk, see sheet L1.6

Existing granite curb

New granite curb abuts existing

NOTE:
G.C. shall provide the architect with a 20' grid of spot grades which shall be used for final grading and catch basin grate

00544



FKS #4 9/17/04

00545





LAMOUREUX · PAGANO
ASSOCIATES. ARCHITECTS

Richard J. Lamoureux, Sr.

Michael A. Pagano

· · · · · · · · · · · · · · · · · · ·

Richard J. Lamoureux, Jr.

Kathryn Crockett

Eric D. Moore

Robert Para, Jr.

2 February 2005

Mr. Jack Ferguson
CTM
267 River Road
Andover, MA  01810

Re:  Shrewsbury Middle School – West
     Requisition #23 – Jackson Construction Company

Dear Jack:

Please find enclosed our estimate of the value of the LPA punch list titled "Monetized Punch List Summary" and an estimate of the value of remaining work not yet punched, titled "Allowances for Unfinished Items".  The total estimated value of punch list and unfinished items is as follows:

Monetized Punch List Summary:      $   495,745.00
Allowances for Unfinished Items:    $1,195,675.00

Under separate cover we have provided CTM and the Owner with a punch list of designated areas of the building and site.  Consistent with our discussions, the requisition form will no longer have a retainage column and CTM will be expected to certify payments from the two categories of work i.e., punch lists and unfinished work.  Please note that at this time we are awaiting a final review of the doors and hardware conducted by Duffy and Bob Cox which may affect the value of those categories.

Also, please note that we have not included CTM's assessed value of deficiency list items such as the damaged roof edge, oil tank cap replacement, unpainted conduit, etc.  Additionally, we have not included values for Sections 02075 Asbestos Abatement (manifests), or 07500 Roofing (warranty).  Please review our recommendations and estimates against the scope of work and make adjustments where appropriate prior to certifying the Contractor's future requisitions.

In your review of our summaries, please be mindful that LPA has not been recalled to the site to do a back-punch of areas A & B or, for that matter, C & D.  The Contractor may have made progress in addressing punch list items which were originally assembled in August/September although to the best of our knowledge minimal work was undertaken while the school occupied the building.

Ex 14(1/10/07)                                                    (14)

## Shrewsbury Middle School - West
Shrewsbury, MA 01545

# MONETIZED PUNCH LIST SUMMARY
2 February 2005

| SECTION | DESCRIPTION | AMOUNT |
|---------|-------------|--------|
| 01000 | Clean Up | $41,275.00 |
| 02000 | Site | $14,100.00 |
| 03300 | Concrete | $1,125.00 |
| 04200 | Masonry | $5,900.00 |
| 05500 | Misc. Metals | $6,000.00 |
| 06000 | Carpentry-Millwork | $45,725.00 |
| 07100 | Caulking & Insulation | $35,000.00 |
| 07420 | Metal Wall Panels | $14,800.00 |
| 07500 | Roofing & Flashing | $10,000.00 |
| 08110 | Metal Doors & Frames | $33,100.00 |
| 08210 | Wood Doors | $23,850.00 |
| 08331 | Coiling Doors (not punched) | $0.00 |
| 08520 | Store Front | $1,425.00 |
| 08700 | Finish Hardware | $4,125.00 |
| 08800 | Glass & Glazing | $4,500.00 |
| 09260 | Gypsum Board Systems | $12,375.00 |
| 09300 | Tile | $11,525.00 |
| 09510 | Acoustical Ceiling | $25,320.00 |
| 09520 | Acoustical Wall Panels | $725.00 |
| 09550 | Wood Floor Finishing | $1,575.00 |
| 09650 | Resilient Flooring | $32,700.00 |
| 09680 | Carpeting | $3,050.00 |
| 09900 | Painting | $91,400.00 |
| 10100 | Visual Display Boards | $1,975.00 |
| 10160 | Toilet Partitions | $900.00 |
| 10210 | Metal Wall Louvers | $400.00 |
| 10505 | Lockers | $9,050.00 |
| 10650 | Operable Partition (not punched) | $0.00 |
| 10810 | Toilet Accessories | $1,550.00 |
| 12505 | Window Shades | $2,600.00 |
| 15300 | Fire Protection | $6,925.00 |
| 15400 | Plumbing | $1,875.00 |
| 15600 | HVAC | $9,950.00 |
| 16100 | Electrical | $14,700.00 |
| 16990 | Communications | $26,225.00 |
| | **Subtotal** | **$495,745.00** |

