1                        UNITED STATES DISTRICT COURT
                            DISTRICT OF MASSACHUSETTS
2

3

4    Landworks Creations, LLC,        )
                     Plaintiff,       )
5                                     )
                                      )
6    vs.                              ) Case No. 05cv40072-FDS
                                      )
7                                     )
     United States Fidelity and      )
8    Guaranty Company,                )
                     Defendant.       )
9


10
     BEFORE:  The Honorable F. Dennis Saylor, IV
11

12
                            Pretrial Conference
13

14

15
                                     United States District Court
16                                   Courtroom No. 2
                                     595 Main Street
17                                   Worcester, Massachusetts
                                     April 29, 2008
18

19

20

21

22
                         Marianne Kusa-Ryll, RDR, CRR
23                          Official Court Reporter
                         United States District Court
24                        595 Main Street, Room 514A
                          Worcester, MA 01608-2093
25                              508-929-3399
                  Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    Robert N. Meltzer, Esquire
     P.O. Box 1459
3    Framingham, Massachusetts 01701
     for the Plaintiff
4
     Hermes, Netburn, O'Connor & Spearing
5    by Peter G. Hermes, Esquire
     265 Franklin Street
6    7th Floor
     Boston, Massachusetts 02110
7    for the Defendant United States Fidelity and Guaranty Company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

        THE CLERK:  All rise.

        Court is now open.  You may be seated.

        Case No. 05-40072, Landworks Creations versus United

States Fidelity and Guaranty Company.

        Counsel, please note your appearance for the record.

        MR. MELTZER:  Good afternoon, your Honor.  Rob Meltzer

for the plaintiff.

        THE COURT:  Good afternoon.

        MR. HERMES:  Good afternoon, your Honor.  Peter Hermes

for the defendant, United States Fidelity and Guaranty Company.

        THE COURT:  Good afternoon.  All right.  This is a

pretrial conference in this case.  The principal matters I want

to address are whether or not this is a bench or a jury trial,

how long the trial is going to be, and to try to set a date for

that trial.

        Let me start with the first issue.  Mr. Meltzer,

what's -- is this a jury trial?

        MR. MELTZER:  Absolutely, your Honor, this is

certainly a jury trial.  The predominant part of the case is a

case under contract.  It's a case that involves a substantial

issue of material facts for contract performance.  There's also

a counterclaim, which is a contract claim.  Under the Sixth

Amendment, we have a right to a jury trial, and we have asked

4

1    for a jury trial.

2            THE COURT:  Mr. Hermes.

3            MR. HERMES:  Your Honor, the plaintiff's claim under

4    Chapter 149, Section 29 is by definition a statutory creation

5    and stated to be under the statute an equity claim.  The

6    Chapter 93A claim, similarly, is a creature of statute in the

7    Commonwealth of Massachusetts and subject to trial by the

8    court.  I think I'll leave it at that, your Honor.

9            MR. MELTZER:  Your Honor, I disagree with that

10   position.  If I may, your Honor.  If equitable is a statutory

11   remedy to the extent of payment under the bond is an equitable

12   remedy.  The issues of contract in a counterclaim are similarly

13   a standard Massachusetts contract claim.  A ratification

14   agreement between the parties is a construction contract,

15   performances of services and goods, and it must be done by a

16   jury.  We've asked for a jury.

17           THE COURT:  Mr. Hermes, let me make sure I understand

18   your point.  Count 1 is labeled breach of contract, Landworks

19   versus USF and G.

20           And it's vague, to say the least, but why do you say

21   that's not a jury, a breach of contract claim?

22           MR. HERMES:  Your Honor, quite frankly, I read that to

23   be a claim for contract in that instance being the bond rather

24   than something else.  It is true that there is a ratif  -- what

25   I'll call a ratification agreement between Landworks and USF

1    and G that was executed at some point in time, but I believe

2    the contract at issue here is the following contract between

3    Jackson Construction and Landworks.

4            THE COURT:  Well, it says here --

5            MR. HERMES:  And they raise the right of a bond on

6    there.  If -- if the court reads it as asserting a claim under

7    that ratification agreement then Mr. Meltzer is -- well, my

8    argument with respect to the statutory remedy doesn't apply.

9            MR. MELTZER:  Your Honor, we don't believe there is a

10   contract between Landworks and Jackson.  That's one of the

11   issues here.  They've raised it.  We dispute that.  This is a

12   straight performance bond.  It is a construction contract.  At

13   that point, the statute provides the mechanism or the remedy

14   and provides for the amounts of the bonds and provides the

15   jurisdiction at which USF and G is performing, that it is a

16   construction contract.

17           THE COURT:  All right.  Let me --

18           MR. HERMES:  I'm -- I'm confused by that statement,

19   your Honor.  There's a payment bond here that presumably is the

20   subject of the claim.  There is no -- as phrased by Mr.

