UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES FIDELITY AND | ) |
| GUARANTY COMPANY and | ) |
| LOVETT-SILVERMAN CONSTRUCTION | ) |
| CONSULTANTS, INC. | ) |
| | ) |
| Defendants | ) |

OPPOSITION OF LANDWORKS CREATIONS, LLC TO THE MOTION IN LIMINE OF THE DEFENDANT, UNITED STATES FIDELITY AND GUARANTY COMPANY, TO EXCLUDE THE TESTIMONY OF WILLIAM GALLAGHER, THE PLAINTFF'S EXPERT AND TO PRECLUDE THE PLANITIFF FROM PRESENTING EVIDENCE ON ITS CHAPTER 93A CLAIM DUE TO THE ABSENCE OF EXPERT TESTIMONY,  AND REQUESTS FOR COSTS FOR RESPONDING TO A BAD FAITH MOTION IN LIMINE

Now comes the Plaintiff, Landworks Creations, LLC, and requests that this Honorable Court summarily reject the frivolous and bad faith Motion in Limine to Exclude William Gallagher. As grounds for this Opposition, the Plaintiff states as follows:

1. Once again, as so often in this case, the Defendant appears to be intentionally confusing the issues between payment and performance bonds, and deliberately misstating the facts of this case as if they were already adjudicated.

2. As noted repeatedly, this lawsuit arises out of a construction contract between Landworks Creations, LLC and Standen.

1

3. Defendant, USF & G, took over the obligations of Standen under both payment and performance bonds.

4. These obligations included payment due to contractors who had performed work prior to the failure of Standen, and obligations to complete the project thereafter.

5. Defendant, USF & G is an insurance company, and does not perform construction work. Defendant, USF & G retained a series of consultants to perform construction services on behalf of USF & G.

6. Lovett-Silverman was one such construction consultant. Another was Jackson Construction, which served as the Surety's construction manager after the failure of Standen, and which, also, subsequently failed.

7. It is not disputed that Lovett-Silverman came to the project as USF & G's agent for purposes of determining prior amounts due and owing, and getting contractors back to work. An e-mail dated August 17, 2005 from Robert Bullock at Lovett-Silverman to Landworks has been submitted to this Court on a number of occasions. In the e-mail, Bullock wrote that "LSCC is consultant to the St. Paul in connection with the completion of work on the above referenced project. We anticipate work at the site to proceed again immediately…" Indeed, in the same memo, Bullock conceded that the post-Standen contractors were "managers," noting that G & R would be coming to the job, and the work "will be managed by them."

8. In the same e-mail, Bullock requested that Landworks provide information sufficient for Lovett-Silverman to develop the ratification agreement, which would include resolution of amounts due.

9. At the subsequent deposition of Robert Bullock, it was admitted by Bullock, in testimony prior provided to this Court (page 52-54) that he utterly failed to conduct an investigation of Landworks' claims. He admitted he never spoke about the Landworks scope with Landworks, the project architect, Jackson Construction or others.

10. Plaintiff's expert in this case, William Gallagher, will be testifying that USF & G's, *agent*, Lovett-Silverman, utterly failed to comply with industry practice in the summer of 2005.

11. The conduct that is questionable in this case, in almost all of the ultimate issues, and certainly those warranting expert testimony, is the conduct of Lovett-Silverman. And yet, the Defendant now asks this Court to strike the expert on the grounds that his testimony deals with the conduct of Lovett-Silverman. However, that conduct *is* the issue, and the testimony is appropriate and proper.

12. Plaintiff notes, again, that this is a collection case. The Plaintiff is seeking payment for work performed under its Ratification Agreement and under the Standen contract.

13. Plaintiff will testify that he was ready, willing and able to return to work and that USF & G repudiating the prior agreement, thereby excusing Landworks from any further obligations.

14. Gallagher can testify, and is competent to testify, that it is industry practice for a subcontractor in Landworks' position to refrain from further work while a surety works out job completion under its performance obligations.

