UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES FIDELITY & | ) |
| GUARANTY COMPANY | ) |
| | ) |
| Defendant | ) |

PLAINTIFF, LANDWORKS CREATIONS, LLC'S TRIAL MEMORANDUM

Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff") and provides this trial memorandum for the purposes of clarifying certain issues that were raised after the filing of the Plaintiff's Pre Trial Memorandum, and of which the Plaintiff wishes the Court to be aware.

I.    ISSUES OF LAW TO BE ADDRESSED

A.  CONTRACT AMBIGUITIES

At the pre-trial conference, the Court raised the issue of ambiguity in the contract documents. Plaintiff notes that this is a lawsuit arising out of a construction contract entered into between Landworks and Standen on or about August 28, 2003 following the termination of a prior site contractor, Hole Story. The Standen contract contains an Exhibit A for Earthworks, identifying the "scope" of the contract. Landworks Creations, LLC is primarily in the business of preparing subsurfaces and installing surfaces for athletic fields and golf courses, and is not a general

purpose site contractor. Exhibit A is not the actual scope for this project, as Landworks was not assigned all of Exhibit A.

The evidence is clear that the contract is ambiguous based upon the failure of the Standen contract to properly identify the scope of the work. For example, Landworks provided to Standen on July 27, 2003 its proposal for the work at the Shrewsbury Middle School that breaks down the scope into specific categories, and generally limits the work to demolition, athletic field, seeding specific lawn areas between the athletic fields and the main project, water management, a grease trap, excavation and backfill for utilities and paving/curbing. The proposal excluded all else, including a rubberized track surface. The Landworks proposal provided a price of $1,055,823. On August 1, 2003, Standen accepted the proposal at a price of $1,055,823, and promised a written contract, which was subsequently provided. The contract, when provided, reflected a subsequent reduction in scope, as the contract price on the written contract was $824,823.00

Throughout this litigation, the Defendant has urged a position that the Landworks contract, by its four corners, encompasses responsibility for site work that is substantially greater than the original proposal at $1.055,823.00. The damages on the Counterclaim are entirely based upon work that is outside the scope of the Proposal.

There is no doubt that all parties to this matter have known since 2004 that Landworks had not been assigned the full extent of contract work. For example, consultants at Lovett-Silverman have testified that they were fully aware that track work was to be performed by a company called Tracklite, that fencing work was to be performed by Steelco and that a landscaper also had been retained separate and distinct from site work. In addition, there is evidence that Lovett-Silverman, and USF & G, was aware that a separate concrete company was pouring concrete. All of these items were outside the Standen/Landworks scope.

Significantly also for the purposes of c. 93A/176D, no one at Lovett-Silverman or USF & G made any effort to ascertain the actual scope of the Landworks/Standen contract either at the default of Standen or following the failure of Jackson. These parties admitted that they simply reviewed the Jackson/Landworks "contract," notwithstanding actual knowledge of an obvious discrepancy between the scope of work identified in that document, and the obvious evidence that other subcontractors were performing work erroneously attributed to Landworks. In fact, no one ever even asked Landworks.

In addition, a February 2, 2005 punch list for final site work only included $14,000 for final work in the spring of 2005, clearly not including the expansive track work that USF & G is now attributing to the Landworks scope. The February 2, 2005 punch list, showing less than one percent remaining work to full completion, proves that Landworks had achieved substantial completion of its contract.

There has also been e-mail between Eric Hipp and Lovett-Silverman indicating that even USF & G's attorney, Eric Hipp, had reason to doubt the scope of the project assigned to Landworks for remedial work, noting that the amount being assigned to Landworks almost surpassed the amount of the original contract. The counterclaim ad danum makes no sense.

Adopting USF & G's position as to the Landworks scope would require this Court to ignore a substantial body of evidence acknowledging the more limited scope of work identified in the July 27, 2003 proposal. This would result in the highly baffling situation in which Landworks agreed to perform a limited scope of work for over a million dollars, but was otherwise assigned by the four corners of the contract for doing *all* of the entire site section for two hundred thousand dollars less.

