**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LANDWORKS CREATIONS, LLC, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>)<br>UNITED STATES FIDELITY AND )  C.A. No. 4:05-CV-40072-FDS<br>GUARANTY COMPANY, and )<br>LOVETT SILVERMAN CONSTRUCTION )<br>CONSULTANTS, INC., )<br>    Defendants. ) | |

**TRIAL BRIEF OF THE DEFENDANT**
**UNITED STATES FIDELITY GUARANTY COMPANY ("USF&G")**

### I.    STATEMENT OF THE CASE

Plaintiff Landworks Creations, LLC ("Landworks") commenced this action on March 29, 2005. The claim being tried to the jury is a breach of contract action against USF&G for non-payment of the site work Landworks performed at the Shrewsbury Middle School, Shrewsbury, Massachusetts (the "Project"). At trial USF&G will show that Landworks deliberately breached the contract by not completing or adequately performing the site work and, as a result, cannot recover under the contract or under a *quantum meruit* theory. In fact, pursuant to its counterclaim, USF&G will show that Landworks owes USF&G its cost for completing the site work.[1] Finally, USF&G will show that it did not violate G.L. c. 93A/176D by failing to settle the case because liability has never been reasonably clear due to Landworks' inadequate and incomplete performance.

---

[1] Even if Landworks properly suspended its work on the Project and is owed the value of its work, USF&G is entitled to a credit based on the amount it was required to pay to complete the site work.

## II. USF&G'S POSITION ON THE FACTS

### 1. Case Involves Landworks' Contract Claim

Landworks' only claim before the court is a breach of the Subcontractor Hold Agreement Conditional Partial Release with USF&G. Landworks' attorney stated at the May 7, 2008 Pre-Trial Conference that "[T]he contract in this case is a ratification agreement that refers to the prior standing contracts."[2] In its complaint, Landworks alleges only a breach of contract claim.[3]

### 2. Original Standen Contract

The original general contractor, Standen Contracting Company, Inc. ("Standen") signed a contract with the Town of Shrewsbury ("Town") for renovation of the Shrewsbury Middle School on October 1, 2002. Standen first subcontracted with The Hole Story for site work at the Project. The Hole Story defaulted. Neal Matthews, the president of Landworks, a site subcontractor, signed a contract with Standen on August 28, 2003, for $898,044 (original contract price of $824,823 plus change orders of $73,221) for thirteen areas of site work ("Standen Subcontract").[4] Landworks performed work under the Standen Subcontract until February 2004, and was paid $433,544.60. In February 2004, Standen defaulted on its contact with the Town. On March 18, 2004, the Town and USF&G signed a Takeover Agreement.

In its trial brief, Landworks announced its intention to offer evidence that the Standen Subcontract is ambiguous. This is not the case. There is no ambiguity in the Standen Subcontract, which not only clearly spells out the duties and responsibilities of each party but

---

[2] See transcript of the Pre-Trial conference May 7, 2008, page 8.
[3] Landworks' Chapter 93A/176D claim has been reserved for the court.
[4] The contract consisted of the following specifications: site demolition (2060); site preparation (2100); earthwork (2200); geotextile fabrics (2240); erosion control (2250); bituminous concrete paving and markings (2511); concrete pavement (prep only) (2515); granite curbing (2525); tracer tape (2649); storm drainage systems and sewer systems (2705); underdrain system and slit drainage system - athletic field (2710); water systems (2713); and lawns and grasses (2930).

also contains an integration clause that states:

> This Subcontract constitutes the entire agreement of the parties hereto relative to the subject matter hereof and all prior negotiations with respect to and drafts of this Subcontract are merged herein. This subcontract may not be modified or amended except by a writing signed by an officer of the Contractor."

Agreement between Standen and Landworks August 28, 2003, paragraph 6.5.

Therefore, all prior written or oral proposals, offers, suggestions or understandings have been incorporated into the Subcontract which contains the entire and complete agreement between the parties. As such, any evidence as to these prior proposals or understanding is irrelevant and inadmissible.

