Robert N. Meltzer
Attorney At Law

P.O. Box 1459
Framingham, MA 01701
508.872.7116
rmeltzer@aol.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS  *Open Court*
CENTRAL DIVISION

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES FIDELITY AND | ) |
| GUARANTY COMPANY | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF'S MOTION FOR JUDGMENT ON USF & G'S COUNTERCLAIM AS A MATTER OF LAW PURSUANT TO F.R.C.P. 50(a)(1)(A) FOR FAILURE OF MATERIAL ELEMENTS OF PROOF AT TRIAL**

Plaintiff, Landworks Creations, LLC., moves pursuant to F.R.C.P. 50(a)(1) for dismissal of Defendant, USF & G's counterclaim based upon an indisputable failure of evidence and based upon failure to mitigate. The "failure of evidence" motion is based upon failure of proof of mitigation, and upon failure to demonstrate any damages which may be attributed to the Plaintiff as a matter of law. It is also based upon the speculative nature of the damages and the clear evidence of negligent spoliation of evidence.

F.R.C.P. 50(a)(1)(A) states that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable juror would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may…resolve the issue against the party."

Plaintiff contends that it is entitled to relief on these grounds:



1

Robert N. Meltzer
Attorney At Law

P. Box 1459
Framingham, MA 01701
3.872.7116
rmeltzer@aol.com

A. THE DEFENDANT HAS NOT SUBMITTED ANY EVIDENCE OF DAMAGES

The Massachusetts Superior Court Civil Jury Instructions, § 14.1.19 notes that in "..order to prevail on a breach of contract claim, a party must prove that there is a contract, that the party performed its obligations under the contract, the other party breached the contract; and that the nonbreaching party suffered damages as a result of the breach of contract."

Here, USF & G has not tendered a shred of evidence of damages. Instead, it has submitted evidence of harm to St. Paul's Travelers Insurance Companies, Inc., a company which is not a party to this lawsuit.

This case arises from, and the evidence has confirmed such, a performance/payment bond issued by USF & G to Standen. During the motion for remand, Defendant, USF & G relied heavily upon its status as an independent company for claim of failure of personal jurisdiction in the Worcester Superior Court. In an Affidavit of Jim Peters, attached to the Opposition to Plaintiff's Motion to Remand, Peters swore, under the pains and penalties of perjury, that "USF & G is incorporated under the laws of the State of Maryland. It is an indirect wholly owned subsidiary of The St. Paul Travelers Companies, Inc."

The emphasis on separateness of these entities was an element stressed by the Defendant in urging this Court to retain jurisdiction.

The Plaintiff in this case accepted work with Standen, which was bonded by USF & G. The Plaintiff entered into a Hold Agreement with USF & G, a Maryland corporation. It did not enter into any contractual arrangement with St. Paul Traveler's Companies, Inc., and there is no



obert N. Meltzer
*ttorney At Law*

). Box 1459
amingham, MA 01701
)8.872.7116
bmeltzer@aol.com

contractual privity between the Plaintiff and St. Paul Traveler's Companies, Inc. St. Paul Travelers Companies, Inc. is not a party to this case.

All of the damages claimed by USF & G are in the form of invoices demonstrating costs incurred by an entity which is not a party to this lawsuit, and which had no contractual privity with the Plaintiff, and has no basis to sue the Plaintiff. The Plaintiff never agreed to do business with the St. Paul Travelers Insurance Companies, Inc., and did not do business with that company. It cannot be held liable for costs incurred by a stranger to the contract. For all intent and purposes, a stranger to the contract is demanding payment from the Plaintiff, which it may not do.

It cannot be disputed that the Plaintiff's relationship arose from a bond issued by USF & G, a distinct Maryland company. It also cannot be disputed that USF & G is separate and distinct from St. Paul Travelers Insurance Companies, Inc., and that the Plaintiff had no agreement or contract at any time with that company. It also cannot be disputed that every scrap of damages provided to the Court for submission to the jury related to damages from a party which is a stranger to the contractual relationship.

