UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-CV-40072 FDS

| | |
|---|---|
| LANDWORKS CREATIONS, LLC ) | |
| ) | |
| Plaintiff ) | |
| ) | PLAINTIFF'S OPPOSITION |
| v. ) | TO DEFENDANT, USF & G'S |
| ) | RENEWED MOTION FOR |
| UNITED STATES FIDELITY AND ) | JUDGMENT AS A MATTER OF |
| GUARANTY COMPANY ) | LAW AND CROSS MOTION FOR |
| ) | JUDGMENT FOR THE |
| Defendant ) | PLAINTIFF |

Now comes the Plaintiff, Landworks Creations, LLC ("the Plaintiff"), and opposes the Defendant, USF & G 's ("the Surety) renewed motion for judgment as a matter of law with regard to claims under G.L. c. 93A/176D. As grounds for this opposition, the Plaintiff notes that the Surety continues to misrepresent both the law of c. 176D, and the evidence of failure by USF & G to conform to its obligations under G.L. c. 176D. USF & G continues to rely upon an argument that liability had not become reasonably clear. However, the evidence in this case, much of it uncontested by USF & G, not only demonstrates that liability was admitted, but also that USF & G did not perform its threshold obligation of investigation.

For the foregoing reasons, and as stated below, USF & G is not entitled to judgment as a matter of law, and USF & G should be subject to treble the jury's verdict as a matter of law.

In addition, based upon George Byl's testimony that funds were due and owing in the autumn of 2004, and based upon the lack of any evidence that USF & G ever responded appropriately to the Landworks claim, or otherwise ever properly addressed the Plaintiff's claim, this Court should enter judgment in favor of the Plaintiff as a matter of law.

The Plaintiff further states as follows

1

I.   IN THE MOTION FOR JUDGMENT, USF & G PRESENTS THE WRONG LEGAL STANDARD TO THIS COURT FOR DETERMINATION OF THE PLAINTIFF'S CLAIM THUS REQUIRING THAT THE MOTION FOR JUDGMENT BE DENIED

Massachusetts General Laws c. 176D § 3(9) provides that "[a]n unfair claim settlement practice shall consist of *any* of the following acts or omissions: (b) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (c) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (d) failing to pay claims without conducting a reasonable investigation based upon all available information; (f) failing to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; (n) failing to provide promptly a reasonable explanation of the basis in the insurance policy …for denial of a claim…"

While a substantial body of case law has been created around these various claims of unfair practices, several examples suffice to show that the insurer has a legal obligation to review claims in a timely manner based upon a review of all material available, and that the insurer has a legal obligation to ensure its own compliance with this law. The Court has noted, for example, that "Under M.G.L. c. 176D, a failure to research claim will only survive if proper investigation would have made liability on the underlying claim reasonably clear and would, therefore, have foreclosed rejection of that claim." Gaffney v. AAA Life Insurance Co., 4 F.Supp.2d 38, 40 (D.Mass 1998). In reviewing the same law, the Court determined that failure to respond to

demands by a claimant "for nine months, despite repeated requests by plaintiff…" resulted in a finding that "…defendants did fail to act reasonably promptly under §3(9)(b)." <u>Whitney v. Continental Insurance Company et al</u>, 595 F.Supp. 939, 947 (D.Mass. 1984) In addition, the Court noted in that case that if it is "debatable whether liability was reasonably clear to the defendants, questions of material fact exist, precluding summary judgment." <u>Whitney</u>, 595 F.Supp. at 947.

In the case at bar, the Defendant has not only admitted at trial that liability was reasonably clear, but it also proffered evidence to that effect in the form of testimony by its own expert witness, George Byl. In addition, each and every witness for USF & G during the discovery stage of this case has admitted that it did not engage in an investigation of the claim as specifically stated in the statute. Thus, not only is USF & G estopped from arguing these points, the admissions likely would warrant a finding as a matter of law for Landworks. Thus, the motion for judgment on the pleadings must be DENIED.

II. BOTH THE UNCONTESTED EVIDENCE AND THE EVIDENCE TO BE PROFFERED AT TRIAL DEMONSTRATE A VIABLE CLAIM AGAINST USF & G AS A MATTER OF LAW, THUS REQUIRING THAT THE MOTION FOR JUDGMENT BE DENIED

In order to understand the Plaintiff's claim, it is necessary to think of this matter on a time line. It is also necessary to remember that the jury has considered and rejected the alleged "facts" that USF & G is still arguing in this motion.[1]

---

[1] Based upon the lack of any admissible evidence of abandonment, and based upon the lack of any admissible evidence that USF & G breached its payment obligation before the time for Landworks' performance, it is inappropriate for USF & G to argue to this Court that its reliance on theories, without any factual support, should provide a defense to a claim under c. 93A and c. 176D. USF & G continues to argue pure fantasy.