Based on punch list inspections between
August 9, 2004 and January 4, 2005

9710MS/Worksheet/Punch Lists/Monetized Punch Lists/sms monetized punch list summary 2 February 2005 - pf

LAMOUREUX · PAGANO
ASSOCIATES, ARCHITECTS

## Shrewsbury Middle School - West
Shrewsbury, MA  01545

# ALLOWANCES FOR UNFINISHED ITEMS                    2 February 2005

| | | |
|---|---|---|
| General Conditions | Project Supervisor | $150,000.00 |
| Divisions 2 – 14 | O&M-As Built Drawings | $15,000.00 |
| Division 15300 | O&M-Asbuilt Drawings-Training | $10,000.00 |
| Division 15400 | O&M-Asbuilt Drawings-Training | $12,000.00 |
| Division 15600 | O&M-Asbuilt Drawings-Training | $25,000.00 |
| Division 15600 | Testing & Balancing | $10,000.00 |
| Division 16100 | O&M-Asbuilt Drawings-Training | $17,000.00 |
| Division 16990 | O&M-Asbuilt Drawings-Training | $10,000.00 |
| Division 16990 | Testing | $10,000.00 |
| Exterior | Site Work | $269,000.00 |
| | Canopy | $175,000.00 |
| | Incomplete metal panels | $75,000.00 |
| | Display cases not completed at time of inspection | $18,000.00 |
| | Some visual display boards not installed at time of inspection | $6,000.00 |
| | Some millwork not installed at time of inspection | $8,000.00 |
| | Lockers not installed at time of inspection | $50,000.00 |
| | Vertical platform lift | $25,000.00 |
| | Gymnasium | $8,500.00 |
| Cafeteria | Coiling doors between Cafeteria and Kitchen | $17,775.00 |
| Cafeteria | Folding partitions | $27,900.00 |
| Cafeteria | Acoustic panels | $3,500.00 |
| | Stair 5 | $6,000.00 |
| | Stair 6 | $6,000.00 |
| | Stair 7 | $6,000.00 |
| | Stair 8 | $6,000.00 |
| | Stair 9 | $6,000.00 |
| | Stair 10 | $6,000.00 |
| 261C | Greenhouse | $10,000.00 |
| 323B | Storage | $500.00 |
| 323A | Storage | $500.00 |
| 324 | Stage | $5,000.00 |
| 340A | Storage Room | $1,000.00 |
| 363 | Boiler Room | $6,000.00 |
| 370B | Vestibule | $1,000.00 |
| 442 | Corridor | $1,000.00 |
| 442A | Emergency Electric | $2,700.00 |
| 442B | Electric Room | $3,200.00 |
| 443 | Storage | $3,300.00 |
| 445 | Girls Shower | $1,000.00 |

LAMOUREUX · PAGANO
ASSOCIATES. ARCHITECTS

Shrewsbury Middle School - West
Shrewsbury, MA 01545

## ALLOWANCES FOR UNFINISHED ITEMS

2 February 2005

| | | |
|---|---|---:|
| 446 | Phys. Ed. Office | $2,800.00 |
| 447 | Toilet | $5,200.00 |
| 448 | Janitor's Closet | $2,200.00 |
| 449 | Accessible Toilet/Shower | $7,200.00 |
| 450 | Toilet | $5,500.00 |
| 451 | Lockers | $5,000.00 |
| 452 | Girls Shower | $3,000.00 |
| 460 | Boy's Locker Room | $10,000.00 |
| 461 | Machine Room | $4,300.00 |
| 462 | Phys. Ed Room | $4,200.00 |
| 463 | Toilet | $5,200.00 |
| 464 | Janitor's Closet | $2,200.00 |
| 465 | Accessible Toilet/Shower | $7,200.00 |
| 466 | Toilet | $5,000.00 |
| 467 | Drying Area | $2,500.00 |
| 468 | Shower | $1,000.00 |
| 469 | Storage | $1,500.00 |
| 470 | Boy's Team Room | $3,000.00 |
| 471 | Team Room | $2,000.00 |
| 485A | Mechanical Room | $2,000.00 |
| 485 | General Phys. Ed | $15,000.00 |
| 489 | Corridor | $9,000.00 |
| 491 | Lunch/Meeting | $4,700.00 |
| 492 | Storage | $8,700.00 |
| 493 | Storage | $11,000.00 |
| 494 | Men | $5,700.00 |
| 495 | Women | $5,700.00 |
| 496 | Office | $4,900.00 |
| 497 | Mezzanine | $2,000.00 |
| 498 | Garage | $18,400.00 |
| 499 | Storage | $10,000.00 |
| 500 | Storage | $1,700.00 |
| 501 | Mezzanine | $4,000.00 |