21   Meltzer, there is no contract between USF and G and with

22   Landworks.  It is rather a bond claim with respect to a

23   subcontract between Landworks and a certain authority, but the

24   remedy on the bond, which does away with the third party

25   beneficiary status that one did not otherwise have is a

1    creation of Chapter 149, Section 29.

2         MR. MELTZER:  Your Honor, that confuses the two

3    principles.  There are two kinds of bonds.  There is a payment

4    bond, and there's a performance bond.  The work was completed

5    with a general contractor, and it became insolvent, and the

6    surety is now stepping in to make the payment.  That would be a

7    jury waived bond claim.

8         This is a case where the work was completed after the

9    failure of Standen, not Jackson.  A ratification agreement came

10   in under the performance bond, and it became a construction

11   contract with USF and G to complete it at USF and G's direction

12   and expense.  Similar with their counterclaim.  They are

13   construction contracts, not posttermination of a general

14   contractor payment bond.

15        THE COURT:  All right.  I think what I'm going to need

16   to do is --

17        MR. HERMES:  Phrased that way, your Honor, I agree

18   with the characterization by Mr. Meltzer.

19        THE COURT:  Well, I guess I can do two things.  We can

20   accept Mr. Meltzer's claim at face value; in other words, if

21   you say that's the claim, we can go forward on that assumption,

22   or I can get further briefing on it.  I'm not sure I can decide

23   this on the fly here without benefit of at least some further

24   motion practice from the parties.

25        What do you think makes sense?  I mean we could do

1    that on a relatively tight timetable and in the meantime set a

2    trial date on the assumption it will be a jury trial.  A bench

3    trial, you know, is easier to squeeze in.

4            Mr. Meltzer.

5            MR. MELTZER:  I guess what confuses me, your Honor, is

6    that's primarily a jury against USF and G, so I'm a little

7    baffled at the argument.  I can brief this, but I do believe

8    that it's a matter of constitutional interpretation that

9    especially once the counterclaim is raised, it is no longer a

10   bond issue.  It is a construction contract issue.  The

11   counterclaim is certainly.

12           THE COURT:  Well, I mean there is no question, you

13   know, under the Constitution, there's a right to a jury trial

14   in, you know, claims arising of law rather than equity, but

15   that kind of begs the question is this a law or an equitable

16   claim.

17           MR. MELTZER:  If my brother wishes to waive the

18   counterclaim, I'm sure that we would waive the jury.

19           To me, he interposes the counterclaim that it becomes,

20   I think, problematic before it's even considered as jury

21   waived.  The counterclaim is what certainly makes it appear as

22   a standard bread and butter, vanilla contract dispute.

23           THE COURT:  Mr. Hermes.

24           MR. HERMES:  I'm not in a position -- your Honor, I

25   can discuss with that my client.  I'm not in a position to

1    waive the counterclaim.  I think within short order Mr. Meltzer

2    and I can at least agree on the characterization of the claims

3    and perhaps agree whether the contract-related claims are ones

4    as to which there's a jury.

5            If -- if what Mr. Meltzer is saying there is not a

6    Chapter 149, Section 29 claim here then I agree at least as to

7    that claim there may be -- there is -- whatever that other

8    claim is is an entitlement to a jury trial.  I differ with

9    respect to the Chapter 90A aspect -- 93A aspect of this, your

10   Honor.

11           THE COURT:  All right.  93A, obviously, is not a jury

12   trial issue.  That part of it is easy, and I wouldn't impanel a

13   jury for that claim alone as an advisory jury.

14           On the assumption it's a jury trial, how long do you

15   think the case will take to try, Mr. Meltzer?

16           MR. MELTZER:  Are we half days, I believe.

17           THE COURT:  It's 9:00 to 1:00, but it's a real 9:00 to

18   1:00.  My experience is the cases move at the same pace as they

19   do as a so-called full day.

20           MR. MELTZER:  The only concern I have is that it

21   depends if it's streamlined.  I suggest that two motions

22   in limine need to be addressed.  If both of those are granted,

23   I think it probably would be five days.  I said ten in the

24   pretrial that I had provided, but I think that's -- that may be

25   an streamlined.

1          THE COURT:  Mr. Hermes.

2          MR. HERMES:  Your Honor, Mr. Meltzer's list of

3  witnesses includes virtually every witness that the defendant

4  would call, except for the defendant's expert, Mr. Byl.  So, if

5  Mr. Meltzer thinks that he can put -- I'm not certain whether

6  he is saying his case is five and a half days or the entire

7  case is that, but assuming that certain key fact witnesses, who

8  are listed on his memo are called, the defendant's case would

9  be one -- one day, your Honor.

10          THE COURT:  All right.  Let me take a look at the

11  calendar.