15. Under the established law of contract, (Framingham Heavy Equipment Company, Inc. v. Callahan, 67 Mass.App.Ct. 171, 179-80 (2004)), USF & G's failure to make payment

excused further performance without Landworks' being held responsible for "abandonment."[1]

16. The expert witness will testify that Landworks did everything it was supposed to do with regard to industry standard to seek payment, and that Lovett-Silverman failed to comply with industry standards in all respects with regard to investigating the Landworks claim.

17. In addition, Gallagher will testify that Lovett-Silverman, as the surety's agent, utterly failed to investigate the Landworks' claim in a manner accepted within the construction industry.

18. Indeed, the fact that USF & G did not have a policy as to claims handling is, in and of itself, an explicit violation of G.L. c. 176D. Thus, the issue before the Court is not whether a policy violated standards of claims handling, but rather whether Lovett-Silverman compounded lack of policy by engaging in conduct which defied industry norms and USF & G's own practices.

19. In fact, Plaintiff does not believe it requires an expert witness as to its 93A claim. James Peters of USF & G testified that it had no written claims handling policy. In addition, evidence will be submitted that to the extent that an ad hoc policy did exist, then such ad hoc policy was absolutely violated in this case. It will be further evident that USF & G, by its agent, Lovett-Silverman, lied to Landworks about those policies. This is adequate for the 93A claim.

20. Also, the mere fact that USF & G has forced Landworks to litigate this case, in the absence of any excuse for non-payment, is an explicit violation of c. 176D.[2]

---

[1] By way of irony, Gallagher served as a project manager for Callahan.
[2] In fact, when the legislature enacted c. 176D, it included §3, specifically designating certain acts as unfair claims practices as a matter of law, for the purpose of eliminating the need for expert testimony as to certain issues. Here, USF & G has clearly violated §3(9) b,c,d,e,f,g,h,l,m and n. This is not a close case by any stretch of the imagination.

21. Thus, the Plaintiff's expert must testify as to the conduct of Lovett-Silverman in this case, not as to the conduct of USF & G, which had delegated, by Lovett-Silverman's own admission, to Lovett-Silverman the responsibility of project review and ratification.

22. The argument that the expert should be excluded because he is going to testify as to what Lovett-Silverman did or did not do is an absolute absurdity. The ultimate issue as to both USF & G's contractual defense (abandonment) and USF & G's counterclaim (again, abandonment) derives from what Lovett-Silverman did or did not do.

23. An expert who did not focus on Lovett-Silverman's conduct would not be testifying as to the appropriate topic, and would be incompetent to testify, not the other way around.

24. The Defendant's motion to exclude the Plaintiff's expert is specious, as it seeks to exclude the primary expert witness as to the germane issue helpful to the jury---what should Lovett-Silverman have done to comply with industry standards? Failure to follow those industry standards obviates abandonment, and also obviates the entire counterclaim based upon excused further performance.

25. Indeed, the motion in limine, as to such probative evidence, smells of desperation from a defendant which has no defenses to its failure to pay.

26. The Plaintiff has already submitted evidence to this Court that demonstrates an intent by one of the Surety's agents to "bang the subcontractors," supported by expert testimony that "banging" the subcontractors was a term used to define a bad faith scheme to prevent payment for work performed. Efforts to preclude this testimony can only be construed as yet one more bad faith effort by USF & G to escape payment, and to completely frustrate the intent of G.L. c. 149 §29 (to effectuate the prompt and efficient payment of subcontractors on public projects).

27. The Court should take note of this pattern and practice of repeated efforts to use extralegal means to harm this Plaintiff and to exclude probative, relevant evidence necessary to further legislative intent.

28. Costs of responding to this motion should be granted, and the Motion in Limine must be DENIED.

                                Respectfully Submitted,

                                The Plaintiff,

                                By its attorney,

                                s/Robert N. Meltzer
                                Robert N. Meltzer, BBO #564745
                                The Mountain States Law Group
                                P.O. Box 1459
                                Framingham, MA 01701
                                Phone: (508) 872-7116

May 7, 2008