The Court should recognize a major disconnect between the July 27, 2003 proposal, the August 1, 2003 Standen response and the contract as drafted and signed; clearly, the scope included in the actual Standen contract is not the scope intended by all parties to the contract. The contract, based upon the undisputed evidence that the site work had been divided into portions, consistent with the July 27, 2003 proposal, requires that the Court deem the contract ambiguous, and submit the question to the jury to ascertain the scope of contractual obligation. The issue is critical—if the scope is determined by the jury to be limited to the proposal of July 27, 2003, then it serves as an ultimate defense to the counterclaim; Landworks cannot be held liable for not performing work it was not obligated to perform in the first place, nor can it be held liable for repairing deficiencies it did not cause in the first place.

The issue of scope is potentially dispositive of all of the claims and defenses of USF &G.

In, <u>Edmonds v. U.S</u>. 426 F2d 717, 881 (D.Mass. 1981), the Court noted that "[u]nder Massachusetts law, interpretation of a contract is ordinarily a question of law for the court. The circumstances surrounding the making of the agreement must be examined to determine the objective intent of the parties. Where the wording of the contract is unambiguous, the contract must be enforced according to its terms. It is only where the contract contains ambiguities that a question of fact for the jury is presented."

Here, the contract scope clearly does not represent the objective intent of the parties. To hold otherwise is to leave open the baffling question as to why other companies were doing Landworks' scope contemporaneous with performance by Landworks. The Court must, in all equity, determine that substantial questions of fact have created pervasive doubt and confusion as to the scope, rendering it ambiguous as a matter of law.

The Plaintiff has asked for an instruction on contract ambiguity in its proposed jury instructions.

### B. THE COURT MUST ADDRESS THE ISSUE OF AGENCY WITH REGARD TO JACKSON CONSTRUCTION

Also at the pre-trial conference, USF & G continues to raise and argue the issue of a "contract" between Jackson and Landworks. Landworks denies that such a contract exists, noting that the document signed is, at best, nothing more than a change order accepting increases in the contract for pre-submitted change orders.

At the depositions of USF & G and Lovett-Silverman, the following facts were admitted: that Jackson did not sign a contract with the town of Shrewsbury as contractor; that money received to be paid subcontractors was received from the town of Shrewsbury by USF & G, and then provided to Jackson to pay subcontractors; Jackson was not bonded, as would be required by G.L. c. 149. It was also noted that upon the failure of Jackson the Surety returned to the site upon demand by the town subject to the performance bond issued to *Standen*. USF & G never surrendered control of the project or the site. The fact that the performance bond remained in effect from *Standen* undermines the contention that Jackson had replaced Standen. In fact, Jackson merely replaced Lovett-Silverman as the Surety's agent. In short, Jackson was not a replacement contractor, but rather a constructive manager operating under the control of USF & G.

The law says that "[a]n agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." Theos & Sons, Inc. v. Mack Trucks, Inc. 431 Mass. 736, 742 (2000)

As an agent of USF & G, and as a party who had no control over the work, no responsibility for the repercussions of default, and no independent ability to pay subcontractors, Jackson could not, as a matter of law, enter into independent contracts with subcontractors. Thus, aside from the issue of unconscionability, and the issue of lack of consideration, the Court must recognize as a matter of law that Jackson, as an agent, lacked independent ability to contract for itself. Finally, as an agent of USF & G, Jackson bound USF & G by its actions, including promises by Jackson that Landworks would be paid for its work by the Surety.

In its proposed jury instructions, Landworks has requested an instruction on agency, as well as capacity to contract.

II.     ESTIMATED LENGTH OF TRIAL

Based upon prior court rulings, the Plaintiff now believes that this matter can be fully tried within five half day sessions.

        Respectfully Submitted,

        **Landworks Creations, LLC**
        By its attorney,

        s/Robert N. Meltzer_____
        Robert N. Meltzer, BBO #564745
        P.O. Box 1459
        Framingham, MA 01701
        Phone: (508) 872-7116

Dated: May 12, 2008