### 3.     Subcontractor Hold Agreement

Prior to this Project, Landworks had never been involved in a project taken over by a surety. On March 24, 2004, Neal Matthews, on behalf of Landworks, signed a Subcontractor Hold Agreement Conditional Partial Release ("Hold Agreement") with USF&G. Pursuant to the Hold Agreement, USF&G paid Landworks $177,614.60, the net amount owed to it for work it performed under the Standen Subcontract. Withheld from payment was $9,864 in unresolved change orders and retainage of $32,166.27. The value of the remaining work to be performed was stated to be $254,718. Landworks agreed to release USF&G from any claims it had regarding its work under the Standen subcontract and to complete the subcontract work, subject to acceptance of Landworks by the completing contractor.

### 4.     Jackson Subcontract

Landworks negotiated a subcontract, dated April 29, 2004, with Richard McGuinness from Jackson Construction Company ("Jackson"), the new general contractor, for $303,534.80 ('Jackson Subcontract"). The subcontract price included the work Landworks had not yet performed under the Standen Subcontract ($254,710), several previously unapproved changes

3

orders from the Standen Subcontract ($16,650) and the retainage from the Standen Subcontract ($32,166). Mr. Matthews signed the Jackson Subcontract on behalf of Landworks on June 12, 2004. Landworks' counsel now argues it did not have a valid contract with Jackson. The specification sections identified in the Jackson Subcontract were the same as in the Standen Subcontract. There were no exclusions.

Landworks performed work, allegedly both before and after it signed the Jackson Subcontract. At some point, several change orders were approved. The Jackson Subcontract price was revised upward to include these changes orders (Change Orders #1, 2, and 3) to $354,488. Jackson paid Landworks a total of $281,192.10 under the subcontract, leaving an unpaid subcontract balance of $73,295.90. Landworks alleges it is owed this amount and an additional amount for unpaid change orders. At some point, Landworks stopped working on the Project, leaving work uncompleted or improperly performed. Its last Daily Field Report was dated July 22, 2004 and its last Weekly Payroll Report was dated September 25, 2004.

### 5. Jackson's Default

Jackson was officially declared in default by USF&G on June 22, 2005. G&R Construction ("G&R") took over completion of the Project in July 2005 and completed the site work at a cost of over $700,000. In January 2006, USF&G and Jackson signed a Release, Assignment and Settlement Agreement, under which Jackson's claims against subcontractors on various projects were assigned to USF&G.

### 6. Landworks' Uncompleted Work

Landworks did not complete its work under the Jackson Subcontract. According to Neal Mathews, grading the entire site including the athletic fields was part of Landworks' scope of work. However, this was not completed. The east side of the track/football field was not graded,

4

and the demolition debris was not removed. The area between the track area and baseball field was not graded. Installation of a shot put pit was not performed, the long jump area was not moved, and an island in the southwest teachers parking lot needed topsoil. Bituminous paving was also part of Landworks' scope of work under the Jackson Subcontract. The 75 foot walkway connecting the elementary school playground to the service road at the far east of the site, the area around the storage shed on the east side of the building between the gymnasium and the shop area, and the area around the flag pole at the front of the building was not paved.

In addition, on December 7, 2004, Jeffrey Richards, the registered landscape architect for the Project, sent a letter to the architect listing many site work deficiencies including, but not limited to, the incomplete work described above by Neal Matthews. Landworks argues that much of the incomplete work was beyond the scope of Landworks' contract, was not Landworks' responsibility because it had been damaged by others, or was properly performed, which USF&G denies. Landworks assigned $25,000 as the value of this unperformed work, which USF&G will prove is actually a much larger amount.

USF&G also will show that Landworks abandoned its work on the Project, and that despite Landworks' allegation that it was always ready, willing, and able to complete the work, it did not return to the Project.