Thus, no reasonable juror could find damages, a vital and key element of proof. In the absence of proof, the Counterclaim must be dismissed, and this motion must be ALLOWED.



obert N. Meltzer
ttorney At Law

O. Box 1459
amingham, MA 01701
8.872.7116
bmeltzer@aol.com

B. THE COURT MUST DISMISS THE COUNTERCLAIM, AS THE DEFENDANT HAS UTTERLY FAILED TO TENDER ANY EVIDENCE OF CONTINUITY, THEREBY PRECLUDING EVIDENCE OF NECESSARY WORK IN LINE WITH THE LANDWORKS CONTRACT

Evidence introduced at trial in the form of testimony of Katie Crockett, Duffy Lanciani and Neal Matthews confirmed that the Shrewsbury Middle School project became "inactive" following the failure of Jackson to perform its obligations at the site. It is also not disputed, based upon the evidence of all parties, that the obligations of USF & G continued following the demise of Jackson. There has also been no evidence that Landworks abandoned the project. USF & G remained obligated to complete the work during the inactive period.

Nonetheless, there has been no evidence that USF & G engaged in any conduct to protect the work already performed in order to ensure continuity of the work. Evidence by Neal Matthews has been introduced which proved that the site began to deteriorate in the early spring of 2005, such that by spring of 2005 the site was already changing from its condition at the commencement of winter shut down in the winter of 2004-05. Testimony by Neal Matthews, supported by the Clerk of the Works, confirms that Landworks was ready, willing and able to complete its work in the spring of 2005.

The Defendant now seeks to impose liability on Landworks for redoing substantial damage that occurred to the site apparently after Landworks departed for the winter shut down.

However, in order to prevail on its claims for damages, USF & G must prove the condition of the site at the time Landworks departed for winter shutdown, and must prove that the work done was necessary to repair Landworks' deficiencies. In order to do so, USF & G was required to demonstrate that the defects existed when Landworks left the project. It is not entitled to assess



obert N. Meltzer
ttorney At Law

). Box 1459
aningham, MA 01701
8.872.7116
bmeltzer@aol.com

costs against Landworks arising out of negligence by USF & G to properly protect the site during the inactive period.

Defects in complex systems cannot be inferred by common knowledge or common belief, or by res ipsa loquitur that there were defective materials or workmanship. Those findings must arise from testimony from experts. In order to prove defects in Landworks' performance which gives rise to an obligation to pay for repair, USF & G must prove that the defective condition must have existed *immediately after* the work was done.  Makuc v. American Honda Motor Company, 835 F.2d. 389,392 (1st. Cir. 1987)

USF & G has provided no evidence to demonstrate the exact condition of the site as it was left by Landworks. There is no snapshot of the state of the work. The president of G & R has provided testimony that between the winter of 2004, and the commencement of work in September of 2005, the site was apparently not watered, not fertilized and not treated for weeds. In short, USF & G utterly failed to protect the work. Thus, USF & G is simply using a shotgun approach asking the Court to order Landworks to pay for redoing the entire project about one year later, regardless of potential liability of unknown third-parties and liability of USF & G for neglecting the site. This situation is not only grossly inequitable, but unlawful. In fact, the notion that USF & G is seeking nearly $1,000,000 on an $800,000 contract under which Landworks had been paid nearly $900,000 and agreed to perform final work for $25,000 demonstrates the futility of the Defendant's evidence.

The Defendant has not tendered evidence that demonstrates in a way which could be construed by a reasonable juror the state of the work at the time of the shutdown. There is a substantial break in the chain of evidence as a result of the failure of the Surety to take appropriate action to identify the status of the work immediately after it was performed by



obert N. Meltzer
torney At Law

), Box 1459
amingham, MA 01701
8.872.7116
meltzer@aol.com

Landworks. Thus, the Plaintiff is entitled to judgment as a matter of law on the Counterclaim, and the motion to dismiss the Counterclaim must be ALLOWED.

### C. THE COUNTERCLAIM MUST BE DISMISSED FOR FAILURE OF LAWFUL DUTY TO MITIGATE

Massachusetts law holds that "… a party cannot recover damages for loss that he could have avoided by [such] reasonable efforts ... as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, 68 Mass. App. Ct. 582, 612, finding authority in Restatement (Second) of Contracts § 350(1) comment b (1981). The Court further notes that "…the party in breach b[ears] the burden of demonstrating that…[the claiming party]… did not make reasonable efforts to mitigate the damages stemming from any breach of contract." It is noted in Brewster that once the party demonstrates a reasonable alternative to avoid damages being construed against the alleged breaching party, the burden shifts back to the party claiming breach to demonstrate that it acted reasonably.