3

It was not disputed that by late autumn of 2004, USF & G was aware of payment problems at the Shrewsbury Middle School site. James Peters of USF & G admitted to this fact. In addition, Neal Matthews of Landworks provided uncontested testimony that he brought this matter to the attention of Jeremy Medeiros of USF & G during this time frame.

It is not disputed, and was not contested at trial, that at least three change orders had been approved and signed by Jackson Construction in the late fall of 2004 in an amount of approximately $51,000. In addition, Landworks had received a signed change order for $11,000, and USF & G did not dispute the validity of the remaining change orders claimed by Landworks at trial.

By November of 2004, while Landworks was still on site providing some routine field maintenance and other small tasks, the majority of the major work to be completed was scheduled for spring of 2005. Architect Katie Crockett identified the construction schedule and the construction schedule identifying Landworks' time for contract performance for the spring of 2005 was accepted into evidence. This testimony was confirmed by Neal Matthews of Landworks.

Thus, in the winter of 2004-2005, even before Landworks was obligated to perform under its contract, it was owed, indisputably, a substantial sum of money by the Surety (admitted by Byl). USF & G was aware of the issue of payment and that payments had not been made. Since there was no dispute that this money was owed (admitted, again by Byl), liability for these funds as of the winter of 2004-2005 has been established by the evidence at trial.

Neal Matthews made repeated attempts to collect these undisputed amounts throughout the late winter and early spring of 2004-2005. He testified that he traveled from Maine to Shrewsbury on a regular basis to ascertain the nature and status of his payments, as well as the

construction schedule for spring. He testified that his heavy equipment, hand tools and office papers remained on site at all times.

Testimony from Katie Crockett and Robert Lanciano confirmed that by the early spring of 2005, based upon the failure of Jackson, the site had been rendered "inactive." Work had essentially come to a halt prior to the time of Landworks' required performance in the spring of 2005.

By the time that spring of 2005 had arrived, payment to Landworks was at least four, and likely six, months overdue.

It was established at trial that Landworks was not asked to return to the site in the spring of 2005, and was not otherwise terminated. Notwithstanding that counsel for USF & G promised the jury evidence of "abandonment" by Landworks, the jury agreed that "the project abandoned Landworks." There was no evidence that Landworks left the job voluntarily or that Landworks abandoned the Project.[2]

During the discovery phase of this case, Landworks took the depositions of Bill Meritz, Tony Lardaro and Robert Bullock, all from Lovett Silverman. During extensive examination of these witnesses, not one of them admitted to engaging in a comprehensive review of prior site work or claims for funds due and owing by Landworks. Noting the provision of c. 176 §3(9)(d) ("failing to pay claims without conducting a reasonable investigation based upon *all available information*"), counsel for Landworks probed the scope of the investigation. No one at Lovett Silverman ever discussed the Landworks claim with Landworks, the landscape architect, the architect, the town, any employee of Standen or any party at Jackson. No one at Lovett Silverman reviewed the site work paperwork, or otherwise investigated Landworks or its claims.

---

[2] In light of the fact that no evidence of abandonment existed, the Plaintiff has serious questions of the propriety of USF & G's counsel planting that seed, or promising evidence of such abandonment.

The Lovett Silverman witnesses admitted to a complete and total lack of investigation not only of all available information, but also of the relevant and helpful information.

Testimony from Bullock also confirmed that as late as August of 2005, Landworks was still in communication with Lovett Silverman demonstrating an interest in returning to finish the punch list items, and also offering to sit down and review its outstanding receivables. Lovett Silverman declined to do so, based, so it says, on instructions from the Surety. The Court should note that August of 2005, on a time line, is nearly a year since liability became reasonably clear, as testified to by Byl.

James Peters, of USF & G, admitted that he knew that Landworks was still interested in returning to the site as late as August of 2005. At trial, James Peters also testified that he had seen no documentation that would illustrate any reason why USF & G should not bring Landworks back to the site as to issues of competence. The fact finder can certainly infer that the reason Landworks was not invited to return is that payment issues would have had to be addressed, at a time when USF & G intended, instead to force Landworks into litigation to seek its own receivables and to defend against an unreasonable counterclaim.