**TOTAL**          $1,195,675.00

9710MS/Worksheet/Punch Lists/Monetized Punch Lists/sms punch list unfinished items 2 February 2005 - pf

LAMOUREUX · PAGANO
ASSOCIATES. ARCHITECTS
14 East Worcester Street   Worcester   Massachusetts   01604
tel 508.752.2831   fax 508.757.7769   www.lamoureuxpagano.com

FAX TRANSMITTAL

DATE: 2/3/05
JOB NUMBER: 9710MS
REGARDING: Shrewsbury Middle
School at 45 Oak Street

Re:  Shrewsbury School
     At 45 Oak Street

From:     ☒ ~~Katie Crockett~~  Mike Pagano
          ☐ Todd Manning

Fax To:

☒          TOWN OF SHREWS.      ATTN: Dan Morgado        FAX# 508-842-0587

☐          JACKSON CONSTR.      ATTN: Richard McGuinness   FAX# 781-737-1550
           MAIN OFFICE

☐          JACKSON CONSTR.      ATTN: Frank Leonardo       FAX# 508-845-5023
           FIELD OFFICE

☒          CTM                  ATTN: Jack Ferguson        FAX# 978-475-6138
           MAIN OFFICE

☐          CTM                  ATTN: Jim Kokernak         FAX# 508-845-4898
           FIELD OFFICE

☐          CLERK OF WORKS       ATTN: Robert Lanciani      FAX# 508-845-4898
           FIELD OFFICE

☐          _____      ATTN: _____      FAX# _____

NO. OF PAGES TRANSMITTED (including cover sheet):  6

          ☐    FOR APPROVAL
          ☐    FOR YOUR USE
          ☐    AS REQUESTED
          ☐    FOR REVIEW AND COMMENT
          ☐    OTHER (REFER TO REMARKS)

REMARKS: Letter dated 2 February 2005 w/ Monetized Punch List
Summary + Allowances for Unfinished Items attached.
A hard copy is in the mail.

COPY TO:                                            SIGNED: Mike/pf
          If enclosures are not as noted, kindly notify us at once.

Projects/1997/9710-MS/Trans/Contractor/9710MS TC-faxtransmittal.doc

-2-

Please contact Katie Crockett or me if you have any questions.

Sincerely,

Michael A. Pagano, A.I.A.

MAP/pf

Enclosures:     Monetized Punch List Summary Dated 2/2/05
                Allowances for Unfinished Items Dated 2/2/05

cc:     Dan Morgado
        Katie Crockett

## Robert Bullock

From:      Bill Meritz [bmeritz@lovett-silverman.com]
Sent:      Thursday, September 08, 2005 11:26 AM
To:        'Al falango'
Cc:        'Robert Bullock'; 'Pedro Rosario'; 'Tony Lardaro'
Subject:   Shrewsbury Middle School- Job Progress meeting 9/6/05

Gentlemen:

I attended the meeting at the Town of Shrewsbury offices; In attendance were:

| | |
|---|---|
| Katie Crocket | LPA |
| Mike Pagano | LPA |
| Dan Morgano | Town of Shrewsbury |
| Robert Cox | Town of Shrewsbury |
| Bob Morel | G & R Construction |
| Jason Goodwin | G & R Construction |
| Dave Willet | G & R Construction |
| Duffy Lanciani | Clerk of the Works |
| Jack Ferguson | CTM |
| Rich Melanson | Griffin Electric |

The following is a summary of the discussions:

Mike Pagano requested a status report pertaining to contract ratifications. I provided them with a status of each subcontractor listed by the Architect as having an impact on the project concerning finishing the work. Dan Morgano asked weather the Surety has issued checks to the subcontractors yet. I indicated that we have requested checks for many of them and others we were still finalizing their ratifications.