12          All right.  This is awfully quick, but I had a case

13  settle, and I have an opening.  We were going to impanel on

14  Friday, May 16th, to try the following week.  I could certainly

15  work around that, but that's three weeks away.

16          How do counsel feel about that?

17          And this is -- it's not the oldest civil case on my

18  docket, but it's -- it's close.  It's in the top ten anyway.

19          MR. HERMES:  As it happens, the second half of May is

20  essentially open in my calendar, your Honor, if there's an

21  opening.

22          THE COURT:  Mr. Meltzer, can you be ready by then?

23          MR. MELTZER:  Yeah, I have one hearing on the 22nd.  I

24  have to get that moved.  So, the 19th to the 23rd is open as

25  well, as well as the -- Memorial Day is the 26th?

1           THE COURT:  Yes.

2           MR. MELTZER:  Then I actually will be available.

3           THE COURT:  All right.  I have a trial scheduled to

4   start on the Monday after Memorial Day.  What I would like to

5   do is to try to address this at warp speed; first off, whether

6   we're going to have a jury or not, which will obviously affect

7   quite a bit about how fast this thing proceeds; and second, you

8   say you have some significant motions in limine, Mr. Meltzer.

9           MR. MELTZER:  Well, in the pretrials we both

10  submitted, we both have motions in limine on each other's

11  experts.  That's would be, you know, what I was raising.  We

12  don't think he has the qualifications to testify at the trial

13  in order to qualify him.  We believe that excluding him would

14  actually expedite this trial.

15          THE COURT:  Well, it sounds like a Daubert hearing.

16          Well, let's see, how quickly can we get this done?

17  Today is Tuesday.  Mr. Meltzer, do you think you could get

18  something on file by Friday?  Is that too tight?

19          MR. MELTZER:  That is a little bit tight.  The close

20  of business on Friday, I could have the motion filed.

21          THE COURT:  Why don't we do that, and it doesn't have

22  to be perfect.  I mean I'll forgive typos and so forth, but I

23  think it makes -- under the circumstances, I've got a pretty

24  full trial calendar for June, July; I'm gone part of August;

25  September and October are ugly; and I would really try to fit

1    this in now.  I know you were anxious, Mr. Meltzer, to get this

2    thing resolved; and at the risk of something less than complete

3    perfection on the motion papers, I think I can get the gist of

4    your argument and try to rule.

5         Mr. Hermes, how quickly do you think you could

6    respond?  Is Wednesday the 7th enough time?

7         MR. HERMES:  Your Honor, if I may, are we speaking of

8    motions in limine with respect to experts, Mr. Byl?

9         THE COURT:  Apparently, yes.

10         MR. HERMES:  Yes.  I believe so, your Honor.

11         THE COURT:  All right.  Why don't we do that, and

12    then -- Marty, what is --

13         (The Court conferred with Mr. Castles.)

14         THE COURT:  All right.  And then are you available at

15    2:15 on May the 8th for a hearing on those motions and pretrial

16    matters generally?

17         MR. MELTZER:  I'm actually In Worcester Superior on

18    the 8th in the afternoon.

19         MR. HERMES:  Yes, your Honor.

20         THE COURT:  Shoot.  Are you available, Mr.

21    Meltzer -- this is unorthodox -- but at the end of the day,

22    say, 4:45 or five o'clock on Thursday the 8th?

23         MR. MELTZER:  I can do that.  I'm in Worcester.  I can

24    come here afterwards.

25         THE COURT:  I think that probably makes the most

1   sense.  Okay.  Why don't we just say five o'clock on the 8th,

2   and I think those motions need to be any motions in limine

3   concerning the trial, and any motion concerning the jury trial

4   issue, if the parties can't somehow resolve it; and I think

5   that that will need to be our pretrial conference.  I'm going

6   to set a later date for the filing of voir dire questions,

7   proposed jury instructions, witness lists, exhibits lists and

8   so forth.  I'm going to ask you to file all of that by the end

9   of the day on May the 13th, that is by five -- by five o'clock.

10  But you ought to be prepared to talk about anything that's

11  controversial or that you -- for example, if you have a -- if

12  it is a jury trial, and you have an unusual voir dire question,

13  you ought to be prepared to raise it on the 8th.

14          Now, I'm sorry to being putting you all on such a

15  tight timetable.  I just think this makes more sense than any

16  other alternatives, which are not pretty.

17          MR. HERMES:  From -- from my perspective, not my

18  client, your Honor, this is the best of times given the

19  schedule for the succeeding time periods, so I have no

20  objection to it.

21          MR. MELTZER:  I agree.

22          THE COURT:  And again, don't worry about, you know,

23  filing things that might have a typo in it, which I know tends

24  to take 50 percent of -- 90 percent of the time writing

25  something is, you know, perfecting it, but --

1        MR. HERMES:  Your Honor, do I take it that if the

2   defendant has a motion in limine that also should be served by

3   the close of business on this Friday?