### 7. Money Owed To Landworks Under The Jackson Subcontract

Landworks alleges that it is owed $135,101 for unpaid work on the Jackson Subcontract. According to USF&G's expert, Michael Pellegri, from Vertex Construction Services, Inc., this amount consists of $73,295.90 for the Jackson Subcontract balance, $9,863 for the disputed change orders under the Standen Subcontract as stated in the Hold Agreement (of which only $4,828.73 was actually approved), $52,605.47 under change orders #304, 404, 804-1804 (of

5

which only $28,526 was actually approved), $11,000 for increased paving thickness (rejected by Jackson in a letter dated November 15, 2004), less the $25,000 which Landworks claims is the value of the work that it admits it did not perform, a total of $121,765. Landworks alleges it is owned $135,101, but the additional $13,336 is itemized. After deducting the unapproved and rejected change orders Landworks' claim is reduced to $80,874.20 before any credit to USF&G's cost of performing and repairing Landworks' uncompleted work.

### 8.     USF&G's Counterclaim Against Landworks

Michael Pellegri's analysis of the G&R site work invoices reveals that it cost USF&G $127,119.25 to complete the specification for Earthworks; $312.50 to complete Erosion Control; $85,990 to complete Bituminous Concrete Paving and Markings; $12,964.12 to complete Concrete Paving; $319.97 to complete Storm Drainage and Sanitary Sewer System; $198.60 to complete Water Systems; and $445,444.35 to complete Lawn and Grasses.[5] General Conditions was calculated at 17% for $111,918.14. As a result, it cost USF&G over $700,000 to complete the site work for the Project.

George Byl, from Restructure Company Inc., has reviewed the documents in the case and will testify that the fair and reasonable value of repairing and completing Landworks' work was between $268,000 and $469,000, which clearly exceeds the amount claimed by Landworks.

### III.    ISSUES OF LAW

### 1.    Validity Of The Contracts In The Case

There are three contracts in this case relevant to Landworks' claims and USF&G's counterclaim: the Standen Subcontract, the Hold Agreement, and the Jackson Subcontract. Landworks admits execution of the Standen Subcontract and the Hold Agreement. However,

---

[5] Because work under Site Demolition, Site Preparation, Geotextile Fabrics, Granite Curbing, Tracer Tape, Underdrain System –Athletic Field was completed by Landworks, it was not included in this analysis.

according to its attorney, Landworks disputes the validity of the Jackson Subcontract because it lacks consideration and contends that its claims are based on the Hold Agreement only.

There are several reasons why the Jackson Subcontract is not invalid due to lack of consideration. First, consideration is not necessary under a sealed instrument. Second, the Hold Agreement, which is a valid forbearance contract, provides the consideration for the Jackson Subcontract. Third, Jackson gave additional consideration to Landworks when it increased the subcontract price and the Jackson Subcontract was ratified when Landworks agreed to additional change orders and accepted payment thereunder.

### a.   Consideration is not required if contract is under seal

Consideration is unnecessary when a contract is under seal. A seal is a substitute for consideration. *Johnson v. Norton Hous. Auth.*, 375 Mass. 192, 194 (1978). All that is required for a document to be sealed is written indication on the contract that shows that the parties intend the contract to be sealed. A contract is a sealed instrument if it states that it is a sealed instrument. *Marine Contractors Co. v. Hurley*, 365 Mass. 280, 285 n.2 (1974). S*ee Knott v. Racicot*, 442 Mass. 314, 319-324 (2004) (law regarding sealed instrument does not apply to option for purchase of land, but the presumption of consideration for other sealed contracts is not decided). In the instant case, the Standen Subcontract and the Jackson Subcontract are both signed under seal and are not options contracts, so no consideration is required for their validity.

### b.  Valid forbearance Hold Agreement is consideration for Jackson Subcontract

The Hold Agreement provides the consideration for the Jackson Subcontract. First, the Hold Agreement itself contains valid consideration. It is well established that the failure to receive payment when it is due is a loss, so the agreement to forbear or postpone collecting a debt is good consideration for an agreement to pay the debt. "A party who abandons a claim in

good faith in order to settle a dispute over that claim provides sufficient consideration …even though the claim ultimately might have been unsuccessful." *Ekchian v. Thermo Power Corp*., 56 Mass. App. Ct. 1116, WL 31856404 at *3, n.10 (2002)(quoting *Pandisco v. Atkinson*, 54 Mass. App. Ct. 482, 486 (2002)). *See also Fears v. Story*, 131 Mass 47, 49 (1881), *Boyd v. Freize*, 71 Mass 553, 554-555 (1856). The Hold Agreement contains valid consideration because of USF&G's promise to pay Landworks the debt owed by Standen in consideration for Landworks' agreement to release USF&G and to perform the balance of the work. There is no dispute that USF&G made the promised payment. The Hold Agreement also provides consideration for the Jackson Subcontract, which is a fulfillment of an obligation of Landworks (performing the balance of the work) required under the Hold Agreement.