The trial record demonstrates that Landworks was ready, willing and able to complete the work for $25,000, over a one month period. The testimony also proves that Neal Matthews made frequent trips to the site to determine when Landworks could perform this work, and contacted the Surety about payment and return to the site, as late as August of 2005.

The Defendant has proffered evidence that it elected, instead, to spend nearly $1,000,000 to re-do the site, including work that was apparently outside the scope of the work.

The Defendant has not tendered a shred of evidence to demonstrate why it had elected to spend nearly $1,000,000 on work over a two year period that the Plaintiff was willing to perform



obert N. Meltzer
*torney At Law*

). Box 1459
mingham, MA 01701
8.872.7116
meltzer@aol.com

in a one month period for $25,000. There has also been no evidence proffered by the Defendant that would prove that the Plaintiff, a sculptor of championship golf courses, could not do the work as it promised.

This case demonstrates a complete and total failure of the duty of mitigation. Since no evidence of mitigation has been tendered by the surety, the Plaintiff is entitled to judgment on the Counterclaim as a matter of law.

### D. THE COUNTERCLAIM MUST BE DISMISSED FOR FAILURE OF SPECIFICITY OF DAMAGES

Defendant has proffered a mountain of documents identifying work done, without any reference to the fact that much of the work was likely necessitated by snow plow damage, dramatic changes in scope of track work under Alternate 3 and neglect of the site during the spring, summer and early autumn of 2005. The Defendant is essentially asking the jury for an all or nothing verdict, as the wad of paperwork is nearly impossible to parse. In fact, the failure of USF & G to inventory the project at the time of shutdown has rendered that task impossible.

The rule pertaining to specificity of damages is well known. See, Pierce v. Clark, 66 Mass.App.Ct. 912, 914 (2006) ("The rule of damages in an action for breach of contract is that the plaintiff 'is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him, and to put him in as good position financially as he would have been in if there had been no breach.... He may not insist upon extraordinary or unforeseen elements of damage, but only such as flow according to common understanding as the natural and probable consequences of the breach and such as may be presumed to have been in the contemplation of



obert N. Meltzer
*torney At Law*

). Box 1459
amingham, MA 01701
8.872.7116
bmeltzer@aol.com

the parties at the time the contract was made.' " Boylston House. Corp. v. O'Toole, 321 Mass. 538, 562, 74 N.E.2d 288 (1947))

The Court further noted that "[w]hile it is true that a plaintiff need not prove damages with mathematical certainty, 'damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.' " Pierce, 66 Mass. App.Ct at 614, citing Kitner v. CTW Transport, Inc., 53 Mass.App.Ct. 741, 748, 762 N.E.2d 867 (2002), in turn quoting from Lowrie v. Castle, 225 Mass. 37, 51, 113 N.E. 206 (1916).

G & R could not break down its own invoices, even though they were of recent vintage and G & R knew it was going to be required to explain them in Court.. In short, G & R, regardless of prior work performed, apparently redid the entire category of site work without any reference to why the work was needed or whether the work was needed. G & R confirmed it was not on the site at the time of shut down, and did not know the condition at the time of winter shutdown. It should be evident that G & R's extravagant invoices are so grossly proportionate to the remaining punch lists proffered by USF & G as to raise substantial doubt that these invoices reflect or refer to Landworks work. Clearly, the work done was not done solely as a remediative to Landworks deficiencies. Rather, it appears that G & R redid defective work by Jackson, punch list items by Landworks, remediation of failure by USF & G to protect the work, snow plow damage and more.

The failure of the G & R invoices to explain by category of defect renders the invoices futile for the purposes of litigation. It was also confirmed at trial that the surety had a number of expensive consultants running around who should have known of, and did know of, the existence of litigation that was actually pending. Failure to categorize work renders the damages entire speculative. The Defendant, due to its failure of proof, has left the damages to pure speculation.



Mountain States Law Group

In the absence of proof of damages that are non-speculative, even if the Defendant proved some part of its case, judgment should enter in an amount of $0, and the Counterclaim must be dismissed as a matter of law and this motion must be ALLOWED.