Suit in this case was filed in April of 2005, six months after long outstanding payments had been approved, again, according to the testimony of USF & G's own expert witness. As of April of 2005, USF & G had utterly failed to respond to the bond payment demand, and had utterly refused to explain its conduct. When suit was filed in April of 2005, at a time when performance was still timely and possible, Landworks took the unusual step of serving interrogatories under Mass. R. Civ. P. 33 with its Complaint, asking, inter alia ""please explain why the Defendant has refused to discuss the Plaintiff's return to the Project and has otherwise declined to participate in discussions pertaining to a return to the Project." (Interrogatory 2) Still frustrated by lack of

communication with USF & G six months after liability had become clear, Landworks next asked "if you contend that the Plaintiff has been terminated, kindly provide the date of the termination, the means of termination and the identity of the party terminating the contract." (Interrogatory 3) Still trying to break through USF & G's refusal to discuss its claim, the next interrogatory asked that "if you contend that the Plaintiff has stated a refusal to return to the Project, or has otherwise demonstrated an intent not to return to the work under any circumstances, please state the date of this communication, the substance of the communication and the parties involved." (Interrogatory 4)

Notwithstanding that the interrogatory questions were served by sheriff, as shown on a return of service, USF & G denied receiving these interrogatory questions. USF & G ultimately answered these interrogatories in April of 2006. The answers were totally non-responsive in terms of providing answers. As to question 2, USF & G answered "USF & G does not accept the predicate that USF & G has refused to discuss Landworks' return to the Project or otherwise declined to participate in discussions returning to a return to the Project. Therefore, no such explanation can be provided."

As to Interrogatory 3, USF & G answered in substantive part that "USF & G contends that Landworks abandoned the project in or around January, 2005. Further, USF & G contends that Landworks breached the "Subcontractor Hold agreement Conditional Partial Release" executed between USF & G and Landworks."

As to Interrogatory 4, USF & G answered "by its own admission, Landworks did not complete the work required by its subcontract regarding site work at the Shrewsbury Middle School….In addition, Landworks has admitted that it did not correct punch list items regarding

work that it had performed at the Project. Furthermore, Landworks has admitted that it has not performed any labor at or provided any materials to the Project since January 21, 2005."

In each instance, USF & G has further demonstrated, under the pains and penalties of perjury, that it did not conduct an investigation of all available information as required by c. 176D, as these responses demonstrate an ignorance of the time of performance and an ignorance of the obligations of USF & G that have been breached.

The interrogatory answers provided no evidence of abandonment, of willful failure to perform or any substantive basis for refusing to talk to Landworks as it was required *by law* to do. Landworks remains baffled by the answer to interrogatory 2, as no evidence has ever been tendered or proffered by USF & G that it responded to demands for payment and schedule coordination after the final communication with Jeremy Medeiros in the fall of 2004.

At trial, Bob Morrell of G & R testified that he did not visit the Shrewsbury site in the company of Lovett Silverman until the autumn of 2005, at which time payment to Landworks was more than a year overdue, and apparently after which time Landworks had expressed its interest in returning to the site in August of 2005. Morrell testified that the Surety was apparently shocked by the costs of completion proposed by G & R. Notwithstanding that USF & G had no substantive basis for declining to consider Landworks as an alternative to G & R to complete the work in August of 2005, the Lovett Silverman witnesses testified that they did not contact Landworks for a proposal for construction completion.

Instead, one year after Landworks made its bond demand, and one year after the legal obligation of USF & G to perform under G.L. c. 176D, and at least six months after Landworks had demonstrated a willingness to perform the remaining work for $25,000, USF & G retained G & G to perform the site work for nearly one million dollars.

Jim Peters also testified at his deposition that USF & G had no written claims handling policy for these kinds of bond claims, a clear and obvious violation of the law.

At the trial on the 93A/176D portion of the claim, the Plaintiff will proffer evidence that USF & G had a method and means of handling these claims, as demonstrated by the conduct of Vertex, a construction consultant frequently used by USF & G in 2005-2006 to assist in the completion of abandoned projects. Vertex also appeared as an expert witness at the contract portion of this case on behalf of USF & G, and conceded that Vertex is essentially the on-call consultant for USF & G. At the trial of the 93A/176D portion of this case, the Plaintiff will call Jon Lemieux and Terry Scalzo, two employees of Vertex that handled numerous Jackson failure projects for USF & G in the same time frame. They will testify that the usual procedure following failure of a contractor on a public project in 2005-2006, even after suit is filed, is to review all available information, meet with the subcontractor, and resolve hold agreement issues. Testimony from both Vertex, as well as attorneys Peter Netburn and Eric Hipp, will confirm that ratification and contract completion did occur on Jackson failure projects even when suit was filed.

Landworks will also proffer the testimony of William Gallagher, an expert in the field of construction supervision and project completion, that the Vertex process is also industry standard, and that the Lovett Silverman conduct was not.

Thus, Landworks will show that USF & G, while lacking a written policy, violated both its own internal oral policies and industry standard for reasonable investigation and claims handling in the construction field.

Eric Hipp will also testify as to his communications with G & R in various e-mails in 2006, in which Eric Hipp also noted that as late as 2006 serious discrepancies between the Landworks

obligations and the counterclaim he was drafting on behalf of USF & G. Hipp is also expected to testify that as late as 2006, he, himself, could not quantify or qualify the counterclaim that USF & G was arguing in bad faith. In fact, the e-mails indicate that he, as well, appeared to be shocked by the amounts claimed by G & R.