Dave Willet indicated that several contractors were working without ratifications.

Mike Pagano asked for a status report on Occupancy issues pertaining to Gerald Laflamme (Fire Chief) email of 8/28/05 received from John Sabonaitis. I indicated that Griffin Electric will verify that all work described in the contract documents will be provided. The Architect will review this 'Wish List' from the Fire Chief and will begin preparing affidavits for issuance to the school. I also indicated that any work outside the contract will be treated as a change order. Mike Pagano will be contacting the Fire Marshall.

G & R reported the following:

Painting: The painter will be switching to nights next week in order to continue the painting punch list.

Flooring: Replacement of VCT tiles as per the punch list is complete. The Architect will reinspect. Issues remain with the blue VCT (different color). G & R has ordered a closer replacement tile for the blue for attic stock. The architect will review. The blue tile installed as per punch list work is a problem throughout the building.

Room 485 (Phys Ed) – G & R reported that the floor is scheduled to be completed by weeks end. Underlayment application and repair of the access frame have been completed to correct the tripping hazard. Vinyl base is back ordered. The architect will punch out this area next week.

Boys and Girls Locker Rooms – G & R reported that nearly all the Architect's punch list items have been completed. Upon completion G & R will have these areas cleaned and ready for the Architect's inspection next week. The handicap chair lift has been certified. G & R has requested paperwork from AFCO.

Electrical Work: Griffen reported that 85% of the interior electrical work has been completed. Issues regarding outstanding fixture lenses in room 485 remain outstanding. Fixture lenses (<12) were scavenged from this room and installed in classrooms. The lenses are on back order. Griffen requested that this order be expedited via

Ex 45 (1/11/07)

4/17/2006



overnight delivery. (LSCC requested a price). In any event Griffen will install temporary lenses prior to the room being completed. Griffen repaired defective wiring for pole lights in the front of the building and determined that these nonlit lights were a district problem (Bob Cox Agreed). It was determined that lights in the rear of the building do not work due to contractor damage (1 Pole light) and incomplete conduits and wiring at two other locations. Griffen will issue a cost to complete repairs. Additionally, the single pole-light diagonally across from the generator will have to be powered up by digging a trench 300 'to the nearest pole beneath grass. Griffen will provide a sketch to the Architect. As far as the lighting around the track, Griffen indicated that power to only 1 pole from the service panel could be determined. Griffen has concerns regarding the existing underground track lighting feeders as well as the existing service panel. I asked Griffen to issue a report based upon their findings. The issue of restrikes for the front canopy lighting was discussed. It appears that perhaps they are only needed at the front entrances. The architect will investigate this and report.

Canopy Work – Bob Morel reported that they have a contractor on board to complete the canopy once the lighting issue has been settled. The Architect questioned the frost protection wiring and Griffen indicated that the wiring is incomplete. Furthermore the Architect indicated that bug screens need to be installed at the louvers at both ends of the canopy. Jack Ferguson of CTM said that perhaps the Architect should examine the steel work at the canopy/front entrance intersection. The Architect will have their structural engineer examine the installation. Katie indicated that all rusting metal be addressed.

Windows/Window Repairs – The Architect indicated that the installed windows in the gymnasium were of the wrong type of glass (punch list). G & R is in contact with Architectural Windows concerning this matter. LSCC will follow up. G & R will review the window repair work performed by Architectural Windows. Duffy Lanciani is also reviewing the window repair work per the CCD issued as a C/O to Jackson/Architectural windows.

AFCO – G & R reported that the handicap lift has been certified. AFCO still needs to address items pertaining to the installed cafeteria/ snack bar stainless steel roll up doors. Additionally, the overhead door operator in at the left side of the maintenance garage and the door track on the left side was damaged during construction and needs replacement. G & R will be contacting AFCO.