4        THE COURT:  Yes, I think -- I think it's going to have

5   to.

6        MR. HERMES:  I mean the one -- the one motion I have

7   in mind with respect to the jury trial is the robust nature of

8   the description of the case.  I'm not sure where Mr. Meltzer

9   stops with respect to what might be contract jury and what

10  begins 93A, but I have some definite views with respect to that

11  that I would like the court to consider.

12       THE COURT:  Okay.  You can raise that by a motion in

13  limine.

14       Again, assuming it's a jury trial, I will hear the 93

15  issues ordinarily at the same time.  If there is some reason to

16  have a portion of the trial kept from the jury, that is

17  something that's relevant only to the 93A and might be

18  additional context, I will consider that, but they're

19  ordinarily, you know, intertwined.

20       MR. HERMES:  To the extent Mr. Meltzer speaks of other

21  projects, your Honor, a whole project or litigation between a

22  man by the name of Bordieri, who was president of Jackson

23  Construction, it's that sort of thing that Mr. Meltzer may

24  believe is appropriate to 93A, but I don't believe is

25  appropriate to the contract issues.  It's that sort of thing,

1    which I am making reference to.

2         MR. MELTZER:  The problem is, your Honor, is where

3    they do get intertwined.  The problem we have is that one of

4    the primary issues is whether or not USF and G responded not

5    only according to industry standard in terms of defining

6    contract terms, but whether or not they added policy and

7    procedure.

8         In the Hull case that he just mentioned, it was a case

9    that was filed during the same exact time frame.  It was a case

10   that ratification was done after litigation was filed.  They've

11   claimed that the mere act of filing the lawsuit constitutes

12   abandonment and the right to terminate the contract.  By their

13   own policy, that's not the case.  So they have to come in sort

14   of fighting abandonment and the usual process of procedure in

15   these kind of cases.

16        THE COURT:  I'm not going to decide the question now.

17   I'll let the motion be filed.  I will say, as a general

18   proposition, if there is something that is relevant to 93A or

19   176B, or whatever, however it's framed, that would ordinarily

20   and appropriately be heard only by the court, as opposed to a

21   jury, assuming there is a jury on the contract claim.  We can

22   have that hearing.  That doesn't need to be tied to this

23   schedule.  In other words, suppose I agree with Mr. Meltzer

24   that it's relevant, but I also agree that it's not relevant to

25   the contract claims, we can get that testimony in as best we

1    can in an afternoon or some other time.  We can deal with that

2    later, if need be.  Okay.  But I'll wait for the motion and see

3    what the issues are first off.

4         All right.  Let's handle it that way then:  Motions by

5    the 2nd; responses by the 7th; a hearing at five o'clock on the

6    8th; other pretrial filings due Tuesday the 13th; and I'm going

7    to need to resolve this jury or bench trial issue by the 8th.

8    If the parties want to file anything by that, they're welcome

9    to.  And we will, assuming it is a jury, we'll impanel the

10   morning of Friday, May the 16th; and in all likelihood, just

11   for planning purposes, what we will do is we will impanel.  We

12   may possibly have opening statements, but we would not have

13   testimony.  So the first witness would be called on the 19th.

14   Okay.

15        MR. MELTZER:  Your Honor, if may ask one question.

16        THE COURT:  Yes.

17        MR. MELTZER:  If we could have a trial order issued

18   today pointing out that trial date.  I have one date I have to

19   move up my schedule for that week.  They are going to want to

20   see an order of the trial being called on the 18th.  If you

21   could have something that like that that would be helpful for

22   me.

23        THE COURT:  Mr. Castles is going do an electronic

24   order.  That's an order of the court, an electronic entry.  If

25   that's not good enough let me know, and I'll issue something

1    else.

2              MR. MELTZER:  That would be fine.

3              THE COURT:  Okay.  Anything else, Mr. Meltzer?

4              MR. MELTZER:  That should do it, your Honor.

5              THE COURT:  Mr. Hermes.

6              MR. HERMES:  No, sir.

7              THE COURT:  Okay.  Thank you.  And I appreciate your

8    flexibility and willingness to do it in the time tight.

9              All right.  We'll stand in recess.

10             (At 3:38 p.m., court was adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript, consisting of 16 pages

5    inclusive, is a true and accurate transcription of my

6    stenographic notes in Case No. 05cv40072, Landworks Creations,

7    LLC versus United States Fidelity and Guaranty Company, before

8    F. Dennis Saylor, IV, on April 29, 2008, to the best of my

9    skill, knowledge, and ability.

10

11

12                            /s/ Marianne Kusa-Ryll

13                            Marianne Kusa-Ryll, RDR, CRR

14                            Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25