    **c.**    **Jackson Subcontract was revised and contains consideration due to new terms**

The original Jackson Subcontract included payment of $303,534.80 to Landworks, which consisted of the work not performed under the Standen Subcontract, several previously unapproved Standen changes orders, and retainage from the Standen Subcontract. However, the subcontract price was increased to include new changes orders bringing the total price to $354,488. The increased subcontract price is additional consideration for a valid contract. In addition, Landworks negotiated additional change orders with Jackson and received payments from Jackson, thereby ratifying the subcontract.

    **2.**    <u>**Full Performance Versus *Quantum Meruit*</u>**

Under Massachusetts law, <u>full</u> performance of the contract is required in order to recover under the contract. *U. S. Steel v. M. DeMatteo Const.Co*., 315 F.3d 43, 48 (1st Cir. 2002). A subcontractor cannot recover <u>in contract</u> for less than full performance even if the subcontractor acted in good faith and substantially performed. *Glazer v. Schwartz*, 276 Mass. 54, 56 (1931)

(emphasis added).

If a subcontractor can show that he substantially performed with a good faith intention to perform fully, it may recover in *quantum meruit* (assuming such a claim is pleaded). *U.S. Steel*, 315 F.3d at 48. *Glazer*, 276 Mass. at 57. However, the subcontractor must prove both substantial performance and a good faith intention to perform fully. *Hayeck Building & Realty Co., Inc. v. Turcotte, et al.*, 361 Mass. 785, 789 (1972). Substantial performance is more than just performing work. The owner must receive what he bargained for. The entire contract must be reviewed to determine what had been done, what was omitted, and whether the owner obtained substantially what was called for in the contract. *Id*. It is also well established that an intentional departure from the terms of the contract without justification in matters other than those so trifling as to be regarded as *de minimis* will bar all recovery for work performed. *U. S. Steel*, 315 F.3d at 48. Landworks has not pleaded and therefore, should not be permitted to present evidence in support of a claim for *quantum meruit*.

### 3. Landworks Cannot Recover Under The Contract

It is admitted that Landworks did not fully perform the contract. In fact, Neal Matthews admitted in his deposition that Landworks did not complete its work and even calculated the value of the uncompleted work at $25,000. USF&G will prove that the value of the work was substantially greater. Therefore, Landworks cannot recover in contract. There is nothing in the Standen or Jackson Subcontracts that negates this principle. *See Id.* at 48-50.

### 4. Landworks Cannot Recover In *Quantum Meruit*[6]

Even had Landworks alleged a claim in *quantum meruit* in its complaint, Landworks is not entitled to recover. Landworks did not intend in good faith to perform fully. It deliberately

---

[6] This portion of the Trial Brief is intended to acquaint the Court with the heavy burden required to prove a quantum *meruit* claims under Massachusetts law but is not intended to imply that such a claim has been pleaded or may be proven by Landworks.

misinterpreted the scope of the contract, deliberately failed to complete or perform many of the contract specifications, deliberately attributed its errors or mistakes to the work of other subcontractors, and deliberately failed to repair work it performed improperly. Therefore, because the evidence will show that Landworks willfully failed to complete the work, it cannot recover under *quantum meruit*.

However, even if the jury finds that Landworks suspended the work in good faith, it still cannot recover because it did not satisfy the second prong of the *quantum meruit* recovery, substantial performance. Not only did Landworks fail to complete the work, much of the work it did perform was inadequate and incomplete and USF&G was required to pay G&R over $700,000 to complete/repair the site work. USF&G did not substantially obtain what it bargained for under the subcontract. *Valley Stream Flooring Corp. v. Green Manor Const. Co.*, 233 F. Supp. 608, 613 (D. Mass. 1963). *Drew Brown Limited v. Joseph Rugo., Inc.*, 436 F.2d 632, 634 (1st Cir. 1971).