E. THE COURT MUST DISMISS THE COUNTERCLAIM BASED UPON A RECORD OF EVIDENCE INDICATING WILLFUL SPOLIATION OF EVIDENCE

The Court has noted that "[t]he destruction of relevant evidence…has a pernicious effect on the truth-finding function of our courts…" Wiedman v. the Bradford Group, Inc., 444 Mass. 698, 705 (2005), citing Fletcher v. Dorchester Mutual Ins. Co., 437 Mass. 544, 553 (2002).

The Court went on to note that "[t]he doctrine of spoliation allows a court to impose sanctions and remedies for the destruction of evidence in civil litigation 'based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results'." Wiedman, 444 Mass. at 705, citing Keene v. Brigham & Women's Hosp., Inc, 439 Mass 223, 234 (2003).

It is not disputed that this lawsuit was filed in April of 2005. As of the spring of 2005, during a period of non-activity at the site, USF & G had an affirmative obligation to preserve and protect the site in order to make its proof as to defects by Landworks that existed at the time that the claimed breach by Landworks occurred. Considering the number of consultants retained by USF & G, this could easily have been done by videotaping the site, photographing the existing conditions, testing existing grades and otherwise documenting the site. In short, USF & G already knew that the condition of the site which it controlled would be the premier piece of evidence in this case. The documentary evidence of the site at the time of commencement of



9

obert N. Meltzer
ttorney At Law

O. Box 1459
amingham, MA 01701
8 872.7116
bmeltzer@aol.com

litigation would have allowed the surety to match unfinished or defective work with remedial costs.

Inexplicably, it did not do so. In the absence of this evidence, the surety has simply submitted costs of essentially re-doing the entire site after nearly a year of inactivity.

Just as the evidence is speculative based upon the failure of USF & G to establish a baseline, the Plaintiff has been unfairly prejudiced by the negligent spoliation of the sitework by USF & G, its agents and consultants. There is no evidence at trial that USF & G took any steps to preserve the vital evidence even though suit had already been commenced.

The appropriate remedy for this spoliation of the key and vital evidence is dismissal of the Counterclaim as a matter of law.

For the foregoing reasons, the Plaintiff is entitled to judgment now that the surety has completed its case in chief.

Respectfully Submitted,
**Landworks Creations, LLC**
By its attorney,

_____
The Mountain States Law Group
Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: May 22, 2008

Mountain States Law Group

10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>UNITED STATES FIDELITY & )<br>GUARANTY COMPANY )<br>)<br>Defendant, )<br>) | C.A. No. 4:05-CV-40072-FDS |

**AFFIDAVIT OF JAMES M. PETERS, JR. IN SUPPORT OF USF&G'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

I, James M. Peters, Jr., on oath depose and state as follows:

1.  I am employed at St. Paul Travelers as Vice President in the Bond Claim Department in Hartford, Connecticut. In that position, I have responsibility for the oversight, handling and management of claims arising under surety bonds executed by United States Fidelity and Guaranty Company ("USF&G") on behalf of Standen Contracting Company, Inc.

2.  The facts set forth below are true, accurate and complete, based either upon my personal knowledge or my information and belief, formed after inquiry into these facts. To the extent based upon my information and belief, I believe all facts set forth below are true.

3.  USF&G is incorporated under the laws of the State of Maryland. It is an indirect wholly owned subsidiary of The St. Paul Travelers Companies, Inc.

4.      The principal place of business of USF&G is 385 Washington Street, St. Paul, Minnesota.

   I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of November, 2005.

_____
James M. Peters, Jr.
United States Fidelity & Guaranty Company


_____
Kevin J. O'Connor, BBO No. 555249
HERMES, NETBURN, O'CONNOR &
   SPEARING, P.C.
111 Devonshire Street, 8th Floor
Boston, MA 02109
(617) 728-0050
(617) 728-0052 (F)

Dated: November 2, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2005, I served the foregoing document, upon Robert N. Meltzer, Attorney at Law, P.O. Box 1459, Framingham, MA 01710.

_____
Kevin J. O'Connor

O:\DOCS\KJO\UST Paul Travelers\Jackson\Landworks\Pleadings\Appearance.doc

2