Landworks will proffer testimony from Attorney Brad Carver that in the late summer of 2005, long before USF & G allegedly spent unreasonable sums to complete the work, he did not contact Plaintiff's counsel to try and resolve any of the issues that gave rise to non-payment.

Landworks will also proffer e-mail traffic from Lovett Silverman from the autumn of 2005, at a time prior to the employment of G & R, and at a time when Landworks was still interested in completing the work, in which Lovett Silverman discussed "banging the subcontractors." Gallagher is expected to testify that this term means to refuse to pay subcontractors or otherwise compel them to take sharp discounts on their receivables. Serious questions of fact remain as to the meaning of that language, although USF & G has not identified an expert witness to testify on that issue.

"Banging the subcontractors" in a surety bond claim would be an indisputable violation of c. 176D § 3(9)(g), forcing a claimant to file suit. Landworks invites the Court to take note that the jury verdict far exceeded any offers of settlement by the Surety. In fact, USF & G never offered a penny to settle this case.

Landworks has already identified and designated the deposition transcript testimony from the Lovett Silverman employees which will confirm that Lovett Silverman utterly failed to investigate the claim. The evidence before the Court at trial showed that Landworks did not abandon the contract, that liability as to amounts owed was clear and undisputed prior to the time for further performance, which was subsequently excused based upon the failure of Jackson, and

the failure of USF & G to coordinate completion work. In addition, the record is clear that USF & G never mitigated its losses, never preserved the evidence, and otherwise failed in all respects to act appropriately.

Neal Matthews will also testify at the G.L. c. 176D trial that the work which USF & G claimed it paid to be performed by G & R was not, in fact, corrected; it appears, to this day, that USF & G has never investigated the site, the contract, or the claim.

Finally, the Plaintiff invites the Court to consider whether USF & G's expert witness, George Byl, tampered with a witness (Jeff Richards) and suborned perjury.

Even after the completion of trial, the Plaintiff still does not understand, and has had not heard any credible explanation, to explain why the Surety did not simply pay the invoices, and either invite the Plaintiff to complete the punch list to simply terminate the contract. The Plaintiff has heard no credible testimony to explain why an insurance company would elect to pay vast amounts of money to complete a small amount of work. The only explanation, therefore, that the finder of fact could infer, is that USF & G was engaged in a bad faith pattern of conduct to not only refuse to pay invoices due and owing, but to seek payment for that additional work from the Plaintiff. No explanation other than bad faith is credible from the facts at trial on the contract claim and the facts to be proffered at trial on the 176D claim. Nothing about USF & G's conduct meets a reasonable standard.

III.  BASED UPON THE RECORD ALREADY BEFORE THE COURT, AND THE TESTIMONY TO BE PROFERRED, THE MOTION TO DISMISS AS A MATTER OF LAW MUST BE DENIED, AND THE COURT SHOULD CONSIDER THAT THE RECORD AT TRIAL WARRANTS JUDGMENT FOR THE PLAINTIFF AS A MATTER OF LAW ON THIS REMAINING COUNT

The record in this case indicates a total and complete failure of USF & G to investigate the Landworks claim even after liability became admittedly crystal clear in the autumn of 2004. In addition, the testimony suggests that USF & G utterly failed to explain its refusal to honor the claim, its refusal to allow Landworks to return and its refusal to act in an open and fair manner toward Landworks.

On this record, there is no basis for a claim by USF & G that it is entitled to judgment, and the motion must be summarily DENIED.

In addition, the testimony of George Byl, that amounts were due and owing, and that these sums were due and owing prior to the time of performance, in conjunction with the jury determination that performance was excused, in conjunction with trial testimony of Peters that he was unaware of any lack of competence by Landworks to perform as late as August of 2005, warrants a finding that USF & G has violated G.L. c. 176D as a matter of law, such that no trial is necessary, and treble damages should issue.

    Respectfully Submitted,

    **Landworks Creations, LLC**
    By its attorney,

    s/Robert N. Meltzer_____
    Mountain States Law Group
    Robert N. Meltzer, BBO #564745
    PO Box 1459
    Framingham, MA 01701
    Phone: (508) 872-7116

Dated: June 4, 2008

CERTIFICATE OF SERVICE

  I, Robert N. Meltzer, do hereby certify that on this day I served a copy of the foregoing on all counsel of record by the electronic filing method, to:

Hermes, Netburn, O'Connor & Spearing
265 Franklin Street, Seventh Floor
Boston, MA 02109
Attn: Peter Hermes, Esq.

              <u>s/Robert N. Meltzer</u>

June 4, 2008