Work Schedule – Mike Pagano raised the issue of a completion schedule for all the outstanding work. He stated that although this is a requirement, both the owner and the architect are willing to temporarily waive this requirement considering the fact that G & R have been successful in coordinating all interior work with the school principal. However, the owner needs a written schedule with completion dates as soon as possible. Bob Morel indicated that they will be on site throughout the Christmas break and will need to return in the spring to fertilize the fields.

Site Work – Bob Morel reported that negotiations are continuing with subcontractors and Bob Bullock of LSCC. The Architect indicated that the contact documents specifically indicate that temperature sensitive work can not be performed when ambient outside temperatures fall below 45 degrees. Furthermore, Bob Morel indicated that he has meetings planned with another site contractor and plans to begin work by the end of next week.

General Meeting Notes

Track Lighting
Based upon their investigation, Griffen Electric has determined that 2 four inch trunk lines each carrying 8 # 8 conductors go to two separate light poles from the existing service panel. One trunk line to the nearest pole can be electrified. The other trunk line to the opposite pole no longer exists. He one inch conduit installed between the two opposite light poles is too small to carry the necessary conductors. The existing buried conduits and splice boxes between the poles have problems. Bob Cox indicated that the wiring is indeed old and suspect and should be replaced. He asked if the Surety would be willing to install new conduits for the purpose of installing new wiring for the site lighting or perhaps negotiate a change order. This offer was summarily dismissed by Mike Pagano and Bob Morgano who indicated that the contractor was responsible for restoring all site lighting. At that moment Bob Cox left the meeting. Katie Crockett indicated that the demolition contractor caused all the damage and they expect the site lighting to be restored. Dave Willet asked about the status of the uninstalled electrical vault. The architect will investigate and review the site electrical drawings.

To summarize, issues with the site lighting abound. Griffen will produce a report for us to review. The existing equipment, conduits, and wiring may not be code compliant. Griffen has serious concerns about repairing the existing wiring and reenergizing it. We will need the architect to direct us in writing on how to proceed with respect to the contract drawings.

### Lockers

I indicated that I am still awaiting documents pertaining to change orders and credits from PENCO. Dave Willet indicated that they have already been on site working to address punch list items.

### G & R Invoices

Jason Goodwin reported that he is still preparing AIA forms for both the Surety and the owner. Katie Crockett requested that G & R submit to her a report on all items completed per her punch list for inspection purposes.

Bob Morgano reported that the Surety has yet to address direct payments by the Town as well as back charges. He explained to all that all retainage was paid to Jackson upon substantial completion (I was under the impression that substantial completion was never attained!) and that the remaining contract balance represents the value of the monetized punch list. Dan told G & R to requisition per the monetized punch list.

### Site

Dan Morgado indicated that it is imperative that the site work begin while time permits.
Mike Pagano indicated that the football field and baseball infields were still under warranty by the contractor and that they were responsible for maintenance and security.
Dan Morgado indicated that in the event that the football field could not be used, the district was prepared to transport the teams to other sites and back charge the Surety.
G & R agreed that we can work around this issue with regards to the peewee football people.

Duffy Lanciani asked the architect to provide the latest field drawings as well as all SK Drawings.

Bob Cox indicated that a school fair is scheduled for September 24, 2005 at the front lawn and requested that G & R address any safety issues.

### Tunnels

Final inspection report and sign off remain outstanding.

### Work Force

G & R gave a brief review of project manpower.

### Project Directory

Katie Crockett requested that G & R provide a complete project directory with copies sent to all attendees.

### Next Meeting

The next meeting is scheduled for 1pm at Town Hall on Tuesday, September 13, 2005.

Sincerely,
Bill Meritz
Lovett Silverman Construction Consultants, Inc.
Hauppauge, New York
Telephone: (631) 979-7600; Facsimile: (631) 979-7602
www.lovett-silverman.com

The document(s) accompanying this transmittal contains information from the consulting firm of Lovett Silverman Construction Consultants, Inc. that is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance upon the contents of this transmittal information is strictly prohibited and the document(s) should be returned to this firm immediately. If you have received this transmittal in error, please notify this firm immediately at (631) 979-7600.