Finally, even if the jury finds that Landworks substantially performed in good faith and is owed the value of the work it performed, USF&G is entitled to a credit based on the amount it was required to pay to complete the site work. In *Hayeck*, the court computed the value of the work by determining the amount of the contract and deducting the value of the work not performed. The court then added the additional value of change orders to the contract to arrive at a total value of the subcontractor's work. The court then deducted the payments made previously to the subcontractor. *Hayeck Building & Realty Co., Inc.*, 361 Mass. at 792-793.

In this case, the value of the work performed by Landworks, which Landworks alleges is $131,000, is far outweighed by the value of the work USF&G paid to complete the site work.

### 5. Landworks Cannot Recover Under Its Chapter 93A/176D Claim

If Landworks recovers under its breach of contract claim against USF&G, then the bad faith claim remains in the case. Landworks presumably will argue that USF&G violated G.L. c. 93A/176D by failing to investigate its claim and declining to make full settlement of the claim when liability was reasonably clear. An insurer's duty to settle arises only when liability has become reasonably clear, and encompasses both liability and damages. *O'Leary-Alison v. Metropolitan Property & Casualty Insurance Co.*, 52 Mass. App. Ct. 214, 215 (2001). To determine whether an insured's liability has become reasonably clear, an objective test, whether the insurer reasonably believed that the insured's claims were questionable, is used. *Galena v. Commerce Insurance Co.*, 2006 WL 446089, *3 (Mass. Super.). In fact, Chapter 93A may not attach even if the insurer's legal position ultimately turns out to be mistaken or unsuccessful. *M. Dematteo Construction Co. v. Century Indemnity Co.*, 182 F. Supp.2d 146, 164 (D. Mass. 2001), *Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 14-5 (1989).

Because there is a substantial dispute regarding the scope of the subcontracts, the work performed by Landworks, and the amount due Landworks, liability is not reasonably clear and USF&G is not liable under these statutes.

### 6. USF&G's Counterclaim For Breach Of Contract

In its counterclaim, USF&G alleges that Landworks breached the Jackson subcontract contract. USF&G will prove that Landworks breached the Hold Agreement and the Jackson Subcontract by abandoning the Project, failing to complete the work, and failing to perform it properly. The breach caused damage to USF&G when it was forced to hire and pay G&R to complete the site work.

### 7. Landworks' Insufficient Expert Disclosure

On June 15, 2007, Landworks disclosed William Gallagher, a construction manager, as its expert witness. Mr. Gallagher's report is the affidavit submitted in opposition to Lovett-Silverman's summary judgment motion. The affidavit is focused solely on the conduct of Lovett-Silverman and does not contain an opinion regarding the money owed to Landworks by USF&G. USF&G's motion *in limine* to preclude Mr. Gallagher from testifying in this action was allowed on the issue of the contract claim, but denied without prejudice on the issue of the Chapter 93A/176D claims.

Mr. Gallagher, a construction manager, should be precluded from testifying on the Chapter 93A/176D claim because he is not qualified to render an opinion on an insurer's claims practices on whether liability was reasonably clear. In addition, because Landworks did not disclose any bad faith/claim handling expert, USF&G will file a motion *in limine* to exclude the plaintiff's Chapter 93A/176D claim from the trial.

                                                Respectfully submitted,
**UNITED STATES FIDELITY & GUARANTY COMPANY,**
By its attorneys,

/s/ Peter G. Hermes
Peter G. Hermes, BBO No. 231840
Cynthia J. Stephens, BBO No. 560670
HERMES, NETBURN, O'CONNOR
   & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA 02110-3113
Dated: May 13, 2008                      (617) 728-0050; (617) 728-0052 (F)

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (none) on May 13, 2008.

                                            /s/ Peter G. Hermes
                                            Peter G. Hermes

G:\DOCS\CJS\Travelers\Landworks\TRIAL Pleadings\Trial Brief\5-12-08 Trial Brief.doc