## Robert Bullock

| | |
|---|---|
| **From:** | Bill Meritz [bmeritz@lovett-silverman.com] |
| **Sent:** | Thursday, September 22, 2005 3:37 PM |
| **To:** | 'Jason Goodwin' |
| **Cc:** | 'Al Falango'; 'Robert Bullock'; 'ajwerth'; 'Tony Lardaro' |
| **Subject:** | Athletic Equipment |

Jason,

Please verify what athletic equipment remains outstanding and prepare a price to furnish this equipment.

Be advised that Landworks, Steelco and Tracklite were each responsible for supplying athletic equipment. These three subcontractors remain unratified. Should you need any help please let me know.

Sincerely,
Bill Meritz
Lovett Silverman Construction Consultants, Inc.
Hauppauge, New York
Telephone: (631) 979-7600; Facsimile: (631) 979-7602
www.lovett-silverman.com

The document(s) accompanying this transmittal contains information from the consulting firm of Lovett Silverman Construction Consultants, Inc. that is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance upon the contents of this transmittal information is strictly prohibited and the document(s) should be returned to this firm immediately. If you have received this transmittal in error, please notify this firm immediately at (631) 979-7600.

Ex 39 (1/11/07)
4/17/2006

(39)





LAMOUREUX · PAGANO
ASSOCIATES. ARCHITECTS

Richard J. Lamoureux, Sr.

Michael A. Pagano
· · · · · · · · · · · · · · · · · · ·
Richard J. Lamoureux, Jr.

Kathryn Crockett

Eric D. Moore

Robert Para, Jr.

26 September 2005

Mr. Robert Bullock
Lovett Silverman Construction Consultants
380 Town Line Road
Hauppauge, NY 11788

Re:    Shrewsbury Middle School – West
       Running Track Base

Dear Mr. Bullock:

Mr. Morgado forwarded to us your letter regarding concerns about the current condition of the running track base. I understand that subcontractors that have examined the base, assert that more repairs are necessary than indicated in the contract documents.

You must understand that when the original rubber track finish surface was removed from the base and left the base exposed to the elements for over one year, it is not unlikely that the base was further compromised. Note that Waterman Design documented the condition of the track base in October, 2004 and this drawing has been forwarded to your company. Further, no mention of excessive damage to the existing base was made immediately following the removal of the finish surface. In our opinion, damage to the base occurred in the interim period and is probably attributable to a lack of protection of the base and other construction related causes.

We would appreciate clarification of the extent of work your subcontractors propose to do to repair the base to a condition where the new finish surface can be warranted per the specifications.

Further, we will solicit an opinion from an independent expert regarding the current condition of the track and recommendations for repair.

Sincerely,

Kathryn Crockett, A.I.A.
Project Architect

KC/pf

cc:    Dan Morgado           Jason Goodwin
       Michael Hale          Angela Snell
       Jack Ferguson         Mike Pagano
       Robert Cox
       9710MS/Corres/Contactor/9710MSCC-CC1.doc

Ex 10 (1/10/07)



completion of this work before this winter.

Robert J. Bullock, PE
Lovett Silverman Construction Consultants Inc.

Phone: 717-796-9595
Fax:    717-766-1715
Cell:   717-422-7518
Web Site: Lovett-Silverman.com

The information contained in this e-mail is confidential information
intended only for the use of the individual or entity named. If the
reader of the message is not the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any
dissemination, distribution, or copying of this communication is
strictly prohibited. If you have received this communication in error,
please immediately notify the sender by reply e-mail and then delete the
message.

Message                                                                                    Page 1 of 2

## Julie Ciollo

| | |
|---|---|
| **From:** | Al Falango [afalango@lovett-silverman.com] |
| **Sent:** | Thursday, September 29, 2005 10:31 AM |
| **To:** | 'Robert Bullock'; 'Bill Meritz' |
| **Cc:** | 'Tony Lardaro' |
| **Subject:** | RE: Shrewsbury - Track Construction Estimates |

Bid apples against apples which track guy has the best number, we ratify trackside if he has the best number. I understand the inconsistencies in his contract but if his number is the best we try to get him back, If his number if very close or higher then Cape we go with cape.
What number did G and R get from their track guy
Is G and R's track guy doing all the work or just the track and a separate guy is doing the asphalt demo and redo.

-----Original Message-----
**From:** Robert Bullock [mailto:rbullock@lovett-silverman.com]
**Sent:** Thursday, September 29, 2005 10:01 AM
**To:** 'Bill Meritz'; 'Al Falango'
**Cc:** 'Tony Lardaro'
**Subject:** RE: Shrewsbury - Track Construction Estimates

Al and Bill,

Attached are estimates for the Running Track: Pulverizing, Removal, New 4" base, and Rubber track. The estimate based on G&R's unit price estimates totaled $137,422 and the estimate based on the Means data totaled: $153,005. Assuming G&R's quotes come somewhere near his prediction, I think we should go with their subcontractor for the pulverizing, removal, and new asphalt. Also, based on the estimate from G&R and the Means Est it appears that TrackLite only has enough (approx $51,000 including escalation) in for the rubber surfacing, and probably not the asphalt base or the athletic equipment as his original contract states. The question is should we ratify TrackLite, or use the G&R's subcontractor? As for the change to pulverize the track instead of repairing, assuming the change to pulverize the track will be approved, the owner would be responsible for 67% or $33,499 of the extra work, and the Surety 33% or $16,499.

Robert J. Bullock, PE
Lovett Silverman Construction Consultants Inc.
19 Goldenrod Drive
Carlisle, PA 17013

Phone: 717-796-9595
Fax:    717-766-1715
Cell:   717-422-7518
Web Site: Lovett-Silverman.com

The information contained in this e-mail is confidential information intended only for the use of the individual or entity named. If the reader of the message is not the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by reply e-mail and then delete the message.



Ex 40 (1/11/07)
10/11/2006



## Julie Ciollo

**From:**    Jason Goodwin [jgoodwin@grconstruction.net]
**Sent:**    Wednesday, February 01, 2006 6:48 PM
**To:**      Robert Bullock; Bob Morel
**Cc:**      Bill Meritz; Eric C. Hipp
**Subject:** RE: Shrewsbury - Actual Cost for Site Work Scope and Rework (Remaining)

<u>Cost to complete:</u>

6+ Concrete ramps not ADA = $25,000
Concrete stoop at exterior garage door = $5,000
Touch up seeding fertilizing = $15,000
Installation of athletic equipment = $10,000
Asphalt at flagpole = $10,000
Sidewalk next to Sherwood School = $15,000
Concrete pad at oil tank = $10,000
Loam repair after track & paving install = $15,000
Fence around track and at school = $50,000
Grading & drainage at paved area adjacent to track = $75,000 (unforeseen conditions leave it unclear)
Final as-built = $15,000

Total = $245,000

FYI - G&R's original estimate on 8/8/05 for base site work was for $417,000. To date we have only billed for $368,000. With all of the alternate work priced in the estimate G&R came up with $900,000+- . If you total up our remaining work with our billed work it equals $798,000. By doing this work on T&M we have saved the surety around $100,000.

I hope this helps.
Jason

**From:** Robert Bullock [mailto:rbullock@lovett-silverman.com]
**Sent:** Tuesday, January 31, 2006 6:22 PM
**To:** Jason Goodwin; Bob Morel
**Cc:** 'Bill Meritz'; 'Eric C. Hipp'
**Subject:** RE: Shrewsbury - Actual Cost for Site Work Scope and Rework (Remaining)

Jason and Bob,

We need your estimates for the site work that remains. I have created a short spreadsheet; please provide your best estimate of this work. See previous messages and the attached Excel document. Please provide the information for the highlighted cells. If you have any additional work that you know remains and is not listed, please feel free to include it in this document. We need to get this information to Eric Hipp tomorrow, Wednesday morning, so that he can have time to review it and ask any questions that he may have.

Robert J. Bullock, PE
Lovett Silverman Construction Consultants Inc.
19 Goldenrod Drive
Carlisle, PA 17013

Phone: 717-796-9595
Fax:    717-766-1715
Cell:   717-422-7518
Web Site: Lovett-Silverman.com

Ex 63 (1/11/07)
10/11/2006